1  Michael A. Caddell (State Bar No. 249469)
   mac@caddellchapman.com
2  Cynthia B. Chapman (State Bar No. 164471)
3  cbc@caddellchapman.com
   Cory S. Fein (State Bar No. 250758)
4  csf@caddellchapman.com
5  **CADDELL & CHAPMAN**
6  1331 Lamar, Suite 1070
7  Houston TX 77010-3027
   Telephone:  (713) 751-0400
8  Facsimile:  (713) 751-0906
9
   Attorneys for Plaintiff
10

FILED

JUL 02 2013

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ORIGINAL

11          IN THE UNITED STATES DISTRICT COURT          **MEJ**
12        FOR THE NORTHERN DISTRICT OF CALIFORNIA

**CV 13 3072**

13  JENNIFER WHALEN, individually and        ) Case _____
14  on behalf of all others similarly        )
    situated,                                )
15                                           )   **PLAINTIFF'S ORIGINAL CLASS**
                                             )   **ACTION COMPLAINT:**
16              Plaintiff,                    )
17                                           )   **(1) Breach of Express Warranty; (2)**
                                             )   **Violations of California Business and**
18      v.                                   )   **Professions Code § 17200; (3)**
                                             )   **Violations of Unfair Business Practices**
19  FORD MOTOR COMPANY,                      )   **Act; (3) Breach of California**
                                             )   **Consumers Legal Remedies Act §**
20              Defendant.                    )   **1750; (4) Unjust Enrichment**
21                                           )
                                             )   JURY TRIAL DEMANDED
22                                           )
23
24      Plaintiff Jennifer Whalen ("Plaintiff" or "Whalen"), brings this action against
25
26  Ford Motor Company ("Defendant" or "Ford"), by and through her attorneys,
27  individually and on behalf of all others similarly situated, and alleges as follows:
28

-1-

1

## INTRODUCTION

2

3      1.      This is a class action lawsuit brought by Plaintiff on behalf of herself

4   and a class of current and former owners and lessees of Ford and Lincoln vehicles

5   (the "Class Vehicles" or "Vehicles") equipped with the SYNC® and MyFord Touch®
6
7   or MyLincoln Touch® control systems (the "Sync System").

8      2.      The Sync System is a video interface that, *inter alia,* displays driving
9
10  directions, serves as a rear view camera when the vehicle is in reverse gear,

11  operates the radio, adaptive cruise control, phone and other controls, and
12
13  automatically calls for help in the event of an emergency or accident. The Sync

14  System is an integral and safety-related part of the Class Vehicles. Indeed, Ford

15  has aggressively touted the functions and features of its Sync Systems in mass
16
17  marketing campaigns directed to consumers.

18     3.      Unbeknownst to purchasers and lessees of the Class Vehicles,
19
20  however, Sync System suffers from a material design defect that prevents it from

21  working properly. This action arises from Ford's failure to disclose to Plaintiff and
22
23  other consumers that the Sync Systems in the Class Vehicles are predisposed to a

24  defect that inevitably causes the Sync Systems in the Class Vehicles to stop

25  operating properly (the "Sync System Defect").
26
27     4.      Ford is, and at all relevant times has been, well aware of the Sync

28  System Defect. In 2011, Ford CEO Alan Mulally acknowledged in an interview with

*Whalen v. Ford Motor Co.*                           -2-

1    *Automotive News* that that company was undertaking to fix problems with Sync

2
     and MyFord Touch.[1]  Ford's knowledge is also evidenced by numerous service
3
4    bulletins it issued related to the problem, and by the overwhelming number of

5
     consumers who have complained about the Sync System.  Ford has even initiated
6
7    a warranty extension and issued a variety of software updates in an effort to

8    address the Sync System Defect.  As discussed below, however, these initiatives
9
10   have failed to remedy the problems in the Sync System. At bottom, Ford has done

11   nothing more than temporarily and improperly repair the Control System Defect,

12
     or replace it with other similarly defective and inherently failure-prone Sync
13
14   Systems.

15
        5.    As a result of Ford's unfair, deceptive and/or fraudulent business
16
17   practices, owners and/or lessees of Class Vehicles, including Plaintiff, have

18   suffered an ascertainable loss of money and/or property and/or loss in value.
19
20      6.    Had Plaintiff and other Class members known about the Sync System

21   Defect at the time of purchase or lease, they would not have bought or leased the

22
     Class Vehicles, or would have paid substantially less for them.
23
24      7.    Plaintiff brings this action to redress Defendant's violations of

25   consumer fraud statutes, and also seek recovery for Defendant's breach of
26

27   _____

28   [1] http://www.autonews.com/apps/pbcs.dll/article?AID=/20111107/OEM06/
     311079975/1182#axzz2WmXtnKBV

*Whalen v. Ford Motor Co.*                               -3-

1  warranties.

2

3  **JURISDICTION AND VENUE**

4  8.    This Court has subject matter jurisdiction of this action pursuant to 28

5  U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or
6

7  more class members, (ii) there is an aggregate amount in controversy exceeding

8  $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity
9

10  because at least one plaintiff and one defendant are citizens of different states.

11  This Court has supplemental jurisdiction over the state law claims pursuant to 28

12  U.S.C. § 1367.
13

14  9.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391

15  because Defendant transacts business in this district, is subject to personal
16

17  jurisdiction in this district, and therefore is deemed to be a citizen of this district.

18  Defendant has advertised in this district and has received substantial revenue and
19

20  profits from its sales and/or leasing of Class Vehicles in this district; therefore, a

21  substantial part of the events and/or omissions giving rise to the claims occurred,

22  in part, within this district.
23

24  10.    Venue is also proper in this District because this lawsuit involves

25  Plaintiff's purchase of a vehicle, malfunctions experienced with the vehicle, and
26

27  unsuccessful attempts to have the vehicle repaired, all of which occurred within

28  this District, in Petaluma, Sonoma County, California.

1    11.    This Court has personal jurisdiction over Defendant because it has

2
     conducted substantial business in this judicial district, and intentionally and
3

4    purposefully placed Class Vehicles into the stream of commerce within this district

5    and throughout the United States.

6

7                                **THE PARTIES**

8    **A.    Plaintiff Whalen**

9    12.    Plaintiff Jennifer Whalen ("Whalen") is a citizen of the State of

10   California, residing in Windsor, Sonoma County, California.

11
     13.    In April of 2012, Whalen purchased a new Model Year ("MY") 2013
12

13   Ford Explorer from Henry Curtis Ford, an authorized Ford dealer in Petaluma,

14
     Sonoma County, California.
15

16   14.    Plaintiff Whalen purchased (and still owns) this vehicle for personal,

17   family and/or household uses.  Her vehicle bears Vehicle Identification Number
18
19   1FM5K7D94DGA12906.

20   15.    The Ford Explorer purchased by Whalen came equipped with a Ford

21
     Sync System.  Almost immediately after buying her vehicle, Whalen began
22

23   experiencing problems with her Sync System.  Specifically, the rear view camera

24
     would freeze, the navigation system took an unreasonably long period of time to
25

26

27

28

1  calculate destinations, and the music did not stream over Bluetooth.[2] An invoice

2
3  from Henry Curtis Ford dated April 30, 2012 indicates that the Sync system was

4  rebooted and a "master reset" was performed. The Ford technician's notes on the

5
6  invoice also state that it was "found that there are some functions that do not

7  operate."

