Jeff D. Friedman (173886)
HAGENS BERMAN SOBOL
SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California  94710
Tel: (510) 725-3000
Fax: (510) 725-3001
jefff@hbsslaw.com

Steve W. Berman (*pro hac vice* pending)
HAGENS BERMAN SOBOL
SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com

*Plaintiffs' Proposed Interim Co-Lead Counsel*

[Additional counsel listed on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JENNIFER WHALEN, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>FORD MOTOR COMPANY,<br><br>     Defendant. | Case No. 13-cv-3072-EMC<br><br>PLAINTIFFS' MOTION TO CONSOLIDATE ACTIONS AND APPOINT PLAINTIFFS' INTERIM CO-LEAD COUNSEL PURSUANT TO FED. R. CIV. P. 42 AND 23(g)<br><br>Date:   October 3, 2013<br>Time:   1:30 pm<br>Courtroom: 5, 17th Floor<br>Judge:  Honorable Edward M. Chen |
| THOMAS MITCHELL, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>FORD MOTOR COMPANY,<br><br>     Defendant. | Case No. 13-cv-3378-EMC |

GRIF ROSSER, JOE D'AGUANNO, DEB        )   Case No. 13-cv-3471-EMC
MAKOWSKI, JASON ZUCHOWSKI, ART         )
AVEDISIAN, JOSE RANDY RODRIGUEZ,       )
and MICHAEL ERVIN, individually and on )
behalf of all others similarly situated,   )
                                       )
                Plaintiffs,            )
                                       )
        v.                             )
                                       )
FORD MOTOR COMPANY,                    )
                                       )
                Defendant.             )
                                       )

010388-11  636433 V1

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................3

II.     LEGAL STANDARD .............................................................................................4

III.    BACKGROUND .....................................................................................................7

IV.     PROCEDURAL HISTORY .....................................................................................8

V.      THE THREE FEDERAL ACTIONS SHOULD BE CONSOLIDATED .............................9

VI.     PLAINTIFFS' PROPOSED INTERIM CO-LEAD COUNSEL IS WELL SUITED TO LEAD THIS LITIGATION..............................................................................9

      A.   Plaintiffs' Proposed Interim Co-Lead Counsel Has Performed Substantial Work Identifying And Investigating Claims And Potential Claims In This Litigation.........9

      B.   Plaintiffs' Proposed Interim Co-Lead Counsel Have And Will Continue To Commit The Necessary Resources To Fully Litigate This Action.........................................10

      C.   Plaintiffs' Proposed Interim Co-Lead Counsel Have Substantial Experience In Successfully Litigating These Types Of Class Action Cases...................................10

            1.   Adam J. Levitt, Grant & Eisenhofer P.A...................................................11

            2.   Steve W. Berman, Hagens Berman Sobol Shapiro LLP ..............................12

            3.   Roland Tellis and Mark Pifko, Baron & Budd, P.C. ....................................14

            4.   Joseph G. Sauder, Chimicles & Tikellis LLP..............................................16

VII.    CONCLUSION .....................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United Potato Growers of Idaho, Inc.*,
2010 U.S. Dist. LEXIS 106443 (D. Idaho Oct. 4, 2010).........................................................19

*Donaldson v. Pharmacia Pension Plan*,
2006 U.S. Dist. LEXIS 28607 (S.D. Ill. May 10, 2006) ...........................................................4

*Ehler v. IPEX, Inc.*,
2009 U.S. Dist. LEXIS 45089 (D. Colo. May 15, 2009) .........................................................19

*Haase v. Gunnallen Fin., Inc.*,
2008 U.S. Dist. LEXIS 59153 (E.D. Mich. Aug. 5, 2008)........................................................18

*Hill v. Tribune Co.*,
2005 U.S. Dist. LEXIS 23931 (N.D. Ill. Oct. 13, 2005) ...........................................................4

*Huene v. U.S.*,
743 F.2d 703 (9th Cir. 1984) .....................................................................................................3

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
240 F.R.D. 56 (E.D.N.Y. 2006).................................................................................................4

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
2011 U.S. Dist. LEXIS 103766 (W.D. Pa. Sept. 20, 2011).......................................................6

*In re Delphi Corp. Sec., Deriv., & ERISA Litig.*,
458 F. Supp. 2d 455 (E.D. Mich. 2006) ...................................................................................19

*In re Foundry Resins Antitrust Litig.*,
No. 2:04-MD-1638, Dkt. No. 25 (S.D. Ohio Dec. 10, 2004)...................................................18

*In re Genetically Modified Rice Litig.*,
No. 4:06-MD-01811-CDP, Dkt. No. 182 (E.D. Mo. Apr. 18, 2007) .......................................18

*In re Google, Inc. Street View Elec. Comm'n Litig.*,
No. C 10-MD-02184 JW, Dkt. No. 47 (N.D. Cal. Oct. 8, 2010) .............................................18

*In re Terazosin Hydrochloride Antitrust Litig.*,
220 F.R.D. 672 (S.D. Fla. 2004) ...............................................................................................9

*Investors Research Co. v. U.S. Dist. Court for the Cent. Dist. of Cal.*,
877 F.2d 777 (9th Cir. 1989).....................................................................................................3

*Michelle v. Arctic Zero, Inc.*,
2013 U.S. Dist. LEXIS 30229 (S.D. Cal. Mar. 1, 2013)........................................................4, 5

*Paraggua v. LinkedIn Corp.*,
    2012 U.S. Dist. LEXIS 123226 (N.D. Cal., Aug. 29, 2012) ...................................................3

*Southwest Marine, Inc. v. Triple A Mach. Shop, Inc.*,
    720 F. Supp. 805 (N.D. Cal. 1989)...........................................................................................8

*Wang v. OCZ Tech. Grp., Inc.*,
    2011 U.S. Dist. LEXIS 69803 (N.D. Cal. June 29, 2011).........................................................4

*Zhu v. UCBH Holdings, Inc.*,
    682 F. Supp. 2d 1049 (N.D. Cal. 2010)..............................................................................3, 8

**FEDERAL STATUTES**

Federal Rule of Civil Procedure 23 ........................................................................................*passim*

Federal Rule of Civil Procedure 42 ...........................................................................1, 3, 8, 20

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at on October 3, 2013, before the Honorable Judge Edward M. Chen of the United States District Court for the Northern District of California, San Francisco Division, located at Courtroom 5, 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs[1] will and hereby do move the Court to consolidate three related actions and, pursuant to Federal Rules of Civil Procedure 23(g)(3), that this Court appoint Adam J. Levitt of Grant & Eisenhofer P.A., Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Roland Tellis of Baron & Budd, P.C., and Joseph G. Sauder of Chimicles & Tikellis LLP as Plaintiffs' interim co-lead counsel to oversee the prosecution of the consolidated action on behalf of Plaintiffs and the other members of the proposed classes in this litigation.  In support of their Motion, Plaintiffs submit the attached Memorandum and Proposed Order.

The motion is based on this notice of motion and motion and the accompanying memorandum of points and authorities, declarations and exhibits, and the pleadings and papers on file in this action, oral argument and such other matters as the Court may consider in hearing this motion.

---

[1]    Plaintiffs in these three actions are Jennifer Whalen, Thomas Mitchell, Grif Rosser, Joe D'Aguanno, Deb Makowski, Jason Zuchowski, Art Avedisian, Jose Randy Rodriguez, and Michael Ervin.  They are referred to herein collectively as "Plaintiffs."

