

DALLAS | AUSTIN | LOS ANGELES | BATON ROUGE

November 5, 2014

Home Office:
Encino Plaza     3102 Oak Lawn Avenue
15910 Ventura Boulevard     Suite 1100
Suite 1600     Dallas TX 75219-4281
Encino, CA 91436     800.222.2766
800.887.6989     tel 214.521.3605
tel 818.839.2333     fax 214.520.1181
fax 818.986.9698

**VIA ECF**
The Honorable Edward M. Chen, U.S.D.J.
Courtroom 5, Seventeenth Floor
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102

Re: *In re MyFord Touch Consumer Litigation*, No. 3:13-cv-3072-EMC (N.D. Cal.)

Dear Judge Chen:

The parties in the above-referenced action present the following discovery dispute.

**Plaintiffs' Position** - Ford believes it is entitled to inspect Plaintiffs' personal electronic devices ("PEDs")[1] used in conjunction with their MyFord Touch ("MFT") units. Plaintiffs disagree and seek a global protective order to resolve the present dispute because the threshold issue – whether Ford is entitled to inspect any of Plaintiffs' PEDs in light of protectable privacy interests – is common to all such requests. Thus, Plaintiffs believe that it is more appropriate for the Court to resolve this dispute collectively rather than through twenty or more joint letters.[2]

No Plaintiff should be required to produce his or her PED for inspection since it will not yield information not already known to Ford or available through less intrusive means, such as written discovery. Ford has already conducted extensive testing and trouble-shooting of MFT's compatibility with every major PED and software versions on the market, both currently and historically, and Plaintiffs have already disclosed to Ford the models of each device used with their MFT units, as well as information about any modifications or repairs. Furthermore, many versions of app software and operating systems once contained on the Plaintiffs' PEDs may no longer be available to the public but are still within Ford's knowledge. Therefore, the current version of a Plaintiff's phone is unlikely to be an accurate representation of such device in past years, particularly at the time of filing the complaint. As a result, written discovery would provide more accurate information than Ford's planned inspection.

*First*, every Plaintiff has a substantial interest in maintaining his or her personal privacy, and PEDs are the most comprehensive depositories of extremely sensitive personal information. Each Plaintiff's privacy interests are protected by the California Constitution, regardless of domicile. *See* Calif. Const. art. I, § 1 (no distinction among California and non-California residents). Thus, Ford must show a "compelling need" for the information it seeks, and that it is not available from a less invasive source, to justify invading Plaintiffs' privacy. *Lantz v. Super. Ct.*, 28 Cal. App. 4th 1839, 1853-54 (1994). Plaintiffs requested that Ford provide the specific information sought from the PEDs and, in response, Ford failed to identify anything other than

---

[1] Including, without limitation, smartphones and media players containing personal data such as contacts, browsing history, financial information, passwords, emails, text messages, pictures and other irrelevant personal data.

[2] Ford relies on *Am. Charities for Reasonable Fundraising Reg., Inc. v. O'Bannon*, 2:08-cv-00875, 2013 U.S. Dist. LEXIS 161847 (D. Utah Nov. 13, 2013) to argue that a global protective order would be "entirely anticipatory in nature." As Ford acknowledges, it already "has requested the inspection" of a plaintiff's devices. As such, the concerns in *Am. Charities* are not present: a discovery request has been made, and Plaintiffs can determine what information must be protected. Indeed, courts routinely issue protective orders that relate to future discovery. *See Springfield v. Singh*, No. 12-cv-2552, 2014 U.S. Dist. LEXIS 111849, at *2-4 (E.D. Cal. Aug. 12, 2014).

