1              UNITED STATES DISTRICT COURT

2             NORTHERN DISTRICT OF CALIFORNIA

3  Before The Honorable Edward M. Chen, Judge

4

5  WHALEN,                        )
                                  )  No. C 13-3072 EMC
6          Plaintiff,             )
                                  )
7  vs.                            )
                                  )
8  FORD MOTOR,                    )
                                  )
9          Defendant.             )
   _____)
10                                )
   MITCHELL,                      )
11                                )
           Plaintiff,             )  No. C 13-3378 EMC
12                                )
   vs.                            )
13                                )
   FORD MOTOR,                    )
14                                )
           Defendant.             )
15 _____)
                                  )
16 ROSSER,                        )
                                  )
17         Plaintiff,             )  No. C 13-3471 EMC
                                  )
18 vs.                            )
                                  )
19 FORD MOTOR,                    )
                                  )
20         Defendant.             )
   _____)
21
                            San Francisco, California
22                          Thursday, October 16, 2014

23
   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
24       RECORDING 10:40 - 11:22 = 42 MINUTES

25

2

APPEARANCES:

For Plaintiff:
                              Baron Budd, P.C.
                              15910 Ventura Boulevard
                              Encino Plaza, Suite 1600
                              Encino, California  91436
                         BY:  ROLAND K. TELLIS, ESQ.

                              Hagens Berman Sobol Shapiro,
                               LLP
                              1918 Eighth Avenue
                              Suite 3300
                              Seattle, Washington  98101
                         BY:  STEVE W. BERMAN, ESQ.

                              Grant & Eisenhofer P.A.
                              30 North LaSalle Street
                              Suite 1200
                              Chicago, Illinois  60602
                         BY:  ADAM J. LEVITT, ESQ.

                              Chimicles and Tikellis, LLP
                              361 West Lancster Avenue
                              Haverford, Pennsylvania  19041
                         BY:  MATTHEW DAVID SCHELKOPF, ESQ.

For Defendant:
                              O'Melveny & Myers LLP
                              Two Embarcadero Center
                              28th Floor
                              San Francisco, California
                               94111
                         BY:  RANDALL W. EDWARDS, ESQ.


Transcribed by:               Echo Reporting, Inc.
                              Contracted Court Reporter/
                              Transcriber
                              echoreporting@yahoo.com

*Echo Reporting, Inc.*

3

1  <u>Thursday, October 16, 2014                        10:40 a.m.</u>

2                     P-R-O-C-E-E-D-I-N-G-S

3                          --oOo--

4          THE CLERK:  Calling Case C 13-3072, Whalen versus

5  Ford Motor.  Counsel, please come to the podium and state

6  your name for the record.

7          MR. BERMAN:  Good morning, your Honor.  Steve

8  Berman on behalf of the Plaintiffs.

9          THE COURT:  All right.  Good morning, Mr. Berman.

10          MR. LEVITT:  Adam Levitt on Plaintiff's behalf.

11          THE COURT:  Thank you, Mr. Levitt.

12          MR. TELLIS:  Good morning, your Honor.  Roland

13  Tellus with Baron and Budd on behalf of Plaintiffs.

14          THE COURT:  Good morning, Mr. Tellis.

15          MR. SCHELKOPF:  Good morning, your Honor.  Matthew

16  Schelkopf of Chimicles and Tikellis on behalf of Plaintiffs.

17          MR. EDWARDS:  Good morning, your Honor.  Randall

18  Edwards from O'Melveny & Myers on behalf of Ford.

19          THE COURT:  Good morning, Mr. Edwards.

20      Let me ask -- I'm trying to recall whether -- what

21  we've talked about before in terms of an ADR process.

22  Because it's not -- I notice there's no -- it's not in the

23  topics here.  And I'm just wondering what the parties'

24  thinking is in that regard.

25          UNIDENTIFIED SPEAKER:  I think we're always open

4

1  to ADR.  It's an expensive case.  I think there's enough

2  production of documents that the parties probably have a

3  good idea of the strengths and weaknesses of the case.

4           THE COURT:  You have at least one ruling from me

5  so far.

6           UNIDENTIFIED SPEAKER:  One ruling from you.  So

7  we're open to the issue if the Court thinks it's

8  appropriate.

9           UNIDENTIFIED SPEAKER:  And your Honor, I think

10 when we spoke about it at the initial case management

11 conference, which admittedly was before -- I think we've

12 been before you several times since then, I think the

13 parties were both of the mind that it was premature then,

14 and we had talked that often in these large class cases,

15 that either getting to class certification and understanding

16 what the shape of the case is or at some further point was

17 more appropriate than right at the outset of the case.

18     I'll confess that the parties have not conferred in the

19 context of this case management conference.  So I don't know

20 whether my client has a different view now than it did at

21 the time that we initially talked about it, but the -- at

22 least the initial thinking was it was -- until the case

23 begins to shape a little bit more, that it's unlikely that

24 it would be productive.  But I'm happy to revisit that with

25 my client after this conference.

