STEVE W. BERMAN (*pro hac vice*)
CATHERINE Y.N. GANNON (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
catherineg@hbsslaw.com

ROLAND TELLIS (186269)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2320
Facsimile: (818) 986-9698
rtellis@baronbudd.com
mpifko@baronbudd.com

ADAM J. LEVITT (*pro hac vice*)
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois 60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001
alevitt@gelaw.com

JOSEPH G. SAUDER (*pro hac vice*)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
JGS@chimicles.com
MDS@chimicles.com

*Plaintiffs' Interim Co-Lead Counsel*

[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE<br><br>MYFORD TOUCH CONSUMER LITIGATION. | Case No. 13-cv-3072-EMC<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing date:  August 27<br>Time:             1:30 p.m.<br>Judge:           Hon. Edward M. Chen<br>Courtroom:   5 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................. 1

II. CLAIMS DISMISSED BY THE COURT'S PREVIOUS ORDER ....................................... 3

III. PLAINTIFFS STATE A VALID CLAIM FOR CERTAIN FRAUD-BASED CAUSES OF ACTION.................................................................................................. 5

    A. This Court has already found allegations virtually identical to those made by Plaintiff Kirchoff adequately stated a claim for affirmative misrepresentations. .................................................................................................. 5

    B. Plaintiffs who purchased a second MFT-equipped vehicle can still assert a fraud claim.................................................................................................. 7

    C. This Court should not dismiss Plaintiff Mitchell's Iowa Consumer Fraud Act claim. .................................................................................................. 8

IV. NEW PLAINTIFFS PROPERLY STATE BREACH OF WARRANTY CLAIMS ............. 9

    A. Plaintiff Kirchoff is not required to plead or prove that he was aware of the terms of Ford's Limited Warranty.................................................................................................. 9

    B. Plaintiff Kirchoff alleges sufficient facts to qualify as an intended third-party beneficiary and, therefore, has privity with Ford. ...................................................... 11

    C. Plaintiff Mitchell alleges sufficient facts to bring a breach of warranty claim for his newly purchased vehicle, the 2014 Lincoln MKZ. ....................................... 14

V. THE OHIO PRODUCTS LIABILITY ACT DOES NOT ABROGATE PLAINTIFF MISKELL'S TORT CLAIMS.................................................................................................. 15

VI. PLAINTIFFS HAVE ADEQUATELY PLEADED BREACH OF CONTRACT................. 19

    A. Plaintiffs have identified the warranty statements supporting their contract claims.................................................................................................. 19

    B. Ford breached its MyFord Touch Handbook promises.......................................... 21

    C. The Texas Plaintiffs have satisfied all applicable notice requirements.................... 22

VII. CONCLUSION .................................................................................................. 23

PLAINTIFFS' OPPOSITION TO FORD'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
010388-11  793683 V1
    Case No. 13-cv-3072-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*A.A. Baxter Corp. v. Colt Indus., Inc.*,
88 Cal. Rptr. 842 (Cal. App. 1970) ........................................................................... 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 14, 22

*Babb v. Regal Marine Indus.*,
2015 Wash. App. LEXIS 369 (Wash. Ct. App. Feb. 24, 2015) ................................. 13

*Baughn v. Honda Motor Co.*,
107 Wn. 2d 127 (1986) ..................................................................................... 10, 11

*Bell Sports, Inc. v. Yarusso*,
759 A.2d 582 (Del. 2000) ......................................................................................... 20

*Carrel v. Allied Prods. Corp.*,
677 N.E.2d 795 (Ohio 1997) ..................................................................................... 17

*Carson Harbor Vill., Ltd. v. Unocal Corp.*,
270 F.3d 863 (9th Cir. 2001) .................................................................................... 16

*Doty v. Fellhauer Elec., Inc.*,
888 N.E.2d 1138 (Ohio Ct. App. 2008) .................................................................... 17

*Flex Homes, Inc. v. Ritz-Craft Corp. of Mich.*,
2009 WL 3242140 (N.D. Ohio Sept. 30, 2009) ........................................................ 17

*In re Ford Motor Co., Spark Plug and 3-Valve Engine Prods. Liab. Litig.*,
2014 WL 3778592 (N.D. Ohio July 30, 2014) .......................................................... 17

*Galitski v. Samsung Telecomms. Am., LLC*,
2013 U.S. Dist. LEXIS 171908 (N.D. Tex. Dec. 5, 2013) .......................................... 5

*Gertz v. Toyota Motor Corp.*,
2011 U.S. Dist. LEXIS 94183, at *9-10 (C.D. Cal. Aug. 22, 2011) ............................ 5

*Great N. Ins. Co. v. BMW of N. Am. LLC*,
2015 U.S. Dist. LEXIS 13164 (S.D. Ohio Feb. 4, 2015) .......................................... 18

*Hartman v. Mercedes-Benz*,
2010 U.S. Dist. LEXIS 22536 (N.D. Ohio Mar. 11, 2010) ....................................... 18

- ii -

*Hartman v. Mercedes-Benz, U.S.A., L.L.C.,*
2010 WL 907969 (N.D. Ohio Mar. 11, 2010) ............................................................... 17

*Hoffer v. Cooper Wiring Devices, Inc.,*
2007 U.S. Dist. LEXIS 42871 (N.D. Ohio June 13, 2007) ........................................... 18

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.,*
2012 U.S. Dist. LEXIS 19215 (S.D. Cal. Feb. 13, 2012) ............................................... 4

*Huffman v. Electrolux N. Am., Inc.,*
961 F. Supp. 2d 875 (N.D. Ohio 2013) .................................................................. 17, 18

*Kadiak Fisheries Co. v. Murphy Diesel Co.,*
70 Wn.2d 153 (1967) ................................................................................................... 12

*Keegan v. Am. Honda Motor Co.,*
838 F. Supp. 2d 929 (C.D. Cal. 2012) ........................................................................ 21

*Kelly v. Elec. Arts, Inc.,*
2014 WL 5361641 (N.D. Cal. 2014) .............................................................................. 7

*Kerzman v. NCH Corp.,*
2007 U.S. Dist. LEXIS 17000 (W.D. Wash. Mar. 9, 2007) .................................... 10, 11

*Kinlaw v. Long Mfg. N.C., Inc.,*
259 S.E.2d 552 (N.C. 1979) ....................................................................................... 20

*Kuns v. Ford Motor Co.,*
926 F.Supp. 2d 976 (N.D. Ohio 2013) ....................................................................... 17

*Lebeau v. Lembo Corp.,*
2008 U.S. Dist. LEXIS 121668 (N.D. Ohio Sept. 15, 2008) ....................................... 17

*Lopez v. Nissan N. Am.,*
201 Cal. App. 4th 572 (2011) ..................................................................................... 21

*Marshall v. Hyundai Motor Am.,*
51 F. Supp. 3d 451 (S.D.N.Y. 2014) ........................................................................... 21

*McKay v. Novartis Pharms. Corp.,*
934 F. Supp. 2d 898 (W.D. Tex. 2013) ...................................................................... 23

*In re Metawave Communs. Corp. Sec. Litig.,*
298 F. Supp. 2d 1056 (W.D. Wash. 2003) .................................................................... 6

*Oliver v. Funai Corp.,*
2015 WL 3938633 (D.N.J. June 25, 2015) ................................................................. 20

*Philips v. Ford Motor Co.*,
  2015 U.S. Dist. LEXIS 88937 (N.D. Cal. July 7, 2015) ...........................................20

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
  880 F. Supp. 2d 801 (S.D. Ohio 2012) .......................................................................5

*Porter v. Chrysler Group LLC*,
  2013 U.S. Dist. LEXIS 104927 (M.D. Fla. July 25, 2013) ..........................................5

*Quill v. Albert M. Higley Co.*,
  26 N.E.3d 1187 (Ohio Ct. App. 2014) ......................................................................18

*Rice v. Sunbeam Prods.*,
  2013 U.S. Dist. LEXIS 7467 (C.D. Cal. Jan. 7, 2013) ................................................4

*Rite Aid Corp. v. Levy-Gray*,
  876 A.2d 115 (Md. App. 2005) .................................................................................20

*In re Splash Tech. Holdings Sec. Litig.*,
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) .......................................................................7

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Constr., Inc.*,
  119 Wn.2d 334 (1992) ..............................................................................................12

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*,
  110 S.W.3d 194 (Tex. App. 2003) ............................................................................23

*Urban Dev., Inc. v. Evergreen Bldg. Prods., LLC*,
  114 Wn. App. 639 (2002) .........................................................................................13

*Wegner v. Pella Corp.*,
  2015 U.S. Dist. LEXIS 60927 (D.S.C. May 5, 2015) ..................................................8

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  45 F. Supp. 3d 706, 719-20 (N.D. Ohio 2014) .........................................................18

### STATUTES

15 U.S.C. § 2310 ...................................................................................................................5

IOWA CODE § 714H.6(5) .....................................................................................................8

IOWA CODE § 714H.7 ..........................................................................................................8

OHIO REV. CODE § 2307.71(A)(7) .....................................................................................16

OHIO REV. CODE § 2307.71(A)(13) ...................................................................................16

OHIO REV. CODE § 2307.79 ..............................................................................................16

- iv -

U.C.C. § 2-313 ............................................................................................................... 19, 21

WASH. REV. CODE § 2.06.040 .......................................................................................... 13

WASH. REV. CODE § 62A.2-313 ..................................................................................... 9, 10

WASH. REV. CODE § 62A.2-313(1) .................................................................................... 9

**OTHER AUTHORITIES**

1 White, Summers, & Hillman, UNIFORM COMMERCIAL CODE § 10:15 ............................ 10

76 OH.JUR.3D PRODUCTS LIABILITY § 1 ......................................................................... 15

FED. R. CIV. P. 8(a)(2) ..................................................................................................... 22

FED. R. CIV. P. 9(b) ......................................................................................................... 22

WASH. GR 14.1 ............................................................................................................... 13

PLAINTIFFS' OPPOSITION TO FORD'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT
010388-11  793683 V1

Case No. 13-cv-3072-EMC

# I.    INTRODUCTION

Defendant Ford Motor Company's ("Ford" or "the Company") Motion to Dismiss the Second Amended Complaint should be denied.

