1  RANDALL W. EDWARDS (S.B. #179053)
   redwards@omm.com
2  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
3  San Francisco, CA 94111-3823
   Telephone:    (415) 984-8700
4  Facsimile:    (415) 984-8701

5  BRIAN C. ANDERSON (S.B. #126539)
   banderson@omm.com
6  SCOTT M. HAMMACK (*pro hac vice*)
   shammack@omm.com
7  DAVID R. DOREY (S.B. #286843)
   ddorey@omm.com
8  O'MELVENY & MYERS LLP
   1625 Eye Street, NW
9  Washington, D.C. 20006-4001
   Telephone:    (202) 383-5300
10 Facsimile:    (202) 383-5414

11 Attorneys for Defendant
   FORD MOTOR COMPANY

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO DIVISION

15

16 In re:                              Case No. 3:13-CV-3072-EMC

17 MYFORD TOUCH CONSUMER            **DEFENDANT FORD MOTOR COMPANY'S**
   LITIGATION                        **REPLY IN SUPPORT OF**
18                                    **MOTION TO DISMISS**
                                      **SECOND AMENDED COMPLAINT**
19
                                      Hearing Date:    August 27, 2015
20                                    Time:            1:30 p.m.
                                      Judge:           Hon. Edward M. Chen
21                                    Courtroom:       5

22                                    Second Amended Complaint Filed: May 22, 2015

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. PLAINTIFFS FAIL TO STATE A CLAIM FOR "BREACH OF CONTRACT" ............ 3

    A. Plaintiffs Still Do Not Identify Any Contract That Ford Breached ........................ 3

    B. The Colorado and Texas Plaintiffs Fail to Allege That They Provided the Requisite Pre-Suit Notice ...................................................................................... 6

III. PLAINTIFFS WHO PURCHASED A SECOND MFT-EQUIPPED VEHICLE CANNOT STATE ANY CLAIM FOR FRAUD ......................................................... 6

IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE IOWA CONSUMER FRAUD ACT ..................................................................................... 8

V. PLAINTIFFS MISKELL AND KIRCHOFF FAIL TO STATE A CLAIM FOR FRAUD BASED ON AN AFFIRMATIVE MISREPRESENTATION ........................... 8

VI. CERTAIN PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF EXPRESS WARRANTY .......................................................................................... 10

    A. Plaintiffs Kirchoff and Miskell Do Not State a Claim for Breach of Warranty by Affirmation ..................................................................................... 10

    B. Plaintiff Kirchoff Does Not State a Claim for Breach of Ford's Limited Warranty ................................................................................................................ 10

    C. Plaintiff Miller Cannot State a Claim for Breach of Ford's Limited Warranty ................................................................................................................ 11

    D. Plaintiff Mitchell Cannot State a Claim for Breach of Ford's Limited Warranty ................................................................................................................ 11

VII. PLAINTIFF KIRCHOFF CANNOT STATE A CLAIM FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY ................................................. 12

VIII. THE OHIO PRODUCTS LIABILITY ACT AND PLAINTIFF MISKELL'S TORT CLAIMS ....................................................................................................... 13

IX. PLAINTIFF CREED CANNOT STATE A CLAIM FOR VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ............................................................... 14

X. CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aprigliano v. Am. Honda Motor Co.*,
   979 F. Supp. 2d 1331 (S.D. Fla. 2013) ................................................................................5

*Baughn v. Honda Motor Co.*,
   727 P.2d 655 (Wash. 1986)..................................................................................................13

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984)...............................................................................................3

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   No. C-12-md-2330, 2015 U.S. Dist. LEXIS 7123 (N.D. Cal. Jan. 21, 2015)...........................6

*Davis v. Byers Volvo*,
   No. 11CA817, 2012 WL 691757 (4th App. Dist. 2012)...........................................................9

*Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*,
   No. 14-CV-02349-TEH, 2015 WL 1548872 (N.D. Cal. Apr. 7, 2015) ....................................9

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
   476 U.S. 858 (1986) .............................................................................................................4

*Fabbrini v. City of Dunsmuir*,
   544 F. Supp. 2d 1044 (E.D. Cal. 2008)...........................................................................3, 10

*Harvick v. Am. Home Mortg. Servicing, Inc.*,
   No. 2:12-CV-03077, 2013 WL 3283523 (E.D. Cal. June 27, 2013) ...................................9, 10

*Hodges v. Apple Inc.*,
   No. 13-cv-01128, 2013 U.S. Dist. LEXIS 179143 (N.D. Cal. Dec. 19, 2013).....................4, 5

*Hutchins v. Bank of Am., N.A.*,
   No. 13-CV-03242-JCS, 2013 WL 5800606 (N.D. Cal. Oct. 28, 2013)...................................10

*Interactive Prod. Corp. v. a2z Mobile Office Solutions, Inc.*,
   326 F.3d 687 (6th Cir. 2003)..................................................................................................9

*Kadiak Fisheries Co. v. Murphy Diesel Co.*,
   422 P.2d 496 (Wash. 1967)..................................................................................................12

*Med. City Dallas, Ltd. v. Carlisle Corp.*,
   251 S.W.3d 55 (Tex. 2008)....................................................................................................4

