UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE<br><br>MYFORD TOUCH CONSUMER<br>LITIGATION.<br>_____/ | No. C-13-3072 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>**(Docket No. 157)** |

## I. INTRODUCTION

Plaintiffs in this putative nationwide and multi-state class action are nineteen individuals and one organization residing in twelve different states. *See* Docket No. 154 (Second Amended Complaint) (SAC); *see also* Docket No. 167 (stipulation dismissing the sole named plaintiffs in the SAC who resided in Connecticut and Florida, respectively). Plaintiffs each purchased at least one vehicle from Defendant Ford Motor Company that was equipped by Ford with an "infotainment system" known as MyFord Touch (MFT). The gravamen of the numerous allegations pleaded over 204 pages in Plaintiffs' complaint is that Ford sold Plaintiffs and other putative class members vehicles with defective MFT systems, despite Ford's knowledge at the time of sale that the MFT system it had designed was seriously unsound. For example, Plaintiffs allege that the MFT systems in their vehicles are frequently rendered completely inoperable, leaving Plaintiffs unable to operate their vehicles' "climate controls, including windshield defrosters, as well as rearview cameras" which are all "operated only through the MyFord Touch touchscreen." SAC at ¶ 245.

This Court previously issued a lengthy order in this case granting in part and denying in part Ford's motion to dismiss Plaintiffs' First Amended Complaint (FAC). *See In re MyFord Touch*

1  *Consumer Litig.*, 46 F. Supp. 2d 936 (N.D. Cal. 2014).  On May 8, 2015 – the last day to file an
2  amended complaint under this Court's scheduling order – Plaintiffs filed their SAC.  Docket No.
3  145-4; Docket No. 131.  The principal material differences between the first and second amended
4  complaints are that (1) the SAC now pleads various claims under the laws of the State of
5  Washington brought by newly-added named Plaintiff Leif Kirchoff, and (2) the SAC alleges breach
6  of contract under the laws of each state where a named Plaintiff resides.  *Compare* Docket No. 47
7  (FAC) *with* SAC.

8  Currently pending before the Court is Ford's motion to dismiss the SAC under Rule 12(b)(6).
9  *See generally* Docket No. 157 (Mot.).  In general, Ford's motion seeks dismissal of the two new
10 types of claims first pleaded in the SAC (*i.e.*, those for breach of contract as well as various claims
11 brought under Washington law), as well as dismissal of a handful of previously unchallenged claims
12 that Plaintiffs re-pleaded in the SAC.  For the reasons explained below, and further for the reasons
13 discussed on the record at the hearing on this matter, Ford's latest motion to dismiss is granted in
14 part and denied in part.

## II.   DISCUSSION

16 For the purposes of this motion, the Court assumes the reader's familiarity with its earlier
17 Order on Ford's motion to dismiss the Plaintiffs' FAC.  *See In re MyFord Touch Consumer Litig.*,
18 46 F. Supp. 2d 936.  As the Court noted in that Order, while Plaintiffs have asserted various claims
19 under federal and state law, the causes of action in the FAC could "loosely be categorized into (1)
20 fraud claims and (2) breach-of-warranty claims."  *Id.* at 946.  The SAC still contains mostly fraud or
21 breach-of-warranty claims, but, as noted above, Plaintiffs have now pleaded substantially identical
22 allegations of breach of contract against Ford under the laws of all 12 states where Plaintiffs reside.
23 Moreover, the SAC pleads claims under Washington law on behalf of a new Plaintiff, Kirchoff.

24 In its pending motion to dismiss, Ford asks the Court to dismiss Plaintiffs' newly added
25 breach of contract allegations in their entirety.  Ford also asks the Court to dismiss certain of
26 Plaintiffs' fraud and breach-of-warranty allegations; especially those brought for the first time under

2

Washington law. Finally, Ford asks (and Plaintiffs largely do not oppose) that the Court reaffirm its earlier rulings dismissing certain claims in the FAC.[1] The Court's discusses Ford's requests below.