8       16.     Unfortunately, the work performed by the Ford technician was not
9
10  sufficient to fix the problems with Whalen's Sync System. Whalen returned to the

11  Henry Curtis Ford Service Department a few weeks later complaining of the

12
13  backup camera freezing again while she was driving. Whalen also experienced the

14  Sync System switching from Sirius radio to the iPod with no warning, and the

15
16  Bluetooth streaming was not operating. As a result, Whalen had to borrow a

17  loaner car while her new Ford Explorer was being serviced for four (4) days.

18       17.     Whalen received her Explorer back on May 14, 2012. Less than a
19
20  month later, she returned to Henry Curtis Ford for a third time with continued

21  problems related to her Ford Sync System. On this occasion, Whalen complained

22
23  of the backup camera freezing while driving, the Sync switching from Sirius to

24  iPod, the Bluetooth again being inoperable, and the navigation system being

25  unreasonably slow.
26

27
28  [2] Bluetooth is a wireless technology standard for exchanging data over short
     distances.

1    18.    Whalen received a form letter from Ford Motor Company's Customer

2
3    Service Division in January 2013 notifying her that her car was part of a "Customer

4    Satisfaction Program (Program Number 12M02)."  The letter indicated that Ford

5
6    was extending the limited warranty on the Accessory Protocol Interface Module to

7    a total of five years. This letter explained that the failure of the Accessory Protocol

8    Interface Module "will render the MyFord Touch® system inoperative."  The letter
9
10   indicated that a service appointment was only necessary if the MyFord Touch®

11   system was inoperative.

12
13   19.    Whalen brought her car back again to the Henry Curtis Ford Service

14   Department in January of 2013 to request that the upgrade referenced in the

15
16   letter be performed, and because the Sync System was locking up, not responding

17   to voice commands, and not disconnecting phone calls after they had been

18   concluded.

19
20   20.    Whalen returned her vehicle to the Henry Curtis Ford Service

21   Department yet again on May 14, 2013.  This time, the Ford Sync was not properly

22
23   answering the phone, would not keep the current time, and would stay stuck on

24   previous map locations.

25
     21.    The State of California requires drivers to use hands-free equipment
26

27

28

*Whalen v. Ford Motor Co.*                                   -7-

1  while talking or texting on their cellular telephones.[3] In Sonoma County, where

2
3  Whalen resides, the penalty for a first cell phone-use offense is approximately

4  $160. Plaintiff Whalen has suffered an ascertainable loss as a result of

5
6  Defendant's omissions and/or misrepresentations associated with the Sync

7  System, including, but not limited to, out of pocket loss associated with the Sync

8  System Defect and future attempted repairs and diminished value of his vehicle.

9
10      22.     Neither Ford nor any of its agents, dealers or other representatives

11  informed Plaintiff of the existence of the Sync System Defect and/or defective

12  vehicle design prior to purchase.
13

14      **The Defendant**

15      23.     Defendant Ford is an automobile design, manufacturing, distribution,
16
17  and/or servicing corporation headquartered in Dearborn, Michigan and doing

18  business within the United States. Furthermore, Defendant designs,
19
20  manufactures, distributes, markets and sells passenger vehicles, including the

21  Class Vehicles.

22
23      24.     Upon information and belief, the design, manufacture, distribution,

24  service, repair, modification, installation and decisions regarding the Sync®,

25  MyFordTouch® and MyLincolnTouch® systems within the Class Vehicles were
26

27

28  ---
[3] http://www.dmv.org/ca-california/safety-laws.php#Cell-Phone-Laws

1   performed exclusively by Defendant.

2
3       25.    Upon information and belief, Defendant Ford develops the owner's

4   manuals and warranty booklets pertaining to the Class Vehicles.

5
6       26.    Defendant Ford engages in continuous and substantial business in

7   California.

8   **TOLLING OF STATUTES OF LIMITATION**

9
10      27.    Any applicable statute(s) of limitations has been tolled by Defendant's

11  knowing and active concealment and denial of the facts alleged herein.  Plaintiff

12
13  and members of the Class could not have reasonably discovered the true, latent

14  defective nature of the Infotainment System until shortly before this class action

15
16  litigation was commenced.

17      28.    Defendant was and remains under a continuing duty to disclose to

18  Plaintiff and members of the Class the true character, quality and nature of the

19
20  Class Vehicles, that this defect is based on a poor design, and that it will require

21  costly repairs, and diminishes the resale value of the Class Vehicles.  As a result of

22
23  the active concealment by Defendant, any and all applicable statutes of limitations

24  otherwise applicable to the allegations herein have been tolled.

25

26

27

28

*Whalen v. Ford Motor Co.*           -9-

1

## FACTUAL ALLEGATIONS

2

### A.  The Defective Sync System within the Class Vehicles.

3

4

29.  Ford SYNC® is a factory-installed, integrated in-vehicle

5  communications and entertainment system that allows users to use a rear-facing

6  camera, make hands-free telephone calls, control music and perform other

7

8  functions with the use of voice commands.

9

30.  The SYNC® system consists of applications and user interfaces

10

11  developed by Ford and other third-party developers utilizing a Windows

12  Embedded Automotive operating system designed by Microsoft.

13

14  31.  The original SYNC® (or "SYNC® Gen 1") was released by Defendant

15  into the retail market in 2007 when Ford installed the system in twelve Ford MY

16  2008 group vehicles in North America.

17

18  32.  Ford initially promoted the SYNC® system as a product that provided

19  drivers with the ability to operate Bluetooth-enabled mobile phones and digital

20

21  media players in Ford vehicles using voice commands, steering wheel controls, and

22  radio controls.  Later, SYNC® software was expanded so text messages received by

23  the vehicle operator could be "vocalized" by a digitized female voice named

24

25  "Samantha" and read aloud through the vehicle's speaker system.

26  33.  The SYNC® system also included applications or "apps" such as 911

27

28  Assist, AppLink, Crew Chief, Garmin Navigation, LogMeIn, and Tool Link.

34. The brain of the SYNC® system is the Accessory Protocol Interface Module ("APIM"). The system's APIM interfaces with all vehicle audio sources as well as high-speed and medium-speed vehicle Controller Area Network buses ("CAN"). The SYNC® system's Microsoft Windows auto-based operating system can also receive software updates through the use of Class vehicle's USB port.

35. In 2007, as a standalone option, the suggested retail price for the SYNC® system was $395.00.

36. In or around January 2010, Ford announced the release of the MyFord Touch® system (branded as MyLincoln Touch® in Ford's Lincoln brand products) (collectively referred to as "MyFord Touch®") as the next-generation of the Ford SYNC® system.

37. The MyFord Touch® system is generally available only on medium to high end trim packages, including, but not limited to: C-Max, Escape, Edge, Explorer, Focus, Fusion, Taurus, Flex, Fiesta, F-150 and Lincoln MKX models.

38. As with the SYNC® system, the MyFord Touch® system was designed to enable drivers to integrate nearly all mobile phones, PDAs and digital media players into their vehicles. Once integrated, the operation of these devices is performed by voice commands, touch-screen inputs, steering wheel controls, radio controls, Bluetooth and Wi-Fi connectivity.

39. The MyFord Touch® system consists of two 4.2" color LCD displays in

1  the gauge cluster, one 8" LCD touch screen in the center stack, a media hub with 2

2
3  USB ports, SD card reader, RCA video input jacks and 5-way controls located on

4  the steering wheel and SYNC® voice activated communications and entertainment

5
6  system.