1

2                    **MEMORANDUM OF POINTS AND AUTHORITIES**

3          Plaintiffs in three nearly identical class actions filed against the Ford Motor Company

4  ("Ford") – Jennifer Whalen, Thomas Mitchell, Grif Rosser, Joe D'Aguanno, Deb Makowski, Jason

5  Zuchowski, Art Avedisian, Jose Randy Rodriguez, and Michael Ervin (collectively, "Plaintiffs") –

6  respectfully move, pursuant to Federal Rules of Civil Procedure 42 and 23(g), for entry of an Order

7  consolidating the above-captioned cases and appointing interim co-lead counsel.  Consolidation is

8  appropriate because all three actions are nearly identical class actions involving plaintiffs with

9  similar claims against the same defendant; all involve the same legal and factual issues; and all are

10  currently pending in the Northern District of California.  Moreover, all counsel for Plaintiffs in

11  these three actions have cooperatively formed a strategic alliance to prosecute this litigation,

12  agreeing to combine forces and work together for the collective benefit of the proposed classes

13  (collectively, "Class" or "Classes," unless otherwise identified).  The proposed leadership structure

14  among the group of counsel is consistent with those regularly approved in dozens of other class

15  action litigations similar to this one, as well as the Federal Rules of Civil Procedure, the *Manual*

16  *for Complex Litigation*,[2] and instructive jurisprudence.  The proposed leadership structure provides

17  the necessary foundation to ably and efficiently litigate this action.

18          Plaintiffs propose a four firm co-leadership structure consisting of Adam J. Levitt of Grant

19  & Eisenhofer P.A., Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Roland Tellis of

20  Baron & Budd, P.C., and Joseph G. Sauder of Chimicles & Tikellis LLP (collectively, "Proposed

21  Interim Co-Lead Counsel").  These counsel are among the most experienced and well-regarded

22  plaintiffs' attorneys that prosecute automotive defect class actions in the U.S.  The proposed

23  structure has the requisite experience and resources to handle this class action, and the appointment

24  of Plaintiffs' Interim Co-Lead Counsel to oversee the prosecution of the litigation will ensure that

25  all counsel will coordinate their litigation efforts efficiently, and allow Plaintiffs to speak with a

26  singular voice.

27

28          _____
            [2]    *Manual for Complex Litigation*, Fourth Edition (the "Manual").

1    Plaintiffs' proposed leadership group:  (a) brought the first-filed federal class action

2  concerning defective "MyFord Touch"[3] units installed in Ford vehicles; (b) possess a wealth of

3  experience in automotive product liability class-action litigation; (c) have been recognized as

4  national leaders in the consumer protection field – including in the automotive field – and possess

5  substantial nationwide class action litigation experience in other fields; (d) have been working on

6  this litigation for several months, investigating the facts, and developing the legal theories, thus

7  endowing them with an unsurpassed base of knowledge; (e) have organized themselves and

8  worked together to bring these three actions; and (f) have already retained and conferred with

9  leading automotive safety and other relevant technical experts.  In short, appointment of Plaintiffs'

10  Proposed Interim Co-Lead Counsel will foster the efficient and orderly handling of the litigation

11  and secure the best possible representation for Plaintiffs and the other Class members.

## I.    INTRODUCTION

13    Plaintiffs in these three actions[4] have filed class action complaints alleging that the Class

14  Vehicles are defective, in that they are equipped with faulty MyFord Touch units rendering certain

15  features inoperable (*e.g.*, defrosters, rearview cameras, automatic 9-1-1 communications, peripheral

16  device and hands-free mobile phone communications) and diminishing the value of the vehicles.

17  (*See generally Whalen* Dkt. No. 1 ("*Whalen* Complaint"); *Mitchell* Dkt. No. 1 ("*Mitchell*

18  Complaint"); *Rosser* Dkt. No. 1 ("*Rosser* Complaint").)

19    Plaintiffs seek to represent a nationwide class of purchasers and lessees of the Class

20  Vehicles, as well as seven separate statewide classes under the laws of Arizona, California,

21  Connecticut, Iowa, Ohio, Pennsylvania, and Texas.  (*Whalen* Complaint ¶ 57; *Mitchell* Complaint ¶

22  58; *Rosser* Complaint ¶ 84.)  Plaintiffs anticipate that if this motion is granted, they will file a

23  single consolidated amended complaint within thirty (30) days of that Order.  Such amended

24  complaint will likely include additional plaintiffs from many additional states.

25    [3]   In addition to the units installed in Ford vehicles, as used in this document, "MyFord
26  Touch" includes "MyMercury Touch" and "MyLincoln Touch" units installed in Mercury and
Lincoln vehicles, respectively.

27    [4]   Plaintiffs have already moved to relate the *Mitchell* and *Rosser* cases to the *Whalen* case
(*see Whalen* Dkt. Nos. 15 & 18).  On August 2, 2013, Judge Chen related the *Mitchell* action to the
28  *Whalen* action pursuant to Civil L.R. 3-12 (*see Mitchell* Dkt. No. 4).

1    For the reasons set forth below, the three actions should be consolidated pursuant to Federal

2    Rule of Civil Procedure 42, and Plaintiffs' proposed leadership group should be appointed interim

3    co-lead counsel because it satisfies the requirements of Federal Rule of Civil Procedure 23(g) and

4    is the group best suited to lead this litigation.

5    ## II.    LEGAL STANDARD

6    Federal Rule of Civil Procedure 42(a)(2) provides that "[i]f actions before the court involve

7    a common question of law or fact, the court may … consolidate the actions."  Courts have "broad

8    discretion" in deciding whether to consolidate actions with common questions of law or fact

9    pending in the same district.  *Investors Research Co. v. U.S. Dist. Court for the Cent. Dist. of Cal.*,

10   877 F.2d 777, 777 (9th Cir. 1989).  In determining whether to consolidate actions, the Court should

11   "weigh[] the saving of time and effort consolidation would produce against any inconvenience,

12   delay, or expense that it would cause."  *Huene v. U.S.*, 743 F.2d 703, 704 (9th Cir. 1984); *Zhu v.*

13   *UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010) (in exercising its broad

14   discretion to order consolidation, a district court should "weigh the interest of judicial convenience

15   against the potential for delay, confusion and prejudice.") (quoting *Southwest Marine, Inc. v. Triple*

16   *A Mach. Shop, Inc.,* 720 F. Supp. 805, 807 (N.D. Cal. 1989)).

17   Federal Rule of Civil Procedure 23(g)(3) provides that "[t]he court may designate interim

18   counsel to act on behalf of the putative class before determining whether to certify the action as a

19   class action."  Fed. R. Civ. P. 23(g)(3).  Similarly, the *Manual* recommends that early in complex

20   litigation the court select and authorize one or more attorneys to act on behalf of other counsel and

21   their clients.  Counsel so designated "assume a responsibility to the court and an obligation to act

22   fairly, efficiently, and economically in the interests of all parties and parties' counsel."  *Manual* §

23   10.22.