Honorable Edward M. Chen, U.S.D.J.
November 5, 2014
Page 2

"configurations" – information Ford can easily obtain through written discovery. Ford knows that all Plaintiffs' PEDs are standard, off-the-shelf products (which Ford has already tested with MFT), confirming that Ford is on a fishing expedition to harass and intimidate the Plaintiffs.[3]

*Second*, Plaintiffs' devices are used for both personal *and* professional communication. Thus, the PEDs contain communications relevant to the Plaintiffs' job functions, which (a) implicate their employers, who are not protected under the terms of the Confidentiality Order, (b) confidential work contacts, and (c) implicate other significant privacy concerns depending on the particular Plaintiff's profession.[4]

*Third*, Plaintiffs' devices contain privileged attorney-client communications that cannot be shielded from Ford during any inspection. Ford suggests that the Confidentiality Order adequately protects such information. But this is untrue because Plaintiffs cannot prevent Ford from accessing privileged communications, and the Confidentiality Order's protections do not extend to Plaintiffs' PEDs.

*Finally*, Plaintiffs may not have possession, custody, or control over the PEDs used in conjunction with the MFT systems in their vehicles. For instance, those devices may belong to third parties, such as family members or friends of the Plaintiffs, or may no longer be accessible to the Plaintiffs (e.g., Plaintiff Rizzo). Moreover, prior to the commencement of this litigation, authorized Ford dealerships instructed consumers, including Plaintiffs (e.g., Rizzo and Makowski), to replace their devices in a misguided attempt to resolve certain MFT-related problems. Ford cannot now demand that they appear with devices Ford previously told them to replace, or face spoliation sanctions – which is surely what Ford ultimately hopes to achieve.

**Ford's Position** - Plaintiffs try to characterize the inspection of their PEDs with their MFT systems as an inherent privacy intrusion and harassment, but such inspections are a proper and narrowly tailored means to test Plaintiffs' allegations that supposed defects in their MFT systems caused problems connecting their specific devices to their MFT systems. *See, e.g.*, FAC ¶ 97 (alleging "the system does not recognize [Sheerin's] iPod when it is plugged into his USB port"); ¶ 128 (alleging "problems connecting [Creed's] iPhone 4s to the MyFord Touch system"). Plaintiffs chose to put the interface between their PEDs and MFT systems directly at issue. That Plaintiffs categorically blame their MFT systems for connectivity problems does not prove it so. Unless Plaintiffs abandon those allegations, Ford is entitled to discovery to test whether each Plaintiff's MFT system and their specific devices in fact work, and if not, whether the issues are attributable to plaintiffs' specific devices. *See* Fed. R. Civ. P. 26(b)(1) (discovery includes any "matter that is relevant to any party's claim *or defense*.") (emphasis added).

Plaintiffs say Ford can obtain this information via written discovery, but that ignores the point of the inspection: to ascertain whether Plaintiffs' MFT systems work with their specific PEDs and to determine whether those PEDs could be responsible for some or all of the alleged problems. Indeed, connectivity problems may be attributable to unique variations of a specific device that are impossible to replicate via written discovery. For example, even devices of the

---

[3] A protective order precluding Ford's ability to inspect Plaintiffs' devices may be entered on this ground alone. *See, e.g., Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D. Cal. 1983) (denying discovery of private information due to its potential to "harass, intimidate, and discourage the plaintiff in her efforts to prosecute her cause").
[4] For example, Plaintiff D'Aguanno is an attorney and the inspection of his PED implicates the attorney-client privilege and attorney work-product doctrine, and Plaintiff Oremland is a medical doctor which implicates HIPAA.

2

same model may differ due to physical damage, corrupted software, viruses, or manufacturing variations.[5] Moreover, Plaintiffs undermined their position by refusing to agree that they would not dispute any findings from an inspection on the grounds that Ford used a phone other than the specific one used by the named plaintiff. Ltr. from K. McGee to S. Hammack (Oct. 6, 2014).