5

1        THE COURT:  Why don't you revisit that because
2  there's been some shape now given to this case.  We've gone
3  through at least one round of motions, and then we're going
4  to, by the end of this case management conference, have a
5  clear schedule in what we're going to do and what I'm going
6  to allow, multiple summary judgment motions, et cetera, et
7  cetera.
8     So I'd like to put that on the agenda so the next time
9  we have a CMC, I really want that to be -- have been
10  discussed by the parties.
11        UNIDENTIFIED SPEAKER:  Absolutely.
12        THE COURT:  All right.  Let me ask.  It sounds
13  like there's some potential discovery matters that are
14  brewing, but haven't come to a head yet.  Is that --
15        UNIDENTIFIED SPEAKER:  That's correct.  There's
16  two or three that are brewing that I think we'll be before
17  you shortly.
18        THE COURT:  All right.  And I'm just sort of
19  curious.  There's this one reference to Plaintiff Rizzo
20  producing peripheral devices.  What are these peripheral
21  devices?  A cell phone or what is it?
22        UNIDENTIFIED SPEAKER:  Smart Phone.
23        MR. SCHELKOPF:  Your Honor, Matthew Schelkopf.
24        THE COURT:  Yeah.
25        MR. SCHELKOPF:  My understanding of the peripheral

6

1 devices will be anything that is used in connection with the

2 My Ford Touch System, such as cell phones, i-Pads, any other

3 thing that might connect to that system.

4         THE COURT:  And the relevance -- I'm just curious

5 what the -- as a small sampling of what the discovery is

6 going to be, what is the issue here?

7         MR. SCHELKOPF:  Your Honor, from our perspective,

8 the issue in us producing that is that it would basically be

9 a blanket for Ford to go in and see all the private

10 information contained on that device, such as contacts,

11 e-mails, apps that may be used by the client.

12     So we've been doing meet and confers on that issue.  I

13 think at this point, there will probably be a joint letter

14 submission to the Court on that issue as well in the near

15 future.

16         THE COURT:  What is on there that's relevant to

17 this case?

18         UNIDENTIFIED SPEAKER:  Your Honor, since it's our

19 request, let me try to articulate what it is.

20         THE COURT:  Yeah.

21         UNIDENTIFIED SPEAKER:  I'm happy to go into as

22 much detail or as little detail as you'd like now so --

23         THE COURT:  Maybe a little detail, just so I can

24 get an overview.

25         UNIDENTIFIED SPEAKER:  But the -- there is

7

1 specific allegations in the complaint, and there are

2 specific contentions made in the interrogatory responses

3 with respect to Mr. Rizzo that his phone did not work with

4 his MFT system.  And so there are at least two issues of

5 relevance.  One is, I think, Ford is entitled under

6 discovery to test the accuracy of that allegation upon which

7 he premises a claim for money.

8      And the second issue is, given various configurations

9 that may exist on his phone, given various applications that

10 may be running on his phone, that may have a different

11 impact on how the MFT system works than someone else's

12 phone.

13      I'm, of course, happy to explain those theories in more

14 detail about why the particular request is made with respect

15 to a particular device.  And Ford has been and has continued

16 to be clear it's not interested in reviewing his e-mails and

17 not interested in getting all the phone numbers of his

18 contacts.

19          THE COURT:  Okay.

20          UNIDENTIFIED SPEAKER:  So there may be ways to

21 work around it.  And Plaintiffs have a different view on

22 this, of course.  But that's at a very high level the theory

23 of relevance is that it squarely is put in place.

24          THE COURT:  All right.  That's helpful.  That's

25 helpful, yeah.

8

1          UNIDENTIFIED SPEAKER:  If I might.  The Rizzo

2   inspection is a little bit more nuanced than that.  The

3   system here has more components than just the phone, right?

4   There is the navigation, the rear view camera.  And all

5   those things are defective, irrespective of the use of the

6   phone.  And so we've challenged whether an inspection of the

7   phone makes any difference in this case at all.

8        The issue with Rizzo, though, is a little bit nuanced

9   because Mr. Rizzo doesn't have his phones anymore.  His

10  first phone was, at the direction of the dealership,

11  discarded in favor of another phone.  Told him maybe it must

12  be your phone.  You should go out and get another phone.  He

13  got a second phone, and he accidentally lost it.  Well

14  before this complaint was ever filed, well before he even

15  knew he was going to file a complaint.  So there's no issue

16  of preservation.

17       What they want to do is inspect his wife's phone.  His

18  wife's phone was never connected to the system.  His wife's

19  phone has e-mails that are unique to her and her business

20  and her private life.

21       So what we've suggested is, connect another phone, a

22  generic phone, and do whatever you'd like to test to see

23  whether the stability of the system is impacted by that

24  phone.  But what relevance would there be -- and certainly

25  the privacy rights substantially outweigh any marginal

9

1 relevance to checking his wife's phone when we've

2 represented that the wife's phone has never been connected

3 to the system.

4          UNIDENTIFIED SPEAKER:  Your Honor, I know you

5 don't want -- I assume you don't want a complete argument on

6 this, but I will make --

7          THE COURT:  I would like a response to that.

8          UNIDENTIFIED SPEAKER:  I will make the observation

9 that we actually proposed that we would use a similar phone

10 as -- provided Plaintiffs did not reserve the right to

11 contest that Mr. Rizzo's phone or the phone that Mr. Rizzo

12 alleged can't be used with his vehicle, whether it's his or

13 his wife's, would have the same results as the test phone.

14 And that was rejected.

15     So Ford is in the position of saying, well, we can't

16 use a different phone of the same type and be able to rely

17 on the results of that test against Plaintiffs coming in and

18 saying, well, Mr. Rizzo's phone is different.

19     He's made an express allegation that his phone or his

20 wife's phone doesn't work with the system.

21          THE COURT:  Is his wife's phone the same -- was

22 the same as his phone?  Same model?