Ford's main arguments regarding the Second Amended Complaint ("SAC") concern four categories of claims:  (1) fraud-based claims; (2) warranty claims; (3) other tort claims; and (4) contract claims.

<u>Fraud-Based Claims</u>:  Relying on a series of securities fraud cases, Ford erroneously contends in its dismissal memorandum ("Def. Mem.") that the fraud-based claims should be dismissed because Plaintiffs Miskell and Kirchoff allegedly "identify no potentially actionable misrepresentations" and because any representations identified by these Plaintiffs constitute "vague reference to advertisements" that "lack the requisite specificity and explanation of how they were false."  Def. Mem. at 2.  Contrary to Ford's arguments, Kirchoff's factual allegations are virtually identical to Plaintiff Miller's allegations, which this Court has already found satisfy Rule 9(b).  The SAC is also replete with facts that show that the representations made to Kirchoff were false.

Ford's arguments regarding the materiality of the misrepresentations to Plaintiffs who purchased a second Class Vehicle are also incorrect, because Ford assumes, without support, that these Plaintiffs knew or could have known that the MyFord Touch or MyLincoln Touch ("MFT") system was fatally flawed and that no universal fix would ever become available.  The SAC alleges sufficient facts to demonstrate that Plaintiffs could not have known that Ford was unable to fix the MFT system and that the Company would eventually abandon the system altogether.  Finally, Ford's argument regarding the Iowa Consumer Fraud Act does not rest on any established case law and is inconsistent with the plain reading of the statute.  Accordingly, Ford's motion to dismiss the fraud-based claims should be denied.

<u>Warranty Claims</u>:  Ford's arguments regarding certain warranty claims should also be rejected.  First, Plaintiff Kirchoff is not required to plead or prove that he was aware of Ford's Limited Warranty at the time of purchase.  Rather, he is only required to prove that the Limited Warranty, to which this Court has already determined applies to Plaintiffs, is "part of the basis of

- 1 -

1   the bargain" under the Washington state Uniform Commercial Code ("U.C.C."). The SAC clearly

2   alleges that is the case. The two summary judgment decisions relied on by Ford hold that

3   advertisements and oral representations are "part of the basis of the bargain" only if the plaintiff was

4   aware of them. But a Limited Warranty, in contrast, which was actually given to Plaintiffs, is

5   necessarily part of the basis of the bargain and does not require any showing that the Plaintiffs were

6   aware of it. And in any event, the record in this litigation plainly shows that Kirchoff can allege that

7   he was aware of the Limited Warranty and any deficiency regarding this claim can be easily cured.

8        Second, Ford relies on one unpublished decision from the Washington Court of Appeals to

9   erroneously assert that Kirchoff does not qualify as a third-party beneficiary under Washington's

10  "sum of the interaction" test. But under the "sum of the interaction" test adopted by the Washington

11  Supreme Court, Kirchoff sufficiently alleges Ford's involvement in his transaction (including **post-**

12  **sale efforts** to fix his MFT system) and therefore qualifies as an intended third-party beneficiary

13  under Washington law.

14       Third, Ford incorrectly argues that Plaintiff Mitchell's warranty claims should be dismissed

15  as to his second Class Vehicle, a Lincoln MKZ, because he did not bring that vehicle in for repair.

16  But in doing so, Ford fails to address this Court's acknowledgement that an excuse of futility could

17  apply if any repair attempts would not plausibly have corrected or improved the vehicle. Here, the

18  SAC provides detailed allegations showing that Ford has all but abandoned the MFT system and

19  therefore the futility exception applies to Mitchell's MKZ. As such, Ford's motion to dismiss

20  certain warranty claims should be denied.

21       Tort Claims:  Ford also raises the argument that the Ohio Product Liability Act ("OPLA")

22  abrogates Plaintiff Miskell's claims for negligence and breach of implied warranty in tort. But

23  Miskell seeks only economic damages relating to Ford's defective MyFord Touch. The case law

24  and relevant statutes in Ohio establish that economic loss claims do not constitute "product liability

25  claims" as defined by the OPLA, and therefore Miskell's claims are not abrogated.

26       Contract Claims:  In the SAC, Plaintiffs assert contract claims on the basis of Ford's

27  MyFord Touch Handbook ("Handbook"), which – like the Limited Warranty – was provided to

28

1   every Plaintiff and every purchaser or lessee of a Class Vehicle.  Plaintiffs' Handbook-based

2   contract claims survive as those statements became part of the basis of the bargain in each sale or

3   lease of a Class Vehicle.  Plaintiffs have also adequately identified the warranty statements

4   supporting their contract claims and the breaches made by Ford.  It is also clear from the record that

5   the Texas plaintiffs have satisfied all applicable notice requirements.

6   ## II.        CLAIMS DISMISSED BY THE COURT'S PREVIOUS ORDER

7            Ford requests in its Motion "that the Court reaffirm the dismissal of the claims in the SAC

8   that were previously dismissed pursuant to its May 30, 2014 Order."  Notice of Motion and Motion

9   to Dismiss ("Mot. to Dismiss") at ¶¶ 1-5.  Ford also provides, in Exhibit A to its dismissal

10  memorandum, a summary of:  (1) the claims it seeks to have the Court dismiss in its present motion;

11  (2) the claims it seeks to have the Court reaffirm based on the rulings in the previous motion to

12  dismiss; and (3) the claims where no action is requested.  Def. Mem., Ex. A.  Plaintiffs do not object

13  generally to Ford's request to have the Court reaffirm the dismissal of the claims the Court

14  previously dismissed in its May 30, 2014 Order (*i.e.*, the subsection (2) claims), as outlined in

15  Ford's Exhibit A.  However, Plaintiffs wish to address three items relating to Ford's request for

16  reaffirmation of the dismissed claims.

17           First, Ford asks this Court to reaffirm the dismissal of Iowa Counts I and V while

18  simultaneously seeking a ruling to dismiss those claims in the SAC.  *See* Mot. to Dismiss at 1, n.1,

19  ¶ 8.  In Exhibit A, Ford states that it is only seeking a ruling on its current motion to dismiss those

20  claims and does not also indicate that it is seeking reaffirmation of the prior dismissal.  *Compare*

21  Mot. to Dismiss at 1, n.1 *with* Def. Mem., Ex. A at 4.  In order to clarify the record, Plaintiffs agree

22  that Iowa Counts I and V were dismissed previously only to the extent those claims were based on

23  affirmative misrepresentations.  The Court's May 30, 2014 Order did not dismiss these claims to the

24  extent they were based on fraudulent omissions.

25           In addition, two claims that this Court dismissed without prejudice should be reinstated

26  based on new allegations in the SAC, and not reaffirmed as dismissals as proposed by Ford.  First,

27  Ford erroneously argues that Plaintiff Miller did not provide Ford with an opportunity to repair his

28

- 3 -

1    vehicle.  Def. Mem. at 4, n.2.  Miller testified at his deposition (and alleges in the SAC) that he

2    "notified the sales manager, the concierge, and Mr. Nick D'Andrea at Park Ford of problems he was

3    experiencing with the MyFord Touch system on multiple occasions but they failed to address his

4    concerns."  SAC ¶ 143.  In *Gertz v. Toyota Motor Corp.*, the court held that a phone call to the

5    dealership complaining of an issue satisfied the "opportunity to repair" requirement if the dealership

6    declined to repair or was otherwise unable to repair the problem.  2011 U.S. Dist. LEXIS 94183, at

7    *9-10 (C.D. Cal. Aug. 22, 2011) (dismissing express warranty claim on other grounds); *see also*

8    *Horvath v. LG Elecs. MobileComm U.S.A., Inc*., 2012 U.S. Dist. LEXIS 19215, at *18 (S.D. Cal.