*Omni USA, Inc. v. Parker-Hannifin Corp.*,
   964 F. Supp. 2d 805 (S.D. Tex. 2013) ...................................................................................4

*In re Porsche Cars N. Am. Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
   880 F. Supp. 2d 801 (S.D. Ohio 2012) ................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................................5

*Tex Enters., Inc. v. Brockway Standard, Inc.*,
  66 P.3d 625 (Wash. 2003) ..........................................................................................13

*In re Toshiba HD DVD Mktg. & Sales Practice Litig.*,
  No. 08-cv-939, 2009 WL 2940081 (D.N.J. Sept. 11, 2009) ........................................5

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*,
  831 P.2d 724 (Wash. 1992)...................................................................................10, 12

*U.S. Tire-Tech, Inc. v. Boeran, B.V.*,
  110 S.W.3d 194 (Tex. App. Ct. 2003) ........................................................................6

*Wilden Clinic, Inc. v. City of Des Moines*,
  229 N.W.2d 286 (Iowa 1975) .....................................................................................7

**Statutes**

15 U.S.C. § 2310(3) ............................................................................................................14

Iowa Code § 714H.6 ............................................................................................................8

Iowa Code § 714H.7 ............................................................................................................8

Section 10(b) of the Securities Exchange Act of 1934 ......................................................9

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

1

## I.    <u>INTRODUCTION</u>

Plaintiffs' Opposition to Ford's Motion to Dismiss the Second Amended Complaint does not save the claims targeted in Ford's Motion to Dismiss.  The claims asserted by all Plaintiffs for breach of contract fail because Plaintiffs do not identify any contract that Ford breached.  The remaining specific, individual claims discussed in Ford's Motion are subject to dismissal because the individualized factual allegations of the particular named plaintiffs fall short of what is required to satisfy the specific requirements of the claims alleged under the applicable state's laws.  For example:  three named plaintiffs failed to provide the required notice, two failed to allege any untrue statement that could be the basis for a fraud claim, two others bought a second vehicle despite being aware of the alleged problems with the MFT, one failed to obtain the requisite approval to sue, and another failed to give Ford an opportunity to cure alleged problems.

<u>Breach of Contract</u>:  In response to Ford's showing that the SAC does not identify any contract that Ford breached, Plaintiffs now argue that "warranty statements" in Ford's MFT Handbook ("Handbook") constitute an enforceable contract between them and Ford.  This is not the basis of the claim asserted in the SAC, and the SAC does not allege that any of the Plaintiffs were aware of the Handbook, much less that they reviewed it.  Plaintiffs' previously-abandoned claims for breach of a warranty by affirmation fail because the SAC does not identify any enforceable statements in the Handbook that could constitute a warranty or otherwise could be actionable.  Separately, Plaintiff Sheerin now acknowledges that he cannot assert a breach of contract claim under Colorado law because he did not provide adequate notice.  Other Plaintiffs' attempts to establish the required notice to Ford by pointing to service visits to the dealer fail as a matter of Texas law.

<u>Fraud</u>:  Plaintiffs provide no effective response to any of the Plaintiff-specific arguments Ford made in its Motion.  Plaintiffs Mitchell and Rodriguez cannot assert a claim based on alleged fraudulent concealment because they both purchased a second vehicle equipped with a MFT system after becoming aware of the alleged MFT problems.  Actions speak louder than words.  Their second purchases, made despite knowledge of the supposed defects, establish that the supposed defects were not material to these Plaintiffs' purchase decisions.  Plaintiff Mitchell's

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

1   Iowa Consumer Fraud Act claim fails because he did not obtain the necessary approval from the

2   Iowa Attorney General to bring a class claim; Plaintiffs' response cites an irrelevant statutory

3   provision directed at a different issue.  Plaintiffs' concede that Plaintiff Miskell does not state a

4   claim for affirmative misrepresentation, but attempt to salvage Plaintiff Kirchoff's

5   misrepresentation claim by comparing his allegations to Plaintiff Miller's.  But they gloss over

6   key differences between the allegations, and ignore Ford's argument that the SAC includes

7   allegations that undermine the supposed falsity of the statement at issue.

8       Breach of Warranty:  Plaintiff Kirchoff does not allege that he saw the warranty before

9   purchase—a requirement under Washington law for a breach of express warranty claim.  He also

10  cannot bring a claim for breach of implied warranty of merchantability because he is not in

11  privity with Ford and does not qualify as a third-party beneficiary under Washington's "sum of

12  the interaction" test.  Plaintiff Miller's breach of express warranty claim fails because never

13  sought a repair of his MFT.  Plaintiff Mitchell's breach of express warranty claim for his second

14  vehicle fails because admits he never sought a repair to the MFT, and because he alleges no facts

15  that the specific problem he allegedly experienced was unrepairable.

16      Ohio Tort Claims:  Plaintiffs clarified that they are seeking only economic damages

17  related to Ford's defective MFT system.  Based on the representation by Plaintiffs, Ford

18  withdraws its argument based on the Ohio Products Liability Act at this time.