A. Breach of Contract Claims

Plaintiffs pleaded in their SAC that Ford committed breach of contract under the laws of each of the 12 states where a named Plaintiff resides. *See, e.g.*, SAC at ¶¶ 353-357 (California); ¶¶ 446-450 (Arizona). At the hearing, Plaintiffs' agreed to voluntarily dismiss all of their breach of contract allegations.[2] Because the last day to amend the pleadings in this case has passed, these causes of action are dismissed with prejudice. *See* Docket No. 131 (last day to amend pleadings was May 8, 2015).

B. Fraud Claims

    1. Affirmative Misrepresentation Claims

In its earlier Order, this Court dismissed all but one of the Plaintiffs' fraud claims that were predicated on any alleged affirmative misrepresentations made by Ford about the MFT system. *See In re MyFord Touch*, 46 F. Supp. 3d at 953-56 ("[T]o the extent Plaintiffs have asserted any fraud claims based on an affirmative representation (as opposed to a failure to disclose), the Court grants Ford's motion [to dismiss], with one exception."). The one exception the Court made was for Plaintiff Miller (New York), who alleged that "he was informed by the sales representatives at Mahopac Ford that Ford had corrected any defects in" the MFT system before he purchased his

---

[1] Ford also asked the Court to dismiss Plaintiff Miskell's tort claims under Ohio law, but later withdrew this portion of its motion. *See* Mot. at 16; Docket No. 172 (Reply Br.) at 13 ("Ford withdraws its argument based on the Ohio Products Liability Act at this time."). In a single footnote in its motion to dismiss, Ford also hinted that dismissal of Plaintiff Creed's Magnuson-Moss claim might be appropriate, but did not squarely ask this Court to dismiss the claim or otherwise argue dismissal was appropriate. *See* Mot. at 4 n.1. In its reply brief, Ford actually argues that the Court should dismiss Creed's Magnuson-Moss claim for reasons not articulated in its motion. Reply Br. at 14. The Court finds that Ford waived this argument because it was not adequately presented in its motion to dismiss, and it therefore declines to address Ford's argument or otherwise dismiss Creed's Magnuson-Moss claim. *See Somers v. Digital Realty Trust, Inc.*, -- F. Supp. 3d --, 2015 WL 4483995, at *3 (N.D. Cal. 2015) (holding that an argument cannot be raised for the first time in a party's reply brief). Ford similarly waived its argument that Plaintiff Miller's express warranty claim must be dismissed – a position it did not even allude to, let alone squarely raise, in its motion. *See* Reply Br. at 11.

[2] Counsel are advised that the better practice is to inform the Court reasonably well in *advance* of a scheduled hearing date if they plan to withdraw or otherwise concede challenged claims.

3

1  vehicle. *Id.* at 955 (emphasis omitted). The Court found that the dealer representative's alleged
2  statement that "all defects with the MFT system had been corrected" was an "affirmative
3  representation" that Plaintiffs had adequately alleged was false. *Id.* The Court further found that the
4  FAC contained adequate allegations of agency between Ford and its dealers to impute the alleged
5  representation to Ford, at least for the limited purpose of surviving a motion to dismiss. *Id.* at 956.

6  Ford now asks this Court to reaffirm its earlier ruling with respect to fraud claims based on
7  affirmative misrepresentations, and dismiss any possible representation (as opposed to omission)
8  grounded fraud claims brought by the two new named Plaintiffs in the SAC, Miskell (Ohio) and
9  Kirchoff (Washington). Plaintiffs acknowledge that Miskell has not adequately pleaded any
10 misrepresentation-based fraud claim, and thus any such claim is hereby dismissed with prejudice.
11 Plaintiffs argue, however, that "Kirchoff's detailed factual allegations are virtually identical to
12 Miller's allegations, which this Court has already found to be sufficient under Rule 9(b)." Opp. Br.
13 at 6. Plaintiffs are mistaken, and thus the Court finds that Kirchoff has not adequately pleaded a
14 fraud cause of action based on any affirmative misrepresentation.