7       40.    As a stand-alone option, Ford's suggested retail price for the MyFord

8  Touch® was approximately $1,000.00.

9
10      41.    Ford actively touts the Sync System. It has a website dedicated solely

11 to it: http://www.ford.com/technology/sync/. Among other claims, this website

12
13 specifically touts the safety-related nature of the system, stating that "SYNC helps

14 you keep your eyes on the road and stay connected to your world." The SYNC

15
16 System's important safety component is critical since it plays a vital role in, *inter*

17 *alia*, proper operation of the Vehicle's back-up camera, 911 assist, hands-free

18 calling, and adaptive cruise control.

19
20      42.    The Sync website further highlights the safety-related nature of the

21 System by including several videos, one of which is titled "SYNC SAVED MY LIFE."

22
23 This video purports to depict someone reading a letter they wrote after being in a

24 serious car accident. Among other things, the narrator on the video says "SYNC

25 saved my life," "if SYNC had not dialed 911, I certainly would have perished at the

26
27 bottom of that river," "SYNC is there when nobody else is," and "it gave me my

28 life...that's the ultimate technology." The video displays the lines "SYNC. Can call

-12-

*Whalen v. Ford Motor Co.*

1  for help, even if you can't."[4]

43.     This automated emergency function operates through a Sync System called "911 Assist." According to Ford's website, this operates as follows: "In the event of an accident in which an airbag deploys or, in certain vehicles, the fuel pump shutoff is activated, 911 Assist* with GPS uses a properly paired and connected mobile phone inside the vehicle to make a call directly to a 911 operator and gives emergency responders your exact location."

44.     Ford's promotion of the Sync System also capitalizes on the recent enactment of distracted driver laws. Upon information and belief, over a dozen states have enacted laws that prohibit the use of hand-held cell phones while driving. The Sync System website promotes its hands-free calling feature as follows: "You never have to miss a call just because you're behind the wheel. If your phone rings, you can answer with the push of a button, and you can make a call with the sound of your voice."[5] This website further states that "Calling anyone is as easy as saying his or her name."

**B.     The TSBs and Warranty Extension.**

45.     Obviously aware of the many Sync Systems problems being experienced by consumers, Ford issued several Technical Service Bulletins ("TSB")

---

[4] *See* http://www.ford.com/technology/sync/ (last visited June 20, 2013)
[5] http://www.ford.com/technology/sync/features/hands-free-calling/

1    and updates in an unsuccessful effort to resolve them. On or around April 27,

2
3    2011, Ford issued TSB 11-4-18 pertaining to Ford vehicles equipped with the

4    SYNC® system and the MyFord Touch® or MyLincoln Touch® options.  Specifically,

5
6    Ford's TSB noted that these systems may experience blank screens, missing

7    presets, lack of voice recognition, incorrect dialing of phone numbers and display

8
9    problems with the backup camera.  The TSB recommended reprogramming the

10   software system.

11        46.    On or around July 22, 2011, Ford issued TSB 11-7-24 – a "succeed to"

12
13   bulletin from 11-4-18 – again pertaining to the functionality of Ford vehicles

14   equipped with the SYNC® system and the MyFord Touch® or MyLincoln Touch®

15
16   options.  Specifically, this TSB explained that certain Class vehicles, built on or

17   before July 12, 2011, may experience various concerns with "blank/black display

18
19   screen, radio switches from off to on or changes state after ending a phone call or

20   voice command, phone pairing, incorrect Sirius channel selection using voice

21   command, unable to download photo resolution 800x378, phonebook downloads,

22
23   AM/FM missing preset display information, voice recognition, voice recognition

24   hen using SYNC services, USB device detection, travel link download time, Sirius

25
26   channel art logo mismatch, Clock intermittently displays incorrect time, traffic

27   direction and information (TDI) calling wrong phone number, travel link

28   subscription, address book downloads, navigation set in kilometers but voice

*Whalen v. Ford Motor Co.*                              -14-

1    communicates in miles, and backup camera scrolling display." As a result, Ford's

2
     TSB recommended performing a software update by fully reprogramming the
3

4    Accessory Protocol Interface Module ("APIM"), and, where reprogramming was

5
     unsuccessful, replacing the APIM.
6

7        47.    On or around March 6, 2012, Ford issued Customer Satisfaction

8    Program Campaign 12M01 pertaining to Ford vehicles equipped with the SYNC®
9
10   system and the MyFord Touch® or MyLincoln Touch® options. This Campaign

11   explained that certain MY 2011-2012 Explorer, Edge, MKX and MY 2012 Focus

12
     vehicles equipped with the SYNC® system and the MyFord Touch® or MyLincoln
13

14   Touch® options may require replacement of the APIM, the brain of the SYNC®

15
     system. Ford's 12M01 Campaign extended warranty coverage of the APIM to four
16

17   years of service from the warranty start date on Ford vehicles and five years on

18   Lincoln vehicles, regardless of mileage.

19
20       48.    On or about November 5, 2012, Ford issued TSB 12-11-1 due to

21   concerns with "navigation, voice recognition, call sound quality, phone pairing

22
     and/or system performance" in the following Class vehicles:
23

24            •   2011-2013 Edge, MKX and Explorer
              •   2012-2013 Focus
25
              •   2013 MKT, Taurus, MKS, Fusion, Escape, Flex and F-150
26
27       As a result, Ford's TSB provided steps for a full software update of the APIM

28   to the latest software version now available, version V3.5.1. Those Class vehicles

equipped with navigation required a new A4 level SD-card for proper navigation function.

49.    On or about November 8, 2012, Ford issued Campaign "DEMONSTRATION/DELIVERY HOLD - Application Performance Upgrade 11A01" because software was released to "improve overall system functionality, voice recognition, screen refresh rates, response to touch, and to simplify screens for ease of use" due to concerns with "navigation, voice recognition, call sound quality, phone pairing and/or system performance." As a result, a "full image reprogram of the APIM" was to be completed on the following Class vehicles:

- 2011 Explorer
- 2011-2012 Edge, MKX
- 2012 Focus

As a result, Ford's TSB provided steps for a full software update of the APIM to the latest software version now available, version V3.5.1. Those Class vehicles equipped with navigation required a new A4 level SD-card for proper navigation function.

50.    On or about November 15, 2012, Ford issued TSB 12-11-2 because certain vehicles equipped with the SYNC® system and the MyFord Touch® or MyLincoln Touch® options, built on or before May 14, 2012, exhibited "a voice prompt indicating SYNC's Service's Traffic, Directions or Information (TDI) is unable to locate the vehicle or a Global Position System (GPS) issue is present." As a

1   result, Ford instructed that technicians perform a reprogram of the Global Position

2
    Satellite Module (GPSM) on the following Class vehicles:
3

4           • 2010-2011 Fiesta, Focus, Mustang
            • 2010-2012 Fusion Taurus
5
            • 2010 Explorer Sport Trac
6           • 2010-2011 Explorer
7           • 2010-2012 E-Series, Edge, Escape, Expedition, F-150, F-Super Duty,
              Flex
8
            • 2010-2012 MKS, MKZ
9           • 2010-2011 MKX
10          • 2010-2012 Navigator
            • 2010 Milan, Mountaineer
11
            • 2010-2011 Mariner
12          • 2011-2012 Edge, MKX
13          • 2012 Focus

14      51.    On or about January 14, 2013, Ford issued Campaign
15
    "DEMONSTRATION/DELIVERY HOLD - Application Performance Upgrade 12A04"
16

17  because software was released to "improve overall system functionality and

18
    performance including navigation, voice recognition, call sound quality, and phone
19

20  pairing." As a result, and due to new software, Dealers were instructed "to inspect

21  the APIM software level and if necessary, reprogram the Accessory Protocol

22
    Interface Module …" If the system was unresponsive, inoperative, or if the vehicle
23

24  software update was unsuccessful, Dealers were instructed to replace the APIM in