24   Where multiple cases have been filed by different counsel in a single forum, as is the case

25   here, the appointment of interim lead counsel is appropriate at this juncture.  *See Paraggua v.*

26   *LinkedIn Corp.*, 12-cv-3088, 2012 U.S. Dist. LEXIS 123226, at *5 (N.D. Cal., Aug. 29, 2012) (the

27   "'[a]ppointment of interim counsel is necessary to protect the interests of class members'" where,

28   as here, "'overlapping, duplicative, or competing class suits are pending before a court.'") (quoting

*White v. Transunion, LLC*, 239 F.R.D. 681, 683 (C.D. Cal. 2006)); *Donaldson v. Pharmacia Pension Plan*, No. 06-3-GPM, 2006 U.S. Dist. LEXIS 28607, at *4 (S.D. Ill. May 10, 2006) ("Consistent with the commentary to Rule 23 and the *Manual*, the Court's research indicates that the kind of matter in which interim counsel is appointed is one where a large number of putative class actions have been consolidated or otherwise are pending in a single court.") (collecting cases); *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57 (E.D.N.Y. 2006) ("In cases such as this, where multiple overlapping and duplicative class actions have been transferred to a single district for the coordination of pretrial proceedings, designation of interim counsel is encouraged, and indeed is probably essential for efficient case management."); *cf. Wang v. OCZ Tech. Grp., Inc.*, No. C 11-01415, 2011 U.S. Dist. LEXIS 69803, at *6-7 (N.D. Cal. June 29, 2011) (observing that where "overlapping, duplicative, or competing class suits are pending before a court … appointment of interim counsel is necessary to protect the interests of class members," and denying an interim lead counsel request where there was only "a single action and a single legal team seeking to be appointed interim lead counsel.") (quoting *White,* 239 F.R.D. at 683).

Although neither Rule 23(g) nor the Advisory Committee Notes explicitly define the standards for appointing interim class counsel, courts have held that the same standards apply as when selecting class counsel at the class certification stage.  *See, e.g., Michelle v. Arctic Zero, Inc.*, No. 12-cv-2063-GPC (NLS), 2013 U.S. Dist. LEXIS 30229, at *6-7 (S.D. Cal. Mar. 1, 2013) ("While Rule 23(g)(1) applies to class counsel and does not address interim class counsel, courts look to Rule 23(g)(1) factors to appoint interim class counsel."); *Hill v. Tribune Co*., No. 05 C 2606, 2005 U.S. Dist. LEXIS 23931, at *3 (N.D. Ill. Oct. 13, 2005) ("*Rule 23(g)* provides criteria to consider when appointing class counsel.  No distinction is made regarding appointing interim counsel.").  The Court should, therefore, consider the following factors in appointing interim class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

1    *Michelle*, 2013 U.S. Dist. LEXIS 30229, at *7-8 (citing Fed. R. Civ. P. 23(g)(1)(A)).  The "Court

2    'may consider any other matter pertinent to counsel's ability to fairly and adequately represent the

3    interests of the class.'"  *Id* at *8 (citing Fed. R. Civ. P. 23(g)(1)(B)).

4            The legal criteria guiding the Court's evaluation of leadership applications strongly favor

5    the appointment of Proposed Interim Co-Lead Counsel here.  This group: (a) represents the entirety

6    of the Plaintiffs in all federal cases arising out of the facts described in the *Whale*n, *Mitchell,* and

7    *Rosser* Complaints that have been filed to date;[5] (b) individually and collectively possesses the

8    greatest expertise of the lawyers in these cases with respect to consumer and products liability class

9    actions; (c) possesses substantial class action litigation experience in other fields; (d) has time and

10   again shown the ability to effectively and efficiently handle this type of litigation in numerous

11   challenging cases; (e) is supported by the entirety of the group of Plaintiffs' firms that have filed

12   appearances in the federal cases; (f) has been working on this matter for many months,

13   investigating the facts and developing the legal theories, endowing it with a base of knowledge far

14   surpassing any other competing applicants; and (g) has retained and is working with leading

15   experts in this field.

16           As discussed below, Proposed Interim Co-Lead Counsel are particularly well-suited for

17   appointment as co-lead interim class counsel under the four Rule 23(g)(1)(A) factors.  Moreover,

18   and of particular significance in the Rule 23(g) context, this group of counsel emerged through a

19   "private ordering" process and is the unanimous choice of all Plaintiffs and their counsel in the

20   federal actions.  Such cooperation is strongly encouraged by the *Manual* and will result in optimal

21   representation here for Plaintiffs and the other class members.  *See Manual* § 10.221 at 24 ("In

22   some cases the attorneys coordinate their activities without the court's assistance, and such efforts

23   should be encouraged."); *see also id.* § 21.272 at 279 ("The lawyers agree who should be lead class

24

25           [5]    Two further federal actions were filed by the same counsel now seeking appointment as
      interim co-lead counsel in the Central District of California and have been voluntarily dismissed.
26    *See* Notice of Voluntary Dismissal, *The Center for Defensive Driving v. Ford Motor Co.*, No. 13-
      cv-5068 (PSG), Dkt. No. 15 (C.D. Cal. Aug. 9, 2013); Notice of Voluntary Dismissal, *Watson v.
27    Ford Motor Co.*, No. 13-cv-5243 (ABC), Dkt. No. 10 (C.D. Cal. Aug. 9, 2013).  In addition, a
      similar action has been filed in Illinois state court.  *See* Complaint, *Rouse v. Ford Motor Co.*, No.
28    11-ch-20581, Dkt. No. 1 (Cook Cty. Ct. Ill. June 8, 2011).

1  counsel and the court approves the selection after a review to ensure that the counsel selected is

2  adequate to represent the class interests."); *In re Cmty. Bank of N. Va. Mortg. Lending Practices*

3  *Litig.*, MDL No. 1674, 2011 U.S. Dist. LEXIS 103766 (W.D. Pa. Sept. 20, 2011) ("…[T]he private

4  ordering method of selecting interim lead counsel has long been the preferred approach.") (citing

5  *Report of the Third Circuit Task Force, Selection of Class Counsel,* 208 F.R.D. 340, 416 (2002)).

## III.       BACKGROUND

7          These actions concern the MyFord Touch units installed in many of the vehicles

8  manufactured by Ford starting with 2010 model year vehicles (the "Class Vehicles").  When

9  working properly, the MyFord Touch system allows the vehicle owner to, among other things,

10  operate the audio systems in the vehicle, use the GPS navigation technology, control the climate

11  systems in the vehicle, and operate Bluetooth-enabled mobile telephones or other devices through

12  voice commands, touch-screen inputs, and steering wheel controls.  Additionally, the MyFord

13  Touch system is responsible for operating certain safety systems in the vehicles, including the

14  defrosters, rearview (back-up) camera, and adaptive cruise control.  In the event of an accident

15  where the airbag deploys or, in certain vehicles, the fuel pump shutoff is activated, the MyFord

16  Touch system is designed to automatically make a call directly to a 9-1-1 operator and, through the

17  use of GPS, provide the exact location of the incident.  Ford touts MyFord Touch as a

18  revolutionary feature in its vehicles, and as "a reason to buy Ford," for which it charges a

19  significant premium.

20          Plaintiffs allege, however, that MyFord Touch is riddled with inherent problems, such as

21  periodic system failure and lock-up, failure to respond to touch and voice commands, and failure to

22  connect to peripheral devices (including mobile telephones).  When MyFord Touch fails, the safety

23  features routed through the system become inoperable, creating substantial safety hazards.  Ford

24  has failed to correct the problems and instead blames user errors for the system's malfunctions.