Plaintiffs' request is further improper because it seeks a sweeping global protective order even though Plaintiffs' acknowledge that the inspections of various devices raise different issues. For example, Plaintiff Oremland's HIPPA concerns have no bearing on the inspection of a device not used in medicine (or a device never used for emails or texts), and an inspection of an .mp3 player does not implicate any of Plaintiffs' privacy concerns. By pursuing a one-size-fits-all global protective order, Plaintiffs deliberately seek to avoid their burden of "showing that specific prejudice or harm will result if no protective order is granted" for "*each particular*" device they seek to protect. *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003) (emphasis added, citation omitted).

Moreover, as Ford has requested the inspection of only a single plaintiff's devices,[6] Plaintiffs' approach improperly seeks resolution of anticipated hypothetical disputes for the other 22 plaintiffs in a manner that masks the need for separate analyses regarding their particular allegations and the specific concerns applicable to them. *Am. Charities for Reasonable Fundraising Regulation, Inc. v. O'Bannon*, 2013 WL 6008302, at *2 (D. Utah Nov. 13, 2013) (denying protective order as "entirely anticipatory in nature" when no discovery request was pending). Plaintiffs' suggestion that this approach would result in twenty-plus joint letters is at odds with their claim that inspection of all devices involves common issues. To the extent these inspections raise common issues, the Court's ruling regarding a particular inspection will provide the parties with ample guidance as to the permissible scope of discovery. Further motions would be necessary only if another inspection raised sufficiently distinct issues, and the existence of any such distinct issues is ample reason to address those inspections on a case-by-case basis.

Plaintiffs' privacy concerns are a red herring in light of Ford's repeated offers to limit the scope of inspections to avoid sensitive information.[7] For example, Ford has agreed not to read, copy, or access emails, text messages, or photographs, and has invited Plaintiffs to propose reasonable measures that would allow them to ensure protection of sensitive information by monitoring the use of a PED at an inspection. Ford has further expressed a willingness to consider further limitations in response to other specific concerns raised by the inspection of any particular device. Finally, to the extent that a device is no longer in Plaintiffs' possession, custody, or control, Ford plainly does not expect Plaintiffs to produce it.[8]

---

[5] That the a plaintiff's phone may not "be an accurate representation of such device in past years," does not obviate the relevance of an inspection in light of Plaintiffs' allegations that Ford "failed and continue[s] to fail to repair the Class Vehicles." *See, e.g.*, FAC ¶ 390.

[6] Ford has agreed to table the request for inspection of Plaintiff Rizzo's devices until after his deposition.

[7] Plaintiffs' claim that the California Constitution applies to people with no connection to the state is unsupported, as the California Constitution explicitly states when it confers rights on non-citizens. *Compare* Cal. Const. Art. 1 § 20 *with* Art 1. § 1. The California Constitution's right to privacy also does not apply to corporations like Plaintiff The Center for Defensive Driving. *Roberts v. Gulf Oil Corp.*, 147 Cal. App. 3d 770, 791 (5th Dist. 1983).

[8] Ford reserves the right to seek appropriate sanctions if Plaintiffs failed to adequately preserve evidence potentially relevant to the litigation, but that depends on specific facts surrounding Plaintiffs' relinquishment of their PEDs.

Honorable Edward M. Chen, U.S.D.J.
November 5, 2014
Page 4

                           Respectfully,

                           /s/ Adam J. Levitt
                           Adam J. Levitt

                           GRANT & EISENHOFER P.A.
                           30 North LaSalle Street, Suite 1200
                           Chicago, Illinois 60602
                           Tel: (312) 214-0000
                           Fax: (312) 214-0001
                           alevitt@gelaw.com

                           *Attorney for Plaintiffs*


                           /s/ Randall W. Edwards
                           Randall W. Edwards

                           O'MELVENY & MYERS LLP
                           Two Embarcadero Center, 28th Floor
                           San Francisco, California 94111-3823
                           Tel: (415) 984-8700
                           Fax: (415) 984-8701
                           redwards@omm.com

                           *Attorney for Defendant*