23          UNIDENTIFIED SPEAKER:  He's had several different

24 models.  I believe that the current phone that the

25 contention is can't be used, I now understand is his wife's

1 phone.  But the issue is the same.  If they're seeking money

2 damages because at present they can't use a phone with the

3 vehicle, we're entitled to find out if that's true.

4         THE COURT:  But the allegation is about his phones

5 that now evidently -- at least he's represented to this

6 Court have been discarded or lost.  I understand that the

7 wife's phone is -- it's the same model, you know, 4S or

8 whatever it is.  Then I could see where you would want the

9 same model phone, and hopefully with the same apps.

10     But if it's not the same phone, doesn't have the same

11 apps, then there's no foundation.  You ran a test, so I

12 don't see what the relevance is.

13         UNIDENTIFIED SPEAKER:  I don't understand their

14 allegations to be confined to the two phones that they

15 didn't preserve.

16         THE COURT:  Phones generally don't work?

17         UNIDENTIFIED SPEAKER:  Well, I look at the

18 complaint and the responses to the interrogatories.  I think

19 it's -- you know, his MFT -- his vehicle with the MFT system

20 wouldn't work with the phones that they had.

21     And if he no longer has one of those phones, I guess it

22 will be an issue in discovery as to when he got rid of it

23 and whether there was a preservation issue or not.  I'm not

24 debating it now, but I'm reserving the right to explore that

25 issue.  But if there's a later phone that he says would not

11

1 work or we weren't even willing to try, if we can establish

2 that phone would have worked acceptably with the vehicle,

3 that would tend to negate at least part of the factual

4 allegations.

5      But again, part of the problem is, Plaintiffs took the

6 position in the meet and confer that they would not accept

7 Ford taking a different phone where he would have to pay for

8 that, but taking a different phone of the same model,

9 testing it, and then Plaintiffs accept the results of

10 whatever that test is.  Plaintiff said, no, we won't agree

11 to that.

12          THE COURT:  Well, even if they don't agree to

13 that, you can still do it, and it becomes evidence.  I don't

14 know why -- their objection, I assume, is that, well, we

15 don't know that every single thing was replicated.  Maybe

16 this makes a difference.  And that becomes an issue for

17 trial.

18      You do a test run with some phone that comes as close

19 as you can to what you understand that they -- that the

20 Plaintiff had, Mr. Rizzo had, and you try to replicate that

21 as best as you can and see what happens.

22          UNIDENTIFIED SPEAKER:  But your Honor, on that

23 issue, if we're entitled to discovery -- if they want to

24 reserve the right to say, well, maybe you didn't have all

25 the apps, maybe the configurations were different, maybe

1 there was some other issue, they can produce the phone that

2 has everything they say is right.  I don't think it should

3 be Ford's obligation to create a different phone with the

4 configurations and apps the best we can and then face at

5 trial --

6         THE COURT:  They've got the burden of proof.

7 They've got the burden of proof.  If they can't come up with

8 a way to prove that this phone didn't work with this

9 configuration -- now, if they're going to try to use the

10 wife's phone saying, well, they happened to download the

11 same apps, they bought the phone at the same time, therefore

12 it's very parallel, then they've got to produce it.

13     But if they're not making that contention -- and maybe

14 a clarification through contention interrogatories will

15 either take that phone out of the picture or bring it into

16 the picture.  I mean, that --

17         UNIDENTIFIED SPEAKER:  That's exactly right, your

18 Honor.  And the concern about -- that was raised in

19 connection with our no objection to Ford's use of a generic

20 phone is that they wanted to couple that with a waiver on

21 our part that we wouldn't contest the results.  And we can't

22 do that, obviously.

23     As you point out, your Honor, we've got the burden, and

24 at the time of trial, we'll see what happens.  But they're

25 free to test whatever product -- you know, whatever

13

1  peripheral device -- they want a generic one, it doesn't

2  raise privacy rights, but why should we be at the same time

3  forced to waive arguments about the propriety of the

4  results?  I mean, the evidence that's produced to date is

5  compelling, your Honor.  I mean, surely Ford understands

6  that its CEO had problems with his phone.

7              THE COURT:  All right.  I'm not getting into that

8  right now.  All right.

9              UNIDENTIFIED SPEAKER:  Just a final comment on

10 this, which is, Plaintiffs bear the burden, but Ford, like

11 Plaintiffs, is entitled to discovery to test whether

12 Plaintiffs will have proof at trial.

13     And so we'll tee it up in the joint letter.  I don't

14 believe that the privacy concerns create an insurmountable

15 barrier to Ford getting proof that would directly test

16 allegations they've made in the complaint.  Ford has

17 undertaken tremendously burdensome discovery on tremendously

18 confidential information on our side, and it would be

19 completely asymmetrical to deny Ford the opportunity to take

20 discovery that is directly on point with allegations

21 Plaintiffs put in their case.

22             THE COURT:  Well, that's the question.  Is it

23 directly on point.

24             UNIDENTIFIED SPEAKER:  Yes.

25             THE COURT:  And the more probative it is --

1 generally there's a balancing test between privacy rights.

2 And there are things that you could do to craft around

3 privacy concerns.  You stipulate to a third party, to

4 examine the phone to figure out what apps are on there, what

5 the model is.

6      You may not have to actually use that phone, but you

7 can extract from that.  You can find out what the

8 configuration is and find the phone -- generic phone that is

9 the same model and load those apps, assuming they're still

10 available, and replicate -- I mean, there's many ways of

11 doing that, whether it's attorney's eyes only, a third-party

12 vendor doing it.