9    Feb. 13, 2012) (holding multiple discussions with cellular carriers and manufacturers is sufficient to

10   satisfy the opportunity to repair requirement).  Ford erroneously relies on *Rice v. Sunbeam Prods.*,

11   2013 U.S. Dist. LEXIS 7467, at *33 (C.D. Cal. Jan. 7, 2013), in which the court dismissed the

12   plaintiff's express warranty claim because the plaintiff called to complain but did not present the

13   allegedly defective device for repair after the defendant requested it.  In contrast, Miller complained

14   of the specific issues he was experiencing with his MyFord Touch (*e.g.*, inability to pair his mobile

15   device, unresponsive navigation, failure to play music through USB) with Ford dealership

16   employees.  And as Plaintiffs have alleged in the SAC, Ford has not been able to fix the defects in

17   the MFT system.  *See* SAC ¶¶ 285-90; *see also Horvath*, 2012 U.S. Dist. LEXIS 19215, at *18

18   (recounting plaintiffs' allegations that the manufacturer provided replacement cell phones that were

19   "defective and afflicted with the same defects").  There is therefore no merit to Ford's argument that

20   Miller was required to allege he specifically sought repair for these issues, as opposed to alleging he

21   had discussions about the numerous issues he was having with his MFT system with dealership

22   employees who were also the very individuals supposedly capable of performing of any repairs to

23   the system.[1]

24

25   ───────────────

26   [1] In addition, Ford is fully aware that Plaintiff Miller testified throughout his deposition that he
     brought his Class Vehicle into the dealership for repair on multiple occasions throughout the life of
     his lease and that during those visits he routinely raised his concerns.  Thus, any deficiency in

27   pleading as to whether Miller actually brought his car in for a repair while raising the issues outlined
     above can be easily cured.

28

Second, Ford incorrectly asserts that Plaintiff Creed's Magnuson-Moss ("MMWA") claim should be dismissed because he did not allege that he notified Ford that he was asserting class action claims before contacting the Better Business Bureau, which is required pursuant to 15 U.S.C. § 2310(a)(3).  Def. Mem. at 4, n.5.  Section 2310, however, requires potential class representatives to inform the defendant that they are acting on behalf of a class after the court determines the representative capacity of the plaintiffs (*i.e.*, certifies a class under Fed. R. Civ. P. 23).  *See In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig*., 880 F. Supp. 2d 801, 824 (S.D. Ohio 2012) ("Once a court [establishes the representative capacity of the named plaintiffs], but before the class action can proceed, the defendant must be afforded an opportunity to cure the alleged breach of warranty and the named plaintiffs must at that point inform the defendant that they are acting on behalf of a class.") (citations omitted); *see also Galitski v. Samsung Telecomms. Am., LLC*, 2013 U.S. Dist. LEXIS 171908, at *43-44 (N.D. Tex. Dec. 5, 2013) (citing *In re Porsche*); *Porter v. Chrysler Group LLC*, 2013 U.S. Dist. LEXIS 104927, at *7-9 (M.D. Fla. July 25, 2013) (representative plaintiffs can file a class action suit without first notifying the defendant they are proceeding as a class and denying defendant's motion to dismiss MMWA claim pursuant to 15 U.S.C. § 2310).  Ford's argument is therefore premature and should be rejected, because the Court has not yet established the representative capacity of the named Plaintiffs.

### III.    PLAINTIFFS STATE A VALID CLAIM FOR CERTAIN FRAUD-BASED CAUSES OF ACTION

**A.    This Court has already found allegations virtually identical to those made by Plaintiff Kirchoff adequately stated a claim for affirmative misrepresentations.[2]**

In the Order denying in part the dismissal of the First Amended Complaint ("FAC"), this Court ruled that Plaintiff Miller adequately pled an affirmative misrepresentation claim.  ECF No. 97 at 12 (the "Order") ("For Mr. Miller, there is the allegation that, he 'was aware of some mixed reviews of [MFT], [but] he was informed by the sales representatives at Mahopac Ford that Ford

---

[2] Plaintiffs do not oppose Ford's request that this Court affirm its dismissal of the fraud-based affirmative misrepresentation claims brought by the Plaintiffs named in the First Amended Complaint (excluding Plaintiff Miller).  Plaintiffs also do not oppose Ford's request to dismiss the fraud-based affirmative misrepresentation claim brought by Plaintiff Miskell.

had corrected any defects in [MFT] … [t]his is an affirmative misrepresentation….").  Nonetheless, Ford now erroneously contends that the allegations set forth by Plaintiff Kirchoff do not support an affirmative misrepresentation claim.[3]

Ford's arguments lack merit.  First, Kirchoff's detailed factual allegations are virtually identical to Miller's allegations, which this Court has already found to be sufficient under Rule 9(b). Similarly to Miller, Kirchoff alleges that he "was aware of some mixed reviews of MyFord Touch, [but] he was informed by the sales representatives at Bickford Ford that Ford had made significant improvements to the MyFord Touch system."  SAC ¶ 207.  Kirchoff also alleges that he saw advertisements which stated that "Ford had made significant upgrades and corrections to the [MFT] system between the 2012 and 2013 model years."  *Id.*

Furthermore, Plaintiffs' Second Amended Complaint is replete with facts that show the representations made to Plaintiff Kirchoff were in fact false.  *See, e.g.*, SAC ¶¶ 14, 17, 205-06.  For example, Mark Fields (the current CEO of Ford) complained in an email dated April 24, 2013, (approximately two months after Kirchoff purchased his vehicle) that he stopped using the MFT system in his own vehicle due to problems he began experiencing just months earlier.[4]

Finally, Ford provides no sound basis for concluding that Kirchoff's allegations differ "substantially" from Miller's or that the term "significant improvements" used by Kirchoff is vague. Instead, Ford simply points to a series of inapposite securities fraud decisions which analyze whether certain statements are actionable under Section 10(b) of the Securities Exchange Act of 1934.[5]  Consistent with its previous Order, this Court should reject Ford's argument that Kirchoff fails to state an affirmative misrepresentation claim.

---

[3] Ford contends that Kirchoff's allegations fail to meet Rule 9(b), that Plaintiffs do not allege facts that establish the falsity of the representations, and that even if the alleged representations were false, they are insufficient to sustain a claim for fraud because they are "so vague that no reasonable consumer would rely on them."  Def. Mem. at 11.  Ford also points to its vagueness argument to support its position that Kirchoff's allegations are distinguishable from Miller's allegations.  *Id.*

[4] *See* SAC ¶ 8. ("Is this for real … do our customers really have to wait until July???  I started experiencing this [defect] back in early January … I don't even use the system anymore.").

[5] *See In re Metawave Communs. Corp. Sec. Litig.*, 298 F. Supp. 2d 1056, 1090 (W.D. Wash. 2003) ("To determine whether a statement is mere puffery, the Court must examine whether a

- 6 -

1

**B.    Plaintiffs who purchased a second MFT-equipped vehicle can still assert a fraud claim.**

2

3          This Court has already explained that "if the MFT system was so desirable, then it would not

4    be surprising for Plaintiffs to consider a problem with the system – particularly a systemic one – a

5    material fact."  Order at 15.  This Court also noted that it was "odd for Ford to quibble with

6    materiality here when it promoted the MFT system as a desirable component of a vehicle in the first

7    place."  *Id.*

8          Nevertheless, Ford again argues that Plaintiffs Rodriguez and Mitchell cannot establish the

9    materiality element of their fraudulent omission claims relating to their first vehicles.  This time

10   around, Ford argues that new allegations in the SAC regarding the purchase of second vehicles

11   equipped with the MFT systems automatically preclude Rodriguez and Mitchell, as a matter of law,

12   from alleging materiality.[6]  Contrary to Ford's assertions, these additional allegations do not disturb

13   this Court's previous finding.

14         Ford's argument is misplaced because it assumes, without support, that Rodriguez and

15   Mitchell knew or could have known that the MFT system was *fatally* flawed and that no universal

16   fix would ever become available.  Beginning in 2011, when the MFT system was relatively new,

17   Ford refused to acknowledge the extent of the defect.  *See, e.g.*, SAC ¶ 11 (Ford's former CEO,

18   Alan Mulally, attempted to mitigate the extent of the defects at a press conference on May 31, 2011,

19   by stating that Ford was having only "***a few issues with some*** of the newer technologies associated

20   with SYNC and MyFord Touch.") (emphasis added).  And Ford issued multiple Technical Service

---

21   statement is so 'exaggerated' or 'vague' that no reasonable investor would rely on the statement
     when considering the total mix of available information."); *In re Splash Tech. Holdings Sec. Litig.*,
22   160 F. Supp. 2d 1059, 1076 (N.D. Cal. 2001) (adopting the *Hoxworth* approach, which "emphasizes
     that the defining question is whether the statement is immaterial; that is whether the statement is so
23   'exaggerated' or 'vague' that no reasonable investor would rely on it when considering the total mix
     of available information"); *Kelly v. Elec. Arts, Inc.*, 2014 WL 5361641, at *7 (N.D. Cal. 2014)
24   ("'[V]ague, generalized, and unspecific assertions' of corporate optimism or statements of 'mere
     puffing' cannot state actionable material misstatements of fact under federal securities laws.")
25   (citing *In re CornerStone Propane Partners, L.P.*, 355 F. Supp. 2d 1069, 1087 (N.D. Cal. 2005)).