19      Magnuson-Moss Warranty Act:  Plaintiff Creed cannot bring a Magnuson-Moss class

20  claim because he did not notify Ford before participating in the informal dispute resolution

21  procedure that he was doing so on behalf of a class.  And he cannot provide Ford with an

22  opportunity to cure any alleged breach of warranty after this Court determines his "representative

23  capacity" because he has already sold his vehicle.

24      Dismissal of Plaintiffs Oremland and Makowski:  These two Plaintiffs recently realized

25  that, although they alleged that they bought defective MFT systems, their vehicles were not

26  equipped with an MFT system.  They have now dismissed their claims.  As such, Ford's Motion

27  with respect to the Florida and Connecticut claims is now moot because those claims already have

28  been dismissed.  (*See* ECF No. 167.)

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR "BREACH OF CONTRACT"

### A.    Plaintiffs Still Do Not Identify Any Contract That Ford Breached

In its opening brief, Ford showed that the SAC identifies neither a valid contract between Ford and Plaintiffs, nor any contractual provisions that Ford supposedly breached.  Instead, the SAC simply asserts that "[e]ach and every sale or lease of a Class Vehicle constitutes a contract between Ford and the purchaser or lessee." (*E.g.*, SAC ¶ 356.)  In their Opposition, Plaintiffs argue—for the first time—that the "MyFord Touch Handbook" ("Handbook") constitutes the contract that Ford breached.  (*See* Opp. at 19:12-14.)  This newly stated position fails for multiple independent reasons: Plaintiffs do not allege it in the SAC, Plaintiffs do not allege that they relied on or even read the Handbook, and such a claim is a disguised warranty-by-affirmation claim that is not viable is a matter of law.

*First*, Plaintiffs' new theory is not found in the SAC—the document that defines their claims.  At no point in any of its 1,076 paragraphs spanning more than 200 pages does the SAC allege that the Handbook constitutes a contractual agreement.  The SAC mentions the Handbook just once (SAC ¶ 232), and none of its 14 breach-of-contract counts mention the Handbook at all (to say nothing of how Ford supposedly breached a promise contained in the Handbook).  While one paragraph in the SAC includes several purported quotes from the Handbook, it never characterizes the document as a contractual agreement; nor does it identify how Ford breached such terms.  "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

*Second*, the SAC does not contain any allegation that each Plaintiff reviewed the Handbook, let alone relied on it or reached an agreement with Ford based on it.  The only allegation is that the vehicles came with the Handbook.[1]  (SAC ¶ 232.)  And certain of the

---

[1] Although not necessary for this Motion, none of the named Plaintiffs have produced a copy of the Handbook in response to Ford's discovery requests for "all documents concerning the acquisition of the Subject Vehicle, including, but not limited to . . . other contracts," thus belying the notion that they received the Handbook, let alone that it is basis of any contract.

1    language from the Handbook quoted in the SAC does not appear in the version of the Handbook

2    Ford submitted with its first Motion to Dismiss, and of which this Court took judicial notice,

3    creating further uncertainty about the terms of the alleged contracts.  (*Compare* SAC ¶ 232 *with*

4    Handbook, ECF No. 57-3.)

5         **Third**, although Plaintiffs have characterized this claim as one for "breach of contract,"

6    substantively it is nothing more than a breach of warranty by affirmation claim, which is

7    confirmed by Plaintiffs' reference to affirmations of what they call "warranty statements" in the

8    Handbook.  (*E.g.* Opp. at 19-20.)  But in their opposition to the motion to dismiss the FAC,

9    Plaintiffs abandoned such warranty by affirmation claims, and for good reason.  (*See* Ford's

10   Reply in Support of Motion to Dismiss FAC, ECF No. 72 at 20 (noting that Plaintiffs failed to

11   respond to Ford's argument "that their Complaint identifies no statements other than Ford's

12   Limited Warranty that could give rise to a warranty obligation").)  This Court accordingly held

13   that "the only express warranty at issue is that contained in Ford's limited warranty . . . ."  (Order

14   Granting in Part and Denying in Part Defendant's Motion to Dismiss (hereinafter "Order"), ECF

15   No. 97 at 32.)  As Ford previously showed, an alleged breach of warranty does not give rise to a

16   claim for breach of contract—these are distinct claims based on different circumstances.  As one

17   court has noted:

18       Under the UCC, a breach of warranty, which is created when a seller makes an
         affirmation of fact or a promise to the purchaser that relates to the sale of a product
19       and warrants a conformity to the affirmation or promise, is distinguishable from a
         breach of contract based on whether the buyer has finally accepted the goods:
20       when a party fails to deliver the goods as promised, a breach of contract occurs,
         but when a seller delivers nonconforming goods, it is a breach of warranty."
21

22   *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 812 (S.D. Tex. 2013) (citation

23   omitted)); *see also, e.g., E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872

24   (1986) ("Therefore, a claim of a nonworking product can be brought as a breach-of-warranty

25   action. Or, if the customer prefers, it can reject the product or revoke its acceptance and sue for

26   breach of contract."); *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008)

27   ("Carlisle correctly asserts that breach of warranty and breach of contract are distinct causes of

28   action with separate remedies"); *Hodges v. Apple Inc.*, No. 13-cv-01128, 2013 U.S. Dist. LEXIS

1   179143, at *31-33 (N.D. Cal. Dec. 19, 2013).