15 As described above, the Court found that Miller adequately pleaded a fraudulent
16 misrepresentation where he alleged that he was told that "Ford has corrected any defects in MyFord
17 Touch," when Ford allegedly had not, in fact, eliminated all of the defects in the MFT. *See* FAC at ¶
18 164; *see also In re MyFord Touch*, 46 F. Supp. 3d at 955. Put differently, Miller adequately alleged
19 that he was affirmatively told that the MFT was completely free of defects (*i.e.*, "Ford has corrected
20 *any* defects in MyFord Touch").[3] Kirchoff, however, does not allege that he was similarly told that
21 the MFT was defect-free before he purchased his vehicle. Instead, Kirchoff alleges that in February
22 2013 he was "informed by the sales representatives at Bickford Ford that Ford *had made significant*
23 *improvements* to the MyFord Touch system." SAC at ¶ 207 (emphasis added). Kirchoff's
24 arguments are problematic. First, the Court finds that this allegation is not sufficiently particularized

---

[3] Interestingly, in the SAC Miller now alleges that he was informed by the dealer representatives that "Ford had corrected *many* of the defects in MyFord Touch." SAC at ¶ 144 (emphasis added). Given the materially different wording compared to the FAC, it is possible that even Miller no longer adequately alleges an actionable affirmative misrepresentation. Because Ford did not raise this argument, however, the Court will not definitively address it.

to pass muster under Rule 9(b). Notably, Kirchoff does not allege specifically what "improvements" he was told Ford had made to the MFT system. For instance, the complaint does not adequately plead whether such "improvements" were designed to fix defects in the system, or to add new features to the MFT.

In any event, Kirchoff's affirmative misrepresentation claim must be dismissed for another reason – Kirchoff does not sufficiently allege in the complaint that the specific challenged representation was false. Indeed, elsewhere in the SAC, Plaintiffs affirmatively pleaded that Ford *had* made at least some improvements to the MFT system before Kirchoff purchased his vehicle in February 2013. *See, e.g.*, SAC at ¶ 10 (alleging that in early 2012, Ford reported a "'things-gone-wrong' rate for its MyFord Touch system of 500 for every 1,000 vehicles" but by "late 2012, Ford reported 400 problems with its MyFord Touch system for every 1,000 vehicles"); ¶ 284 (same); ¶ 285 (quoting Ford spokesperson as stating that Ford has "reduced complaints by nearly 50 percent since launch"). Under Washington law, a Plaintiff alleging a fraudulent misrepresentation must plead (and ultimately prove) that the alleged actionable statement was actually false. *See Landstar Inway Inc. v. Samrow*, 325 P.3d 327 (Wash. App. 2014); *see also Baertschi v. Jordan*, 413 P.2d 657, 660 (Wash. 1966). Here, Kirchoff has not adequately pleaded a fraudulent misrepresentation because he has not pleaded with enough specificity to make a claim of falsity. Hence, this cause of action is dismissed with prejudice.

2. Second Time Vehicle Purchasers and Materiality

In the SAC, Plaintiffs Rodriguez (Texas) and Mitchell (Iowa) each allege that they purchased a second vehicle equipped with an MFT system *after* they purportedly became aware of alleged problems with the MFT system in the first Ford vehicles that they purchased. Indeed, Mitchell pleaded that he bought a 2014 Lincoln MKZ after he had signed the FAC in this case in November 2013, alleging that the MFT system is seriously defective and "Ford does not have a fix for the defect." FAC at ¶ 14; SAC at ¶ 101 (alleging that Mitchell purchased a 2014 Lincoln MKZ in January 2014). According to Ford, these allegations regarding second vehicle purchases conclusively demonstrate that any fraudulent omissions regarding the quality of the MFT could not have been material to these Plaintiffs, because the Plaintiffs would not have purchased another

5

MFT-equipped vehicle knowing it to be defective had these defects truly been material to their original purchasing decisions. Ford's argument has some merit with respect to Plaintiff Mitchell. Indeed, at the hearing Plaintiffs agreed to voluntarily dismiss Mitchell's fraud claims. Hence, these claims are dismissed with prejudice.