25
    the following Class vehicles:
26

27          • 2011 Edge, Explorer, MKX
            • 2012 Edge, Explorer, MKX, Focus
28

*Whalen v. Ford Motor Co.*                          -17-

1    • 2013 Edge, Explorer, MKX, Focus, Escape, Flex, Fusion, Taurus, MKS,
2      MKT, F-150

3    52.    A Ford "Special Service Message" dated March 29, 2013 states:

4    **32162  2011-2013 Vehicles – MyTouch Functional Issues Due to
5    Phonebook Content – Contact Volume.**

6      Some MyTouch equipped vehicles may experience multiple functional issues
7  such as slow navigation calculations, displayed time jump or audio popping during
8  initial ignition on cycle. These conditions can be created by the size of the contact
   list within the customers phone book. The amount of data within the contact list
9  can create a processing problem for the module during a key on cycle. This can be
10 resolved by limiting the number and/or content within the contact list. In
   addition, the automatic phonebook download feature can be set to off by
11 selecting phone, settings, manage phone book, turn auto phone book off.
12 Additional phone contacts can be added by manually re-downloading phone book
   in that same menu. Recommend following Workshop Manual section 415-00 for
13 additional diagnostics and ensure a master reset is performed. **EFFECTIVE DATE:**
14 **29-MARCH-2013**

15
16   53.    On June 17, 2013, Ford issued a press release titled "SYNC and

17 MyFord Touch Sold on 79 Percent of New Ford Vehicles, New Technology Drives

18 Quality Satisfaction." Ford announced that combined, SYNC® and MyFord Touch®
19
20 systems are sold on 79 percent of new 2013 Ford vehicles. According to Ford,

21 customers cite to these features as "top purchase drivers much more often than
22
23 competitors." Despite touting the successes of SYNC® and MyFord Touch®

24 systems, Ford contradicted that position by stating the "F-150 blends touch screen
25
26 capability with traditional buttons and knobs, *a similar balance planned for future*

27 *Ford vehicles*." (emphasis added). Ford also explained that it intends to release

28 "another downloadable upgrade planned for this summer" in an attempt to

*Whalen v. Ford Motor Co.*                     -18-

1   further correct the SYNC® and MyFord Touch® systems.

2
3        C.    **Similar Experiences and Complaints by Consumers.**

4        54.    Plaintiff's experiences are by no means isolated or outlying

5   occurrences. Indeed, the internet is replete with examples of blogs and other
6
7   websites where consumers have complained of the exact same Sync System

8   Defect within the Class Vehicles.
9
10        55.    For example, a website titled "syncsucks.com" lists the following

11   "most common Sync/MyFord Touch issues" all of which are symptoms of the same

12   defective APIM.
13

14        • Screen goes black and won't come back on
15        • Back-up camera goes black without warning while backing up
         • Sync system restarts without warning while driving
16        • Sync system freezes up completely even after the vehicle is turned off
17        • Says phone connected, yet voice says no phone connected when
            asking to dial number
18        • Displays phone is connected, yet after repeated efforts it will not
19           respond to ANY voice command
20        • Music randomly starts playing while using the phone
         • Randomly jumps from audio source to audio source
21        • Keeps disconnecting USB iPod
22        • Will not recognize multiple brand-new USB jump drives
23        • Never really got to enjoy my six months of satellite radio as Sync said I
            had no subscription — forcing me to call Sirius multiple times to try
24           and sort that out.[6]
25
        Another website called http://fordsyncproblems.com/, was created by a
26

27
28   _____
     [6] http://www.syncsucks.com/.

1  consumer in response to "Ford's inability to resolve issues with my newly

2
3  purchased 2012 Ford Escape." This person claims that "When making a phone call

4  through the Sync system I can hear the phone conversation clearly through the car

5
6  speakers BUT the person on the other end of the conversation cannot hear me

7  clearly; it either sounds like I am in a tunnel or it is very choppy. The quality of the

8  conversation gets worse as your speed increases."[7]  There are several other similar

9
10  websites.[8]

11     56.    Likewise, the database maintained by the National Highway Traffic

12
13  Safety Administration contains several similar complaints by consumers, some of

14  which are set forth below:

15        **Date Complaint Filed:** 12/09/2011
16        **Date of Incident:** 12/08/2011
        **NHTSA ID Number:** 10439143
17        **Manufacturer:** Ford Motor Company
18        **Vehicle Identification No. (VIN):** 2FMDK4KC9BB...
19        **SUMMARY:** VEHICLE EQUIPPED WITH MYFORD TOUCH SYSTEM.
        SYSTEM CONTROLS HEATING/DEFROSTING SYSTEM. THIS SYSTEM
20        HAS FAILED TO OPERATE PROPERLY ON MULTIPLE OCCASIONS. FORD
        MOTOR COMPANY IS AWARE OF ISSUE AND HAS NOT CORRECTED IT.
21        FORD SHOULD NOT BE ALLOWED TO MARKET VEHICLES THAT DO
22        NOT HAVE PROPERLY FUNCTIONING HEATING/DEFROSTING
23        CONTROLS. THESE VEHICLES ARE DANGEROUS AND THE ISSUE IS
24        WELL KNOW BY INTERNET SEARCHES. PEOPLE RELY ON VEHICLES TO

25

26  [7] http://fordsyncproblems.com/5001.html
   [8] See http://www.fordfusionclub.com/showthread.php?t=413068;
27  http://www.focusfanatics.com/forum/showthread.php?t=260838;
   http://jalopnik.com/gm-hasnt-really-found-that-new-thing-yet-for-ford-its-
28  485829232.

OPERATE PROPERLY IN WINTER CONDITIONS. THIS NEEDS TO BE ADDRESSED. THANK YOU FOR YOUR HELP. *TR[9]

**Date Complaint Filed:** 04/10/2013
**Date of Incident:** 04/09/2013
**NHTSA ID Number:** 10505787
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 2LMDJ6JK0DB...
**SUMMARY:** WHILE DRIVING ON THE HIGHWAY AT ABOUT 65MPH, THE SYNC SYSTEM SCREEN WENT BLACK, AFTER ABOUT 5 MINUTES, THE SYSTEM CAME BACK UP. I WAS UTILIZING THE NAVIGATION SYSTEM AT THE TIME AND WAS FORCED TO STOP, RE-ENTER THE DETAILS OF THE LOCATION I WAS INTENDING TO VISIT. THE SYNC SYSTEM SHOULD NEVER JUST RESTART ITSELF WITHOUT WARNING A DRIVER. I AM CONCERNED THERE IS A MORE SEVERE PROBLEM WITH THE MAIN CONTROL SYSTEM WITH THIS PARTICULAR VEHICLE AS THREE OTHER ISSUES HAPPENED WITHIN A WEEK OF EACH OTHER. 1. BLIB MODULE (BLIND SPOT AND CROSS TRAFFIC SENSORS FAULTED AND NEEDED REPLACEMENT) 2. SYNC SYSTEM REBOOTS ITSELF WHILE DRIVING AND UTILIZING NAVIGATION 3. LOW PRESSURE ERROR POPS UP, STEERING BECOMES IMPOSSIBLE, ACCELERATION DIES, AND BRAKING SLUGGISH. CAR REQUIRED SHUTDOWN AND RESTART TO RESOLVE. *TR

**Date Complaint Filed:** 06/19/2013
**Date of Incident:** 06/15/2013
**NHTSA ID Number:** 10520751
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 2LMDJ8JK9DB...
**SUMMARY:** VEHICLE STOPPED RECEIVING TRAFFIC INFO ON NAVIGATION SCREEN. ALL OTHER DATA RECEIVED VIA "SYNC" SYSTEM FROM SIRIUS OPERATING CORRECTLY. DEALER REPLACED COMPUTER MODULE THEY IDENTIFIED AS CONTROLLING THIS FUNCTION. NO CHANGE IN CONDITION. PROBLEM ESCALATED TO FORD TECH PEOPLE. A MONTH AGO, THE RADIO FUNCTIONS FAILED. IT REQUIRED A SYSTEM UPGRADE.