25  Many vehicle owners, including certain Plaintiffs, have been deprived of use of their vehicles for

26  days or weeks while Ford technicians examine and attempt, futilely, to fix their MyFord Touch

27  systems.  Other vehicle owners, including certain Plaintiffs, have had to sell their vehicles at a loss

28  of several thousand dollars as a result of the problems created by their MyFord Touch systems.

1   Plaintiffs thus bring these actions, individually and as class action cases, to, among other things,

2   have Ford institute a recall or free replacement program utilizing a corrected and properly

3   functioning system and to compensate Plaintiffs and the other class members for the reduction in

4   value of their vehicles.

5   ### IV.     PROCEDURAL HISTORY

6          On July 2, 2013, Chimicles & Tikellis LLP and Caddell & Chapman filed the first of these

7   federal actions (the *Whalen* action) against Ford in the Northern District of California, seeking

8   damages and equitable relief on behalf of a California State class and a nationwide class.  On July

9   15, 2013, Grant & Eisenhofer P.A. ("G&E"), Hagens Berman Sobol Shapiro LLP ("HBSS"), and

10  Isaac, Wiles, Burkholder & Teetor LLC ("IWBT") filed an action in the Central District of

11  California, seeking damages and equitable relief on behalf of a California State class and a

12  nationwide class, for substantially the same conduct alleged in the *Whalen* action.  *See* Complaint,

13  *The Center for Defensive Driving v. Ford Motor Co.*, No. 13-cv-5068 (PSG), Dkt. No. 1 (C.D. Cal.

14  July 15, 2013).  On July 19, 2013, G&E, HBSS, and IWBT filed the *Mitchell* action in the

15  Northern District of California, seeking damages and equitable relief on behalf of an Iowa State

16  class and a nationwide class, for substantially the same conduct alleged in the other actions.  These

17  same firms filed the *Rosser* action on July 26, 2013 in the Northern District of California, seeking

18  damages and equitable relief on behalf of California, Arizona, Connecticut, Ohio, Pennsylvania,

19  and Texas State classes and a nationwide class, for substantially the same conduct alleged in the

20  other actions.  On July 19, 2013, Baron & Budd, P.C. filed an action in the Central District of

21  California, seeking damages and equitable relief on behalf of a California State class and a

22  nationwide class for substantially the same conduct alleged in the other actions.  *See* Complaint,

23  *Watson v. Ford Motor Co.*, No. 13-cv-5243 (ABC), Dkt. No. 1 (C.D. Cal. July 19, 2013).

24         While each of these groups – (a) Chimicles & Tikellis LLP and Caddell & Chapman; (b)

25  Grant & Eisenhofer P.A., Hagens Berman Sobol Shapiro LLP, and Isaac, Wiles, Burkholder &

26  Teetor LLC; and (c) Baron & Budd, P.C. – began its work on this litigation independently, they

27  ultimately decided that joining forces and collaborating in the prosecution of this litigation was in

28  the best interests of Plaintiffs and the other Class members.  Proposed Interim Co-Lead Counsel,

1    therefore, presents a cohesive, comprehensive, and experienced leadership slate that has the ability

2    to harmoniously work together for the good of Plaintiffs and the other Class members and who

3    share a similar perspective on how the litigation should be conducted.

4    **V.    THE THREE FEDERAL ACTIONS SHOULD BE CONSOLIDATED**

5    Consolidation of the *Whalen*, *Mitchell*, and *Rosser* actions is merited because all three

6    actions arise out of the same underlying facts, assert identical legal claims against the same single

7    defendant, and would promote judicial convenience without promoting delay, confusion, or

8    prejudice. *Zhu*, 682 F. Supp. 2d at 1052.  Rule 42(a)(2) permits consolidation where "a common

9    question of law or fact" is presented by different actions.  Here, all pertinent questions of law *and*

10   fact are not only common but materially identical.  By contrast, consolidation is inappropriate

11   where the relevant actions "do not state the same causes of action, [and do not] involve the same

12   alleged fraudulent scheme," and would "likely delay the trial" in one of the relevant actions.

13   *Southwest Marine, Inc.*, 720 F. Supp. at 807.  Because Plaintiffs each seek relief against Ford for

14   alleged violations of the Magnuson-Moss Warranty Act, state consumer protection laws, and state

15   warranty laws in connection with Plaintiffs' purchases or leases of Class Vehicles, and because no

16   deadline or schedule has yet been ordered by the Court in any relevant action, the standard of Rule

17   42(a)(2) is amply satisfied and consolidation is warranted.

18   **VI.    PLAINTIFFS' PROPOSED INTERIM CO-LEAD COUNSEL IS WELL SUITED TO
             LEAD THIS LITIGATION**

19
20   **A.    Plaintiffs' Proposed Interim Co-Lead Counsel Has Performed Substantial Work
             Identifying And Investigating Claims And Potential Claims In This Litigation.**

21   Each firm in the Proposed Interim Co-Lead Counsel group has conducted extensive

22   investigations to establish the factual and legal bases for the claims asserted, well before the July

23   2013 filings.  In the several months preceding the first-filed Complaint, attorneys from these firms,

24   some of whom began their investigation as early as March 2012, researched Ford's public

25   communications and technical service bulletins as well as public records (*e.g.*, consumer

26   complaints lodged with the National Highway Traffic Safety Administration ("NHTSA") and on

27   Ford consumer websites), news media, and investigative journalism covering dissatisfaction with

28   MyFord Touch systems in recent model year Ford, Mercury, and Lincoln vehicles.  Since the initial

complaint was filed on July 2, 2013, attorneys from these firms have also fielded numerous inquiries from concerned vehicle owners.  Proposed Interim Co-Lead Counsel have also consulted with leading technical experts with special knowledge of in-car communications and entertainment unit design and vehicle safety standards.

**B.  Plaintiffs' Proposed Interim Co-Lead Counsel Have And Will Continue To Commit The Necessary Resources To Fully Litigate This Action.**

The firms comprising Plaintiffs' Proposed Interim Co-Lead Counsel have the capital and personnel resources necessary to represent the proposed Class and have already demonstrated a willingness to expend these resources to properly and efficiently prosecute these actions.  Indeed, based on their prior experience litigating consumer protection class actions, the members of the group fully understand the substantial investment of time and resources necessary to properly pursue and lead such litigations and are committed to devoting the necessary resources to this case.

From the inception of this litigation, the firms comprising the group have individually – and now collectively – focused their time, resources and expertise to protect and advance class members' and have vigorously represented the best interests of Plaintiffs and the other class members.