13      It seems to me it is not insurmountable.  And if you

14 get hung up on stuff like this, I can't imagine how we're

15 going to proceed with this case in an expeditious matter.

16 This doesn't seem to be a complicated issue to me.  So I

17 urge you to resolve this one.

18      Let's talk about this question about what's been

19 referred to as summary judgment on Plaintiff's specific

20 issues sort of in advance of class certification.  What are

21 these -- what are -- what is this motion?  I mean, what

22 would the motion be based on?  What kinds of issues?

23           UNIDENTIFIED SPEAKER:  Well, let me preface it by

24 saying we haven't had discovery on Plaintiffs.  We've

25 received some documents, but we haven't done the named

15

1  Plaintiff depositions.

2      So I have to speculate to a certain extent what the

3  evidence will be.  But I could envision several types of

4  Plaintiff-specific issues.  So there's a named Plaintiff

5  whose name I'll mispronounce.  I won't try.  But there's a

6  single named Plaintiff in Ohio that has made various

7  contentions.

8      Let's say that that Plaintiff -- or actually, let me

9  withdraw this.  I'll use an example I'm more confident with.

10  The Colorado Plaintiff, Mr. Sherine (phonetic), may not have

11  made any repair attempts, which may be fatal to his breach

12  of warranty claims.

13      Now, that's not a -- necessarily a class-wide

14  preclusion issue.  There may be other Plaintiffs that have

15  made sufficient repair attempts if that argument doesn't

16  work, but it may be that that named Plaintiff can't maintain

17  that claim.  That may actually -- if this claim is

18  eliminated, that may affect whether the class certification

19  motion addresses Colorado Plaintiffs at all.

20      Another example, the judge -- I mean your Honor allowed

21  the California Secret Warranty law claim to proceed based on

22  an argument in the motion to dismiss hearing that one or

23  perhaps two, but I believe it was only one named Plaintiff

24  did not receive the notice of extended warranty that was

25  sent to all class members.

1      Now, it may be that allegation doesn't survive

2  discovery and Ford would want to move with respect to that

3  claim by certain named Plaintiffs.  And it may be that there

4  are some claims that some named Plaintiffs have sufficient

5  evidence to survive summary judgment and some don't.

6      So it's not -- it's a different inquiry to a certain

7  extent than an end-of-discovery right before trial summary

8  judgment motion on the class, which may tee up completely

9  separate issues, whether under the governing standards of

10  whether there is a defect or not, if there was any defect

11  that existed or whether there was a duty to disclose or some

12  broader issues.

13      And so what I have proposed in other cases and some

14  courts have permitted is, in a class case, if there are some

15  discrete motions that affect the individual named

16  Plaintiff's rights to maintain their claims, that we can tee

17  those up for summary judgment.  And --

18          THE COURT:  Because it may affect the -- whether

19  or not a particular subclass gets certified.  So if there is

20  no Colorado named Plaintiff, you don't get a Colorado class.

21          UNIDENTIFIED SPEAKER:  That and with respect to

22  the named Plaintiffs, obviously their claims don't get

23  better, no matter who else is in the class.  They have to

24  either prevail or not prevail on their individual claims.

25  If they have no evidence as the named Plaintiff, they can't

17

1 have a claim.

2     And so the thought is not a succession of motions, but

3 at some point, which we teed up in the schedule around --

4 before or around the time of class certification, to have a

5 motion that tees up whatever named Plaintiff specific issues

6 there may be, but not then precluding Ford under your

7 standing order of one summary judgment per case, not

8 precluding Ford from post-certification, assuming anything

9 gets certified, teeing up a summary judgment motion against

10 the class on whatever we think we're entitled for summary

11 judgment on, and we'll see if we can persuade you.

12     So the idea is essentially two at two different times.

13 We obviously have to be mindful of whatever rulings you make

14 in the first motion may impact what arguments are remaining

15 available to us, just as the certification decision may

16 impact what arguments are available to us.

17     But in a case of this magnitude, I would suggest that

18 it's not an unreasonable or inefficient approach to have the

19 opportunity for two discrete kinds of summary judgment

20 motions at different points.

21         THE COURT:  All right.  What's wrong with that

22 process?

23         UNIDENTIFIED SPEAKER:  Well, in terms of

24 efficiency for the Court, I think it's more efficient to do

25 it in one summary judgment motion at one time.  And the way

18

1  the challenges that counsel has talked about are typically

2  handled is in the Rule 23 motion itself.  So --

3             THE COURT:  As they are --

4             UNIDENTIFIED SPEAKER:  Typicality and adequacy.

5  And he would say, well, this Colorado Plaintiff is not

6  typical because he hasn't made repairs, and therefore, you

7  can't certify the express warranty class.  End of game.

8  One response on that issue rather than successive summary

9  judgment motions.

10             UNIDENTIFIED SPEAKER:  I might submit that someone

11  who didn't make any warranty attempts might very well be

12  typical of the vast majority of class members in Colorado.

13  But the question of whether it's typical or not as a class

14  certification question is different than whether this named

15  Plaintiff has evidence to meet each of the elements required

16  for that named Plaintiff's claims.

17             THE COURT:  As to that, the typicality is part of

18  the equation, but it may be if there's no claim at all,

19  simple or not, that person doesn't belong in the case.

20             UNIDENTIFIED SPEAKER:  Well, if we can't get the

21  class certified because of that typicality issue, then that

22  person will not -- there won't be a class.  You know, they

23  can then bring their summary judgment with any other summary

24  judgment motion at one time on that issue.