26         [6] Plaintiff Rodriguez alleged that he purchased a 2012 Ford Explorer for the exclusive use of his
     sister and her family on or around December 12, 2011.  SAC ¶ 178.  This purchase occurred
27   approximately seven months after he purchased his 2012 Ford Focus.  *Id.* at ¶ 171.  Plaintiff
     Mitchell purchased a 2014 Lincoln MKZ Hybrid in January 2014 for the exclusive use of his wife.
     *Id.* at ¶ 101.  This purchase occurred a couple months after this case was initially filed.

28

PLAINTIFFS' OPPOSITION TO FORD'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT            Case No. 13-cv-3072-EMC
010388-11  793683 V1

1    Bulletins *in secret*, in a failed attempt to address the defect. *Id.* ¶ 12. Ford even stated that it would

2    continue to work on fixing the problem until a remedy was found, even though internally it had

3    abandoned the MFT system. *Id.* ¶ 16. In fact, on December 11, 2014, Ford announced that it would

4    be abandoning the MFT system for a completely new system, to which no MyFord Touch customer

5    would be able to upgrade without the purchase of an entirely new vehicle. *Id.* ¶ 17. All of this goes

6    to show that Rodriguez and Mitchell had no way of plausibly knowing that the MFT system was

7    *fatally* flawed since Ford had refused to publicly acknowledge the defect or the fact that they were

8    simply incapable of repairing it. In sum, this Court should affirm its previous ruling that Rodriguez

9    and Mitchell have adequately pled materiality in connection with their fraudulent omission claims

10   for their first vehicles.[7]

11   **C.      This Court should not dismiss Plaintiff Mitchell's Iowa Consumer Fraud Act claim.**

12           Ford provides no support for its contention that this Court must dismiss Plaintiff Mitchell's

13   claims under the Iowa Consumer Fraud Act ("ICFA") because the SAC does not include an allega-

14   tion that "he has obtained the required permission from the Iowa Attorney General." Def. Mem. at

15   14. Nowhere in the ICFA is it contemplated that a case should be dismissed if the plaintiff has not

16   secured authorization from the Iowa Attorney General.[8] In fact, Section 714H.6 states that "[f]ail-

17   ure to provide the required mailings to the attorney general shall ***not*** be grounds for dismissal of an

18   action under this chapter…." IOWA CODE § 714H.6(5) (emphasis added).[9]

19

20         ---

             [7] Ford also erroneously argues that Plaintiff Rodriguez cannot maintain a claim for fraudulent
21   omissions as to the second vehicle (the 2012 Ford Explorer) because he was "armed with actual
     knowledge of the alleged problems at the time of purchase." Def. Mem. at 13. This argument must
22   also fail for the same reasons discussed. Rodriguez could not have known of the fatal flaw and
     irreparability in the MFT system, even if he had experienced certain issues with his first vehicle in
23   the months prior to the purchase of the second vehicle. As for Plaintiff Mitchell, Plaintiffs concede
     he will not pursue his fraudulent omission claim as to the 2014 Lincoln MKZ Hybrid at this time.
24         [8] Ford relies on *Wegner v. Pella Corp.*, 2015 U.S. Dist. LEXIS 60927 (D.S.C. May 5, 2015), as
     support for its assertion that Plaintiff Mitchell's claims must be dismissed because he did not
25   provide notice to the attorney general, but it is not binding or persuasive. In that case, the court
     merely reiterates what is already written out in the statute, and is going through that exercise for the
26   sole purpose of determining if the ICFA is based within the civil or criminal context. While the
     decision does, in Ford's words, "recognize[] the notification requirement" codified in the statute, it
27   most certainly cannot stand as an authority that requires the dismissal of Plaintiff Mitchell's claims.
           [9] The ICFA also requires the attorney general to provide his or her authorization, unless he or
28   she deems the case frivolous. *See* IOWA CODE § 714H.7 ("The attorney general ***shall approve*** the

## IV.   NEW PLAINTIFFS PROPERLY STATE BREACH OF WARRANTY CLAIMS

### A.   Plaintiff Kirchoff is not required to plead or prove that he was aware of the terms of Ford's Limited Warranty.

Ford erroneously argues that Plaintiff Kirchoff's Count II claim for the Washington Class (breach of express warranty under Washington law, under Wash. Rev. Code § 62A.2-313) should be dismissed "because he does not allege that he was aware of the terms of Ford's Limited Warranty before purchasing his vehicle.  (*See* SAC ¶¶ 1044-61)."  Def. Mem. at 15.  Contrary to Ford's assertion, Kirchoff need not allege or prove that he was "aware of" Ford's Limited Warranty.  Instead, he must prove that the Limited Warranty was "part of the basis of the bargain."

The Revised Code of Washington provides certain affirmations, promises, descriptions, samples, and models that are "part of the basis of the bargain" and constitute express warranties:

> (1) Express warranties by the seller are created as follows:
>
>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>>
>> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>>
>> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Wash. Rev. Code § 62A.2-313(1).  Kirchoff expressly alleges in the SAC that the Limited Warranty was part of the basis of his bargain with Ford:

> 286. In connection with the sale (by purchase or lease) of each one of its new vehicles, Ford provides an express limited warranty on each vehicle.  In those warranties, Ford promises to repair any defect or malfunction that arises in the vehicle during a defined period of time.  This warranty is provided by Ford to the vehicle owner in writing and regardless of what state the customer purchased his or her vehicle in.  Ford issues one warranty for Ford vehicles, and a separate warranty for Lincoln vehicles.  Ford also issues a separate warranty for each model year, although all of the terms of the warranty are largely similar from year to year and regardless of whether the warranty was

filing of a class action lawsuit alleging a violation of this chapter ***unless the attorney general determines that the lawsuit is frivolous***.") (emphasis added).

1

2

3

4

> issued with regard to Ford vehicles, or Lincoln vehicles.  As further
> alleged below, the relevant terms of the warranties in this case are
> identical, regardless of the model year, or whether the warranty was
> issued on Ford vehicles, or Lincoln vehicles.
>
> 287. Each Plaintiff was provided with a warranty and it was a
> basis of their purchase of their vehicles.

5    SAC ¶¶ 286, 287.  And Count II for the Washington Class incorporates those allegations.  *See* SAC

6    ¶ 1044 ("Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth

7    herein.").

8         Ford relies on two inapposite decisions in erroneously contending that Kirchoff must also

9    allege that he was aware of the Limited Warranty.  Those two cases address whether advertisements

10   and oral statements – not express limited warranties provided to customers – are "part of the basis of

11   the bargain" under Section 62A.2-313.  In *Baughn v. Honda Motor Co.*, 107 Wn. 2d 127 (1986), the

12   plaintiff "testified that he bought the mini-trail bike because of television ads that said 'You meet

13   the nicest people on a Honda', described the mini-trail bike as a very good bike for children and

14   showed children riding minibikes." *Id*. at 150.  In discussing the ads, the Washington Supreme

15   Court explained that "the UCC does not require a plaintiff to show reliance on the manufacturer's

16   statements…" but that a plaintiff relying on such *ads* "must at least be aware of such representations

17   to recover for their breach." *Id*. at 152 (footnote omitted).[10]  The court then held that although the

18   plaintiff was aware of the ads, they did not constitute warranties:

19

20

21

> Here, the only statements made by Honda of which Bratz was aware
> described the mini-trail bike as a good one for children and stated that
> "You meet the nicest people on a Honda."  Such statements do not
> rise to the level of express representations for which recovery under
> the UCC is allowed.

22   *Id*.  Similarly, in the other case cited by Ford, *Kerzman v. NCH Corp.*, 2007 U.S. Dist. LEXIS

23   17000 (W.D. Wash. Mar. 9, 2007), the plaintiffs did not rely on an express warranty provided to

24

---

25         [10] *See* 1 White, Summers, & Hillman, Uniform Commercial Code § 10:15 (6th ed.) ("It is
clear that an advertisement can be a part of the basis of the bargain, and it is only fair that it be so.

26   However, the language in Comment 3, from which some have found a presumption, is limited to
'affirmations of fact made by the seller about the goods during a bargain….'  In the usual case, an

27   advertisement is not made 'during a bargain,' and therefore, advertisements would normally not
qualify for the presumption under Comment 3.  At minimum, a plaintiff in such a case should have

28   to testify that he or she knew of and relied upon the advertisement in making the purchase.").