2          As with the FAC, Plaintiffs do not allege in the SAC that Ford dealers failed to deliver a

3   MyFord Touch-equipped vehicle to them; instead, they say that the MyFord Touch system in

4   their vehicles did not conform to promises Ford allegedly made about it.  (*See* Opp. at 19:21-23

5   ("In the Handbook, Ford promised that the MFT system would provide specific benefits that it

6   did not, in fact, provide.").)  Plaintiffs thus allege breach of warranty by affirmation, not breach of

7   contract.  *See Hodges*, 2013 U.S. Dist. LEXIS 179143, at *32-33 (dismissing breach of contract

8   claim, finding that "consumers received what Hodges alleges Apple offered. It does not matter

9   [with respect to a breach of contract claim] that Hodges is dissatisfied with his purchase.").

10         As Ford explained in its Motion to Dismiss the FAC, Plaintiffs have not adequately

11  alleged any warranties by affirmation.  *See* ECF No. 56 at 32-35.  Ford's Limited Warranty

12  includes an express disclaimer that it constitutes the "only express warranties applicable" to

13  Plaintiffs' vehicles.  (*See* Limited Warranty, ECF No. 57-2 at 11; *see also* Request for Judicial

14  Notice, ECF No. 57 at 1-2 (requesting notice of Ford's 2013 Limited Warranty); Order at 32

15  (taking notice of same).)  This alone is dispositive.  In addition, statements in the Handbook of

16  the type identified by Plaintiffs are too vague and subjective to constitute a potentially actionable

17  express warranty.  *See, e.g.*, *Aprigliano v. Am. Honda Motor Co.,* 979 F. Supp. 2d 1331, 1341

18  (S.D. Fla. 2013) (dismissing breach of express warranty claims based on statements such as the

19  vehicle is "in a class of its own" and "unbelievably smooth, quiet, and vibration-free") (internal

20  quotation marks omitted); *Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 987 (N.D. Cal. 2009)

21  (dismissing breach of warranty claim in part because manufacturer's statement that its computer

22  displays had "'millions of colors at all resolutions' is a vague superlative as opposed to a specific,

23  detailed factual assertion"); *In re Toshiba HD DVD Mktg. & Sales Practice Litig.*, No. 08-cv-939,

24  2009 WL 2940081, at *10 (D.N.J. Sept. 11, 2009) (finding Toshiba's statement that HD DVD

25  players were "'For Today, Tomorrow, and Beyond'. . . too general, vague or exaggerated to be

26  anything more than puffery").

27

28

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

**B.     The Colorado and Texas Plaintiffs Fail to Allege That They Provided the Requisite Pre-Suit Notice**

Plaintiffs concede that Plaintiff Sheerin did not provide the requisite notice to assert a breach of contract claim under Colorado law.  (Opp. at 23 n.25.)  Therefore his breach of contract must be dismissed on this independent ground, as well.

The Texas Plaintiffs (Rodriguez and Ervin) also failed to provide the required notice to Ford.  Plaintiffs argue that Rodriguez and Ervin gave notice by bringing their vehicles in to Ford dealers for service.  (*Id.* at 23.)  But even if bringing a vehicle to a dealer for a repair constituted "notice" of their assertion that Ford breached some promise contained in the Handbook, such so-called notice to the dealer is not notice to Ford, the remote manufacturer—as pointed out by the case Plaintiffs cite in their Opposition.  *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 199 (Tex. App. Ct. 2003) ("We . . . hold that, under section 2.607(c)(1), a buyer is required to give notice of an alleged breach of warranty to a remote manufacturer."); *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, No. C-12-md-2330, 2015 U.S. Dist. LEXIS 7123, at *147 (N.D. Cal. Jan. 21, 2015) (Chen, J.) ("In their opposition, Plaintiffs contend that neither Maryland or Texas law requires that notice be given to a remote manufacturer.  With respect to Texas law, Plaintiffs are mistaken.").  Plaintiffs' conclusory argument that an agency relationship exists between Ford and myriad Ford dealers for purposes of notice does not avoid this problem. (*Contra* Opp. at 23 n.26.)  The SAC contains no factual allegations establishing an agency relationship for that purpose, and Plaintiffs have cited no case law (and certainly no Texas case law) holding that notice to a remote manufacturer can be satisfied by notice to the direct seller. *See In re Carrier IQ*, 2015 U.S. Dist. LEXIS 7123, at *147, 154 (noting plaintiffs' "conclusory allegation" of agency and separately dismissing the Texas plaintiffs' breach of implied warranty claim for failure to provide notice to the remote manufacturer).

**III.     PLAINTIFFS WHO PURCHASED A SECOND MFT-EQUIPPED VEHICLE CANNOT STATE ANY CLAIM FOR FRAUD**

In its opening brief, Ford explained that those Plaintiffs who purchased a second MFT-equipped vehicle after allegedly experiencing problems with the MFT system in their first vehicle

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

1    have, by their actions, fatally discredited their fraud claims with respect to both their first and

2    second vehicles.  (*See* Motion to Dismiss, ECF No. 157 at 12-13.)