However, the Court denies Ford's motion to dismiss Rodriguez's fraudulent omissions claims for lack of materiality. Rodriguez alleges in the SAC that he purchased an MFT-equipped 2012 Ford Focus for his own use on May 17, 2011. SAC at ¶ 171. On December 12, 2011, Rodriguez then purchased an MFT-equipped 2012 Ford Explorer "for the exclusive use of his sister and her family." *Id.* at ¶ 178. Ford claims that the second purchase conclusively establishes that the performance of the MFT-system was not material to Rodriguez's purchasing decision(s). Ford is wrong for multiple reasons. First, Rodriguez does not plead when he first became aware that the MFT system in his own 2012 Ford Focus was allegedly defective.[4] *See id.* at ¶ 173 (alleging generally, without specifying a time, that "[s]ince the date of the purchase of his vehicle, Plaintiff Rodriguez has taken his Ford Focus in for service at least 6-8 times to Tipton Ford"). As pleaded, Rodriguez may have learned of the extent of the MFT problems only after he purchased the second vehicle. Moreover, it is also plausible that even if Rodriguez's own MFT system had begun seriously malfunctioning before December 2011, Rodriguez could have believed that the incident was isolated (*e.g.*, he could have assumed he purchased a lemon) or repairable. Unlike Mitchell, who purchased his second MFT-equipped vehicle after participating *in this lawsuit* alleging that Ford's MFT problems were (allegedly) systemic and not fixable, there is nothing in the SAC to suggest that Rodriguez knew at the time he purchased his second MFT-equipped vehicle that any defect in his own MFT system was not an isolated (or reasonably isolated) incident, or that Ford would be unable to fix the defects in the MFT system. Thus, the Court will not dismiss Rodriguez's fraudulent omissions claims on the ground suggested by Ford.

---

[4] Rodriguez does plead that he began experiencing problems with his MFT system soon after purchase, but the extent of these problems are not detailed, and Rodriguez does not suggest that he knew his MFT system was seriously defective soon after he purchased the vehicle. SAC at ¶ 173.

6

### 3. Mitchell's Iowa Consumer Fraud Act Claim is Dismissed

Ford argues that Mitchell's putative class claim under Iowa's Consumer Fraud Act must be dismissed because he does not allege that he obtained the approval of the Iowa Attorney General before filing suit. Mot. at 13-14. Plaintiffs have agreed to voluntarily dismiss this claim, and the Court thereby dismisses it with prejudice.

C. Breach of Warranty Claims

### 1. Plaintiff Mitchell's Breach of Express Warranty Claim

There is no dispute that Mitchell never brought his 2014 Lincoln MKZ in for repairs to either Ford or any Ford dealer. *See* Opp. Br. at 14-15. In its prior Order, this Court held that four of the twenty-four Plaintiffs included in the FAC "do not have viable express warranty claims because they never brought their cars in for repairs in the first instance." *In re MyFord Touch*, 46 F. Supp. 3d at 970. The Court noted that all of the case law presented to it requires a plaintiff claiming breach of an express warranty to give the seller the opportunity to repair or replace the product "*before* the exclusive repair and replace remedy is considered to have failed of its essential purpose." *Id.* (quoting *Asp v. Toshiba Am. Consumer Prods., LLC*, 616 F. Supp. 2d 721, 729 (E.D. Ohio 2008) (emphasis added). The Court rested its dismissal of the four Plaintiffs' breach of warranty claims exclusively on their failure to bring their vehicles in for repair. *Id.*

As an independent ground supporting its decision to dismiss the express warranty claims of those four Plaintiffs, the Court also discussed and rejected Plaintiffs' "futility" theory. Plaintiffs had argued that they should be "excused from bringing in their cars for repairs because to do so would have been futile." *In re MyFord Touch*, 46 F. Supp. 3d at 970. The Court noted that "Plaintiffs have cited no cases establishing a futility exception to the presentation required by the express terms of the express warranty." *Id.* at 971. Moreover, the Court noted that even if, "in theory," futility could be considered an excuse for not tendering their allegedly defective vehicles for warranty repairs, Plaintiffs had not even adequately alleged futility. As the Court explained, "[e]ven assuming a futility argument is theoretically possible, here, there are insufficient allegations in the complaint to make futility plausible." *Id.*