---

[9] http://www-odi.nhtsa.dot.gov

**Date Complaint Filed:** 11/15/2010
**Date of Incident:** 10/20/2010
**NHTSA ID Number:** 10365783
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 2FMDK4KC9BB...
**SUMMARY:** THIS IS A PREEMPTIVE COMPLAINT, AS I THANKFULLY
HAVE NOT HAD AN ACCIDENT YET. THE MYFORDTOUCH SYSTEM IN
ALL 2011 FORD MOTOR CO VEHICLES ARE DEFECTIVE. THE SYSTEM
HAS A MULTITUDE OF DEFECTS, BUT THE SAFETY RELATED DEFECT IS
THAT THE SYSTEM CAN SPONTANEOUSLY REBOOT AT ANY TIME
WITH NO WARNING TO THE DRIVER. THIS CAN HAPPEN AT RANDOM,
AND MULTIPLE TIMES WITHIN A SHORT PERIOD OF TIME. WHEN
BACKING UP THIS SHUTS DOWN THE BACKUP CAMERA WHICH
COULD RESULT IN INJURIES TO CHILDREN WHO GET BEHIND THE
VEHICLE. AT NIGHT THIS CAUSES THE SCREEN TO SUDDENLY GO FULL
WHITE AT FULL BACKLIGHT, WHICH IS EXTREMELY DISTRACTING TO A
DRIVER AT NIGHT. ANOTHER SAFETY ISSUE WOULD BE WHEN THE
SYSTEM REBOOTS WHEN THE DRIVE IS BEING GUIDED TO AN
EMERGENCY FACILITY OR IS ON THE PHONE WITH 911. FORD
ACKNOWLEDGED THE PROBLEMS TO DEALERSHIPS ON OCT 20TH
AND INFORMED THEM NOT TO DO ANYTHING AT THIS TIME. MANY
CUSTOMERS HAVE BEEN REPORTING THESE PROBLEMS ON THE
OWNER2OWNER WEBSITE FOR THE FORD SYNC SYSTEM. I AM
SUBMITTING THIS COMPLAINT IN HOPES IT CAN BE DEALT WITH
BEFORE SOMEONE GETS HURT RATHER THAN AFTER. THANK YOU
*TR

**Date Complaint Filed:** 01/05/2012
**Date of Incident:** 11/23/2011
**NHTSA ID Number:** 10442557
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 1FMH K8D 8X...
**SUMMARY:** THE FORD SYNC SYSTEM DECIDED TO DO AN UPGRADE
AND DISABLED ALL RELATED FEATURES FOR ABOUT 30 MINUTES.
THIS INCLUDED AUDIO, CELL PHONE LINK, RADIO, HEATER AND THE
REAR VIEW CAMERA! IT HAS OCCURRED AGAIN AND APPEARS TO
ALWAYS HAPPEN IMMEDIATELY AFTER STARTING THE CAR, WHICH IS
WHEN THE REAR VIEW CAMERA IS VERY LIKELY TO BE NEEDED. *TR

**Date Complaint Filed:** 08/08/2011
**Component(s):** EQUIPMENT
**Date of Incident:** 07/28/2011
**NHTSA ID Number:** 10418053
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 2FMDK3JC3BB...
**SUMMARY:** FORD SYNC SYSTEM HAS BEEN FREEZING, BACK UP
CAMERA BLACKING OUT, GPS STALLING. CAR HAS BEEN RETURNED
TO DEALER 3 TIMES FOR A REBOOT SYSTEM. DEALER SAID IT HAS TO
DO WITH THE NEW SYSTEM AND THERE BEING BUGS. *TR

**Date Complaint Filed:** 11/20/2011
**Component(s):** EQUIPMENT , VISIBILITY
**Date of Incident:** 08/31/2011
**NHTSA ID Number:** 10437068
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 1FMHK8F8XCG...
**SUMMARY:**
THIS FORM DOES NOT ALLOW ENTRY OF MULTIPLE DATES. THERE IS
AN ISSUE WITH MYFORDTOUCH WITH THIS VEHICLE THAT IS
CONTINUAL. PUTTING IN ONE DATE IS POINTLESS. THE CLIMATE
(DEFROSTER, ETC) SYSTEM AND THE NAVIGATION SYSTEM ARE PART
OF THIS MODULE, ALONG WITH PHONE AND AUDIO FEATURES. THIS
MODULE LOCKS CONTINUALLY AND IT IS DANGEROUS BECAUSE YOU
CAN'T CONTROL THE DEFROSTER OR NAVIGATION SYSTEM
MANUALLY WHEN THIS OCCURS. REPEATED TRIPS TO THE DEALER
HAVE BEEN FRUITLESS AND MY WIFE WAS IN DANGEROUS
SITUATIONS SEVERAL TIMES IN HEAVY TRAFFIC CORRIDOR
CONDITIONS IN NORTHERN NEW JERSEY. IT IS UNCONSCIONABLE
THAT FORD IS SELLING THESE VEHICLES FOR NEARLY $50,000 THAT
ARE DEFECTIVE AND THEY KNOW THEY ARE DEFECTIVE.

**Date Complaint Filed:** 10/28/2010
**Component(s):** EQUIPMENT
**Date of Incident:** 09/27/2010
**NHTSA ID Number:** 10362842
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 2LMDJ8JK8BB...
**SUMMARY:**

THE SIRIUS TRAVEL LINK (THRU MYLINCOLN TOUCH) DOES NOT
WORK AND HAS NOT WORKED FROM DAY 1 OF PICKING UP THE SUV
ON 9/27/10. AT FIRST LINCOLN WOULD NOT ADMIT ANY ISSUES BUT
NOW THEY FINALLY DO BUT DO NOT SAY WHEN A FIX WILL BE
AVAILABLE. I SHOULD HAVE BEEN TOLD THAT OPTION WAS NOT
WORKING BEFORE THEY HAD ME SIGN A LEASE FOR THE CAR. ALOT
OF US ARE PAYING FOR SOMETHING THAT DOES NOT WORK AND
DO NOT KNOW IF IT EVER WILL. *TR

**Date Complaint Filed:** 12/15/2010
**Component(s):** VISIBILITY
**Date of Incident:** 12/10/2010
**NHTSA ID Number:** 10370847
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 2FMDK3JC0BB...
**SUMMARY**:
SYNC/MY TOUCH CONSOLE ON 2011 FORD EDGE LOCKS UP OR
GOES DEAD. THERE IS NO WAY TO ACTIVATE THE WINDSHIELD
DEFROST WITHOUT THE TOUCH SCREEN. DEALERSHIP SERVICE
DEPARTMENT HAS BEEN UNABLE TO UNLOCK SCREEN. THIS
PROBLEM HAS BEEN WIDELY REPORTED ON OWNERS WEBSITE FOR
THE 2011 EDGES, BUT FORD DOES NOT SEEM TO HAVE A FIX FOR IT.
IT IS WINTER AND I NEED TO RUN DEFROST. *TR