**C.  Plaintiffs' Proposed Interim Co-Lead Counsel Have Substantial Experience In Successfully Litigating These Types Of Class Action Cases.**

Each of the attorneys included in Plaintiffs' Proposed Interim Co-Lead Counsel has ample experience handling class actions, complex litigation, and consumer fraud and warranty claims. Additionally, each of the aforementioned firms is knowledgeable about the applicable consumer fraud and warranty laws, and will appropriately dedicate their resources to representing the proposed Class.  Further, the firms making up Plaintiffs' Proposed Interim Co-Lead Counsel have worked together successfully in other cases.  These factors strongly favor the appointment of Plaintiffs' Proposed Interim Co-Lead Counsel.  *See, e.g., In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (explaining that the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field").  The following are summaries of the lead attorneys and law firms comprising the leadership group:

MOT. TO CONSOL. ACTIONS AND APPOINT
PLS.' INTERIM CO-LEAD COUNSEL– Case Nos. 13-cv-3072-
EMC; 13-cv-3378-EMC; 13-cv-3471-ECS
010388-11  636433 V1

-10-

1 **1.  Adam J. Levitt, Grant & Eisenhofer P.A.**

2  Leading this litigation for Grant & Eisenhofer P.A. ("G&E") is Adam J. Levitt, a partner in

3 the firm's Chicago office and head of the firm's Consumer Practice Group.  Mr. Levitt has

4 extensive experience leading multidistrict and other nationwide class action lawsuits, with a

5 substantial focus on automobile defect litigation.  For example, he presently serves as Co-Lead

6 Counsel in *In re Ford Tailgate Litigation*, No. 11-CV-2953-RS (N.D. Cal.), in which he represents

7 the interests of purchasers and lessees of vehicles manufactured by Ford with defective tailgates,

8 and also serves as Co-Lead Counsel in *In re Porsche Cars North America, Inc*., *Plastic Coolant*

9 *Tubes Products Liability Litigation*, MDL No. 2233 (S.D. Ohio), which recently settled for

10 $45,000,000, subject to court approval.  In addition, Mr. Levitt serves as Co-Lead Counsel in *In re*

11 *Genetically Modified Rice Litigation*, MDL No. 1811 (E.D. Mo.), which settled on July 1, 2011 for

12 $750,000,000, and in a number of other class action consumer protection cases, including *In re*

13 *Imprelis Herbicide, Sales Practice and Products Liability Litigation*, MDL No. 2284 (E.D. Pa.); *In*

14 *re Sony Gaming Networks and Customer Data Security Breach Litigation*, MDL No. 3:11-md-

15 02258-AJB-MDD (S.D. Cal.); *In re Zynga Privacy Litigation*, No. CV 10-04680 (N.D. Cal.)

16 (Ware, C.J.); and *In re Michaels Stores, Inc., Pin Pad Litigation*, No. 1:11-cv-03350 (MDL No.

17 2312) (N.D. Ill.).

18  Mr. Levitt is President of the Class Action Trial Lawyers division of The National Trial

19 Lawyers; an elected member of the American Law Institute ("ALI"); an Advisory Board member

20 of the Institute for Consumer Antitrust Studies; a member of the Board of Advisors of the

21 American Constitution Society for Law and Policy (Chicago Lawyer Chapter); and a member of

22 the American Association for Justice.  Mr. Levitt is rated "AV" by Martindale-Hubbell, is an

23 Illinois "Super Lawyer," and has been recognized as one of the 500 Leading Lawyers in America

24 by Lawdragon.  He has published on a wide variety of law-related topics (*e.g.*, Michael D.Y.

25 Sukenik & Adam J. Levitt, *CAFA and Federalized Ambiguity: The Case for Discretion in the*

26 *Unpredictable Class Action*, 120 Yale L.J. Online 233 (2011)) and speaks at and chairs litigation

27 conferences nationwide (e.g., Law Seminars International, Litigating Class Actions Conference,

28 (Chicago, December 6-7, 2012) (Conference Co-Chair)).

MOT. TO CONSOL. ACTIONS AND APPOINT
PLS.' INTERIM CO-LEAD COUNSEL– Case Nos. 13-cv-3072-
EMC; 13-cv-3378-EMC; 13-cv-3471-ECS
010388-11  636433 V1

-11-

1  Ranked for a tenth consecutive year as a Top Firm by Chambers and Partners UK in

2  Chambers USA Guide 2013 and a member of the *National Law Journal's* Hot List Hall of Fame,

3  G&E has earned a reputation as one of the premier complex litigation firms in the United States.

4  As more fully set forth in its attached firm resume (*see* Exhibit A), G&E has extensive experience

5  litigating many varieties of complex, high-stakes class and other representative actions.  Indeed,

6  G&E has obtained recoveries in the last seven years totaling over $12.5 billion in cases where it

7  has served as lead or co-lead counsel.  In addition to the $3.2 billion settlement in *Tyco*, G&E has

8  secured multi-hundred million-dollar recoveries in shareholder class actions against companies

9  such as General Motors, Daimler Chrysler, and Royal Dutch Shell.  Through the course of its

10  experience litigating these cases, G&E has repeatedly demonstrated its ability to work with co-

11  counsel to aggressively, efficiently, and successfully prosecute claims on behalf of its clients.

12  **2.      Steve W. Berman, Hagens Berman Sobol Shapiro LLP**

13  Steve W. Berman helped found HBSS in 1993, is its managing partner, and resident in its

14  Seattle office.  Mr. Berman has served as lead or co-lead counsel in class-action antitrust,

15  securities, consumer, and products liability litigation, as well as other complex litigation

16  throughout the country.  For example, he was the lead trial lawyer in *In re Pharm. Indus. Average*

17  *Wholesale Price Litig.*, MDL No. 1456 (D. Mass.).  He tried the class case against four

18  manufacturers and successfully argued the appeal from the trial before the First Circuit.  The case

19  resulted in settlements with dozens of pharmaceutical companies, with consumers receiving three

20  times their actual damages.  Mr. Berman was also the lead counsel in *New England Carpenters v.*

21  *First DataBank*, *et al.*, No. 05-11148-PBS (D. Mass.), on behalf of a nationwide class of private

22  payors that purchased prescription brand-name drugs.  In that case, Hagens Berman achieved a

23  $350 million settlement eleven days before trial was scheduled to start.  Additionally, Mr. Berman

24  was lead counsel in *In re Charles Schwab Corp. Secs. Litig.*, No. 08-cv-01510 (N.D. Cal.) (Judge

25  Alsup), a recent securities class action that settled on the eve of trial, while the parties were arguing

26  *in limine* motions, for $235 million.  This resulted in a 42.5% recovery for the federal class and an

27  80% recovery for the California class.  And perhaps most notable is Mr. Berman's role as a special

28  assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York,

1    Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark

2    *Tobacco Litigation*.  That case resulted in the largest settlement in history ($260 billion), a

3    settlement that occurred while Mr. Berman was in trial in *State of Washington v. Philip Morris*, the

4    *National Law Journal* recently named him as one of the most 100 influential lawyers in the United

5    States for the third time.

6         Indicative of Hagens Berman's achievements for its consumer clients, the federal court

7    overseeing the massive multi-district litigation against Toyota appointed the firm to co-lead one of

8    the largest consolidations of class-action cases in U.S. history.  *In re Toyota Motor Corp.*

9    *Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10ML2151 JVS

10   (FMOx) (C.D. Cal.), combined more than 300 state and federal suits filed on behalf of Toyota

11   owners who alleged a defect caused their vehicles to undergo sudden, unintended acceleration.

12   Consumers alleged that in addition to the safety risks associated with driving the vehicles, they

13   suffered economic losses because the value of Toyota vehicles plummeted following media

14   coverage of the alleged defect.  Judge James V. Selna *sua sponte* identified Hagens Berman as a

15   presumptive co-lead counsel when he was assigned the Toyota MDL, and then selected Hagens

16   Berman and its two co-lead firms from among more than 70 law firms applying for the role as lead

17   counsel for the economic loss class.  And Hagens Berman obtained exceptional results for the

18   class.  On July 19, 2013, Judge Selna granted final approval to a settlement valued at $1.6 billion in

19   benefits for class members.  It is the largest auto settlement, both in terms of class members and

20   recovery, in U.S. history.