25             THE COURT:  I guess that's a response.  If, in

1  fact, this Colorado Plaintiff did make repairs and is

2  typical, then you've got a pretty good summary judgment

3  motion post-certification, it seems to me.

4          UNIDENTIFIED SPEAKER:  Well, there is obviously

5  tactical questions that we may decide, given how the

6  evidence shakes out.  We wanted to do something now or

7  later.  But I just think it's a different legal standard

8  whether the cause of action is appropriate to certify as a

9  class, given the evidence that's available to the Court at

10 that time, and whether the named Plaintiff may maintain a

11 claim seeking money damages.

12     And I have been in a number of cases where one or more

13 named Plaintiffs have had fundamentally flawed claims.  And

14 those claims -- Ford is entitled to judgment against that

15 named Plaintiff, not simply denial of certification with

16 respect to other unnamed Plaintiffs.  And the reason --

17          THE COURT:  Well, but the way using -- was that it

18 comes out in terms of adequacy and typicality.  And then if

19 the class is not certified and the individual remains, you

20 can bring your summary judgment motion then.

21          UNIDENTIFIED SPEAKER:  Well, I guess -- I mean, in

22 terms of my experience, I've often teed up summary judgment

23 motions simultaneously or in advance of class certification

24 on named Plaintiffs' specific issues.  Because opposing

25 summary judgment doesn't result in a judgment in the

20

1 Defendant's favor.

2     Plaintiffs in this case have chosen to include lots of
3 named Plaintiffs from lots of different states, including --
4 after the motion to dismiss, I believe there are about 60
5 causes of action that are left.  And I believe Ford should
6 be able to seek dismissal, if we can persuade you that some
7 of those claims from some of those Plaintiffs are not viable
8 without having to cloak them in the clothing of adequacy.
9 There may be some that also raise adequacy or typicality
10 questions.

11     And at the same time, not being in the position of
12 having to file the only summary judgment motion after a
13 class certification decision, which creates difficulties
14 because not everyone in the class may have the same outcome
15 on that motion.

16     So I don't think it's a tremendous burden or
17 inefficiency.  I think it's a motion that tees up discrete
18 issues.  Your Honor may or may not agree with them.
19 Ultimately, we hope that we can persuade you.  But at this
20 point, we're arguing a little bit in the abstract.

21     But I wanted to raise it early so we don't get on the
22 eve of class certification and for the first time raise an
23 issue that, you know, creates scheduling questions.  And my
24 typical practice in all class certification cases is to --
25 if there's a one summary judgment rule, is to request two

1 for these two discrete purposes.

2          THE COURT:  Well, I'm familiar with that process,

3 and I've employed it before.  But usually in a situation

4 where the issue that's raised, although particular to a

5 plaintiff, is likely to have class-wide implications, such

6 as the interpretation of the FLSA or something on a critical

7 issue.  And therefore, there's some judicial economy to be

8 gained up front.

9      But if it's class specific, maybe -- you know,

10 especially when we have dozens of named class members, it

11 just seems to me that many of these issues are going to

12 overlap with adequacy, typicality, and can be addressed in a

13 single summary judgment motion, if there is certification.

14      So I am not going to entertain Plaintiff's specific

15 issues preclass cert.

16          UNIDENTIFIED SPEAKER:  May I ask for clarification

17 on that, your Honor?

18          THE COURT:  Yeah.

19          UNIDENTIFIED SPEAKER:  Ford may make a strategic

20 decision that it's appropriate to seek summary judgment for

21 certification.  And I understand -- what I want to clarify

22 from your rule is, so you typically have a one summary

23 judgment rule.  I didn't understand that it was necessarily

24 binding that a Defendant can't raise it at the time it

25 believes it's appropriate, for the reasons I've already

22

1  urged, that I think it puts Plaintiffs in a very

2  difficult -- I'm sorry -- Defendant in a very difficult

3  position to not be permitted to tee up summary judgment

4  issues when they're appropriate.

5      But what I want the clarification on is, if Ford

6  decides that the summary judgment motion is appropriate to

7  tee up in conjunction with class certification, whether your

8  ruling now is precluding that.

9          THE COURT:  What are your thoughts on that?  Now

10 it's not multiple summary judgments.  It's a question of

11 timing.  And you're talking about doing it -- it sounds like

12 in conjunction with opposing class cert perhaps.

13         UNIDENTIFIED SPEAKER:  They can, I suppose, move

14 for summary judgment anytime they want.  If they move it

15 earlier, there's always the risk that we come in with a Rule

16 56(f) and say, we're still taking discovery on these issues.

17 So they bear the risk of that, I suppose.

18         THE COURT:  All right.  But it seems to me, if

19 they want to bring it -- if they want to take their shot,

20 for instance at the same time as the class cert motion is,

21 so get all these issues teed up and -- I don't have a

22 problem with that.

23         UNIDENTIFIED SPEAKER:  I don't either.  My

24 concern -- only concern is the following:  Let's say that

25 they get one shot.  So they're going to have to say, if

1  they're going to win this case, that there's no defect.

2  We're going to be in the midst of source code review, so

3  they're going to say there's no defect.  And we're going to

4  say we're still reviewing the source code.

5          THE COURT:  Well, I understand.

6          UNIDENTIFIED SPEAKER:  Okay.

7          THE COURT:  And if there's a Rule 56(f) response,

8  you know, it seems to me you ought to meet and confer before

9  you go down this route rather than filing all sorts of stuff

10 that can only be responded to in a Rule 56(f) and getting a

11 sub-litigation, whether we need to defer things, extend it,

12 continue it, have discovery, reschedule it.