1    them.  Instead, the "sole basis for their express warranty claim is that the Defendant's representative

2    knew Mr. Kerzman used an extractor when cleaning spots off of carpet and told Mr. Kerzman that

3    he could use DS-67 Plus in the same manner." *Id.* at *17.  The court held that the plaintiff presented

4    sufficient evidence to establish her warranty claim, because she "testified that Mr. Kerzman told her

5    what he had learned from the representative and that it was okay to use the extractor."  *Id.* at *19.

6           Thus, neither *Baughn* nor *Kerzman* suggested, let alone held, that a plaintiff must allege and

7    prove that he was aware of an express limited warranty provided to all customers in order to recover

8    for breach of that warranty.  An advertisement or oral statement cannot be part of the basis of the

9    bargain if the buyer isn't even aware of it before using the product.  In contrast, Kirchoff alleges

10   that Ford's Limited Warranty was provided to all customers, including him, and necessarily became

11   part of the basis of the bargain.  Ford cannot seriously contend that its Limited Warranty was *not*

12   part of the basis of the bargain for all customers who received it.

13          But if this Court concludes that Kirchoff must explicitly allege that he was aware of Ford's

14   Limited Warranty in order to plead a claim of breach of express warranty, he seeks leave to amend

15   the SAC to allege his awareness.  Kirchoff will allege that he previously purchased a 2009 Ford F-

16   250 from a Ford dealership.  He also received service on this vehicle from Parr Ford for various

17   issues including, but not limited to: a broken panel on the drivers' seat base; rust spots on the

18   drivers' running board; and a noise issue emanating from the right passenger floor area.  All of these

19   issues were provided by Parr Ford at no charge to Plaintiff.  In addition, the service records

20   associated with these concerns indicate that the repairs were covered by "WARRANTY" and are

21   dated within the standard three-year Limited Warranty time period that followed the purchase of

22   Kirchoff's 2009 F-250.  So it is clear that Kirchoff was very much aware of, and relied upon, Ford's

23   Limited Warranty when he traded in his 2009 F-250 for his 2013 F-250.  Thus, any deficiency in

24   pleading as to his awareness of the Limited Warranty can be easily cured.

25   **B.      Plaintiff Kirchoff alleges sufficient facts to qualify as an intended third-party
              beneficiary and, therefore, has privity with Ford.**

26

27          Ford incorrectly asserts that Kirchoff does not allege a claim for breach of implied warranty

28   under the third-party beneficiary exception to the privity requirement.  Def. Mem. at 15.  Ford

1    correctly asserts that Washington applies a "sum of the interaction" test to decide "whether the

2    manufacturer was sufficiently involved in the transaction (including post-sale) with the remote

3    purchaser to warrant enforcement of an implied warranty." *Id.* at 15-16.  But Ford then erroneously

4    argues that Kirchoff does not qualify due to the sole reason that, according to Ford, his only

5    interaction with Ford was "several calls with Ford's customer service hotline after he purchased his

6    vehicle" and that this is not sufficient to meet the "sum of interaction" test.  *Id.* at 16.

7        Kirchoff indeed qualifies as an intended third-party beneficiary.[11]  The two lead decisions on

8    intended third-party beneficiaries are *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 70 Wn.2d 153

9    (1967), and *Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Constr., Inc.*, 119 Wn.2d

10   334 (1992).  In both those cases, the Supreme Court assessed numerous factors in deciding whether

11   a customer was the third-party beneficiary of a contract and many apply here.  Here, Ford delivered

12   the product to Kirchoff in the form of software updates accessible exclusively through his Ford-

13   operated SYNC account, and Ford representatives were also made available via email, telephone,

14   and social media in case Kirchoff had any questions or concerns regarding the installation of SYNC

15   software updates.  When Kirchoff visited Bickford Ford to seek service on his vehicle, the

16   dealership technicians most likely looked to Ford technicians via the CQIS database.[12]  SAC ¶ 279.

17   And most tellingly, Kirchoff alleges that in addition to those Bickford Ford service visits, he

18   contacted Ford on a regular basis over a series of months via email and by phone, alleging in the

19   SAC that he spent 20 hours on the phone with the Ford SYNC support team "diagnosing the

20   problems, documenting several issues, and receiving commitments that those issues would be

21

22

23   ————————————————

     [11] Kirchoff alleges an exception to the privy requirement as an intended third-party beneficiary.
     SAC ¶ 1060.

24   [12] The CQIS records routinely chronicle dealership technicians seeking guidance from Ford
     technicians and engineers, who were perceived as having more knowledge to provide instructions

25   on how best to troubleshoot and resolve MFT problems.  *See* SAC ¶ 279 ("looking for direction";
     "wondering if there is something with engineering that would be a problem.  Just trying to see if

26   there is something we should know"; "[dealership] is working with the [customer], problem is with
     FMC product"; "[dealership] is making final attempt to repair but isn't expecting the concern to be

27   corrected, ETA on repair to be completed unknown"; "Tech Question: What could cause this and
     have you experienced any other concerns of this nature? Suggestions?").

28

PLAINTIFFS' OPPOSITION TO FORD'S MOTION
TO DISMISS SECOND AMENDED COMPLAINT                              Case No. 13-cv-3072-EMC
010388-11  793683 V1

1    carefully reviewed by the [Ford] software team for a future software release."[13]  SAC ¶ 208.  So

2    Kirchoff had regular and substantial contact with Ford, which makes him a third-party beneficiary

3    under the "sum of the interaction" test.

4           Ford bases its argument on an unpublished case, *Babb v. Regal Marine Indus.*, 2015 Wash.

5    App. LEXIS 369 (Wash. Ct. App. Feb. 24, 2015), in which the court held that the plaintiff, who

6    purchased a boat from a dealership, was not the third-party beneficiary of a contract between the

7    dealership and the manufacturer of the boat.  Under Washington law, unpublished decisions lack

8    precedential value, and under the state's General Rules, they may not be cited as authority.  WASH.

9    REV. CODE § 2.06.040; WASH. GR 14.1.  But in any event, *Babb* is inapposite.  The *Babb* court

10   stated that "[o]ur courts apply the 'sum of the interaction' test essentially to determine whether the

11   manufacturer was sufficiently involved in the transaction (***including post-sale***) with the remote

12   purchaser to warrant enforcement of an implied warranty."  *Babb* at *8 (emphasis added).  In *Babb*,

13   the plaintiff could not establish that the repair shop "ever did any work on Babb's boat with or

14   without [the manufacturer's] approval."  *Id.* at *11.  In contrast, Ford has paid for *all* of the service

15   attempts on Kirchoff's MFT system.  In fact, Ford has extended the express warranty so that it will

16   continue to be responsible for payments related to all MFT system repairs for an additional year.

17   SAC ¶ 264.  There are also no separate warranties regarding the MFT system made by any other

18   manufacturer or by the dealership, as there was in *Babb*.  In contrast, Ford spent over 20 hours with

19   Kirchoff attempting to resolve his problems.  Ford also approved and distributed the standard repair

20   instructions and maintained the CQIS database, which provided dealership technicians, such as

21   those at Bickford Ford, with direct access to Ford experts to respond to their questions and

22   concerns.  SAC ¶ 279.  This is markedly different from the situation in *Babb*, where a series of post-

23   sale phone calls (the substance of which are not known) was isolated to that issue, and not, as in the

24

25

26          [13] Kirchoff's experience is in stark contrast to *Urban Dev., Inc. v. Evergreen Bldg. Prods., LLC*,
     114 Wn. App. 639 (2002), in which an implied warranty of merchantability did not apply to a
27   general contractor of a leaking condominium complex, in part because the general contractor had no
     interaction with the siding manufacturer.

28

- 13 -

case of Ford, part of an overall nationwide repair and customer service effort implicating hundreds, if not thousands, of Ford employees.  SAC ¶ 264.

**C.     Plaintiff Mitchell alleges sufficient facts to bring a breach of warranty claim for his newly purchased vehicle, the 2014 Lincoln MKZ.**

Ford erroneously contends that Plaintiff Mitchell fails to state a claim for breach of express warranty for his 2014 Lincoln MKZ Hybrid.  In only six lines, Ford asserts that Mitchell cannot state any breach of warranty claim upon which relief can be granted with respect to his Lincoln MKZ, "because he never sought or obtained a repair to [his MFT]."  Def. Mem. at 16.  Ford then cites to the portion of this Court's Order dismissing four breach of warranty claims where "plaintiffs failed to allege that their MFT had been repaired."  *Id.*

Ford overlooks this Court's reasoning in dismissing the warranty claims of four plaintiffs.[14] This Court dismissed the claims of four plaintiffs not only because they did not present their MFTs for repair *but also* because they did not allege futility.  This Court stated that it "acknowledges that futility may, in theory, be a basis for an excuse" and that "[w]hile [39 complaints] is more than just a handful of complaints and certainly raises the possibility of futility, it still does not meet the requisite plausibility standard of *Iqbal* and *Twombly*."  Order at 34-35.  In other words, the FAC did not provide "a sense of whether Ford's alleged inability to fix the problems with MFT was commonplace, unique to Plaintiffs, or somewhere in between."  *Id.* at 34.