3         In response, Plaintiffs concede that Plaintiff Mitchell is not asserting a claim for fraud

4    with respect to his 2014 Lincoln MKZ, the second MFT-equipped vehicle he purchased after

5    becoming a named plaintiff in this lawsuit.  (Opp. at 8 n.7.)  Even so, this does not cure the fatal

6    damage Plaintiff Mitchell has done to his fraud claim concerning his first vehicle, a 2011 Lincoln

7    MKX.  When he purchased the 2014 MKZ, he was already was a plaintiff in this litigation and

8    had filed an Amended Complaint that included hundreds of paragraphs detailing alleged problems

9    with the MFT system and alleging that "Ford does not have a fix for the defect."  (FAC ¶ 14.)

10   That Plaintiff Mitchell nevertheless decided to purchase the 2014 MKZ is tantamount to an

11   admission that, had he known of the alleged problems with the MFT system earlier, such

12   knowledge would not have prevented him from purchasing the 2011 MKX.  This kills his

13   fraudulent concealment claim because it is an admission that information about the MFT's

14   "defectiveness" was not material to his purchase decision.  *See Wilden Clinic, Inc. v. City of Des*

15   *Moines*, 229 N.W.2d 286, 292 (Iowa 1975) ("[A] fact is material when it influences a person to

16   enter into a contract, when it deceives him and induces him to act, or when without it the

17   transaction would not have occurred.") (citation omitted).  Plaintiffs' Opposition argues that

18   Mitchell had no way of knowing that the vehicles were "fatally flawed," (Opp. at 7-8), but that

19   argument is refuted by the language of the FAC to which Plaintiff Mitchell subscribed (including

20   his allegation that "Ford does not have a fix for this defect.")  (FAC ¶ 14; *see also* SAC ¶ 15.)

21   Despite his awareness of the alleged defects, the problems—whatever they were—could not have

22   been material to him at the time of either purchase and cannot form the basis of fraud claims with

23   respect to either of his vehicles.

24        Likewise, the SAC makes clear that Plaintiff Rodriguez decided to purchase a second

25   MFT-equipped vehicle even though he already had begun "experienc[ing] problems with his

26   MyFord Touch system" "almost immediately following the purchase date of" his first vehicle,

27   resulting in what he claims are "dangerous driving conditions."  (SAC ¶ 173.)  Nonetheless, the

28   knowledge of these allegedly serious problems did not prevent Plaintiff Rodriguez from

1   purchasing another MFT-equipped vehicle.  Hence, this information was not "material" to his

2   purchase decisions, and he has no fraudulent concealment claim.  Plaintiffs argue that Rodriguez

3   purchased the second vehicle shortly after the first and did know that the MFT system was

4   "fatally flawed."  (Opp. at 7 & 8 n.7.)  But the SAC does not frame the material fact to be

5   narrowly limited to require a "fatal" flaw that cannot be cured.  Moreover, even if Plaintiffs'

6   fraud theory is limited to this basis, Plaintiff Rodriguez's own allegations show awareness of the

7   manifestation of the alleged "fatal flaws," and the manifestations could not have been material

8   given his purchase of another MFT-equipped vehicle.

9   **IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF THE IOWA
            CONSUMER FRAUD ACT**

10

11          Plaintiffs do not deny that the Iowa Consumer Fraud Act ("ICFA") requires them to

12  obtain approval from the Iowa attorney general before filing an ICFA class claim; nor do they

13  deny that they failed to obtain that approval.  (Opp. at 8 n.8); *see also* Iowa Code § 714H.7 ("A

14  class action lawsuit . . . ***shall not be filed*** with a court unless it has been approved by the attorney

15  general.") (emphasis added).  Plaintiffs nonetheless argue that a separate provision of the statute

16  precludes dismissal of their claim.  But the provision they cite does not address a plaintiff's

17  failure to obtain the attorney general's approval before filing suit, as was the case here; instead, it

18  concerns a separate requirement of mailing "pleadings, orders, judgments, and notices" to the

19  attorney general in an action that had been properly filed.  Iowa Code § 714H.6.

20  **V.     PLAINTIFFS MISKELL AND KIRCHOFF FAIL TO STATE A CLAIM FOR
            FRAUD BASED ON AN AFFIRMATIVE MISREPRESENTATION**

21

22          Plaintiffs concede that Plaintiff Miskell cannot state a claim for fraud based on an

23  affirmative misrepresentation under Ohio law.  (*See* Opp. at 5 n.2.)  That claim should be

24  dismissed.

25          Plaintiffs seek to preserve Plaintiff Kirchoff's affirmative misrepresentation claim under

26  Washington law by arguing that the alleged statement identified by Plaintiff Kirchoff is "virtually

27  identical" to the one made by Plaintiff Miller in the FAC, which this Court previously found

28  sufficient to state a claim for affirmative misrepresentation under New York law.  (*Id*. at 5-6.)

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

1   Plaintiffs' argument ignores the key difference between Plaintiff Miller's and Plaintiff Kirchoff's

2   allegations.  Plaintiff Miller alleged that "he was informed by the sales representatives at

3   Mahopac Ford that *Ford had corrected any defects in MyFord Touch.*"  (FAC ¶ 164 (emphasis

4   added).)  By contrast, Plaintiff Kirchoff alleges that "he was informed by the sales representatives

5   at Bickford Ford that *Ford had made significant improvements to the MyFord Touch system*."