Over a year has passed since the Court initially rejected the Plaintiffs' futility theory, yet Plaintiffs have once again failed to cite any case – let alone any Iowa case law – that supports their contention that an individual can maintain a claim for breach of express warranty where that individual did not even give the defendant an opportunity to honor the terms of that warranty (*i.e.*, attempt to fix or replace the product). Rather, Plaintiffs suggest that this Court should create a "futility" doctrine out of whole cloth, and then find that Mitchell alleges sufficient facts to plausibly demonstrate that it would have been futile for him to bring his 2014 Lincoln in for warranty service because Ford would have been unable to repair the vehicle even if it had been given the chance. The Court declines to do so. While this Court was previously willing (in dicta) to entertain the possibility that futility "theoretically" could excuse a failure to tender a vehicle for repair, Plaintiffs have still not identified any case in support of this argument. Given that all the cases presented to the Court uniformly require the plaintiff to give the defendant a chance to perform warranty service before the defendant can be held liable for breach of warranty, Mitchell's breach of express warranty claim is dismissed with prejudice. *See In re MyFord Touch*, 46 F. Supp. 3d at 970-71; *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab. Litig.*, 754 F. Supp. 3d 1145, 1179 (C.D. Cal. 2010).

2.      Plaintiff Kirchoff's Express Warranty Claim

Ford argues in a single paragraph of its motion to dismiss that Kirchoff's claim for breach of express warranty must be dismissed because, under Washington law, a plaintiff needs to plead that "he was aware of the terms" of the relevant express warranty before the purchase was made. The Court finds that Ford's argument is without merit. First and foremost, Plaintiffs – including Kirchoff – *do* allege that they were "aware" of Ford's limited warranty before purchasing they purchased their vehicles. Paragraph 287 reads that "[e]ach Plaintiff was provided with a warranty and it was *a basis of their purchase* of their vehicles." SAC at ¶ 287 (emphasis added); *see also* SAC at ¶ 286 (alleging that "Ford provides an express limited warranty on each vehicle" in "connection with the sale" of such vehicles, and in the warranty "Ford promises to repair any defect or malfunction that arises in the vehicle during a defined period of time"). *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (explaining that for the purposes of a Rule 12(b)(6) motion to

8

dismiss, all "well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party").

In any event, Ford has not cited any case that squarely stands for the legal proposition it asserts; namely that a plaintiff must plead awareness of the terms of a clearly labeled express warranty that was provided to the consumer at the time of sale, in order to sue for breach of that warranty. In fact, one of Ford's cited cases seems to directly undercut Ford's contention. In *Kerzman v. NCH Corp.*, No. 05-cv-1820-JLR, 2007 U.S. Dist. LEXIS 17000, at *7 (W.D. Wash. Mar. 9, 2007), the district judge explained that to "state a claim for express warranty under [Washington law], Plaintiffs must show that (1) the warranty was made part of the basis of the bargain; (2) the warranty relates to a material fact concerning the product; and (3) the warranty turns out to be untrue." Nowhere in this formulation is there a requirement that the plaintiff be aware of any precise warranty term at the time of purchase in order to later recover for breach of express warranty.

Ford's other cases appear equally inapposite or inconclusive. In *Baughn v. Honda Motor Co., Ltd.*, the Washington Supreme Court considered whether statements made in television advertisements could constitute an express warranty. 727 P.2d 655, 669 (Wash. 1986). That is, the Court was concerned with the scope of any express warranty, and whether certain advertising statements could be considered part of any warranty. The Court concluded that breach of express promises made in such ads *could* potentially be actionable under an express warranty theory, so long as the purchaser "was aware of such representations." *Id.* In that case, the plaintiff alleged that he knew that Honda advertised a "mini-trail bike as a good one for children and stated that 'You meet the nicest people on a Honda.'" *Id.* The Court affirmed the dismissal of an express warranty claim, explaining that "[s]uch statements do not rise to the level of express representations for which recovery . . . is allowed." *Id. Baughn* is clearly not of assistance to Ford – unlike in *Baughn*, Kirchoff alleges that the express warranty statements were made part of the basis of the bargain because Ford actually issued him a printed express warranty. This is not a case like *Baughn* where the scope of the warranty was in dispute because it was unclear what representations the plaintiff was aware of; here, there is an express written warranty with a defined scope.