**Date Complaint Filed:** 06/01/2011
**Component(s):** ELECTRICAL SYSTEM
**Date of Incident:** 04/05/2011
**NHTSA ID Number:** 10404872
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 2LMDJ6JK5BB...
**SUMMARY**:
WHEN DRIVING DOWN THE HIGHWAY, THE SYNC SCREEN GOES
COMPLETELY BLANK. AT THIS POINT I HAVE NO ACCESS TO HEAT,
A/C, DEFROSTER, RADIO, OR BACKUP CAMERA. ON OCCASION THE
SCREEN HAS BEEN BLANK FOR UP TO ONE HUNDRED MILES. I DON'T
WORRY ABOUT THE DEFROSTER IN THE SUMMER BUT IN THE
WINTER THIS IS A DEFINITE SAFETY CONCERN. NOT HAVING THE
BACKUP CAMERA IS RISKY FOR THERE MAY BE SMALL CHILDREN
BEHIND THE VEHICLE. I'VE BEEN IN CONTACT WITH FORD MOTOR

1  COMPANY. THEY TELL ME THERE ENGINEERING DEPARTMENT IS
2  WORKING ON A FIX BUT THERE IS NO ETA NOR DO THEY HAVE ANY
   IDEA WHEN OF IF THEY CAN FIX IT. THE CONSUMER WANTED TO
3  INCLUDE THE FILE NUMBER ASSIGNED TO HER BY FORD MOTOR
4  COMPANY. COMPLAINT # 441951441

5  **Date Complaint Filed:** 11/30/2011
6  **Component(s):** ELECTRICAL SYSTEM , VEHICLE SPEED CONTROL
7  **Date of Incident:** 02/01/2011
   **NHTSA ID Number:** 10437851
8  **Manufacturer:** Ford Motor Company
9  **Vehicle Identification No. (VIN):** 1FMHK8F8XBG...
   **SUMMARY**:
10  MORE LIKE ADAPTIVE 'CURSE' CONTROL. MY 2011 EXPLORER
11  LIMITED 4X4 WITH THE ADAPTIVE CRUISE ALWAYS CATCHES THE
12  REAR OF SEMI TRUCKS IN OTHER LANES, CAUSING IT TO APPLY FULL
    BRAKES AND PEOPLE BEHIND ME ALMOST CRASH INTO ME. MY
13  2011 LIMITED IS TOTALLY FACTORY ORIGINAL, NO TOW BARS. HERE
14  IN CALIFORNIA THE SEMI TRUCK SPEED IS 55 WHILE AUTOS CAN GO
    65-70MPH (AND IN MOST CASES EVERYONE GOES 80+). SO WHEN
15  I'M GOING ALONG AT 65-70 WITH NO VEHICLES HEAD OF ME IN MY
16  LANE AND THE THING GOES 100% BRAKES I ALMOST CRASH. I ALSO
17  GET THE CRUISE CONTROL TOTALLY DISABLED BECAUSE OF AN
    ERROR IN THE SYNC MODULES. THE SYNC COMPUTER MODULES
18  CONTROL THE ADAPTIVE CRUISE, STABILITY CONTROL, BACK UP
19  DETECTION SYSTEM, AUTO WIPERS, AUTO PARKING SYSTEM,
20  TRACTION CONTROL, 4X4 SYSTEM, ETC, ETC. I FEAR THAT THE SRS IS
    ALSO TIED INTO THESE SAME SYNC COMPUTER MODULES. FORD
21  CLAIMS THE SYNC SYSTEM AUTOMATICALLY RESETS/REBOOTS
22  ITSELF EVERY 24 HOURS WHILE THE VEHICLE IS OFF TO AVOID
    SYSTEM OUTAGES. WHAT HAPPENS MOST OF THE TIME IS THE
23  SYSTEM WILL RUN (EVEN THOUGH THE SCREEN IS OFF) FOR ABOUT
24  A WEEK UNTIL, WHILE DRIVING, THE SYNC COMPUTER CRASHES
25  JUST LIKE HOME COMPUTERS & CELL PHONES DO IF LEFT ON
    CONTINUOUSLY. WHILE THIS CRASH IS TAKING PLACE THE TOUCH
26  SCREEN FREEZES, MUSIC PLAYING WILL STOP, OR CHANGE VOLUME,
27  OR CHANGE TRACK, OR CHANGE SOURCE; WIPERS WILL STOP
    WORKING, CRUISE CONTROL WILL SHUT OFF, BACKUP CAMERA
28  SYSTEM GOES DOWN OR SCREEN FREEZES WHILE BACKING UP, 4X4

*Whalen v. Ford Motor Co.*                          -25-

IS DISABLED, CENTER DISPLAYS WILL GO BLANK. MY 2011 EXPLORER HAS BEEN IN THE FORD SERVICE DEPT FOR SYNC MODULE REPLACEMENT AND REPROGRAMMING 4 TIMES NOW SINCE JAN 2011. STILL NO FIX. *KB

**Date Complaint Filed:** 02/25/2012
**Component(s):** ELECTRICAL SYSTEM
**Date of Incident:** 12/05/2011
**NHTSA ID Number:** 10449336
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 2FMDK4KC5BB...
**SUMMARY**:
PURCHASED MY 2011 EDGE LIMITED DEC. 2010, HAD INTERMITTENT SYNC PROBLEMS STARTING APPROX JUNE 2011. DID AN UPGRADE OFF THE SYNC MY RIDE WEBSITE IN NOV 2011 AND THAT STARTED ALL THE SYNC PROBLEMS. THEY INCLUDE: NAVIGATION FAILURE WHILE ON A TRIP, THAT WAS FUN, BEING LOST WITH 2 CARS OF FAMILY FOLLOWING US. BACKUP CAMERA WORKS OR NOT, DEPENDS ON THE DAY. DASHBOARD LIGHTS BLINKING ON & OFF WHILE DRIVING, BLUETOOTH DISCONNECTING MY PHONE ALMOST EVERYDAY. THE SYNC SYSTEM LIKES TO TURN OFF, BLACK SCREEN, RESETS ITSELF WITHOUT DOING ANYTHING EXCEPT TURNING THE CAR ON! SOMETIMES WHEN I LEAVE THE CAR THE SYNC SYSTEM & RADIO WILL STAY ON EVEN AFTER I LOCK THE CAR. 2X IT HAS GONE TO THE DEALER, 2X I GET THE CAR BACK & AM TOLD I HAVE TO DEAL WITH IT AS THERE IS NO FIX TO THE GLITCH IN THE SYSTEM. SO, 42K FOR A NEW CAR, ALSO PURCHASED AN EXTENDED WARRANTY, WHEN ALL WARRANTY'S ARE EXPIRED WHO WILL PAY FOR FORDS "GLITCH"? I WILL NEVER RECOMMEND THIS CAR TO ANYONE. *TR

**Date Complaint Filed:** 10/31/2012
**Component(s):** ELECTRICAL SYSTEM
**Date of Incident:** 06/15/2011
**NHTSA ID Number:** 10482741
**Manufacturer:** Ford Motor Company
**Vehicle Identification No. (VIN):** 2FMDK4KC9BB...
**SUMMARY**:
TL* THE CONTACT OWNS A 2011 FORD EDGE. THE CONTACT STATED THAT WHILE PARKED THE CONTACT NOTICED THE SYNC