21        Other product liability cases of note for Hagens Berman include the *Nissan Quest*

22   *Accelerator Litigation*, in which the firm represented Nissan Quest minivan owners who alleged

23   that their vehicles developed deposits in a part of the engine called the throttle-body assembly, and

24   that these deposits caused drivers to apply increased pressure to push the accelerator down.  A

25   favorable settlement provided the class with reimbursement for throttle-body cleanings or

26   replacements and applicable warranty coverage for qualified class members.  In *Hyundai*

27   *Horsepower Litigation*, Hagens Berman served as co-lead counsel in a class-action lawsuit against

28   Hyundai that claimed the company overstated the horsepower of 1.3 million vehicles and inflated

MOT. TO CONSOL. ACTIONS AND APPOINT
PLS.' INTERIM CO-LEAD COUNSEL– Case Nos. 13-cv-3072-
EMC; 13-cv-3378-EMC; 13-cv-3471-ECS
010388-11  636433 V1                                    -13-

the value of certain Hyundai models.  In the resulting nationwide settlement, owners of each vehicle will receive up to $225 in cash or up to $325 in credit with Hyundai dealers.  The cost of the settlement to Hyundai ranges from $76 million to $127 million, depending on whether owners seeking compensation take the cash or dealer credit.  The settlement replaced a previous agreement under which Hyundai offered coupons on future purchases.  Additionally, in the *Louisiana-Pacific Siding Litigation*, Hagens Berman served as co-lead counsel in a nationwide settlement class involving defective siding installed on 800,000 homes that soaked up moisture, resulting in swelling and cracking.  More than 130,000 claims have been paid exceeding $500 million in total.  And Hagens Berman served as co-lead counsel for the class in the *Polybutylene Pipe Litigation,* which charged Shell Oil Company, E. I. du Pont de Nemours, and Hoescht Celanese with manufacturing and marketing defective polybutylene pipes and plumbing systems used in homes.  Hagens Berman secured a settlement providing a minimum of $950 million in relief, which, at the time, was the largest class-action settlement of its kind.

As a result of its ability to prosecute complex class action case to successful resolution, Hagens Berman has recently been appointed lead or co-lead counsel in highly contested leadership battles in *In re: Optical Disk Drive Products Antitrust Litigation* No. 10-md-02143-RS (N.D. Cal.); *In re Carrier IQ Consumer Privacy Litigation*, No. 12-md-2330-EMC (N.D. Cal.); *In re: Lithium Ion Batteries Antitrust Litigation* No. 13-md-02420-YGR (N.D. Cal.); and *In re Electronic Books Antitrust Litigation*, No. 1:11-md-02293(DLC) (S.D.N.Y.).  Hagens Berman's firm biography is attached as Exhibit B.

**3.**   **Roland Tellis and Mark Pifko, Baron & Budd, P.C.**

Leading this litigation for Baron & Budd, P.C. are Roland Tellis and Mark Pifko in the firm's Los Angeles office.

Mr. Tellis is co-head of the firm's Los Angeles office.  Mr. Tellis' practice focuses on complex, high-profile litigation, including consumer class actions, financial fraud, business torts, corporate misconduct, automobile defect, food labeling, false advertising, securities fraud, and environmental contamination.

1     Mr. Tellis received commendation from the United States Department of Justice for his

2     assistance in the successful prosecution of a multi-party, $120 million foreign currency Ponzi

3     scheme.  Mr. Tellis has served on the Board of Governors of the Association of Business Trial

4     Lawyers Los Angeles Chapter, and is currently a Central District Lawyer Representative to the

5     Ninth Circuit Judicial Conference and Chair of the Central District Court's Attorney Settlement

6     Officer Panel Committee.

7     Mr. Pifko's practice focuses on cases involving false advertising, fraud, and scientific and

8     technical disputes.  Prior to joining Baron & Budd, P.C., Mr. Pifko was an attorney with the

9     international law firm Arnold & Porter LLP, and he has been on both the prosecution and defense

10    sides of more than fifty class action lawsuits and other complex legal matters concerning a variety

11    of consumer goods, including food products, consumer electronics, dietary supplements, vehicles,

12    software, mortgage service fees, and other items.  Mr. Pifko has published several articles,

13    including "Game On!," *Daily Journal* (March 14, 2011), and "Getting What You Paid For,"

14    *California Lawyer Magazine* (February 2010), which concern class actions and consumer laws.

15    Mr. Tellis and Mr. Pifko currently represent parties in numerous consumer class action

16    cases, including:  *Brad Aarons v. BMW of North America* (class action concerning defective

17    transmissions), *Kobe Falco v. Nissan North America, Inc.* (class action concerning defective timing

18    chain systems); *IN RE:  Avon Anti-Aging Skincare Creams and Products Marketing and Sales*

19    *Practices Litigation* (class action concerning false advertising on anti-aging products' labels); *IN*

20    *RE:  L'Oreal Wrinkle Cream Marketing and Sales Practices Litigation* (class action concerning

21    false advertising on anti-aging products' labels);  *IN RE: Alexia Foods, Inc.* (class action

22    concerning false advertising, fraud and misrepresentation on frozen food products' labels); *Stitt, et*

23    *al., v. Citibank, N.A, et al.*, (class action concerning unlawful loan servicing fees); *Bias, et al., v.*

24    *Wells Fargo & Company, et al.* (class action concerning unlawful loan servicing fees); *Ellis, et al.,*

25    *v. J.P. Morgan Chase & Co., et al.*, (class action concerning unlawful loan servicing fees); and

26    *Coker v. Bank of America et al.* (class action concerning manipulation of the LIBOR rate).

27    Baron and Budd, P.C.'s historic successes in handling complex and protracted litigation

28    demonstrate the firm's ability to handle matters such as this action.  The firm has the willingness,

resolve, and resources to devote the legal and financial resources necessary to this litigation.  Baron & Budd, P.C. is a leader in complex litigation cases which include, *inter alia*, consumer class actions, products liability claims, financial misconduct claims, environmental litigation, water contamination cases, insurance litigation, *Qui Tam*, class actions, antitrust cases, and general commercial litigation.  With more than 50 attorneys and approximately 175 staff members, Baron & Budd, P.C. has offices in California, Texas, and Louisiana.

Since the firm's founding over 30 years ago, Baron & Budd, P.C. has garnered national acclaim for its work on behalf of plaintiffs.  Baron & Budd, P.C.'s firm biography is attached as Exhibit C.  Some of the firm's noteworthy accolades include the following:

- In September 2010, Baron & Budd was one of only four firms chosen to serve on both the Plaintiffs' Executive Committee and on the Plaintiffs' Steering Committee of the Multi-District Litigation in the Gulf Oil Spill litigation;

- In August 2010, Baron & Budd was retained by the State of Louisiana to provide counsel to the State's designated Trustees in connection with issues related to the Deepwater Horizon explosion and resulting oil spill;

- In 2002-2006, 2008, 2011-2012, Baron & Budd was named to the National Law Journal's "Plaintiffs' Hot List" of exemplary plaintiffs' firms in the United States;

- In 2004, American Lawyer named Baron & Budd one of the sixteen most successful plaintiffs' firms in the country;

- In 2009, Baron & Budd was a finalist for the Public Justice Trial Lawyer of the Year Award for its recovery of more than $400 million on behalf of  more than 150 municipalities from 17 states; and

- Baron & Budd has been repeatedly selected by The Legal 500 as one of the country's premier law firms in mass tort claims and class action litigation.