13      I'd rather you all put some cards on the table and see

14 what it takes to get this thing resolved.  I have no

15 theoretical objection in general to bringing a summary

16 judgment motion if it's going to be the summary judgment

17 motion in advance or at the same time of the class cert

18 question, knowing that depending on what you move on, you

19 may run into a Rule 56(f) issue.

20          UNIDENTIFIED SPEAKER:  Well, understand,

21 obviously, at any time that we'd make a motion that we'd

22 have to be prepared to respond to that if there's still

23 discovery that's outstanding.  So I understand that, your

24 Honor.  I just wanted to understand whether or not there was

25 a preclusion on the timing.

24

1          THE COURT:  I won't -- I'm not going to preclude
2 you from doing that.
3      All right.  In terms of time line, then, I take it this
4 chart was a joint proposal.
5          UNIDENTIFIED SPEAKER:  That's correct.
6          UNIDENTIFIED SPEAKER:  That's correct.
7          THE COURT:  And the main thing is, you're talking
8 about moving for class cert, filing the motion in October, a
9 year from now, with a fairly extended briefing schedule,
10 seven-week intervals.
11          UNIDENTIFIED SPEAKER:  May I address that, your
12 Honor?
13          THE COURT:  Yeah.
14          UNIDENTIFIED SPEAKER:  I think it's mostly Ford's
15 issue.  Although I don't think Plaintiff's disagree that --
16 so there are two issues.  One, let me address why October.
17          THE COURT:  Yeah.
18          UNIDENTIFIED SPEAKER:  Ford has produced -- and I
19 think we noted it in here.  We've produced over three
20 million pages of documents.  We have -- we estimate that we
21 are less than halfway done with the production in this case.
22 And I mentioned earlier Ford has undertaken a tremendous
23 cost burden and intrusion in responding to discovery, but
24 most of it has been cooperative.  But it takes time.  It's a
25 huge amount of data, and it takes time.

1   So our estimate -- and I think we included it in
2   here -- is our estimate is the document production itself
3   won't be completed until the end of March. And that -- I
4   mean, we are investing tremendous resources to get that
5   done. And we already have invested and have -- the results
6   are there in terms of what we've already done.

7   But with that much more to go, my client was actually
8   frankly uncomfortable with the end of March. But we think
9   we can meet it, and we're going to do the very best we can.
10  But given that, and then to allow for -- sometime for
11  Plaintiffs to actually absorb that -- and I'm sure they're
12  doing it on a rolling basis, but sometimes we'll absorb
13  whatever comes at the end.

14  And then to tee up the depositions, it -- you know, we
15  had -- I think we accepted actually Plaintiff's proposal in
16  terms of the spread between the end of document discovery
17  and the filing of their motion. But realistically, there's
18  not going to be two depositions in this case.

19  So that addresses, I think, the context from Ford's
20  perspective on the issue of how do we get to October. It
21  seems like a long way, but this is a very unusual case in
22  terms of scope.

23  In terms of the briefing schedule, typically for a
24  large class certification motion, we'd want some time to put
25  together an opposition, but in particular, we wanted the

26

1  opportunity if Plaintiffs submit one or more expert

2  declarations, which I anticipate that they will do, in their

3  motion for class certification. We'd like an opportunity --

4  I believe we'd be entitled to an opportunity to take the

5  depositions of those experts and prepare a response with our

6  own experts in our opposition.

7      And if you shorten much from seven weeks to review --

8  take the deposition -- prepare and to take the deposition of

9  the expert, get your own expert to prepare the appropriate

10 response and then write the brief and fold everything in, my

11 experience is that six to eight weeks is about how long that

12 process takes.

13     And then on the reply brief, normally you'd have less

14 time on the reply than the opposition, but they have the

15 same issue, actually, which is if we use experts, they need

16 an opportunity to do the same thing, to take depositions of

17 our experts and prepare a response and the reply.

18     So that's how we ended up with a schedule that

19 superficially seems long, but really there was a fair amount

20 of care and thought about practically what are we going to

21 be doing here during that window.

22         UNIDENTIFIED SPEAKER: Let me answer that, your

23 Honor, from our perspective. October is a year off, but a

24 couple of things have drove that schedule, in our view.

25 First, as your Honor knows, nowadays on a class cert, it's

1 rigorous, so we tend to put class cert later than earlier.

2     And second, in this case, this may be a source code

3 case.  We haven't got the source code yet.  We've been

4 pushing and pushing, and one of the issues that may come

5 before you in a letter brief are some of the outstanding

6 issues relating to the production of the source code.

7     Once we get the source code, our experts tell us that

8 it may take them eight months to review the source code.

9 Source code here is huge.  It's bigger than the source code

10 in the Toyota case.  In the Toyota case, it took us 14

11 months.  We had a full-time crew reviewing the source code.

12 And we think the issues are clearer here, so we're hoping we

13 can get it done in eight months.  So there's going to be a

14 lot of work going on during that time period.  And that's

15 how we got to October.

16     And I won't repeat the comments on the briefing, but

17 the briefing will be heavily dependent upon experts on both

18 sides.  So we do need time to digest those reports and to

19 take depositions.

20          THE COURT:  All right.  So that means a hearing

21 won't realistically occur, in my rough calculation, until

22 January or February, right?  Is that what you've sort of

23 calculated?  Seven weeks after October -- and then another

24 seven weeks.  And then I need some time.  And I'm just doing

25 some quick math.  It gets you easily into --

1          UNIDENTIFIED SPEAKER:  March.

2          UNIDENTIFIED SPEAKER:  March probably, end of the

3 first quarter.