The Second Amended Complaint cures this deficiency and meets the requisite plausibility standard that Ford's inability to fix the problems with the MFT was commonplace and not unique to Plaintiffs.  The SAC alleges that by January 2014, Ford documents showed that software bugs and failures of the software process and architecture were some of the causes of the malfunctioning MFT system, signifying a widespread issue.  SAC ¶ 13.  Plaintiffs also allege that by January 2014,

---

[14] Ford erroneously states that this Court dismissed four warranty claims because the Plaintiffs "failed to allege that their MFT had been repaired."  *Id.*  In fact, this Court explained that Ford argued in seeking dismissal of the original complaint that those four Plaintiffs "do not have viable express warranty claims because they never brought their cars in for repairs in the first instance. Without doing so, Ford contends, these Plaintiffs cannot assert a failure of essential purpose because Ford was never given the opportunity to repair, replace, or adjust the MFT system in their cars." Order at 33.  Thus, this Court addressed whether the Plaintiffs alleged that they brought in their MFT systems for repairs, not that the systems in fact were repaired.

- 14 -

1    Ford technicians had chronicled repeatedly, and with precision, how the defects of the MFT system

2    impacted the safety of Ford customers.  *Id.* ¶ 279.  The SAC also alleges that hundreds of com-

3    plaints of Ford's own employees existed by that time, chronicling and complaining of the same

4    issues plaguing Plaintiff Mitchell.  *Id.* ¶ 280.  Employees at all levels also expressed the same

5    growing feelings of futility experienced by Mitchell.  *Id.* ¶ 8.  Finally, by January 2014, numerous

6    media articles, from a variety of trusted sources, had outlined the problems with the MFT and

7    Ford's clear inability to correct them.  *Id.* ¶ 9.

8         Mitchell also had direct knowledge of Ford's inability to fix the problems associated with

9    his MFT system.  The SAC alleges that by the time he purchased his MK<u>Z</u> in January 2014, he had

10   already brought in his MK<u>X</u> for service on the MFT system on at least three occasions and installed

11   multiple software updates through the SYNC website.  *Id.* ¶ 98.  Mitchell also alleges that none of

12   these repairs or software updates corrected the problems associated with his MFT system in the

13   MKX.  *Id.*  So Mitchell already had first-hand knowledge of the futility of bringing a Class Vehicle

14   in for MFT servicing and reasonably relied on that knowledge to guide his actions regarding the

15   MKZ.  These allegations meet the plausibility standard that seeking repairs to the MFT in the MKZ

16   was futile.  Therefore, Mitchell sufficiently alleges that he should be excused from taking his 2014

17   MKZ in for repairs, and states a valid warranty claim.

18                      **V.      THE OHIO PRODUCTS LIABILITY ACT DOES NOT
                              ABROGATE PLAINTIFF MISKELL'S TORT CLAIMS**

19

20        Ford incorrectly contends that the Ohio Product Liability Act ("OPLA") abrogates Plaintiff

21   Miskell's claims for negligence and breach of implied warranty in tort.  Def. Mem. at 16.  The

22   OPLA does not abrogate common law claims seeking purely economic damages.[15]  Miskell's

23   claims are limited to economic harm and do not involve personal injury or property damage.  So his

24

25   _____

26        [15] *See, e.g.*, 76 OH.JUR.3D PRODUCTS LIABILITY § 1 ("Although a cause of action may concern a
     product, it is not a 'product liability claim' within the purview of Ohio's product liability statutes
27   unless it alleges damages other than economic ones.... Ohio's products liability statutes, by their
     plain language, neither cover nor abolish claims for purely economic loss caused by defective
28   products.").

                                                  - 15 -

claims are not "product liability" claims as defined by the OPLA.  More specifically, the OPLA

defines a product liability claim as follows:

> "Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code **and** that **seeks to recover** compensatory damages from a manufacturer or supplier **for death, physical injury to person, emotional distress, or physical damage to property other than the product in question**, that allegedly arose from any of the following: (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product; (b) Any warning or instruction, or lack of warning or instruction, associated with that product; (c) Any failure of that product to conform to any relevant representation or warranty.

OHIO REV. CODE § 2307.71(A)(13) (emphasis added).  As a matter of statutory interpretation, courts

must give effect to every word in a statute.  *See Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d

863, 883 (9th Cir. 2001) ("We are bound, though, to give meaning to every word of a statute.").

The use of "and" in the definition of a product liability claim clearly establishes that, as a threshold

issue, a claim must seek recovery for death, physical injury, emotional distress, or physical damage

to property other than the product in question for it to be a statutory product liability claim.

This distinction between claims seeking purely economic damages and other claims arises

elsewhere within OPLA.  The damages provisions of OPLA provides that economic damages can

only be recovered where there are also compensatory damages for "harm."  OHIO REV. CODE §

2307.79.  The OPLA defines "harm" as "death, physical injury to person, serious emotional distress,

or physical damage to property other than the product in question," and goes on to specifically

provide that "[e]conomic loss is <u>not</u> 'harm.'"  OHIO REV. CODE § 2307.71(A)(7) (emphasis added).

Under these provisions, if a claim seeking both economic and personal injury damages proceeds

under the OPLA, but fails to produce an award of damages for "harm" (*i.e.*, physical injury, death,

etc.), there can be no award of economic damages even if they are demonstrated.  This is consistent

with the OPLA's definition of "product liability claim," because a claim on which there is no

1    "harm" but only economic damages is not a "product liability claim" under the OPLA, and only

2    "product liability claims" are abrogated.[16]

3         Ford relies on *Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875 (N.D. Ohio 2013),

4    for the proposition that OPLA abrogates all products liability common law negligence claims.

5    Ford's selective citation of *Huffman* fails to highlight the court's statement that "Defendant con-

6    cede[d] that the OPLA does not destroy stand alone common-law product liability claims seeking

7    only economic loss damages." *Id.* at 880, n.3.  Indeed, *Huffman* observed that "Ohio law does not

8    support circumscribing a plaintiff's right to the remedy of economic loss damages.  Under Ohio law,

9    the right to a remedy, and more specifically a consumer's right to recover solely economic loss

10   damages is well established." *Id.* at 881-82.  As such, *Huffman* does not help Ford's argument that

11   OPLA abrogates Miskell's claims.

12        The other cases that Ford relies on are also distinguishable.  *Doty v. Fellhauer Elec., Inc.*,

13   888 N.E.2d 1138, 1139 (Ohio Ct. App. 2008), involved damages to a residence caused by a fire, so

14   there was no issue of economic versus non-economic damages.  In *Lebeau v. Lembo Corp.*, 2008

15   U.S. Dist. LEXIS 121668, at *1 (N.D. Ohio Sept. 15, 2008), the plaintiff suffered personal injuries

16   in an accident involving an industrial laminating machine, which also did not fall within the ambit

17

18        [16]  The Ohio General Assembly was undoubtedly aware of how it had defined a "products
     liability claim" when it amended the OPLA in S.B. 80 – the amendments that Ford uses to argue
19   abrogation of all common law causes of action.  Before the passage of S.B. 80, the Ohio Supreme
     Court had held that common law causes of action for personal injury and property damage survived
20   the passage of the OPLA.  *Carrel v. Allied Prods. Corp.*, 677 N.E.2d 795, 799-800 (Ohio 1997).
     S.B. 80's abrogation of all common law causes of action was intended to deal with this overlap, not
21   to extinguish common law causes of action dealing solely with economic harm.  From the
     perspective of substance, an implied warranty in a tort claim is more akin to a breach of contract
22   action because it involves the parties' reasonable expectations on their agreement, not a true tort,
     and there is no indication in S.B. 80 that the General Assembly intended to abrogate claims dealing
23   solely with economic harm.  Notably, virtually all post-S.B. 80 cases take this approach.  *See, e.g.*,
     *Hartman v. Mercedes-Benz, U.S.A., L.L.C.*, 2010 WL 907969, at *7 (N.D. Ohio Mar. 11, 2010)
24   (relying on *LaPuma* to find that a buyer could assert implied warranty in tort against a
     manufacturer); *Flex Homes, Inc. v. Ritz-Craft Corp. of Mich.*, 2009 WL 3242140, at *20 (N.D. Ohio
25   Sept. 30, 2009) (consumer who is not in privity with the manufacturer can assert implied warranty
     in tort claims); *In re Ford Motor Co., Spark Plug and 3-Valve Engine Prods. Liab. Litig.*, 2014 WL
26   3778592, at *41-42 (N.D. Ohio July 30, 2014) (allowing a plaintiff to bring a cause of action for
     negligence and implied warranty in a tort claim against Ford for economic damages alone); *but see*
27   *Kuns v. Ford Motor Co.*, 926 F.Supp. 2d 976, 986-87 (N.D. Ohio 2013) (refusing to allow product
     liability tort actions where only economic harm is alleged).