6   (SAC ¶ 207 (emphasis added).)  This difference is meaningful for two reasons.

7   *First*, Plaintiffs do not and cannot allege facts establishing that the statement made to

8   Kirchoff was false.  To the contrary, Plaintiffs' SAC corroborates the alleged dealer statement

9   that Ford made significant improvements to the MyFord Touch system in late 2012, shortly

10  before Plaintiff Kirchoff purchased his vehicle.  (*See id.* ¶¶ 10, 284 (noting 20% decrease in

11  "things-gone-wrong-rate").)  Plaintiffs' Opposition fails to address this issue.  For this reason

12  alone, Kirchoff's affirmative misrepresentation claim should be dismissed.  *See Harvick v. Am.

13  Home Mortg. Servicing, Inc.*, No. 2:12-CV-03077, 2013 WL 3283523, at *3 n.5 (E.D. Cal. June

14  27, 2013) ("[W]hen a plaintiff files an opposition to a motion to dismiss addressing only certain

15  arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to

16  address as conceded.") (citation omitted).

17  *Second*, whereas Plaintiff Miller's statement was specific and quantifiable (Ford

18  "corrected any defects"), Plaintiff Kirchoff's statement is non-specific and vague (Ford "made

19  significant improvements").  Assertions like this are "puffery" and cannot sustain a claim for

20  fraud.  Plaintiffs quibble with the cases cited by Ford as involving claims under Section 10(b) of

21  the Securities Exchange Act of 1934.  But those decisions did not turn on any language specific to

22  Section 10(b).  Instead, the same principle has been confirmed by an array of cases not involving

23  Section 10(b).  *See, e.g.*, *Davis v. Byers Volvo*, No. 11CA817, 2012 WL 691757, at ¶ 34 (4th

24  App. Dist. 2012) ("Additionally, calling a product 'redesigned and improved' is mere puffery

25  which is not actionable.") (citing *Interactive Prod. Corp. v. a2z Mobile Office Solutions, Inc.*, 326

26  F.3d 687, 699 (6th Cir. 2003)); *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-

27  CV-02349-TEH, 2015 WL 1548872, at *3 (N.D. Cal. Apr. 7, 2015) ("However, marketing

28  statements, such as Defendant's claim that the Sprinter vans are 'award-winning vehicles,' are

9

1   non-actionable puffery and cannot form the basis of a fraud claim."); *Hutchins v. Bank of Am.,*

2   *N.A.*, No. 13-CV-03242-JCS, 2013 WL 5800606, at *6 (N.D. Cal. Oct. 28, 2013) ("Thus, to the

3   extent Plaintiff bases his fraud claim on Defendant's statements that its representatives were

4   'experts in the field of mortgage lending' and would give Plaintiff a loan 'in his best interests,'

5   Plaintiff's fraud claim fails.").

6   **VI.   CERTAIN PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF EXPRESS WARRANTY**

7

8        **A.   Plaintiffs Kirchoff and Miskell Do Not State a Claim for Breach of Warranty by Affirmation**

9

10       Plaintiffs' Opposition does not respond to Ford's contention that there are no express

11  warranties applicable to the named Plaintiffs' vehicles other than Ford's Limited Warranty (*see*

12  Motion to Dismiss at 14).  Accordingly, the Court should dismiss the breach of express warranty

13  claims of Plaintiffs Miskell and Kirchoff to the extent they are based on statements other than

14  those made in Ford's Limited Warranty.  *See Harvick*, 2013 WL 3283523, at *3 n.5.

15       **B.   Plaintiff Kirchoff Does Not State a Claim for Breach of Ford's Limited Warranty**

16

17       Plaintiffs cite no Washington authority in arguing against Ford's showing that

18  Washington courts interpreting the U.C.C. require a plaintiff to at least allege pre-purchase

19  *awareness of* an express warranty to state a claim for its breach.  (*See* Opp. at 10-11.)  The law is

20  clear:  even in the case of a written warranty, the Washington Supreme Court says that

21  "[r]ecovery for breach . . . is contingent on a plaintiff's knowledge of the representation."

22  *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 831 P.2d 724, 731-73

23  (Wash. 1992).  The SAC does not allege that Plaintiff Kirchoff was ever aware of the express

24  warranty governing his 2013 MFT-equipped vehicle.  Accordingly, Ford's Motion to Dismiss

25  Plaintiff Kirchoff's breach of express warranty claim should be granted.[2]

26  _____

27  [2]  Plaintiffs' Opposition argues that Kirchoff was aware of Ford's Limited Warranty with respect to his 2013 vehicle because he received service to his 2009 vehicle.  This contention is not in the SAC and should be disregarded.  *See Fabbrini*, 544 F. Supp. 2d at 1050.  And Plaintiffs' request to amend their complaint at this juncture, after the deadline to do so has passed, should be denied

28  [continued on next page]