9

Ford's final case, *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, similarly fails to control the outcome here. 831 P.2d 724, 731 (Wash. 1992). In *Touchet*, the product purchaser claimed that the manufacturer had made express warranty statements in *both* an "advertising brochure" as well as in a "price book and purchase order." *Id.* In resolving the purchaser's express warranty contentions, the Supreme Court first quoted *Baughn* for the proposition that an express warranty can be created "'when a manufacturer makes express representations, in advertising or otherwise, to a plaintiff.'" *Id.* (quoting *Baughn*, 727 P.2d at 655). In the very next sentence, the Supreme Court wrote: "Recovery for breach of an express warranty is contingent on a plaintiff's knowledge of the representation." *Id.* (citing *Baughn*, 727 P.2d at 655). The Court then immediately went on to discuss whether the manufacturer's statements in the advertising brochure constituted express warranties. *Id.* The Supreme Court ultimately held that the statements in the advertising materials before it were sufficiently specific to constitute actionable express warranties. *Id.* After completing its discussion of the statements contained in the advertising brochure, the Supreme Court then went on to separately analyze statements made in the price book and purchase order that the defendant had "labeled 'standard warranty.'" *Id.* In its discussion of the statements contained in the price book and purchase order, the Supreme Court did not cite *Baughn*, nor did the Court discuss whether awareness of any "standard warranty" terms was a required element of plaintiff's breach of warranty claim. *Id.* at 731-32. Rather, the Court discussed and resolved the issue of whether the express warranty benefitted the end user (*i.e.*, plaintiff). *Id.*

The Court does not read *Touchet Valley* to hold that specific awareness of the terms of a standard printed warranty that otherwise forms the basis of the parties' bargain is required to state a claim for breach of express warranty. Rather, *Touchet Valley* holds, consistent with *Baughn*, that "awareness" must be shown if the plaintiff intends to argue that other types of "*representation*[s]" (*e.g.*, advertising statements) form part of the express warranty; *i.e.*, where the representations are used by the plaintiff to define the scope of the warranty. *Id.* at 731 ("Recovery for breach of an express warranty is contingent on a plaintiff's knowledge of the representation."). This reading is consistent with other Washington case law, such as *Kerzman*, which was decided after *Touchet*

*Valley*, as well as Washington statutory law, none of which appears to impose a "knowledge requirement" for breach of a clearly labeled express warranty. *See* Wash. Rev. Code § 62A.2-313 (no knowledge requirement); *Kerzman*, 2007 U.S. Dist. LEXIS 17000, at *7 (same). To hold otherwise would run counter to the general contract principle that parties to a written contract are generally bound by all its provisions regardless of whether one party or the other read or was otherwise aware of a particular provision. Finally, and to reiterate, even if Ford were correct that there is such a knowledge requirement under Washington law, Kirchoff has adequately pleaded knowledge of the express warranty here. Ford's motion to dismiss Kirchoff's breach of express warranty claim is therefore denied.

        3.    <u>Plaintiff Kirchoff's Implied Warranty Claim</u>

Ford's final argument is that Kirchoff's breach of implied warranty claim must be dismissed because he did not adequately plead facts that support his conclusory allegation that he is a third-party beneficiary of an implied warranty between Ford and Bickford Ford, the dealer that sold Kirchoff his Ford F-250. Mot. at 15-16; *see also* SAC at ¶ 1060 (alleging that Kirchoff "and the Washington Class members are intended third-party beneficiaries of contracts between Ford and its dealers"). Ford is correct.