1    TECHNOLOGY ON THE TOUCH SCREEN WAS NOT FUNCTIONING
2    PROPERLY AFFECTING THE AIR CONDITIONER, RADIO, CELL PHONE
     SYNC, AND NAVIGATION SYSTEM. THE CONTACT STATED HE WAS
3    CONSTANTLY DISTRACTED AND LOOKING AWAY FROM THE ROAD
4    TO CANCEL OR SWITCH FUNCTIONS ON THE SCREEN. THE VEHICLE
     WAS TAKEN TO THE DEALER FOR DIAGNOSTIC TESTING FOURTEEN
5    DIFFERENT TIMES. THE TECHNICIAN PERFORMED VARIOUS
6    SOFTWARE UPDATES AND REPLACED THE COMPUTER THREE
7    DIFFERENT TIMES BUT THE FAILURE CONTINUED. THE VEHICLE WAS
     NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 200.
8

9                        **CLASS ACTION ALLEGATIONS**
10

11       57.    Plaintiff brings this action pursuant to FED. R. CIV. P. 23(a), 23(b)(2),

12   and/or 23(b)(3), on her own behalf, and on behalf of the Class and Subclass
13
14   initially defined as:

15       Class: All persons and entities in the United States (including its Territories
16       and the District of Columbia) who are current or former owners and/or
         lessees of a Class Vehicle (defined as a Ford or Lincoln vehicles equipped
17       with a SYNC® and MyFord Touch® or MyLincoln Touch® control system).
18
19       California Subclass: All members of the Class who purchased or leased a
         Class Vehicle in California.
20

21       58.    Excluded from the Class are Defendant, its affiliates, employees,

22   officers and directors, persons or entities that purchased the Class Vehicles for
23
24   resale, and the Judge(s) assigned to this case.  Plaintiff reserves the right to

25   modify, change or expand the Class definition.

26
         59.    Numerosity:  Upon information and belief, the members of the Class
27
28   and California Subclass are so numerous that joinder of all members is

     *Whalen v. Ford Motor Co.*                    -27-
     PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

1   impracticable. While the exact number and identities of individual members of

2
3   the Class and California Subclass are unknown at this time, such information being

4   in the sole possession of Defendant and obtainable by Plaintiff only through the

5
6   discovery process, Plaintiff believes that thousands of Class Vehicles have been

7   sold and leased in California alone.

8       60.    Existence and Predominance of Common Questions of Fact and Law:

9
10  Common questions of law and fact exist as to all members of the Class. These

11  questions predominate over the questions affecting individual Class members.

12
13  These common legal and factual questions include, but are not limited to:

14      a.     whether the electronic Sync Systems in the Class Vehicles contain a

15  defect;

16

17      b.     whether the Sync System Defect causes the electronic Sync System

18  systems to fail in the Class Vehicles;

19
20      c.     whether Defendant knowingly failed to disclose the existence and

21  cause of the Sync System Defect in Class Vehicles;

22
23      d.     whether Defendant's conduct violates consumer protection statutes

24  asserted herein;

25      e.     whether, as a result of Defendant's omissions and/or

26
27  misrepresentations of material facts related to the Sync System Defect, Plaintiff

28  and members of the Class have suffered ascertainable loss of monies and/or

*Whalen v. Ford Motor Co.*                          -28-

1  property and/or value;

2
3      f.      whether Plaintiff and Class members are entitled to monetary

4  damages and/or other remedies and, if so, the nature of any such relief.

5      61.     Typicality: All of the Plaintiff's claims are typical of the claims of the
6
7  Class since Plaintiff purchased a Class Vehicle with a Sync System Defect, as did

8  each member of the Class. Furthermore, Plaintiff and all members of the Class
9
10  sustained monetary and economic injuries including, but not limited to,

11  ascertainable loss arising out of Defendant's wrongful conduct. Plaintiff is

12  advancing the same claims and legal theories on behalf of herself and all absent
13
14  Class members.

15      62.     Adequacy: The Plaintiff is an adequate representative because her
16
17  interests do not conflict with the interests of the Class that she seeks to represent,

18  she has retained counsel competent and highly experienced in complex class
19
20  action litigation, and she intends to prosecute this action vigorously. The interests

21  of the Class will be fairly and adequately protected by Plaintiff and her counsel.

22      63.     Superiority: A class action is superior to all other available means of
23
24  fair and efficient adjudication of the claims of Plaintiff and members of the Class.

25  The injury suffered by each individual Class member is relatively small in
26
27  comparison to the burden and expense of individual prosecution of the complex

28  and extensive litigation necessitated by Defendant's conduct. It would be virtually

*Whalen v. Ford Motor Co.*                    -29-

1  impossible for members of the Class to individually and effectively redress the

2
3  wrongs done to them. Even if the members of the Class could afford such

4  individual litigation, the court system could not. Individualized litigation presents

5
6  a potential for inconsistent or contradictory judgments. Individualized litigation

7  increases the delay and expense to all parties, and to the court system, presented

8  by the complex legal and factual issues of the case. By contrast, the class action
9
10  device presents far fewer management difficulties, and provides the benefits of

11  single adjudication, economy of scale, and comprehensive supervision by a single

12  court. Upon information and belief, members of the Class can be readily identified
13

14  and notified based on, *inter alia*, Defendant's vehicle identification numbers

15  (VINs), warranty claims, registration records, and the database of complaints.
16

17  64.  Defendant has acted, and refused to act, on grounds generally

18  applicable to the Class, thereby making appropriate final equitable relief with
19
20  respect to the Class as a whole.

21  ## VIOLATIONS ALLEGED

22
                          ## COUNT I
23              ## BREACH OF EXPRESS WARRANTY
                    ## (On Behalf of all Class Members)
24
25  65.  Plaintiff and the Class incorporate by reference each preceding and

26  succeeding paragraph as though fully set forth at length herein.

27  66.  Defendant expressly warranted that the Class Vehicles were of high
28

1  quality and, at a minimum, would actually work properly. Defendants also

2
3  expressly warranted that they would repair and/or replace defects in material

4  and/or workmanship free of charge that occurred during the applicable warranty

5  periods.
6

7  67.    Defendant breached this warranty by selling to Plaintiff and Class

8  members the Class Vehicles with known defective Sync Systems, which fail to
9
10  function properly, and by failing to properly repair the defective Sync Systems

11  when Plaintiff and the Class members presented their vehicles to authorized Ford

12  dealers.
13

14  68.    As a result of the Defendant's actions, Plaintiff and Class members

15  have suffered economic damages including but not limited to costly repairs, loss of
16
17  vehicle use, substantial loss in value and resale value of the vehicles, and other

18  related damage.
19

20  69.    Plaintiff and Class members have complied with all obligations under

21  the warranty, or otherwise have been excused from performance of said

22  obligations as a result of Defendant's conduct described herein.
23

24  **COUNT II**
    **VIOLATION OF THE CALIFORNIA BUSINESS**
25  **AND PROFESSIONS CODE § 17200**
    **(On Behalf of the California Class)**
26
    70.    Plaintiff and the Class incorporate by reference the allegations of all
27
28  foregoing Paragraphs as if such had been set forth in full herein.

*Whalen v. Ford Motor Co.*                                -31-

PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

71. The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

72. Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and Class members that the Class Vehicles suffer from a design defect (and the costs, risks, and diminished value of the Vehicles as a result of this problem). Defendant should have disclosed this information because they were in a superior position to know the true facts related to this design defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to this defect.

73. These acts and practices have deceived Plaintiff and are likely to deceive the public. In failing to disclose the design defect and suppressing other material facts from Plaintiff and Class members, Defendant breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and Class members. The omissions and acts of concealment by Defendant pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

74. The injuries suffered by Plaintiff and Class members are greatly

1   outweighed by any potential countervailing benefit to consumers or to

2
3   competition. Nor are they injuries that Plaintiff and Class members should or

4   could have reasonably avoided.