### 4.    Joseph G. Sauder, Chimicles & Tikellis LLP

Leading this litigation for Chimicles & Tikellis LLP ("C&T") are Joseph G. Sauder and Matthew D. Schelkopf, both partners in the firm's Pennsylvania office.   Prior to joining C&T in

2004, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he served as lead counsel in hundreds of trials including over twenty jury trials.

Mr. Sauder has extensive experience leading nationwide class action lawsuits. Mr. Sauder served as a lead counsel in *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK (S.D. Fla.) (Court appointed co-team leader in a $55 million settlement with US Bank, preliminary approved on July 29, 2013); *Physicians of Winter Haven LLC, d/b/a Day Surgery Center v. STERIS Corporation,* No. 1:10-cv-00264-CAB (N.D. Ohio) ($20 million settlement on behalf of hospitals and surgery centers); *Smith v. Gaiam, Inc.,* No. 09-cv-02545-WYD-BNB (D. Colo.) (settlement that provided full recovery to approximately 930,000 class members). Mr. Sauder has extensive experience in automobile defect litigation including, *Henderson v. Volvo Cars of North America LLC, et al.,* No. 2:09-CV-04146-CCC-JAD (D.N.J.) (served as a lead counsel on behalf of 90,000 purchasers and lessees of Volvo vehicles with defective automatic transmissions; final approval granted to this nationwide settlement in March 2013); *In re: Volkswagen and Audi Warranty Extension Litigation*, 07-md-01790 (D. Mass.) ($414 million settlement in behalf of over 480,000 class vehicles prone to oil sludge).

In 2012 and 2013 the National Trial Lawyers Association named Mr. Sauder one of the Top 100 Trial Lawyers in Pennsylvania. From 2011 through 2013, Law & Politics and the publishers of Philadelphia Magazine named Mr. Sauder a Pennsylvania Super Lawyer. In 2007, American Lawyer Media, publisher of *The Legal Intelligencer* and the *Pennsylvania Law Weekly,* named Mr. Sauder one of the *Lawyers on the Fast Track*. He serves as vice president of the Philadelphia District Attorneys' Alumni Association and on the Executive Committee of Temple Law Alumni Association.

Matthew Schelkopf has extensive trial and courtroom experience. His practice is devoted to litigation, with an emphasis on class actions involving automotive defects, consumer protection, defective products and false advertising. Mr. Schelkopf has been able to utilize his twenty years of experience in automotive restoration to understand and simplify the technicalities involved with automotive litigation. Mr. Schelkopf's class action automotive experience includes serving as a Lead Counsel in *Henderson v. Volvo Cars of North America LLC, et al.,* No. 2:09-CV-04146-

MOT. TO CONSOL. ACTIONS AND APPOINT
PLS.' INTERIM CO-LEAD COUNSEL– Case Nos. 13-cv-3072-
EMC; 13-cv-3378-EMC; 13-cv-3471-ECS
010388-11  636433 V1

-17-

1   CCC-JAD (D.N.J.) in which he represented the interests of over 90,000 purchasers and lessees of

2   Volvo vehicles with defective automatic transmissions.  The parties settled on a nationwide basis

3   with final approval granted in March 2013.  Mr. Schelkopf currently serves as Co-Lead Counsel in

4   *Neale v. Volvo Cars of North America LLC, et al.*, No. 2:10-cv-04407-DMC-MF (D.N.J.), in which

5   he represents the interests of a certified class of Volvo vehicle purchasers and lessees with

6   defective sunroof drainage systems.  Other relevant and proprietary automotive class actions

7   include *Nelson v. Nissan North America Inc., et al.*, No. 1:11-cv-05712-JEI-AMD (D.N.J.)

8   (defective automatic transmissions) and *Davitt v. Honda North America Inc., et al.*, No. 2:13-cv-

9   00381-FSH-PS (defective door lock actuators).

10          Mr. Schelkopf began his career as an Assistant District Attorney where he litigated 27 jury

11   trials and over 50 bench trials.  In 2004, he transitioned to civil litigation throughout Pennsylvania

12   and New Jersey where, in 2006, he was assistant counsel in a Philadelphia County trial resulting in

13   a $30 million jury verdict in favor of his clients – the largest state verdict recorded for that year.

14   He has presented oral arguments before the Pennsylvania and New Jersey appellate courts.

15          In 2012, Mr. Schelkopf was named to *Lawyers on the Fast Track* by the Legal Intelligencer,

16   as well as, "Top 40 Under 40" by the National Trial Lawyers.  Mr. Schelkopf has been recognized

17   by Law & Politics as a Pennsylvania Rising Star from 2010 through 2013.  He has also presented

18   to the ABA's section of Antitrust Law's Consumer Protection Committee.

19          C&T is a leading national class action law firm with a national practice that has recovered

20   billions of dollars on behalf of institutional, individual and business clients.  C&T has extensive

21   experience litigating complex throughout the country where it has worked cooperatively with its

22   co-counsel to aggressively prosecuted case in behalf of its clients, including:  *In re Genentech, Inc.*

23   *Shareholders Litigation* (served as co-lead counsel for the Genentech shareholders and secured an

24   additional $4 billion in merger consideration); *In re Kinder Morgan, Inc. Shareholders Litigation*

25   (Co-Lead Counsel in this $200 million cash settlement, the largest ever generated by litigation

26   challenging a buyout.); *CNL Hotels & Resorts Inc. Federal Securities Litigation* ($35 million cash

27

28

fund for the shareholders, and a revised merger agreement that saved CNL and its shareholders $225 Million).  Chimicles & Tikellis LLP's firm biography is attached as Exhibit D.[6]

**D.     Strong Support For Plaintiffs' Proposed Interim Co-Lead Counsel Favors Their Appointment Under Rule 23(g)(1)(B).**

The firms comprising Plaintiffs' Proposed Interim Co-Lead Counsel have demonstrated the type of leadership that will benefit the proposed Class by avoiding conflicts and duplication of effort and privately organizing their cases and counsel as provided for by the *Manual*. Significantly, Plaintiffs' Proposed Interim Co-Lead Counsel collectively represents the entirety of the federal actions that have been brought against Ford in connection with the alleged defects plaguing MyFord Touch.  Appointing Plaintiffs' Proposed Interim Co-Lead Counsel would thus reflect the great consensus of those whose interests are affected – a consensus that is entitled to judicial deference.  *See, e.g.*, *In re Foundry Resins Antitrust Litig.*, No. 2:04-MD-1638, Dkt. No. 25 (S.D. Ohio Dec. 10, 2004) (noting, in appointing interim lead counsel, that the firms had garnered the support of the majority of the plaintiffs); *In re Google, Inc. Street View Elec. Comm'n Litig.*, No. C 10-MD-02184 JW, Dkt. No. 47 (N.D. Cal. Oct. 8, 2010) (appointing interim co-lead counsel and noting appointees "share the support of a majority of counsel and Plaintiffs in this action and would be best positioned to leverage the resources, energy and experience of the various firms involved"); *In re Genetically Modified Rice Litig.*, No. 4:06-MD-01811-CDP, Dkt. No. 182 (E.D. Mo. Apr. 18, 2007) (the court's choice of interim class counsel "best meets the needs of all plaintiffs . . . [and] [i]n particular . . . most closely meets the 'private ordering' concept, because it has support of the larger number of plaintiffs and lawyers involved.").

Furthermore, as is evident from the numerous cases in which courts have appointed multi-firm leadership structures in complex litigations, appointment of the four-firm lead structure proposed herein is well supported.  *See, e.g.*, *Haase v. Gunnallen Fin., Inc.*, No. 08-10927, 2008

---

[6]     The two other firms that appear on this motion – Caddell & Chapman and Isaac, Wiles, Burkholder & Teetor LLC – are similarly strong firms with a proven record of effective and successful representation of consumers, and both firms fully support the leadership structure proposed.  Further confirming Plaintiffs' successful private ordering efforts, two additional nationally-recognized firms – Goldenberg Schneider, LPA and Shepherd Finkelman Miller & Shah, LLP – fully support Plaintiffs' present motion.

1   U.S. Dist. LEXIS 59153, at *9 (E.D. Mich. Aug. 5, 2008) (appointing four firms as interim lead

2   counsel in securities fraud class action); *In re Delphi Corp. Sec., Deriv., & ERISA Litig.*, 458 F.

3   Supp. 2d 455, 459, 462 (E.D. Mich. 2006) (ratifying appointment of four firms as co-lead counsel

4   in securities fraud action); *see also Brigiotta's Farmland Produce & Garden Ctr., Inc. v. United*

5   *Potato Growers of Idaho, Inc.*, No. 4:10-CV-307-BLW, 2010 U.S. Dist. LEXIS 106443, at *10 (D.

6   Idaho Oct. 4, 2010) (appointing ten member plaintiffs' executive committee to lead antitrust class

7   action); *Ehler v. IPEX, Inc.*, No. 08-cv-02220-CMA-BNB, 2009 U.S. Dist. LEXIS 45089, at *4-5

8   (D. Colo. May 15, 2009) (appointing five firms as interim lead counsel in putative class action

9   seeking damages against defendant for allegedly manufacturing and selling a defective plumbing

10  system).[7]

11         Indeed, the Court should encourage attorney coordination on leadership without court

12  assistance, as has occurred here. *See Manual* § 10.22 ("In some cases the attorneys coordinate

13  their activities without the court's assistance, and such efforts should be encouraged."); 21.272

14  ("There are several methods for selecting among competing applicants.  By far the most common is

15  the so-called 'private ordering' approach.  The lawyers agree who should be lead class counsel and

16  the court approves the selection after a review to ensure that the counsel selected is adequate to

17  represent the class interests.").  As a result of their early efforts at coordination, Plaintiffs and their

18  counsel here have reached agreement on a proposed leadership structure for these cases that is

19  streamlined, efficient and appropriate under the circumstances.

20         As discussed above, proposed Interim Co-Lead Counsel are the attorneys who have done

21  the "heavy lifting" with respect to investigating and crafting the factual and legal theories at issue

22  in these cases and working expeditiously to get these actions coordinated to avoid duplicating

23  effort of both Defendant and the Court.  This proposed leadership team brings the substantial

24  experience with complex cases generally and the issues involved in consumer protection litigation

25  in particular necessary to successfully prosecute and resolve these suits.  As a result, Plaintiffs'

26  _____

27         [7]   This proposed leadership structure is well-suited to the particular circumstances of this litigation, which will require a Plaintiffs' leadership team of sufficient size and with the resources necessary to prosecute this action against a well-financed defendant.  Ford Motor Company

28  reported pretax profit of over $8 billion and net income of over $5.7 billion for 2012 alone.

1 | Proposed Interim Co-Lead Counsel represents the best choice to lead these actions and to protect

2 | the interests of the Class.

3 | **VII.   CONCLUSION**

4 | For all of the foregoing reasons, Plaintiffs in the *Whalen*, *Mitchell*, and *Rosser* actions

5 | respectfully request that the Court order the consolidation of these three actions pursuant to Federal

6 | Rule of Civil Procedure 42, and appoint Adam J. Levitt of Grant & Eisenhofer P.A., Steve W.

7 | Berman of Hagens Berman Sobol Shapiro LLP, Roland Tellis of Baron & Budd, P.C., and Joseph

8 | G. Sauder of Chimicles & Tikellis LLP as Plaintiffs' interim co-lead counsel pursuant to Federal

9 | Rule of Civil Procedure 23(g).

10 | DATED:  August 28, 2013                    HAGENS BERMAN SOBOL SHAPIRO LLP

11

12 | By _____s/ Jeff D. Friedman_____
          JEFF D. FRIEDMAN

13 | 715 Hearst Avenue, Suite 202

14 | Berkeley, California  94710
     Tel: (510) 725-3000

15 | Fax: (510) 725-3001
     jefff@hbsslaw.com

16

17 | Steve W. Berman (*pro hac vice* pending)
     HAGENS BERMAN SOBOL SHAPIRO LLP

18 | 1918 8th Avenue, Suite 3300
     Seattle, Washington  98101

19 | Tel: (206) 623-7292
     Fax: (206) 623-0594

20 | steve@hbsslaw.com

21 | Adam J. Levitt (*pro hac vice* pending)
     GRANT & EISENHOFER P.A.

22 | 30 North LaSalle Street, Suite 1200

23 | Chicago, Illinois  60602
     Tel:  (312) 214-0000

24 | Fax:  (312) 214-0001
     alevitt@gelaw.com

25

26 | Roland Tellis (186269)
     Mark Pifko (228412)

27 | BARON & BUDD, P.C.
     15910 Ventura Boulevard, Suite 1600

28 | Encino, California  91436

MOT. TO CONSOL. ACTIONS AND APPOINT
PLS.' INTERIM CO-LEAD COUNSEL– Case Nos. 13-cv-3072-
EMC; 13-cv-3378-EMC; 13-cv-3471-ECS
010388-11  636433 V1

-21-

Tel: (818) 839-2320
Fax: (818) 986-9698
rtellis@baronbudd.com
mpifko@baronbudd.com

Joseph G. Sauder (*pro hac vice* pending)
Matthew D. Schelkopf (*pro hac vice* pending)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania  19041
Tel: (610) 642-8500
Fax: (610) 649-3633
JGS@chimicles.com

***Plaintiffs' Proposed Interim Co-Lead Counsel***

Gregory M. Travalio
ISAAC, WILES, BURKHOLDER
   & TEETOR LLC
Two Miranova Place, Suite 700
Columbus, Ohio  43215
Tel: (614) 221-2121
Fax: (614) 365-9516
gtravalio@isaacwiles.com

Michael A. Caddell (249469)
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston, Texas  77010-3027
Tel: (713) 751-0400
Fax: (713) 751-0906
mac@caddellchapman.com

MOT. TO CONSOL. ACTIONS AND APPOINT
PLS.' INTERIM CO-LEAD COUNSEL– Case Nos. 13-cv-3072-
EMC; 13-cv-3378-EMC; 13-cv-3471-ECS
 010388-11  636433 V1

-22-

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on August 28, 2013, I electronically filed the foregoing document using

3

the CM/ECF system which will send notification of such filing to the e-mail addresses registered in

4

the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have

5

caused to be mailed a paper copy of the foregoing document via the United States Postal Service to

6

the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF

7

system.

8

                                _____/s/ Jeff D. Friedman_____

9

                                      JEFF D. FRIEDMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28