4          THE COURT:  Okay.  Well, let me ask you this:  If

5 the class were to be certified or some portion would be

6 certified, what's your estimate, do you think, to be

7 scheduling -- between class certification and actual trial,

8 when do you think we could get this case to trial?  Given

9 all the discovery that would have occurred, how much more

10 time?

11          UNIDENTIFIED SPEAKER:  Well, discovery will be

12 over, right?  So then what we need to do is to have final

13 merits expert reports.  And then whatever -- well, summary

14 judgment, they have been already filed.  So if the summary

15 judgment --

16          THE COURT:  If I come into that, you have to --

17 lightly.

18          UNIDENTIFIED SPEAKER:  Summary judgment is over

19 with, then --

20          THE COURT:  No.

21          UNIDENTIFIED SPEAKER:  -- it would be a very short

22 time for final expert reports and to be ready for trial.

23          UNIDENTIFIED SPEAKER:  There is one other issue,

24 which is notice, if the class were certified.  So there

25 would be some time needed for that.  And I don't want to

29

1  presume that your schedule, in terms of making a ruling on

2  class certification -- but if you ultimately certified a

3  class, if we're looking at a hearing -- and just for

4  discussion purposes here, if we're looking for a hearing the

5  first week of March, and then your Honor needed --

6          THE COURT:  A day or two.

7          UNIDENTIFIED SPEAKER:  -- a day or two -- let's

8  just say a month for discussion purposes, to get a ruling

9  out.  And then we have to figure out notice.  And we can

10 have some preliminary discussions, but my guess is both

11 sides will really want to dig in on the notice issue if

12 there is a class certified.  And then it has to be

13 implemented.

14     There will be parallel work done on the merits expert

15 reports, but I don't want to suggest that a summer trial is

16 likely going to happen.

17         THE COURT:  Late 2015 sounds like a more

18 realistic --

19         UNIDENTIFIED SPEAKER:  I think it actually -- '16.

20         UNIDENTIFIED SPEAKER:  '16.

21         UNIDENTIFIED SPEAKER:  We can do the trial first

22 and then --

23         UNIDENTIFIED SPEAKER:  I would think September

24 would be better.

25         UNIDENTIFIED SPEAKER:  I mean, I don't have a very

1  specific month in mind for that because there are a lot of

2  unknowns, but that strikes me in the ballpark.

3          THE COURT:  Well, I think what I'd like to do is

4  set this schedule now, get us through class cert with a firm

5  schedule and also reconvene at some point in the not too

6  distant future to see what your thoughts are on ADR as

7  discovery has progressed and we resolve some of these other

8  issues.

9      And then actually look at a real trial date as we get a

10 little bit close.  Right now it's a little iffy.  But what

11 I'll do is, I'm going to pencil in, just so that we can hold

12 the calendar -- and how long of a trial do you think -- I

13 mean, I know it's hard to forecast because you don't know --

14 assuming there's class certification and a large part of the

15 class gets certified and you know the issues, how long of a

16 trial are we talking about?

17         UNIDENTIFIED SPEAKER:  We could put our case on in

18 a week.

19         UNIDENTIFIED SPEAKER:  So I've done several class

20 action trials, and I've actually never seen one done in

21 under a month.  So that is the experience I have.  If

22 Plaintiffs really put their entire case on in a week, it

23 won't take Ford three weeks to put on its defense.  But

24 every class action trial I've ever done has been

25 considerably longer than that.

1           THE COURT:  Do we have any October dates?

2       I'll tell you what.  I'm going to just -- let's pencil

3  in an October 17, 2016 date.  I think that gives -- and that

4  gives another year from completion of fact discovery, from

5  the filing of the motions for class cert.  It would be heard

6  in March probably.  It may take -- assuming it does take me

7  a month to get out a ruling, then you've got notation, all

8  that sort of stuff and expert stuff that's going to be done.

9  And a pretrial conference would be in September.

10          And that gives us a little room for slippage in case --

11  and for any ADR processes without extending this thing too

12  far out.

13          UNIDENTIFIED SPEAKER:  October is good.  We can

14  hit the World Series again.

15          THE COURT:  Yeah, that's right.  Since I'm sure

16  we'll all be back again next year.

17      So October 17, which is right in the middle of the

18  playoffs, but that will give you additional motivation to

19  settle this case, I guess.

20      I'll go ahead and set that date because I just like

21  to -- and so your clients know, we've got a date, and your

22  clients do too, and maybe that will inform your ADR timing

23  as well.

24      So I'm going to get out a scheduling order.  I will set

25  a class cert date.  I'm thinking right now March 3rd, but I

32

1 have to do the math.  But it will be late February, early

2 March when we can -- that's what I'm aiming for for class

3 cert.  And if you move for summary judgment simultaneously

4 here all at the same time.

5          UNIDENTIFIED SPEAKER:  For the hearing, your

6 Honor?

7          THE COURT:  The hearing, yeah.

8          UNIDENTIFIED SPEAKER:  I think we need one more

9 date from our perspective, and that is we need a date for

10 the source code to come to -- either we resolve how it's

11 going to be done or we need to be in front of you.  Because

12 that's going to drive the schedule, and if we don't have

13 pressure from you, it's just not getting done in time.

14          THE COURT:  All right.  What's your thought, then,

15 in terms of a make it or break it --

16          UNIDENTIFIED SPEAKER:  Ten days from now.  We've

17 been going at it for five months.

18          UNIDENTIFIED SPEAKER:  Let me start by saying,

19 Plaintiffs have changed on several occasions technically

20 what they want associated with the source code.  And I don't

21 want to tee up all the back and forth, but the suggestion

22 that Ford has been delaying on source code production, I

23 take great exception to.

24      I thought we actually were close to a cooperative

25 agreement on protocol.  There may be one or two lingering

1 issues that we need to tee up.  I'd like an opportunity to

2 tee those up by joint letter because I'm not prepared to get

3 into all of the technical details today.

4          THE COURT:  No.  I think that's a date by which

5 you either resolve it or send me a joint letter.

6          UNIDENTIFIED SPEAKER:  Well, that's -- if we're

7 talking 10 days for a joint letter, that's fine.  I actually

8 interpreted Mr. Berman, perhaps incorrectly, to suggest that

9 we had to produce it within 10 days.

10          UNIDENTIFIED SPEAKER:  No, no, no.  Just a joint

11 letter within 10 days.  Two weeks if you want.  But we've

12 just got to get it going.

13          UNIDENTIFIED SPEAKER:  I don't have any problem

14 with that.  I apologize if I misunderstood the suggestion

15 there.

16          THE COURT:  But hopefully within the 10 days, you

17 can find this resolution and you don't need it.

18          UNIDENTIFIED SPEAKER:  That's my hope as well, but

19 we've just got to --

20          UNIDENTIFIED SPEAKER:  That's fine.

21          THE COURT:  All right.  I'll give you 11 days.

22 How's that?  The 27th.  Ten days is Sunday.

23          UNIDENTIFIED SPEAKER:  I appreciate that, your

24 Honor.

25          THE COURT:  All right.  So either resolution or a

1 joint letter on the source code.

2      All right.  Anything further?

3           UNIDENTIFIED SPEAKER:  Just two questions, your

4 Honor.

5           THE COURT:  Yes.

6           UNIDENTIFIED SPEAKER:  One, I don't know whether

7 your order will set the next case management conference or

8 whether you would like to have another one at some point

9 before these festivities.

10          THE COURT:  I do want to set that to see how

11 things are going and make sure that things haven't gone off

12 the track.  So I don't know, four months from now, three,

13 four months from now?

14          UNIDENTIFIED SPEAKER:  Something like late

15 January, early February, something in that range.

16          THE COURT:  All right.

17          THE CLERK:  January 29th at 10:30.

18          UNIDENTIFIED SPEAKER:  And then the last thing,

19 your Honor, I think you had indicated you were going to pick

20 the specific date on the argument for class certification

21 and summary judgment.  Those are just -- March 3rd, 2016

22 is --

23          THE COURT:  I have penciled in March 3rd, 2016.

24          UNIDENTIFIED SPEAKER:  Okay.

25          THE COURT:  I may, you know, look at that just to

1  make sure, but I did the calculations quickly, and I don't

2  think I need seven weeks like you all do, but --

3             UNIDENTIFIED SPEAKER:  Okay.

4             THE COURT:  A little earlier.  I might move it up

5  to a week before or something like that.  But for now, I'm

6  going to pencil in -- but I'll have it in a concrete order,

7  all the dates set forth.

8             UNIDENTIFIED SPEAKER:  Thank you, your Honor.

9             UNIDENTIFIED SPEAKER:  One last issue.

10             THE COURT:  Yeah.

11             UNIDENTIFIED SPEAKER:  I appreciate your patience.

12             UNIDENTIFIED SPEAKER:  One last issue, your Honor.

13  And that is, we've been in discussions with a number of

14  third parties, and we're very close, unfortunately, to

15  reaching impasse with at least one of them.  And the

16  question is, it appears that they may be unwilling to engage

17  in a joint statement, as your Honor's rules require.

18      Rather than come back to your Honor and say they're not

19  agreeing to do a joint statement, if they won't do it, how

20  would you like us to proceed?

21             THE COURT:  Well, if you can't get any cooperation

22  on a joint statement, you just have to make your motion.

23             UNIDENTIFIED SPEAKER:  I just wanted to clarify

24  that, your Honor.  Thank you.

25             THE COURT:  And in terms of ADR, what I would like

36

1  is, if you could -- rather than waiting until January,

2  within the next three weeks, if you could talk to your

3  clients and see if you have any further thoughts about

4  possible preclass cert ADR, I'd like to know what your

5  thoughts are.  You can submit me a joint letter.

6      And if there's anything you want the Court to do in

7  terms of utilizing any of our resources, I certainly would

8  be amenable to that.  Otherwise, I assume you're looking at

9  private mediation.  Is that the typical --

10          UNIDENTIFIED SPEAKER:  Well, we have some great

11 magistrates.

12          THE COURT:  Right.  Well, that's why I offer that

13 up.  I'm certainly willing to accommodate you in that regard

14 if you're interested.  I would like to know where you're at

15 maybe three weeks from now.  Talk to your client, see what

16 the interest is, if any.

17          UNIDENTIFIED SPEAKER:  That's fine, your Honor.

18 Thank you.

19          THE COURT:  I'll get out a scheduling order.

20          ALL:  Thank you, your Honor.

21          THE COURT:  Great.  Thank you.

22      (Proceedings adjourned at 11:22 a.m.)

23

24

25

37

1                    CERTIFICATE OF TRANSCRIBER

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9       I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16           Echo Reporting, Inc., Transcriber

17            Wednesday, November 19, 2014

18

19

20

21

22

23

24

25