28

                                          - 17 -

1    of *Huffman*.  Ford also cites *Quill v. Albert M. Higley Co.*, 26 N.E.3d 1187 (Ohio Ct. App. 2014),

2    for the proposition that OPLA was intended to abrogate all common law product liability claims or

3    causes of action.  But *Quill* primarily dealt with arguments regarding the retroactive effect of

4    OPLA.  *Id.* at 1195.  The court held that because plaintiff's implied warranty claim accrued before

5    OPLA's amendment, OPLA did not abrogate a common law cause of action because it did not have

6    a retroactive effect.  *Id.* at 1194-95.  Thus, the *Quill* court was not forced to address a plaintiff

7    seeking economic damages for an implied warranty claim that accrued after the amendment of

8    OPLA.

9          The court's reasoning in *Huffman* is by far the most thorough review of applicable law on

10   abrogation of common law claims for economic damages concerning products liability and has been

11   repeatedly adopted by Ohio courts.  *See, e.g.*, *Great N. Ins. Co. v. BMW of N. Am. LLC*, 2015 U.S.

12   Dist. LEXIS 13164, at *46 (S.D. Ohio Feb. 4, 2015) (adopting the *Huffman* court's rationale and

13   permitting claims for breach of implied warranty in tort and negligence for defective design and

14   failure to warn when seeking purely economic damages); *In re Whirlpool Corp. Front-Loading

15   Washer Prods. Liab. Litig.*, 45 F. Supp. 3d 706, 719-20 (N.D. Ohio 2014) (holding the "current state

16   of Ohio law" is that OPLA does not abrogate common law product liability claims seeking purely

17   economic loss because such claims do not fit within OPLA's definition of a statutory product

18   liability claim); *Hoffer v. Cooper Wiring Devices, Inc.*, 2007 U.S. Dist. LEXIS 42871, at *7 (N.D.

19   Ohio June 13, 2007) ("to the extent Plaintiff seeks damages for economic loss, his claims do not fall

20   under the purview of the OPLA"); *Hartman v. Mercedes-Benz*, 2010 U.S. Dist. LEXIS 22536, at

21   *20 (N.D. Ohio Mar. 11, 2010) ("[W]hile product liability claims do not include claims that allege

22   economic loss stemming solely from a defect in the product itself, such claims are not precluded by

23   statute.  As such, Plaintiff's claim is not barred simply because he seeks to recover only for

24   economic loss.").

25         Plaintiff Miskell seeks only economic damages relating to Ford's defective MFT system.

26   Such a claim is not a "product liability claim" as defined by OPLA.  Because OPLA only abrogates

27

28

1   "product liability claims," Miskell's claims are not abrogated.  Ford's motion to dismiss this count

2   should be denied.

3   **VI.     PLAINTIFFS HAVE ADEQUATELY PLEADED BREACH OF CONTRACT**

4   In the FAC, Plaintiffs pleaded breach of contract claims based on Ford's violation of the

5   terms of the Limited Warranty that accompanied each sale or lease of a Class Vehicle.  Under

6   U.C.C. § 2-313, as this Court observed, "[a]ny affirmation of fact or promise made by the seller to

7   the buyer which relates to the goods and becomes part of the basis of the bargain creates an express

8   warranty that the goods shall conform to the affirmation or promise."  Order at 32.  The Court

9   further relied upon Comment 3 to that provision as persuasive authority, finding that Plaintiffs'

10  contract claims based on Ford's Limited Warranty do not require a showing of actual reliance.  *Id.*

11  at 37 (citing U.C.C. § 2-313, cmt. 3).  In the FAC, the Limited Warranty was the sole basis for

12  Plaintiffs' contract claims.[17]  In the SAC, Plaintiffs assert contract claims on the basis of Ford's

13  MyFord Touch Handbook ("Handbook"), which – like the Limited Warranty – was provided to

14  every Plaintiff and every purchaser or lessee of a Class Vehicle.  SAC ¶ 232.

15  For the same reasons that Plaintiffs' Limited Warranty-based contract claims survived

16  Ford's prior dismissal motion, Plaintiffs' Handbook-based contract claims survive Ford's current

17  motion: those statements became part of the basis of the bargain in each sale or lease of a Class

18  Vehicle, and Plaintiffs are relieved of any actual reliance requirement with respect to them.

19  **A.     Plaintiffs have identified the warranty statements supporting their contract claims.**

20  Ford distributed the Handbook to each purchaser or lessee of a Class Vehicle, including each

21  Plaintiff.  *Id.* ("Each MyFord Touch vehicle came with the MyFord Touch Handbook.").  In the

22  Handbook, Ford promised that the MFT system would provide specific benefits that it did not, in

23  fact, provide.  For example, the Handbook states, "[v]irtually anything you can do by touch you can

24

25  [17] In its prior Opinion, the Court found that, "[h]ere, the only express warranty at issue is that
26  contained in Ford's limited warranty…."  Order at 32.  However, the SAC alleges that Ford's
    representations describing and promising benefits associated with MyFord Touch formed part of the
27  basis of the bargain, and were breached when Ford sold or leased to Plaintiffs and other Class
    members vehicles that did not conform to those representations.  *See, e.g.*, SAC ¶¶ 353-57
28  (California).

1    also do by voice to keep your hands on the wheel and eyes on the road." *Id.*  In reality, as alleged in

2    detail throughout the SAC, the MyFord Touch system introduced new distracted-driving risks

3    because it frequently malfunctions, crashes, freezes, locks up, and fails to respond to voice and

4    touch inputs.  These distractions are the antithesis of "hands on the wheel and eyes on the road."

5           The warranties contained in the Handbook became part of the "basis of the bargain" for each

6    Plaintiff's purchase or lease of a Class Vehicle.  Courts routinely find that documents describing

7    products or promising product benefits that are provided in connection with a transaction support

8    contract or warranty claims,[18] including documents not reviewed prior to consummation of the

9    transaction.  *See, e.g.*, *Rite Aid Corp. v. Levy-Gray*, 876 A.2d 115, 128 (Md. App. 2005) (statement

10   on insert in product packaging constituted express warranty).  Ford first disputes the existence of

11   any enforceable contract between Ford and Plaintiffs.  Ford's objection in this regard is based solely

12   on the fact that each Plaintiff purchased or leased a vehicle from a dealer.  Def. Mem. at 5.  But this

13   Court has already held that "Plaintiffs have made sufficient allegations of agency [between Ford and

14   its dealers] to withstand the motion to dismiss."  Order at 13.[19]  Accordingly, Plaintiffs have shown

15   the existence of contracts binding Plaintiffs and Ford.

16          Relying on inapposite authority, Ford next argues that "mere dissatisfaction with a

17   purchased product" cannot give rise to a breach of contract action.  Def. Mem. at 7 (citing *Hodges v.*

18   *Apple, Inc.*, 2013 U.S. Dist. LEXIS 179143, at *31-33 (N.D. Cal. Dec. 19, 2013)).  That may be so,

19   but Plaintiffs allege that Ford made statements in the Handbook that became part of the basis of the

20   bargain.[20]  Ford's promises in the Handbook therefore constitute warranties that are included as

21

22          [18] *See, e.g.*, *Oliver v. Funai Corp.*, 2015 WL 3938633, at *10-11 (D.N.J. June 25, 2015)
     (representations in television user's manual constituted express warranties); *Bell Sports, Inc. v.*

23   *Yarusso*, 759 A.2d 582, 592-93 (Del. 2000) (terms in helmet owner manual describing how helmet
     works to "absorb the force of a blow" constituted express warranty); *Kinlaw v. Long Mfg. N.C., Inc.*,

24   259 S.E.2d 552, 557 (N.C. 1979) (sustaining warranty claims based on representations made in
     tractor's owner manual).

25          [19] Other courts agree.  *See, e.g.*, *Philips v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 88937, at
     *47 (N.D. Cal. July 7, 2015) (rejecting Ford's argument that authorized dealerships are not its

26   agents).

          [20] Plaintiffs note that whether a statement qualifies as an express warranty is "normally a
27   question of fact for the jury."  *Oliver*, 2015 WL 3938633, at *10 (quoting *Snyder v. Farnam Cos.,*
     *Inc.*, 792 F. Supp. 2d 712, 721-22 (D.N.J. 2011)).

28

terms in Ford's contracts of sale or lease with each Plaintiff.[21]  Plaintiffs do not predicate their

contract claims on promises of "defect-free" vehicles, but rather on the Handbook statements

concerning the safety and functionality of Class Vehicles.[22]  It is beyond question that "[a]n express

warranty is a term of the parties' contract."  *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929,

949 (C.D. Cal. 2012); *see also A.A. Baxter Corp. v. Colt Indus., Inc.*, 88 Cal. Rptr. 842, 848 (Cal.

App. 1970) ("A warranty is as much one of the elements of sale and as much a part of the contract

of sale as any other portion of the contract and is not a mere collateral undertaking.").  Accordingly,

Ford's Handbook statements are terms of each Plaintiff's contract with Ford.

**B.      Ford breached its MyFord Touch Handbook promises.**

Ford next contends that Plaintiffs' factual allegations do not demonstrate that Ford failed to

honor the terms of any warranty statements it issued.  Def. Mem. at 8-9.  Ford is wrong.

Plaintiffs have provided detailed allegations in the SAC establishing Ford's breach,

including that the MyFord Touch system presents substantial safety hazards and does not deliver the

functionality that Ford unequivocally promised in the Handbook.[23]  To support its view, Ford relies

on this Court's finding that the FAC failed to allege fraud based on affirmative misrepresentations,

---

[21] *See* U.C.C. § 2-313.  For such statements, actual reliance is unnecessary.  *See id.*, cmt. 3.

[22] Consequently, this is not a case in which Plaintiffs received what they bargained for.  Ford's reliance on *Lopez v. Nissan N. Am.*, 201 Cal. App. 4th 572 (2011), is misplaced.  In *Lopez*, the plaintiffs alleged that they bargained for vehicles equipped with odometers that would correctly record distances traveled.  *Id.* at 596.  Nissan admitted that its odometers record two percent more than the total distance traveled, but the operative regulatory standards for odometer performance provide a four percent margin of error.  *Id.*  Thus, Nissan's odometers fell within the permissible range of the regulations, and the court held that the plaintiffs received precisely what they bargained for: vehicles equipped with "correct," legally compliant odometers.  *Id.*  Here, Ford points to no regulatory provision or other ground supporting its view that Plaintiffs received what they bargained for, namely vehicles equipped with fully functional, safety-enhancing infotainment units.  Ford also cites *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451 (S.D.N.Y. 2014), but the *Marshall* plaintiffs' claims were dismissed for lack of privity.  *Id.* at 470.  Accordingly, that case has no bearing on Ford's motion.

[23] *See* SAC ¶¶ 25-29 (describing Whalen's safety and functionality issues), 38-41 (Center for Defensive Driving), 53-56 (Watson), 61-62 (Thomas-Maskrey), 68 (D'Aguanno), 75 (Sheerin), 81-82 (Makowski), 90 (Oremland), 97 (Mitchell), 107-16 (Creed), 127 (Matlin), 134-35 (Rizzo), 143 (Miller), 150 (Purcell), 158-59 (Fink), 166-67 (Miskell), 173 (Rodriguez), 182 (Ervin), 190 (Connell), 197-98 (Miller-Jones), 244-58 (allegations regarding defects), 259-74 (allegations regarding Ford's failed remedial efforts), 275-79 (allegations regarding non-Plaintiff customer complaints), 280 (allegations regarding Ford employee complaints, including an employee's statement that, "I think it's [*i.e.*, the MyFord Touch] so bad we should stop shipping vehicles with the system as it stands currently.").

1   Def. Mem. at 9 (citing Order at 10-11), but Ford overlooks that Rule 9(b)'s heightened requirements

2   do not apply to Plaintiffs' breach of contract claims, which are instead governed by Rule 8(a)(2).

3   That Rule requires allegations that "allow[] the court to draw the reasonable inference that the

4   defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5   Whether the crashing, freezing, and other malfunctions of the MyFord Touch systems in Plaintiffs'

6   Class Vehicles in fact render those vehicles unsafe, result in distracted driving, or cause Ford's other

7   promises to be unfulfilled is not a question this Court must resolve at this juncture.  Rather, the

8   Court need only determine whether Plaintiffs have provided sufficient factual allegations to support

9   the reasonable inference that Ford broke those promises.

10        This Court previously found that Plaintiffs could not establish any fraud claims on the basis

11   of Ford's misrepresentations because "Plaintiffs' fraud theory is really a failure to disclose rather

12   than an affirmative misrepresentation."  Order at 10.  As shown above, however, Ford's Handbook

13   promised functionality and safety benefits that Ford failed to deliver: touch functionality, voice-

14   recognition functionality, and a promise that MyFord Touch will allow drivers "to keep your hands

15   on the wheel and eyes on the road."[24]  SAC ¶ 232.  Ford broke these promises when it sold (or

16   leased) each Plaintiff a materially defective Class Vehicle that *heightens* rather than mitigates

17   distraction, and which does not deliver the hands-free, touch-activated, or other features described

18   in the Handbook because MyFord Touch crashes, freezes, drops wireless connectivity, and

19   generally fails to respond in a systematic fashion.  These facts amply demonstrate that Ford's Class

20   Vehicles did not live up to Ford's promises in the Handbook and, thus, that Ford breached its

21   contracts with Plaintiffs.

22   **C.     The Texas Plaintiffs have satisfied all applicable notice requirements.**

23        Ford's final argument concerning Plaintiffs' contract claims pertains only to the purported

24   failure of Plaintiffs Sheerin (Colorado), Rodriguez (Texas), and Ervin (Texas) to notify Ford of its

25

26   ───────────────
     [24] Ford's authorities pertaining to "conclusory" contract allegations, Def. Mem. at 8, offer it no
27   support because, as shown above, the specific warranty statements at issue have been identified in
     this paragraph.
28

1   breach.  Def. Mem. at 9-10.  The Texas Plaintiffs have satisfied their obligation to provide notice.[25]

2   Accordingly, their Handbook-based contract claims survive.

3   The Court previously held that the weight of Texas authority requires notice prior to

4   asserting a U.C.C.-governed breach of express warranty action, and that "the filing of a complaint"

5   and "generalized knowledge of concerns" do not constitute such notice under Texas law.  Order at

6   44-45.  However, the Court did not determine whether the Texas Plaintiffs could satisfy any

7   applicable notice requirement with respect to a contract claim by alleging that they presented their

8   vehicles for service.  In fact, both Plaintiffs alleged they each brought their Class Vehicles in for

9   MyFord Touch-related servicing prior to filing suit on at least *six* separate occasions.  SAC ¶¶ 173

10  (Rodriguez), 183 (Ervin).  Under Texas law, "[a] general expression of the buyer's dissatisfaction

11  with the product may be sufficient to comply with" the notice requirement.  *U.S. Tire-Tech, Inc. v.*

12  *Boeran, B.V.*, 110 S.W.3d 194, 201 (Tex. App. 2003) (citing *Carroll Inst. Co. v. B.W.B. Controls,*

13  *Inc.*, 677 S.W.2d 654, 657 (Tex. App. 1984)).  That this expression of dissatisfaction was made to

14  Ford's agents rather than Ford's corporate offices does not alter the conclusion that the Texas

15  Plaintiffs provided the requisite pre-suit notice.[26]  Accordingly, Ford's argument with respect to the

16  Texas Plaintiffs fails.

17  **VII.   CONCLUSION**

18  Ford's motion should be denied for the reasons set forth above.

---

[25] Plaintiffs concede that Plaintiff Sheerin's Handbook-based contract claim must be dismissed for failure to provide notice.  The Court previously dismissed Plaintiff Sheerin's statutory express warranty claim because he failed to present his vehicle for service, reasoning that he must at least provide notice to the direct seller in order to assert such a claim.  Order at 40.  Plaintiffs agree that this requires dismissal of Plaintiff Sheerin's contract claim to the extent that claim is based upon Ford's Handbook statements.

[26] Neither case relied upon in this Court's dismissal of the Texas Plaintiffs' statutory warranty claims, Order at 45, involved allegations that an agency relationship was in place between the defendant manufacturer and the entity notified.  *McKay v. Novartis Pharms. Corp.*, 934 F. Supp. 2d 898, 912-13 (W.D. Tex. 2013) (no agency alleged); *U.S. Tire-Tech*, 110 S.W.3d at 201 (same).  Thus, those cases are irrelevant to this analysis.

- 23 -

DATED:  July 13, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ Steve W. Berman
    Steve W. Berman (*pro hac vice*)
Catherine Y.N. Gannon (*pro hac vice*)
Craig R. Spiegel (122000)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
catherineg@hbsslaw.com
craigs@hbsslaw.com

Jeff D. Friedman (173886)
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Jason A. Zweig (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, Suite 1700
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
jasonz@hbsslaw.com

Adam J. Levitt (*pro hac vice*)
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, IL 60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001
alevitt@gelaw.com

Kyle J. McGee (*pro hac vice*)
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, DE 19801
Telephone: (302) 622-7000
Facsimile: (302) 622-7100
kmcgee@gelaw.com

- 24 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Roland Tellis (186269)
Mark Pifko (228412)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: (818) 839-2320
Facsimile: (818) 986-9698
rtellis@baronbudd.com
mpifko@baronbudd.com

Joseph G. Sauder (*pro hac vice*)
Matthew D. Schelkopf (*pro hac vice*)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
JGS@chimicles.com
MDS@chimicles.com

*Plaintiffs' Interim Co-Lead Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on July 13, 2015.  Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

Dated:  July 13, 2015

/s/ Steve W. Berman
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

- 26 -