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

**C.**     **Plaintiff Miller Cannot State a Claim for Breach of Ford's Limited Warranty**

With the sole exception of Plaintiff Miller, every named Plaintiff who claims to have brought their vehicle in for a repair explicitly alleges that they brought their vehicle to a dealership for service.  (*See e.g.*, SAC ¶ 26 ("Plaintiff Whalen took her vehicle back to Henry Curtis Ford . . . specifically to have the problems with the MyFord Touch in her vehicle addressed."); ¶ 41 (The Center for Defensive Driving); ¶ 56 (Watson); ¶ 62 (Thomas-Maskrey); ¶ 70 (D'Aguanno); ¶ 98 (Mitchell); ¶ 108 (Creed); ¶ 127 (Matlin); ¶ 135 (Rizzo); ¶ 151 (Purcell); ¶ 159 (Fink); ¶ 167 (Miskell); ¶ 173 (Rodriguez); ¶ 183 (Ervin); ¶ 190 (Connell); ¶ 198 (Miller-Jones); ¶ 206 (Kirchoff).  The only logical inference that can be drawn from Plaintiffs' different allegations on behalf of Plaintiff Miller is that he never brought his vehicle to the dealer for a repair.  Having failed to give Ford an opportunity to provide repairs, Plaintiff Miller cannot assert a claim for breach of Ford's Limited Warranty.  (Order at 33.)

**D.**     **Plaintiff Mitchell Cannot State a Claim for Breach of Ford's Limited Warranty**

Plaintiffs argue that Plaintiff Mitchell should be allowed to assert a breach of warranty claim even though he never sought a warranty repair for his second vehicle (the 2014 MKZ that was purchased after this action was filed) because doing so would have been "futile."  (Opp. at 14-15.)  But Plaintiffs have not alleged facts showing that it would have been "futile" for Mitchell to seek a repair to the MKZ.[3]  The short sum of Mitchell's allegations with respect to that vehicle are:  on ***one*** occasion he had no trouble connecting a peripheral device, but "the indexing was very slow."  (SAC ¶ 101.)  Plaintiffs provide no allegations that "slow" indexing is an actionable problem with Mitchell's vehicle or that that ***specific*** issue is unrepairable such that seeking a repair for it would have been "futile."  Plaintiffs attempt to mask this problem with rhetoric that

---

as futile given that the Limited Warranty that applies to Ford's 2013 vehicles is not identical to the warranty that applies to its 2009 vehicles.

[3] Nor is it surprising that Mitchell fails to allege that repairing his MKZ would have been futile, given that he testified in his deposition that his wife, the primary user of the vehicle, does not even use the system as a matter of preference—she allegedly "doesn't care about technology," "doesn't like technology" and "just avoids it."

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

1   Ford has documents "chronicling and complaining of the same issues **plaguing** Plaintiff

2   Mitchell," (Opp. at 15 (emphasis added)), but this contradicts Plaintiff Mitchell's own pleading—

3   that he experienced one supposed issue one time (hardly a "plague").  Plaintiffs also fail to cite

4   any case law (let alone any from Iowa) supporting the idea that there is a "futility" exception to

5   the commonsense requirement that a plaintiff must seek warranty repairs before asserting that a

6   limited warranty has failed of its essential purpose—a requirement the Court already has noted.

7   (*See* Order at 34 ("Still Plaintiffs have cited no cases establishing a futility exception to the

8   presentation required by the express terms of the express warranty.").)

9   **VII.    PLAINTIFF KIRCHOFF CANNOT STATE A CLAIM FOR BREACH OF THE
          IMPLIED WARRANTY OF MERCHANTABILITY**

10

11          Plaintiff Kirchoff does not deny that he is not in privity with Ford, which is required for a

12   claim for breach of the implied warranty of merchantability under Washington law.  Rather,

13   Plaintiff Kirchoff argues that he is a third-party beneficiary of a contract between Ford and his

14   independent selling dealer.  He is wrong as a matter of law.  The two "lead decisions" Plaintiff

15   cite (Opp. at 12-14) set forth determining factors that support Ford's argument, not Plaintiffs',

16   regarding the third-party beneficiary question.  For example, Plaintiffs do not and cannot plead

17   that Ford "knew the identity, the purpose, and requirements" of Plaintiff Kirchoff with respect to

18   his vehicle.  *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 422 P.2d 496, 503 (Wash. 1967);

19   *Touchet Valley Grain Growers v. Opp & Seibold Gen. Constr., Inc.*, 831 P.2d 724, 730 (Wash.

20   1992).  They do not allege that Ford "engineered and constructed" Plaintiff Kirchoff's F-250 "to

21   meet certain specifications" of his.  *Kadiak*, 422 P.2d at 503; *Touchet*, 831 P.2d at 730 ("Truss-T

22   designed the building knowing the specifications were the purchaser's.").  And Ford did not ship

23   the F-250 directly to Plaintiff Kirchoff or have pre-sale communications with him.  *Kadiak*, 422

24   P.2d at 503; *Touchet*, 831 P.2d at 730.  Indeed, the "sum of the interaction" between Plaintiff

25   Kirchoff and  Ford was post-sale phone calls and emails.  (Opp. at 12.)  Those are insufficient to

26   make him a third-party beneficiary under *Kadiak* and *Touchet Valley*.[4]

27   ---
     [4] Ford agrees that the *Babb* decision is not precedential authority given that it is an unpublished
     Washington Court of Appeals case.

28

1    Moreover, Plaintiffs' argument proves too much.  As they point out, all of Ford's

2 interactions with Plaintiff Kirchoff were post-sale, and were related to Ford honoring its Limited

3 Warranty—"diagnosing the problems," paying for "all of the service attempts on Kirchoff's MFT

4 system," and distributing "standard repair instructions" so Ford dealers could make repairs.

5 (Opp. at 12-13.)  If interactions related to performing on an express limited warranty were

6 sufficient to turn end purchasers into a third-party beneficiaries for purposes of the implied

7 warranty of merchantability, then Washington's privity requirement would no longer be the

8 "general rule" for any motor vehicle purchaser (or anyone who buys a product from a remote

9 manufacturer that comes with a warranty).  Holding otherwise would overturn well-established

10 contrary precedent from Washington's highest court.  *See, e.g.*, *Tex Enters., Inc. v. Brockway*

11 *Standard, Inc.*, 66 P.3d 625, 628 (Wash. 2003) (noting only a "third party beneficiary *exception*

12 out of the *general rule* that a vertical nonprivity plaintiff cannot recover from a remote

13 manufacturer for breach of implied warranty.") (emphases added); *id.* at 629 ("This court has also

14 distinguished between express and implied warranties, restricting recovery for breach of implied

15 warranty where it would have allowed recovery for breach of express warranty.  Because implied

16 warranties arise by operation of law without specific adoption by the seller, we recognize that

17 such warranties must be more closely guarded than express warranties, whose adoption requires

18 some voluntary action." (citation omitted)); *Baughn v. Honda Motor Co.*, 727 P.2d 655, 669

19 (Wash. 1986) ("Contractual privity between buyer and seller traditionally has been required

20 before a plaintiff may maintain such an action [for breach of implied warranty] under the Code.").

21 ## VIII.   THE OHIO PRODUCTS LIABILITY ACT AND PLAINTIFF MISKELL'S TORT CLAIMS
22

23    Plaintiffs concede that they are seeking "only economic damages relating to Ford's

24 defective MFT system" (Opp. at 18), which is narrower than the damages referenced in the SAC.

25 (*See* SAC ¶¶ 910, 913.)  Based on Plaintiffs' representation that they are seeking only economic

26 damages related to the MFT system, Ford withdraws its argument based on the Ohio Products

27 Liability Act at this time.

28

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

1

**IX.   PLAINTIFF CREED CANNOT STATE A CLAIM FOR VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

2

3        As this Court previously recognized, to assert a federal Magnuson-Moss Warranty Act

4   claim, a plaintiff must first comply with Ford's Better Business Bureau informal dispute

5   settlement procedure.  (Order at 61.)  The SAC attempts to revive Plaintiff Creed's Magnuson-

6   Moss claim by including an allegation that he submitted a claim to the BBB and thus completed

7   the required informal dispute resolution procedures.  However, because he seeks to bring his

8   claim on behalf of a purported class, he was required to notify Ford that he was asserting class

9   claims before initiating the BBB process.  15 U.S.C. § 2310(3).  Plaintiffs do not dispute that

10  Creed failed to provide this kind of notice.  Instead, they argue that he may later fulfill this

11  requirement after the Court has established the representative capacity of the named Plaintiffs.

12  This argument ignores that Plaintiff Creed no longer owns his Subject Vehicle.  (*See* SAC ¶ 120.)

13  Because he no longer owns his vehicle, he will be unable to provide Ford with an opportunity to

14  cure the alleged breach of warranty as to his vehicle, which Plaintiffs acknowledge is required.

15  (*See* Opp. at 5 ("Once a court [establishes the representative capacity of the named plaintiff], but

16  before the class action can proceed, the defendant must be afforded an opportunity to cure the

17  alleged breach of warranty . . . ."  (quoting *In re Porsche Cars N. Am. Inc. Plastic Coolant Tubes*

18  *Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 824 (S.D. Ohio 2012) (alterations in original))).)

19  Plaintiff Creed's Magnuson-Moss claim, which he seeks to assert on behalf of a class, thus cannot

20  survive.

21  **X.   CONCLUSION**

22       For each of these foregoing reasons, and all those stated in Ford's Motion Dismiss the

23  Second Amended Complaint, certain of Plaintiffs claims should be dismissed or confirmed as

24  dismissed as set forth in Exhibit A to Ford's Motion to Dismiss (ECF No. 157-1).

25

26

27

28

1

Dated:  July 24, 2015                    O'MELVENY & MYERS LLP

2                                                  By:____/s/ Randall W. Edwards_____

3                                                              Randall W. Edwards

4                                                  Attorneys for Defendant
                                                      Ford Motor Company

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FORD'S REPLY ISO MOTION TO DISMISS
SECOND AMENDED COMPLAINT
NO. CV 13-3072-EMC

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2015, a true and correct copy of the foregoing Defendant

Ford Motor Company's Reply in Support of Motion to Dismiss Second Amended Complaint was

filed electronically via the Court's ECF system and thus distributed electronically to counsel of

record.

Dated:  July 24, 2015                    O'MELVENY & MYERS LLP

                                         By:    /s/ Randall W. Edwards
                                                        Randall W. Edwards

                                         Attorneys for Defendant
                                         Ford Motor Company

CERTIFICATE OF SERVICE