The parties recognize that under Washington law, a party typically must be in contractual privity with the manufacturer to state a claim for breach of an implied warranty. *See, e.g.*, *Tex Enterprises v. Brockway Standard, Inc.*, 66 P.3d 625, 628 (Wash. 2003) (noting that traditionally "a plaintiff may not bring an implied warranty action . . . without contractual privity"); *see also In re MyFord Touch*, 46 F. Supp. 3d at 981 (dismissing various implied warranty claims pleaded in the FAC for lack of privity). Both parties also acknowledge that Washington law admits an exception to the privity rule where the purchaser is "the intended third party beneficiary of the implied warranty that the manufacturer gave to its intermediate dealer." *Id.* (citing *Touchet Valley*, 831 P. 2d at 730).

1  Here, Kirchoff has failed to allege sufficient facts to plausibly establish his alleged third-party
2  beneficiary status.[5]

3  In determining whether an individual plaintiff is a third-party beneficiary of an implied
4  warranty, the Washington courts look to the "sum of [the] interaction" between the purchaser and
5  manufacturer, as well as the "expectations between the purchaser and the manufacturer," if any.
6  *Touchet Valley*, 831 P. 2d at 730 (citing *Kadiak Fisheries Co. v. Murphy Diesel Co.*, 422 P.2d 496
7  (Wash. 1967)). "Because implied warranties arise by operation of law without specific adoption by
8  the seller, we recognize that such warranties must be *more closely guarded* than express warranties,
9  whose adoption requires some voluntary action." *Tex Enterprises*, 66 P.3d at 629 (emphasis added).
10 Thus in *Kadiak*, the Washington Supreme Court held that an indirect purchaser (Kadiak) of a 325
11 horsepower maritime diesel motor was a third-party beneficiary of an implied warranty between the
12 manufacturer of the motor (Murphy Diesel) and the product seller (Alaska Pacific) where Murphy
13 Diesel knew the identity, purpose and requirements of Kadiak's specifications, constructed the
14 motor to those specifications, and shipped the motor directly to Kadiak. *See Kadiak*, 422 P.2d at
15 503-04 (stating that the manufacturer "engineered and constructed the motor to meet certain
16 specifications, e.g., the bed of the [boat]," and had contact with the purchaser "before and after
17 shipment"). The manufacturer also sent a regional sales representative and a service technician to
18 help with the installation of the motor in Kadiak's fishing boat, and, after repeated mechanical
19 problems, attempted to fix the engine on Kadiak's behalf. *Id.* at 503. The Court concluded that
20 "[u]nder these circumstances, it is beyond dispute that Alaska Pacific's purchase of the motor from
21 Murphy Diesel was upon the consideration that a merchantable motor, fit and suitable for the marine
22 purposes of Kadiak, would be supplied. Kadiak thus became the beneficiary of the contract, with
23 Alaska Pacific as the conduit through which the duty of ordinary care and the implied warranties of
24 merchantability and fitness flowed" *Id.* at 503-04.

---

[5] Previously, this Court rejected Ford's arguments that neither California nor North Carolina recognize a third-party beneficiary exception at all. *In re MyFord Touch*, 46 F. Supp. 2d at 984-85. The Court did not address Ford's current argument, however, that the complaint did not contain adequate allegations to invoke the third-party beneficiary exception.

1  The Washington Supreme Court reached a similar conclusion in *Touchet Valley*. *See* 831 P.2d at 730. There, the indirect purchaser plaintiff was held to be a third-party beneficiary of the implied warranties of merchantability and fitness between the manufacturer and the seller of pre-fabricated metal buildings where, like in *Kadiak*, the manufacturer knew the indirect purchaser's "identity, its purpose, and its requirements," designed "the building knowing the specifications were the purchaser's," delivered the product directly to the purchaser, and attempted to make repairs after the product turned out to be defective. *Id.* As the Court explained, "the sum of this interaction is indistinguishable from *Kadiak*," and hence the Court held that the indirect purchaser "was the intended beneficiary of [defendant]'s implied warranties to [seller]. Those warranties assured the merchantability of [defendant]'s fabricated building components and their fitness for [plaintiff]'s *known particular purpose*." *Id.* (emphasis added).

Kirchoff's allegations in the SAC stand in stark contrast to the facts of both *Kadiak* and *Touchet Valley*, the only cases that Kirchoff actually cites in support of his third-party beneficiary status. Here, the only interactions that allegedly occurred between Kirchoff and Ford all occurred *after* Kirchoff had already purchased his Ford truck from the dealer: According to Kirchoff he "spent approximately 20 hours on the phone with the Ford SYNC support team, diagnosing the problems [with his MFT], documenting several issues, and receiving commitments that those issues would be carefully review by the software team for a future software release." SAC at ¶ 208. There is no allegation of any pre-purchase interactions between Ford and Kirchoff, and especially no allegations similar to those in either *Kadiak* or *Touchet Valley* that the manufacturer designed the end-product specifically for the purchaser to his specifications, shipped the product directly to the indirect purchaser, or installed the product for the indirect purchaser. Rather, the "sum of the interaction" between the parties here was roughly 20 hours worth of calls to Ford's technical support team after the sale. Given that the Washington Supreme Court has cautioned that implied warranties should be "closely guarded," the Court finds that Kirchoff has not adequately pleaded sufficient facts to plausibly demonstrate that he was a third-party beneficiary to any contracts between Ford and Bickford Ford. To hold otherwise would significantly expand the third-party beneficiary exception to the general rule that privity is required to state a breach of implied warranty claim.

13

1    At the hearing, the Plaintiffs suggested that Kirchoff should be permitted to amend this claim
2 to plead additional facts; namely that he submitted numerous "requirements" to Ford when he
3 purchased his vehicle (*e.g.*, he ordered a red truck with certain options).  The Court will not permit
4 Plaintiffs to amend this claim.  First, the Court reiterates that the deadline for the amendment of
5 pleadings has long since passed, and this litigation has been ongoing for years.  *See* Docket No. 131
6 (last day to amend pleadings was May 8, 2015).  Plaintiffs filed their SAC on the very last day to file
7 an amended pleading.  It was incumbent on Plaintiffs to file a complaint that would not require
8 further amendment.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir.
9 2009).  Plaintiffs cannot amend now, because they cannot meet the good cause standard of Rule 16.

10   Perhaps more importantly, however, the proposed amendment would not cure the identified
11 deficiency.  In both *Kadiak* and *Touchet Valley*, the actual end product that failed – and thus the
12 product that was the subject of the lawsuit – had been custom designed for the plaintiff to meet the
13 plaintiffs' specific requirements.  *See Kadiak*, 422 P.2d at 498 (custom marine diesel engine failed);
14 *Touchet Valley*, 831 P.2d at 726 (structural failure of custom designed grain storage building).  This
15 helped establish a substantial and direct relationship with the manufacturer sufficient to create a
16 third party beneficiary.  Here, Kirchoff does not propose to allege that Ford custom designed an
17 MFT system for his vehicle – rather, he simply claims he could allege that he transmitted some non-
18 MFT related requirements to Ford.  The Court fails to see how such facts would plausibly support
19 Kirchoff's contention that he was an intended third-party beneficiary of any implied warranty
20 between Ford and Bickford Ford with respect to the MFT system.

21   Put simply, the Court finds that the facts of this case as alleged, and as Plaintiff proposes to
22 allege them if granted leave to amend, are not sufficient to state a plausible claim for breach of any
23 implied warranty against Ford under a third-party beneficiary theory.

### III.   CONCLUSION

25   The Court dismisses the following claims with prejudice:  (1) all of Plaintiffs' breach of
26 contract allegations; (2) Plaintiff Miskell's and Kirchoff's fraud claims based on an alleged
27 affirmative misrepresentation theory; (3) Plaintiff Mitchell's fraud claims; (4) Plaintiff Mitchell's
28 breach of express warranty claim; and (5) Plaintiff Kirchoff's breach of implied warranty claim.

14

The Court denies Ford's motion with respect to all other claims in the SAC. Plaintiffs shall file an amended complaint that conforms with this order and the Court's prior orders within thirty (30) days. Plaintiffs may not amend any of the claims that this Court has dismissed either in this order or any earlier order.

This order disposes of Docket No. 157

IT IS SO ORDERED.

Dated: August 31, 2015

_____
EDWARD M. CHEN
United States District Judge