5
6   75.   Defendant's acts and practices are unlawful because they violate

7   California Civil Code §§ 1709, 1710 and 1750 *et seq.*, and California Commercial

8   Code § 2313.

9
10   76.   Plaintiff seeks to enjoin further unlawful, unfair and/or fraudulent

11   acts or practices by Defendant under CAL. BUS. & PROF. CODE § 17200.

12
13   77.   Notwithstanding anything else alleged in this Complaint, Plaintiff does

14   not seek monetary damages under the CLRA at this time. Plaintiff has provided

15   Ford with notice of its alleged violations of the CLRA pursuant to California Civil
16
17   Code § 1782(a). If, within 30 days of the date of the notification letter, Ford fails

18   to provide appropriate relief for its violation of the CLRA, Plaintiff will amend this
19
20   Complaint to seek monetary, compensatory, and punitive damages under the

21   CLRA, in addition to the injunctive and equitable relief that Plaintiff seeks now.

22                                **COUNT III**
23              **VIOLATION OF THE CALIFORNIA CONSUMERS
                 LEGAL REMEDIES ACT, CALIFORNIA CIVIL
24                        CODE § 1750, *ET SEQ.***
                    **(On Behalf of the California Class)**
25
26   78.   Plaintiff and the Class incorporate by reference the allegations of all

27   foregoing Paragraphs as if such had been set forth in full herein.

28   79.   California's Consumer Legal Remedies Act ("CLRA") prohibits unfair

*Whalen v. Ford Motor Co.*                        -33-

methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." CAL. CIV. CODE § 1770.

80. Defendant is a "person" as defined by Civil Code section 1761(c).

81. Plaintiff and California Class members are consumers who purchased or leased the Class Vehicles.

82. Defendant engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members that the Class Vehicles suffer from a design defect (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

83. Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion

1    of the purchasing public, and increase the risk of imposing a serious safety risk on

2    the public.

3

4    84.    Defendant knew that the Class Vehicles Sync Systems were

5    defectively designed and/or manufactured, and were not suitable for their

6

7    intended use.

8    85.    Defendant was under a duty to Plaintiff and Class members to

9

10   disclose the defective nature of the Class Vehicles and their Sync Systems because:

11   a.    Defendant was in a superior position to know the true state of facts

12   about the safety defect and associated repair costs in the Class Vehicles and their

13

14   Sync Systems;

15   b.    Plaintiff and the Class members could not reasonably have been

16

17   expected to learn or discover that the Class Vehicles and their Sync Systems had a

18   dangerous safety and security defect until manifestation of the defect; and

19

20   c.    Defendant knew that Plaintiff and the Class members could not

21   reasonably have been expected to learn or discover the safety and security defect

22   and the associated repair costs that it causes until manifestation of the defect.

23

24   86.    In failing to disclose the Sync System Defect and the associated repair

25   costs that result from it, Defendants have knowingly and intentionally concealed

26

27   material facts and breached their duty not to do so.

28   87.    The facts concealed or not disclosed by Defendant to Plaintiff and

1    Class members are material in that a reasonable consumer would have considered

2    them to be important in deciding whether to purchase Defendants' Class Vehicles

3

4    or pay a lesser price. Had Plaintiff and the Class known about the defective nature

5    of the Class Vehicles and their Sync System, they would not have purchased the

6

7    Class Vehicles or would have paid less for them.

8        88.    As a direct and proximate result of Defendant's unfair or deceptive

9

10   acts or practices, Plaintiff and Class members have suffered and will continue to

11   suffer actual damages.

12       89.    Accordingly, Plaintiff is entitled to equitable relief under the CLRA.

13

14       90.    Notwithstanding anything else alleged in this Complaint, Plaintiff does

15   not seek monetary damages under the CLRA at this time. Plaintiff has provided

16

17   Ford with notice of its alleged violations of the CLRA pursuant to California Civil

18   Code § 1782(a). If, within 30 days of the date of the notification letter, Ford fails

19

20   to provide appropriate relief for its violation of the CLRA, Plaintiff will amend this

21   Complaint to seek monetary, compensatory, and punitive damages under the

22

23   CLRA, in addition to the injunctive and equitable relief that Plaintiff seeks now

24                              **COUNT IV**
                        **BREACH OF THE IMPLIED**
25                      **WARRANTY OF FITNESS FOR A**
26                        **PARTICULAR PURPOSE**

27       84.    Plaintiff repeats and incorporates herein by reference each and every

28

*Whalen v. Ford Motor Co.*                    -36-

PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

1  paragraph of this complaint as though set forth in full in this cause of action.

2
3      85.    At the time of contracting, Defendant had reason to know of the

4  Plaintiff's and Class members' particular purpose for purchasing a Class Vehicle

5
6  with a Sync System. (*i.e.,* for the Sync System to provide directions,

7  entertainment, and the ability to call 911 in an emergency).

8      86.    Plaintiff and Class members relied on the Defendant's skill or

9
10  judgment to select or furnish suitable goods, thereby creating an implied warranty

11  that the goods would be fit for such purpose.

12
13      87.    The Sync System was not fit for these purposes, thereby causing

14  injuries to Plaintiff and Class members.

15
16  **COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of the California Class)**

17      91.    Plaintiff and the Class incorporate the foregoing allegations. This

18
19  count is pled in the alternative to the contract based claims.

20      92.    Plaintiff and members of the Class conferred a benefit on Defendant.

21
22      93.    Defendant had knowledge that this benefit was conferred upon them.

23      94.    Defendant have been unjustly enriched at the expense of Plaintiff,

24
25  and their retention of this benefit under the circumstances would be inequitable.

26  **JURY TRIAL DEMANDED**

27      95.    Plaintiff demands a trial by jury of all claims so triable.

28

*Whalen v. Ford Motor Co.*    -37-

1

**PRAYER FOR RELIEF**

2

3     WHEREFORE, Plaintiff, on behalf of herself and members of the Class,

4     respectfully requests that this Court:

5

6     A.     determine that the claims alleged herein may be maintained as a class

7     action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order

8     certifying one or more Classes as defined above;

9

10    B.     appoint Plaintiff as the representative of the Class and her counsel as

11    Class counsel;

12

13    C.     award all actual, general, special, incidental, statutory, punitive, and

14    consequential damages to which Plaintiff and Class members are entitled;

15

16    D.     award pre-judgment and post-judgment interest on such monetary

17    relief;

18    E.     grant appropriate injunctive and/or declaratory relief, including,

19
20    without limitation, an order that requires Defendant to repair, recall, and/or

21    replace the Class Vehicles and to extend the applicable warranties to a reasonable

22
23    period of time, or, at a minimum, to provide Plaintiff and Class members with

24    appropriate curative notice regarding the existence and cause of the design

25    defect;

26

27    F.     award reasonable attorney's fees and costs; and

28    G.     grant such further relief that this Court deems appropriate.

*Whalen v. Ford Motor Co.*                          -38-

Dated: July 1, 2013

Respectfully submitted,

By: _____

Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
cbc@caddellchapman.com
Cory S. Fein (State Bar No. 250758)
csf@caddellchapman.com
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Joseph G. Sauder (pro hac vice pending)
Matthew D. Schelkopf (pro hac vice pending)
Benjamin F. Johns (pro hac vice pending)
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail: JGS@chimicles.com
       MDS@chimicles.com
       BFJ@chimicles.com

*Whalen v. Ford Motor Co.*                              -39-

PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT