STEVE W. BERMAN (*pro hac vice*)
CRAIG R. SPIEGEL (CSB No. 122000)
TYLER S. WEAVER (*pro hac vice*)
CATHERINE Y.N. GANNON (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
craigs@hbsslaw.com
tyler@hbsslaw.com
catherineg@hbsslaw.com

ADAM J. LEVITT (*pro hac vice*)
JEFF ALMEIDA (*pro hac vice*)
KYLE J. MCGEE (*pro hac vice*)
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001 alevitt@gelaw.com
jalmeida@gelaw.com
kmcgee@gelaw.com

NICHOLAS E. CHIMICLES (*pro hac vice*)
JOSEPH G. SAUDER (*pro hac vice*)
MATTHEW D. SCHELKOPF (*pro hac vice*)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
NEC@chimicles.com
JGS@chimicles.com
MDS@chimicles.com

ROLAND TELLIS (CSB No. 186269)
MARK PIFKO (CSB No. 228412)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2320
Facsimile: (818) 986-96984
rtellis@baronbudd.com
mpifko@baronbudd.com

*Plaintiffs' Interim Co-Lead Counsel*

[*Additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE MYFORD TOUCH CONSUMER LITIGATION | Case No. 13-cv-3072-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: May 26, 2016<br>Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Courtroom: 5 |

**[REDACTED VERSION]**

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

**TO DEFENDANT AND ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on May 26, 2016, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, 17th Floor, Courtroom 5, before the Honorable Edward M. Chen, Plaintiffs will, and hereby do, move the Court for an order under Fed. R. Civ. P. 23(a) and (b)(3) certifying the following Classes and naming the following class representatives:

1. **Arizona Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in Arizona from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("Arizona Class"). The Arizona Class seeks class certification of claims for: (a) violation of the Arizona Consumer Fraud Act, Ariz. Rev. Stat. § 44-1521, *et seq.*; and (b) common-law fraudulent concealment. Plaintiffs move for the appointment of Joseph D'Aguanno as the class representative for the Arizona Class.

2. **California Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in California from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("California Class"). The California Class seeks class certification of claims for: (a) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; (b) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; (c) violation of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; (d) breach of implied warranty, under State law and the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C.S. § 2301, *et seq.*; (e) breach of express warranty, under State law and the MMWA; and (f) common-law fraudulent concealment. Plaintiffs move for the appointment of Plaintiffs Darcy Thomas-Maskrey, Richard Decker Watson, Jennifer Whalen, and The Center for Defensive Driving as the class representatives for the California Class.

3. **Colorado Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in Colorado from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("Colorado Class"). The

Colorado Class seeks class certification of claims for: (a) violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq.*; (b) common-law fraudulent concealment; and (c) strict product liability. Plaintiffs move for the appointment of Plaintiff James Laurence Sheerin as the class representative for the Colorado Class.

4. **Iowa Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in Iowa from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("Iowa Class"). The Iowa Class seeks class certification of the claim for: (a) breach of express warranty, under State law and the MMWA; and (b) common-law fraudulent concealment. Plaintiffs move for the appointment of Plaintiff Thomas Mitchell as the class representative for the Iowa Class.

5. **Massachusetts Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in Massachusetts from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("Massachusetts Class"). The Massachusetts Class seeks class certification of claims for: (a) violation of Chapter 93A of Massachusetts General Laws; (b) breach of implied warranty, under State law and the MMWA; (c) breach of express warranty, under State law and the MMWA; and (d) common-law fraudulent concealment. Plaintiffs move for the appointment of Plaintiff William Creed as the class representative for the Massachusetts Class.

6. **New Jersey Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in New Jersey from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("New Jersey Class"). The New Jersey Class seeks class certification of claims for: (a) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*; (b) breach of implied warranty, under State law and the MMWA; (c) breach of express warranty, under State law and the MMWA; and (d) common-law fraudulent concealment. Plaintiffs move for the appointment of Plaintiffs Josh Matlin and Russ Rizzo as the class representatives for the New Jersey Class.

7. **New York Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in New York from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("New York Class"). The New York Class seeks class certification of claims for: (a) violation of N.Y.

General Business Law §§ 349-350; (b) breach of express warranty, under State law and the MMWA; and (c) common-law fraudulent concealment. Plaintiffs move for the appointment of Plaintiffs Jeffrey Miller and Nuala Purcell as the class representatives for the New York Class.

8. **North Carolina Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in North Carolina from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("North Carolina Class"). The North Carolina Class seeks class certification of claims for: (a) violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*; (b) breach of implied warranty, under State law and the MMWA; (c) breach of express warranty, under State law and the MMWA; and (d) common-law fraudulent concealment. Plaintiffs move for the appointment of Plaintiff Daniel Fink as the class representative for the North Carolina Class.

9. **Ohio Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in Ohio from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("Ohio Class"). The Ohio Class seeks class certification of claims for: (a) violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01, *et seq.*; (b) breach of implied warranty in tort; (c) breach of express warranty, under State law and the MMWA; (d) common-law fraudulent concealment; and (e) common-law negligence. Plaintiffs move for the appointment of Plaintiff James Miskell as the class representative for the Ohio Class.

10. **Texas Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in Texas from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("Texas Class"). The Texas Class seeks class certification of claims for: (a) violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann. Bus. & Com. Code § 17.41, *et seq.*; and (b) common-law fraudulent concealment. Plaintiffs move for the appointment of Plaintiffs Michael Ervin and Jose Randy Rodriguez as the class representatives for the Texas Class.

11. **Virginia Class.** All persons or entities who purchased or leased a Ford or a Lincoln vehicle in Virginia from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system ("Virginia Class"). The Virginia Class seeks class certification of claims for: (a) violation of the

Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq.*;
(b) breach of implied warranty, under State law and the MMWA;
(c) breach of express warranty, under State law and the MMWA; and (d)
common-law fraudulent concealment. Plaintiffs move for the appointment
of Plaintiffs Jason Connell and Henry Miller-Jones as the class representatives for the Virginia Class.

12. **Washington Class.** All persons or entities who purchased or leased a
Ford or a Lincoln vehicle in Washington from Ford Motor Company or
through a Ford Motor Company dealership before August 9, 2013, which
vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car
communication and entertainment system ("Washington Class"). The
Washington Class seeks class certification of claims for: (a) violation of
the Washington Consumer Protection Act, RCW 19.86.010, *et seq.*; and
(b) breach of express warranty, under State law and the MMWA. Plaintiffs move for the appointment of Plaintiff Leif Kirchoff as the class representative for the Washington Class.

Plaintiffs also move under Fed. R. Civ. P. 23(g) for the appointment of the following law

firms as Class Counsel for all certified Classes: Hagens Berman Sobol Shapiro LLP; Baron &

Budd, P.C.; Grant & Eisenhofer P.A.; and Chimicles & Tikellis LLP.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the Declaration of Steve W. Berman in Support of Plaintiffs'

Motion for Class Certification and exhibits thereto.

DATED: January 28, 2016          HAGENS BERMAN SOBOL SHAPIRO LLP

By _____*/s/* Steve W. Berman_____
                STEVE W. BERMAN
Steve W. Berman (*pro hac vice*)
Craig R. Spiegel (CSB No. 122000)
Tyler S. Weaver (*pro hac vice*)
Catherine Y.N. Gannon (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
craigs@hbsslaw.com
tyler@hbsslaw.com
catherineg@hbsslaw.com

Roland Tellis (CSB No. 186269)
Mark Pifko (CSB No. 228412)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Tel: (818) 839-2320
Fax: (818) 986-9698
rtellis@baronbudd.com
mpifko@baronbudd.com

Adam J. Levitt (*pro hac vice*)
Jeff Almeida (*pro hac vice*)
Kyle J. McGee (*pro hac vice*)
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001
alevitt@gelaw.com
jalmeida@gelaw.com
kmcgee@gelaw.com

Nicholas E. Chimicles (*pro hac vice*)
Joseph G. Sauder (*pro hac vice*)
Matthew D. Schelkopf (*pro hac vice*)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
NEC@chimicles.com
JGS@chimicles.com
MDS@chimicles.com

Jeff D. Friedman (CSB No. 173886)
Shana E. Scarlett (CSB No. 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

*Plaintiffs' Interim Co-Lead Counsel*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................................1

II.     SUMMARY OF CLASSWIDE EVIDENCE ESTABLISHING CLAIMS...........................3

        A.      The MFT System .................................................................................3

        B.      MFT Was Fundamentally Defective on the Day Ford First Released It, and
                Ford Knew It ........................................................................................4

                1.      Ford knew MFT was materially defective before selling even one unit. ..........4

                2.      Drivers immediately reported huge numbers of problems with Ford's
                        MFT Software. ....................................................................5

                3.      The Base Software defects resulted from a deeply flawed development
                        process. ...........................................................................6

                        a.      Ford used an inexperienced contractor that failed to follow basic
                                standards. ....................................................................6

                4.      The Base Software was so fundamentally defective that Ford could not
                        even fully diagnose (or fix) the problems years later. ........................7

                5.      Ford did not even adequately test MFT before selling it.....................9

                6.      Dealerships could not repair the Class Vehicles. ............................9

        C.      Until at Least August 2013, Ford's Attempts to Fix MFT's Base Software
                Were Ineffective – Which Ford Knew Before Releasing Each Update .....................10

                1.      From 2010 through 2011, Ford made numerous attempts at quick
                        fixes to the MFT, which it knew did not actually fix the Base Software. .......10

                2.      Ford hired Microsoft, hoping that Microsoft could improve MFT's
                        software, but Ford continued to release MFT software updates it
                        knew were defective. ..............................................................11

                        a.      Version 3.0 / ██████████████████ ....................11

                3.      Version 3.2 / ████████████ .............................................12

                4.      Version 3.5 / ████████████ .............................................13

        D.      Because the Base Software Was the Same for all MFT Systems,
                Drivers – Including the Class Representatives and Ford's Highest
                Executives – Experienced the Same Problems.........................................14

                1.      The Base Software is ████████ across all vehicles with MFT...........14

|   |   | 2. | Consumers experienced predominantly the same problems over the entire Class Period. | 15 |
|---|---|---|---|---|
|   |   | 3. | Ford knew *precisely* what MFT problems its customers were experiencing, because its most senior executives experienced the *same* MFT. | 15 |
|   |   | 4. | The Class Representatives have had the same experiences with their MFTs as the other Class members. | 16 |
|   | E. |   | The Defects in Ford's MFT's Base Software Created Safety Hazards | 16 |
|   | F. |   | Ford Charged a Premium for MFT, and Plaintiffs Will Prove Damages with Common Evidence and Common Methodologies | 17 |
| III. |   |   | THE PROPOSED CLASSES MEET THE RULE 23 CERTIFICATION REQUIREMENTS | 18 |
|   | A. |   | The Classes Are Ascertainable | 18 |
|   | B. |   | The Classes Meet the Rule 23(a) Requirements | 20 |
|   |   | 1. | The Classes are sufficiently numerous. | 20 |
|   |   | 2. | Plaintiffs' and Class members' claims share common questions of fact and law, satisfying Rule 23(a)(2). | 20 |
|   |   | 3. | Plaintiffs' claims are typical of the Class' claims, satisfying Rule 23(a)(3). | 22 |
|   |   | 4. | Adequacy of representation is satisfied under Rule 23(a)(4). | 23 |
|   | C. |   | The Classes Meet the Requirements of Rule 23(b) | 24 |
|   |   | 1. | Common questions of law and fact concerning liability predominate over questions affecting only individual Class members. | 25 |
|   |   |   | a. Statutory consumer fraud claims. | 25 |
|   |   |   | (1) California Class. | 25 |
|   |   |   | (a) Common issues predominate the CLRA claim. | 26 |
|   |   |   | (b) Common issues predominate the UCL claim. | 29 |
|   |   |   | (c) Common issues predominate the FAL claim. | 30 |
|   |   |   | (2) Arizona Class. | 30 |
|   |   |   | (3) Colorado Class. | 31 |
|   |   |   | (4) Massachusetts Class. | 32 |

(5)    New Jersey Class. ...................................................................33

(6)    New York Class. ......................................................................35

(7)    North Carolina Class. ..............................................................36

(8)    Ohio Class. ..............................................................................36

(9)    Texas Class. .............................................................................37

(10)   Virginia Class. .........................................................................38

(11)   Washington Class. ...................................................................39

b.    Implied warranty claims. ....................................................................39

c.    Express warranty claims. ....................................................................41

d.    Fraudulent concealment claims. .........................................................45

e.    Other claims.........................................................................................46

f.    Plaintiffs' damages models satisfy the *Comcast* standard...................47

2.    A class action is the superior method of adjudication. ...................................49

IV.    CONCLUSION ....................................................................................................50

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ackerman v. Coca-Cola Co.*,
    2010 WL 2925955 (E.D.N.Y. July 21, 2010) ...........................................................35

*Adelman v. Rheem Mfg. Co.*,
    2015 WL 4874412 (D. Ariz. Aug. 14, 2015) ...........................................................30

*Advanced Multilevel Concepts, Inc. v. Stalt, Inc.*,
    2012 WL 1835734 (N.D. Cal. May 21, 2012)...........................................................40

*Alcantar v. Hobart Serv.*,
    800 F.3d 1047 (9th Cir. 2015) ...........................................................20

*Allen v. Hyland's Inc.*,
    300 F.R.D. 643 (C.D. Cal. 2014)...........................................................41

*Allen v. Similasan Corp.*,
    306 F.R.D. 635 (S.D. Cal. 2015) ...........................................................41

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ...........................................................24, 50

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013) ...........................................................18, 20, 24

*Apple Inc. v. Samsung Elecs. Co.*,
    735 F.3d 1352 (Fed. Cir. 2013) ...........................................................48

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) ...........................................................30

*Banks v. Nissan N. Am., Inc.*,
    301 F.R.D. 327 (N.D. Cal. 2013) ...........................................................21, 25

*Bartholic v. Scripto-Tokai Corp.*,
    140 F. Supp. 2d 1098 (D. Colo. 2000) ...........................................................46

*Bosland v. Warnock Dodge, Inc.*,
    197 N.J. 543 (2009) ...........................................................33

*Boudreau v. Baughman*,
    368 S.E.2d 849 (N.C. 1988) ...........................................................40

*Brand v. Hyundai Motor Am.*,
    226 Cal. App. 4th 1538 (2014) ................................................................41

*Brazil v. Dell Inc.*,
    585 F. Supp. 2d 1158 (N.D. Cal. 2008) ................................................38

*Buchanan v. Improved Props., LLC*,
    7 N.E.3d 634 (Ohio Ct. App. 2014) ......................................................45

*Carlson v. Gen. Motors Corp.*,
    883 F.2d 287 (4th Cir. 1989) ................................................................44

*In re Carrier IQ, Inc. Cons. Priv. Litig.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................29

*Chamberlan v. Ford Motor Co.*,
    402 F.3d 952 (9th Cir. 2005) ..........................................................21, 25

*Chisolm v. TranSouth Fin. Corp.*,
    184 F.R.D. 556 (E.D. Va. 1999) ..........................................................38

*Christiana Marine Serv. Corp. v. Seaboard Shipping Corp.*,
    1997 WL 587292 (E.D. Pa. Sept. 10, 1997) ........................................44

*Coffman v. Arthrex, Inc.*,
    69 Va. Cir. 17 (Va. Cir. Ct. 2005) ........................................................40

*Colonial Life Ins. Co. of Am. v. Elec. Data Sys. Corp.*,
    817 F. Supp. 235 (D.N.H. 1993) ..........................................................44

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013) ....................................................................47, 49

*In re ConAgra Foods, Inc.*,
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ..............................32, 35, 37, 48

*Daffin v. Ford Motor Co.*,
    458 F.3d 549 (6th Cir. 2006) ................................................................43

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ........................................................28, 40

*Delagarza v. Tesoro Ref. & Mktg. Co.*,
    2011 WL 4017967 (N.D. Cal. Sept. 8, 2011) ......................................24

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ..............................................................................50

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  - v -
CLASS CERTIFICATION; MEMO IN SUPPORT
010388-11  848940 V1           Case No. 13-cv-3072-EMC

*Doyle v. Chrysler Group LLC*,
 2014 WL 7690155 (C.D. Cal. Oct. 9, 2014) ...........................................................22

*Dzielak v. Whirlpool Corp.*,
 26 F. Supp. 3d 304, 329 (D.N.J. 2014)..................................................................40

*Edwards v. Ford Motor Co.*,
 603 F. App'x 538 (9th Cir. 2015)...........................................................................27

*Ehret v. Uber Techs., Inc.*,
 2015 WL 7759464 (N.D. Cal. Dec. 2, 2015) .....................................................27, 29

*Ellis v. Costco Wholesale Corp.*,
 657 F.3d 970 (9th Cir. 2011) ..................................................................................18

*In re Facebook, Inc. PPC Adv. Litig.*,
 282 F.R.D. 446 (N.D. Cal. 2012) ...........................................................................20

*Forbes v. Par Ten Grp., Inc.*,
 394 S.E.2d 643 (N.C. Ct. App. 1990)......................................................................36

*Fravel v. Ford Motor Co.*,
 973 F. Supp. 2d 651 (W.D. Va. 2013).....................................................................38

*Grays Harbor Adventist Christian School v. Carrier Corp.*,
 242 F.R.D. 568 (W.D. Wash. 2007) .......................................................................39

*Grimmelmann v. Pulte Home Corp.*,
 2010 WL 2744943 (D. Ariz. July 9, 2010)..............................................................31

*Guido v. L'Oreal USA, Inc.*,
 2013 WL 3353857 (C.D. Cal. July 1, 2013) ..............................................25, 26, 49

*Hall v. Walter*,
 969 P.2d 224 (Colo. 1998) .....................................................................................32

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
 238 Cal. App. 4th 124 (2015)..................................................................................45

*Hamilton v. Ball*,
 7 N.E.3d 1241 (Ohio Ct. App. 2014) ......................................................................36

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
 719 P.2d 531 (Wash. 1986) ....................................................................................39

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ...........................................................................22, 24

*Hanrahran v. Specialized Loan Serv., LLC*,
    54 F. Supp. 3d 149 (D. Mass. 2014)........................................................................33

*In re Hardieplank Fiber Cement Siding Litig.*,
    2013 WL 3717743 (D. Minn. July 15, 2013)............................................................38

*Helmer v. Goodyear Tire & Rubber Co.*,
    2014 WL 1133299 (D. Colo. Mar. 21, 2014)......................................................46, 47

*Herremans v. BMW of N. Am., LLC*,
    2014 WL 5017843 (C.D. Cal. Oct. 3, 2014) ............................................................30

*Hershenow v. Enter. Rent-A-Car Co. of Boston*,
    840 N.E.2d 526 (Mass. 2006)..................................................................................33

*Hunter v. Guardian Life Ins. Co. of Am.*,
    162 N.C. App. 477 (2004) ........................................................................................45

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
    192 N.J. 372 (2007) .................................................................................................33

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................................26

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012)...........................................................19, 22, 25, 45

*Koch v. Acker, Merrall & Condit Co.*,
    18 N.Y.3d 940 (2012)...............................................................................................35

*Leyva v. Medline Indus., Inc.*,
    716 F.3d 510 (9th Cir. 2013) ............................................................................47, 50

*LFM Real Estate Ventures, LLC v. SunTrust Bank*,
    2012 WL 6114242 (W.D.N.C. 2012) .......................................................................36

*Lindell v. Synthes USA*,
    2014 WL 841738 (E.D. Cal. Mar. 4, 2014)..............................................................47

*Lopez v. Nissan N. Am., Inc.*,
    201 Cal. App. 4th 572 (2011) ..................................................................................30

*Loughridge v. Goodyear Tire & Rubber Co.*,
    192 F. Supp. 2d 1175 (D. Colo. 2002) ........................................................31, 32, 45

*Luppino v. Mercedes-Benz USA, LLC*,
    2014 WL 4474004 (D.N.J. Sept. 4, 2015)................................................................40

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   - vii -
CLASS CERTIFICATION; MEMO IN SUPPORT
010388-11 848940 V1                          Case No. 13-cv-3072-EMC

*In re M3 Power Razor Sys. Mktg. & Sales Prac. Litig.*,
   270 F.R.D. 45 (D. Mass. 2010) ...........................................................32, 33

*Madsen v. Western Am. Mortg. Co.*,
   694 P.2d 1228 (Ariz. Ct. App. 1985) ..........................................................30

*Mandarin Trading Ltd. v. Wildenstein*,
   919 N.Y.S.2d 465 (N.Y. 2011)....................................................................45

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ................................................................23, 34

*Marr Enters., Inc. v. Lewis Refrigeration Co.*,
   556 F.2d 951 (9th Cir. 1977) .......................................................................43

*McVicar v. Goodman Global, Inc.*,
   2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) .............................................28

*Media Network, Inc. v. Long Haymes Carr, Inc.*,
   678 S.E.2d 671 (N.C. Ct. App. 2009)...........................................................36

*Melgar v. CSK Auto, Inc.*,
   2015 U.S. Dist. LEXIS 170833 (N.D. Cal. Dec. 22, 2015)..........................19

*Mexia v. Rinker Boat Co.*,
   174 Cal. App. 4th 1297 (2009) ....................................................................40

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993)..................................................................................27

*Morris v. Int'l Yogurt Co.*,
   729 P.2d 33 (Wash. 1986) ............................................................................39

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936, 951 (N.D. Cal. 2014)......................................... *passim*

*In re Neurontin Mktg.*,
   618 F. Supp. 2d 96 (D. Mass. 2009).............................................................45

*Newby v. Enron Corp.*,
   2010 U.S. Dist. LEXIS 145220 (S.D. Tex. Jan. 19, 2010)...........................45

*Newton v. Am. Debt Serv., Inc.*,
   2015 U.S. Dist. LEXIS 74626 (N.D. Cal. June 9, 2015)...................18, 20, 22

*Norcold, Inc. v. Gateway Supply Co.*,
   798 N.E.2d 618 (Ohio Ct. App. 2003) .........................................................40

*O'Connor v. Uber Techs.*,
    2015 U.S. Dist. LEXIS 116482 (N.D. Cal. Sept. 1, 2015) ................................................50

*Oliver v. Funai Corp.*,
    2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21, 2015) ..............................................45

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008) ................................................................19, 21

*Patterson v. BP Am. Prod. Co.*,
    240 P.3d 456 (Colo. App. 2010) ........................................................................32

*Pecover v. Elec. Arts Inc.*,
    2010 WL 8742757 (N.D. Cal. Dec. 21, 2010) ....................................................50

*Perez-Olano v. Gonzalez*,
    248 F.R.D. 248 (C.D. Cal. 2008) ....................................................................20

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    582 F.3d 156 (1st Cir. 2009) ..........................................................................33

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ....................................................................................18

*Poe v. Voss*,
    86 S.E.2d 47 (Va. 1955) ................................................................................38

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
    880 F. Supp. 2d 801 (S.D. Ohio 2012) ..............................................36, 37, 40, 46

*Rhino Linings USA, Inc. v. Rocky Mt. Rhino Lining, Inc.*,
    62 P.3d 142 (Colo. 2003) ......................................................................31, 32

*Ries v. Ariz. Bevs. USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) ....................................................................21

*Risner v. Regal Marine Indus., Inc.*,
    8 F. Supp. 3d 959 (S.D. Ohio 2014) ..........................................................36, 37

*Rothbaum v. Samsung Telecomms. Am., LLC*,
    52 F. Supp. 3d 185 (D. Mass. 2014) ..............................................................40

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ..............................................................35, 48

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ....................................................................................38

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   - ix -
CLASS CERTIFICATION; MEMO IN SUPPORT
010388-11 848940 V1                       Case No. 13-cv-3072-EMC

*Shumaker v. Hamilton Chevrolet, Inc.*,
    920 N.E.2d 1023 (Ohio Ct. App. 2009) ...................................................................37

*Siemer v. Assocs. First Cap. Corp.*,
    2001 WL 35948712 (D. Ariz. Mar. 30, 2001)...........................................................31

*Slaney v. Westwood Auto, Inc.*,
    322 N.E.2d 768 (Mass. 1975)..............................................................................32, 33

*Solo v. Bed Bath & Beyond, Inc.*,
    2007 WL 1237825 (D.N.J. Apr. 26, 2007) ..............................................................34

*Solum v. CertainTeed Corp.*,
    2015 WL 6505195 (E.D.N.C. Oct. 27, 2015) ..........................................................36

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) .....................................................................................35

*Spradling v. Williams*,
    566 S.W.2d 561 (Tex. 1978) ..................................................................................37

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ..................................................................................23

*Stratton v. Am. Med. Sec., Inc.*,
    266 F.R.D. 340 (D. Ariz. 2009)..............................................................................31

*Szymczak v. Nissan N. Am., Inc.*,
    2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) ........................................................44

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012)......................................................................26, 29

*Thiedmann v. Mercedes-Benz, USA, LLC*,
    183 N.J. 234 (2005) ................................................................................................34

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab.*
    *Litig.*,
    2012 WL 4904412 (C.D. Cal. Sep. 20, 2012) ........................................................49

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod.*
    *Liab. Litig.*,
    2012 U.S. Dist. LEXIS 189744 (N.D. Cal. May 4, 2012)......................................45

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods*
    *Liab. Litig.*,
    2012 WL 7802852 (C.D. Cal. Dec. 28, 2012).........................................................22

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   - x -
CLASS CERTIFICATION; MEMO IN SUPPORT
010388-11  848940 V1                      Case No. 13-cv-3072-EMC

*TV Interactive Data Corp. v. Sony Corp.*,
    929 F. Supp. 2d 1006 (N.D. Cal. 2013) ............................................................49

*U.W. Marx, Inc. v. Bonded Concrete, Inc.*,
    776 N.Y.S.2d 617 (2004) ...................................................................................35

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
    2014 WL 572365 (C.D. Cal. Feb. 3, 2014) ..................................................47, 49

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ..............................................................................49

*Varacallo v. Mass. Mutual Life Ins.*,
    752 A.2d 807 (N.J. Super. Ct. 2000) ..................................................................34

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009) ..............................................................................50

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .......................................................................................20

*Waller v. Hewlett-Packard Co.*,
    295 F.R.D. 472 (S.D. Cal. 2013) .......................................................................30

*Weidenhamer v. Expedia, Inc.*,
    2015 WL 7157282 (W.D. Wash. Nov. 13, 2015) ..............................................39

*Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395*
    *Pension Trust Fund*,
    38 P.3d 12 (Ariz. 2002) ......................................................................................45

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ..............................................................................46

*White v. Potocska*,
    589 F. Supp. 2d 631 (E.D. Va. 2008) .................................................................45

*Wolin v. Jaguar Land Rover North Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .................................................................. *passim*

*Wolph v. Acer Am. Corp.*,
    272 F.R.D. 477 (N.D. Cal. 2011) .......................................................................18

*Xavier v. Philip Morris USA Inc.*,
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ..............................................................18

*Yokoyama v. Midland Nat. Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ............................................................................47

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  - xi -
CLASS CERTIFICATION; MEMO IN SUPPORT
010388-11  848940 V1                         Case No. 13-cv-3072-EMC

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ....................................................................18

## STATUTES

Ariz. Rev. Stat. § 44-1522(A) ....................................................................30

Cal. Comm. Code § 2719 ............................................................................43

Colo. Rev. Stat. § 6-1-105(1) ......................................................................31

Mass. Gen. Laws ch. 93A, § 2 ....................................................................32

N.C. Gen. Stat. § 75-1.1(a) ..........................................................................36

N.J. Stat. Ann. § 56:8-2 ...............................................................................33

N.Y. Gen. Bus. L. § 349 ..............................................................................35

N.Y. Gen. Bus. L. § 350 ..............................................................................35

Ohio Rev. Code § 1345.02(A) .....................................................................36

Tex. Bus. & Com. Code § 17.46(a) .............................................................37

UCC § 2-719(2) ...........................................................................................43

Va. Code Ann. § 59.1-200(A) ......................................................................38

Wash. Rev. Code § 19.86.020 ......................................................................39

## OTHER AUTHORITIES

Fed. R. Civ. P. 23(a)(1) ...............................................................................20

Fed. R. Civ. P. 23(a)(2) ...............................................................................20

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   - xii -
CLASS CERTIFICATION; MEMO IN SUPPORT
010388-11 848940 V1                               Case No. 13-cv-3072-EMC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This case concerns Ford's deliberate, profit-driven, decision to conceal significant, wide-spread defects plaguing the MyFord Touch and MyLincoln Touch (collectively, "MFT") systems installed in more than ███ vehicles in the twelve relevant States during the proposed Class Period (the "Class Vehicles").  Confirming the allegations in Plaintiffs' pleadings, internal Ford documents and deposition testimony incontrovertibly establish that Ford knew that its MFT system was deeply flawed and materially defective, giving rise to serious safety hazards, before it ever sold a single Class Vehicle.  Nevertheless, Ford continued to put the MFT system in Class Vehicles, charge a premium for it, and expanded the number and model of vehicles for which the MFT system was available.  Ford engaged in such efforts while concealing its knowledge of the defects because it could not fix the defects, and did not want to bear the cost of removing the MFT system from the marketplace, nor did Ford want to suffer losing the competitive edge it believed the MFT system provided to the company.

Under Fed. R. Civ. P. 23(b)(3), Plaintiffs now seek certification of twelve States Classes.  As detailed below, the case for each Class will rise or fall on proof that is common to all members of the Classes.  Because all elements of Rule 23(a) and (b)(3) are satisfied, the Court should certify the proposed Classes.  Rule 23(a)(1) numerosity is present, because each proposed Class comprises at least 15,000 members, making joinder impracticable.[1]  There are many common questions of law and fact arising from Ford's uniform warranty promises and omissions of material fact, and from the uniform and systemic MyFord Touch software defects, satisfying Rule 23(a)(2)'s commonality requirement.  Questions about the systemic defect identified by Ford's documents and Plaintiffs' experts, and the resultant impact on the Classes, are common to all Plaintiffs and Class members.[2]

The typicality requirement of Rule 23(a)(3) is also satisfied.  Plaintiffs' claims are typical of the claims of all Class members, because each Plaintiff and member of the Classes was subjected to

---

[1] *See infra* at § II.H.1, pp. 19-20.

[2] *See infra* at § II.H.2, pp. 20-22.

Ford's common omissions and uniform defects. Plaintiffs and the Classes thus make common legal claims arising out of the same course of wrongful conduct by Ford.[3] And Rule 23(a)(4)'s adequacy of representation requirement is fulfilled, because the interests of Plaintiffs and the Classes do not conflict, and Plaintiffs are represented by well-qualified counsel who are diligently prosecuting the Class claims. The interests of Plaintiffs and Class members are co-extensive because all of them have a strong interest in proving Ford's liability and obtaining monetary compensation.[4]

Rule 23(b)(3) certification is warranted, because common issues of law or fact predominate over questions affecting individual Class members, and class treatment is superior to other methods of adjudicating the matter. Common issues predominate, because salient legal and factual questions in this case will be resolved with proof common to all Plaintiffs and Class members. Plaintiffs will prove their case with common evidence that: the MyFord Touch Base Software is identical in all Class Vehicles; Class Vehicles suffered from common software defects; Ford knew before and during the Class Period that MyFord Touch was defective; Ford concealed the nature and extent of the systemic defect of MyFord Touch; Ford violated the consumer protection statutes at issue; Ford breached express and implied warranties; and Ford is liable to Class members for the difference between what they paid and what a reasonable consumer would have paid at the time of purchase absent Ford's wrongful conduct. So common issues predominate.[5]

As to the superiority prong of Rule 23(b)(3), each Class member has a claim that is too small to litigate on an individual basis, so that the courthouse doors will be closed to all of them unless the Classes are certified. As the Court has witnessed, Ford has spared no expense in defending these claims. No consumer can prove this case without the pooling of resources offered by the class action mechanism. Plaintiffs' counsel have spent more than $2 million in expert costs alone thus far in this action. And adjudicating claims in a single proceeding before this Court, which is already intimately familiar with the subject matter of this case, is much more efficient than a multiplicity of

---

[3] *See infra* at § II.H.3, pp. 22-23.
[4] *See infra* at § II.H.4, p. 23.
[5] *See infra* at § II.I.1, pp. 25-49.

suits here and elsewhere that would unduly burden the judicial system. A class action is a superior method of adjudicating the Class claims.[6]

## II.    SUMMARY OF CLASSWIDE EVIDENCE ESTABLISHING CLAIMS

During the Class Period of August 2010 to August 2013, ██████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████"[13] The following is a brief summary of the damning and common facts of this case; a more complete summary of the same evidence is found in the Declaration of Steve W. Berman ("Berman Decl."), at ¶¶ 4-10.

## A.    The MFT System

The system at the center of this case is known as the MyFord Touch or MyLincoln Touch system, abbreviated collectively both in Ford's internal documents and in this submission as "MFT" or "SYNC Gen2." The central software in that system is referred to by Ford and in this submission as the "Base Software."[14] Because that software is the same in both Fords and Lincolns,[15] when Ford and this brief refer to the Base Software, that refers to software in both Fords and Lincolns.

---

[6] *See infra* at § II.I.2, pp. 49-50.

[7] Ex. 1. All "Ex." numbers refer to Exhibits attached to the Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Class Certification, filed herewith.

[8] Ex. 2.

[9] Ex. 3.

[10] Ex. 4.

[11] Ex. 5.

[12] Ex. 160.

[13] Ex. 6. Throughout this statement of facts, Plaintiffs cite to depositions and documents, many of which have common authors. A "cast of characters" is set forth in the Berman Decl., at ¶ 6.

[14] Ex. 7, 11:6-13:2.

[15] *Id.*, 22:21-23:1, 25:22-27:13.

Generally speaking, MFT is an "infotainment" system intended to allow drivers and passengers to control entertainment, navigation, rear-view camera, cell phone communication, climate control, and other systems via a touch-screen panel placed in the dashboard.[16] The system operates with two processors, one of which is known as the "CCPU."[17] This case, and this brief, center primarily on the CCPU and its software, which is the Base Software.[18]

**B.     MFT Was Fundamentally Defective on the Day Ford First Released It, as Ford Knew**

Ford first sold cars containing MFT in the late summer and fall of 2010.[19] It did so despite knowing that the Base Software was fundamentally defective, and that it had no way to fix it.

**1.     Ford knew MFT was materially defective before selling even one unit.**

Ford knew MFT was defective before it sold it.



---

[16] *See, e.g.*, Ex. 8 pp. 61-66.

[17] *See, e.g.*, Ex. 9, ¶ 19.

[18] *Id.* at ¶ 2. *See also* Ex. 7, 26:18-27:13; Ex. 10, 15:11-18, 158:17-19.

[19] *See* Ex. 12.

[20] Ex. 5 (emphasis added).

[21] Ex. 38 (emphasis added).

[22] Ex. 7, 55:15-57:23; 322:23-323:8.

[23] Ex. 40 (October 2010 email).

[24] Ex. 41, at WLN2-39880 (10/11/2010 email).

[REDACTED][5]

**2.    Drivers immediately reported huge numbers of problems with MFT Software.**

Drivers immediately had massive problems with MFT.  Touchscreens would freeze or go blank, MFT would generate error messages that could not be cleared, the system would not pair with cellular phones, the voice recognition and navigation would not work, and the system was slow to respond to commands. [REDACTED]

[REDACTED]

---

[25] Ex. 42.

[26] Ex. 43.

[27] Ex. 44.

[28] *Id.* at WLN2-437451.

[29] Ex. 7, 295:12-296:2; Ex. 19, 213:24-214:7; Ex. 45, 157:8-17.

[30] Ex. 19, at 159:7-17.

[31] Ex. 46, at WLN2-2680059.

**3.      The Base Software defects resulted from a deeply flawed development process.**

As Ford was aware prior to selling MFT, the problems with the Base Software were easily tracked to an *ad hoc* development process that created an architecturally flawed system that could not be fixed by Ford or its dealers, and certainly not by its customers.

**a.      Ford used an inexperienced contractor that failed to follow basic standards.**

[32] Ex. 47, at WLN2-1368201.

[33] Ex. 7, 103:16-104:16; Ex. 10, 23:9-24:1.

[34] Ex. 48, *see esp.* WLN1-3212225.

[35] Ex. 7, 247:7-17.

[36] *Id.* at 261:1-17.

[37] *Id.* at 271:24-272:19.

[38] *Id.* at 273:7-16.

[39] *Id.* at 367:5-368:1.

[40] *Id.* at 269:17-22, 274:15-275:10; Ex. 16.

Ford knew how to do it better, but failed to do it.  There are and were software development processes specifically designed by the automotive industry to avoid the *ad hoc* development that Ford and BSquare employed in developing MFT.  As explained in the Report of Daniel Smith, the automotive industry has standards set by the Motor Industry Software Reliability Association ("MISRA"), which are designed to promote best practices and create a bug-reducing coding standard.[41] ████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████[45]

**4.** **The Base Software was so fundamentally defective that Ford could not even fully diagnose (or fix) the problems years later.**

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

[41] Ex. 9, ¶¶ 132-133.

[42] *See id.*

[43] *See, e.g.,* Ex. 18; Ex. 19, 100:1-100:6; Ex. 20, 242:17-243:1; Ex. 21, 195:24-196:14.

[44] *See, e.g.,* Ex. 22; Ex. 7, 134:14-135:7.

[45] Ex. 23.

[46] Ex. 7, 115:1-12.

[47] *See, e.g.,* Ex. 26.



48 Ex. 9, ¶¶ 136-139.

49 Ex. 27, 12/7/2011 email.

50 Ex. 28, 5/17/2013 email.

51 Ex. 29, 3/9/2013 email.

52 *See, e.g.*, Ex. 7, 242:3-243:14; Ex. 30; Ex. 31.

53 *See, e.g.*, Ex. 33, at WLN2-1135989-90.

**5.      Ford did not even adequately test MFT before selling it.**

**6.      Dealerships could not repair the Class Vehicles.**

The problems that consumers experienced with Ford's MFT system were compounded by

the fact that the problems were rooted in the Base Software, which the dealerships could not fix.

[54] Ex. 9, ¶¶ 105-108.

[55] *Id.* at ¶¶ 108, 110.

[56] *Id.* at ¶¶ 114-131.

[57] *Id.* at ¶¶ 31-33.

[58] *Id.* at ¶¶ 73-86.

[59] Ex. 36, at WLN2-00003912 (emphasis added).  *See also* Ex. 37.

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████ ███████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

████████████████████████ ███████████████████████████████████████████

█████████████████████████████████████

**C.**      **Until at Least August 2013, Ford's Attempts to Fix MFT's Base Software Were Ineffective – Which Ford Knew Before Releasing Each Update**

      **1.**      **From 2010 through 2011, Ford made numerous attempts at quick fixes to the MFT, which it knew did not actually fix the Base Software.**

In late 2010 and 2011, Ford released seven revisions of the MFT Base Software.[62] ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████ █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████ ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[60] Ex. 41.

[61] *See, e.g.*, Ex. 49; Ex. 50.

[62] Ex. 12.

[63] Ex. 143; *see esp.* at WLN2-00181493.

[64] Ex. 144. *See also* Ex. 145.

[65] Ex. 3 (emphasis added).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR    - 10 -
CLASS CERTIFICATION; MEMO IN SUPPORT
010388-11  848940 V1                                   Case No. 13-cv-3072-EMC

[REDACTED][67]

### 2. Ford hired Microsoft, hoping that Microsoft could improve MFT's software, but Ford continued to release MFT software updates it knew were defective.

In the spring of 2011, Ford hired Microsoft to replace BSquare in the development of the Base Software.[68] But Microsoft, too, failed to meaningfully improve the MFT software.

#### a. Version 3.0 / [REDACTED]

The first Microsoft-branded revision of the MFT Base Software was known as Version 3.0.[69]

[REDACTED]

[66] Ex. 148, at WN1-4304095 (emphasis added).

[67] Ex. 1, at WLN1-4143297 (emphasis added).

[68] *See, e.g.*, Ex. 19, at 28:21-29:20.

[69] [REDACTED] Ex. 12.

[70] Ex. 2 (emphasis added). *See also* Ex. 20, 109:14-112:9.

[71] Ex. 153, at pp. WLN2-00158903 to 158904 (10/3/2011 email); Ex. 154 (10/4/2011 email); Ex. 155, at WLN2-158861 (10/7/2011 email); Ex. 156 (11/1/2011 email).

[72] Ex. 149.

█████████████████████████████████████████ ███████████████

█████████████████████████████████████████ ███████████████

█████████████████████████████████████[5]

**3.     Version 3.2 /** ███████████████

Ford's next public MFT software release was version 3.2, which was released in August

2012.[76] ████████████████████████████████████████████

███████████████████████████████████████████ █████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ █████████████

█████████████████████████████████████████████████

███████████████████████████████████████

████████████████ ██████████████████████████████████

███████████████ ███████████████████████████████

███████████████ ███████████████████████████████

████████████████████████[82]

_____

[73] Ex. 157.

[74] Ex. 160, at pp. WLN1-4174224-4174225 (emphasis added).

[75] *See, e.g.*, Ex. 161.

[76] Version 3.2 ███████████████████████████████ Ex. 12.

[77] Ex. 162, at WLN2-54145.

[78] Ex. 163 (emphasis added).

[79] Ex. 164, at WLN1-4205529 (emphasis added).

[80] Ex.165.

[81] Ex. 166, at WLN1-1935222.

[82] *Id.* at WLN1-1935232-1935238.

**4.** Version 3.5 / 

In early November 2012, Ford released version 3.5 of the Base Software.[83]

[83] Version 3.5 ██████████████████████████████ Ex. 12.

[84] *See, e.g.*, Ex. 167; Ex. 175; Ex. 169, at WLN1-4206135; Ex. 170, at WLN1-4206869.

[85] Ex. 4.

[86] Ex. 33.

[87] Ex. 174 (emphasis added).

[88] Ex. 175.

[89] Ex. 176 (emphasis added).

███████████████████████████████████ ████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ ███████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████[92]

**D.** **Because the Base Software Was the Same for all MFT Systems, Drivers – Including the Class Representatives and Ford's Highest Executives – Experienced the Same Problems**

**1.** **The Base Software is** ███████████ **across all vehicles with MFT.**

Every vehicle sold with MFT between August 2010 and August 2013 in the United States

█████████████████████████████████████ █████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████ █████████████████████████████████████████████

████████████████████████████████████████ ███████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████[96]

---

[90] *See, e.g.*, Ex. 68 (4/25/2013 email); Ex. 177 (4/24/2013 email).

[91] Ex. 178.

[92] *See generally* Ex. 166.

[93] Ex. 11, at WLN2-02645342.

[94] Ex. 10, 18:11-20:14; Ex. 12.

[95] *See, e.g.*, Ex. 11, Ex. 13, 40:23-41:9; Ex. 14; Ex. 15.

[96] *See* Berman Decl., ¶ 4.

**2. Consumers experienced predominantly the same problems over the entire Class Period.**

The problems that the first MFT customers experienced were also experienced by later customers, and the symptoms of the defects in MFT's Base Software remained extremely similar over several years and software revisions. ███████████████████

████████████████████████████████████████████████

██████████████

███████████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████  ████████████████████

█████████████████████████████████████████████

███████████

**3. Ford knew *precisely* what MFT problems its customers were experiencing, because its most senior executives experienced the *same* MFT.**

The nature and extent of the MFT-related defects, and the inability to get any meaningful repairs, is perhaps put into starkest relief by the plight of Ford executives, who were experiencing the same problems as everyone else even as Ford continued to install MFT in more and more cars.[99] As demonstrated in Exhibits 53-74, and outlined in paragraphs 47-48 of the Berman Declaration,

█████████████████████████████████████████████

██████████████████████████████████████████

---

[97] Ex. 10, 52:23-53:15; Ex. 20, 137:18-138:6.

[98] *See, e.g.,* Ex. 48 ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ *See also* Berman Decl., at ¶¶ 42-45.

[99] *See, e.g.,* Ex. 12.

███████████████████████████████████████████████████████

████████████████████████████████████████████████████.

**4.      The Class Representatives have had the same experiences with their MFTs as the other Class members.**

Just like other customers, and just like Ford's executives, the Class Representatives have each experienced the common symptoms of the identical MFT architectural defects in the Base Software, and especially issues with system stability, phone connectivity, voice recognition, and navigation.   As detailed in Exhibits 75-140 and 197-198, and ¶¶ 49-69 of the Berman Declaration, the Class Representatives have experienced those problems, attempted to get their cars fixed, and were unable to get any relief.

**E.      The Defects in Ford's MFT's Base Software Created Safety Hazards**

Although Ford claims that MFT is a "convenience" feature that does not affect the safety of its vehicles, common sense, Ford's own documents, and Plaintiffs' experts demonstrate otherwise. Ford knew that how drivers use phones and other devices on their vehicles directly affect how safely those drivers operate their vehicles. ████████████████████████████████████████

████████████████████████████ █████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

███████

    ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ 02

---

[100] *See, e.g.,* Ex. 180, at WLN2-02694717; Ex. 181, at WLN2-02694614-15; Ex. 182, at WLN1-322842.

[101] Ex. 183.

[102] *See* Ex. 8.

And driver distraction was far from the only safety hazard created by MFT. ████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████ ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ It is

commonsensical that these defects, in a moving vehicle, render it far less safe to use than a vehicle

without MFT.

### F. Ford Charged a Premium for MFT, and Plaintiffs Will Prove Damages with Common Evidence and Common Methodologies

As if Ford's decision to sell cars equipped with software it knew to be defective was not

sufficiently damning enough, Ford also put a price premium on MFT, placing it on more expensive

trims of its cars. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████ Notwithstanding Ford's contentions,

Plaintiffs can, and will, prove, using a common methodology and common evidence, the amounts

by which Class members were damaged.  Plaintiffs have submitted the reports of two experts,

Stefan Boedeker and Jonathan Arnold, who set forth alternative methods for determining the

amount by which Class members overpaid for their MFT, using evidence and methodologies that

are common to all Class members.  Those reports, discussed further below, are attached as Exhibits

185 and 186.

---

[103] Ex. 9 at ¶¶ 40-64.

[104] *Id.* at ¶¶ 98-104.

[105] *See, e.g.,* Ex. 184, at WLN1-3211989 and WLN1-3212011

████████████████████████████████████████████████████████████████████████████

████████████████████

# III.    THE PROPOSED CLASSES MEET
## THE RULE 23 CERTIFICATION REQUIREMENTS

Class actions "permit the plaintiffs to pool claims which would be uneconomical to litigate individually" and ensure that plaintiffs have a right to redress wrongs that would otherwise "have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  Plaintiffs must demonstrate that "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" have been met.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  The classes must also satisfy the "implied prerequisite" of ascertainability.  *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). This Court ultimately has "broad discretion" over whether to certify a class.  *Zinser*, 253 F.3d at 1186.  Moreover, "[a]ny doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 481 (N.D. Cal. 2011).

Although the Court's "class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of [P]laintiff's underlying claim,' . . . Rule 23 grants no license to engage in free-ranging merits inquiries at the class certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013).  So "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.* at 1195; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (it is inappropriate to "determine whether class members could actually prevail on the merits of their claims").

## A.    The Classes Are Ascertainable

The proposed Classes meet Rule 23's implicit ascertainability requirement.  "To be ascertainable, the description of the class must be 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member' before trial, and by reference to 'objective criteria.'" *Newton v. Am. Debt Serv., Inc.*, 2015 U.S. Dist. LEXIS 74626, at *16 (N.D. Cal. June 9, 2015) (citation omitted).  The Classes are ascertainable even if some Class members cannot be identified by records.  As this Court recently explained, "'courts in this circuit ha[ve]

found proposed classes ascertainable even when the only way to determine class membership is with self-identification through affidavits.'" *Melgar v. CSK Auto, Inc*., 2015 U.S. Dist. LEXIS 170833, at \*22 (N.D. Cal. Dec. 22, 2015) (citation omitted).

Here, the class definitions are straightforward, requiring only that a person purchased or leased a particular vehicle containing MFT through Ford or a Ford dealership prior to August 9, 2013.  As such, Class members are readily ascertainable through, among other things, Ford's records and dealership records.  Courts regularly find classes of car purchasers and lessees ascertainable from manufacturer records.  *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 514, 521 (C.D. Cal. 2012) ("all purchasers and lessees of any 2006 through 2007 Honda Civic and 2006 through 2008 Honda Civic Hybrid vehicles" were ascertainable); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008) (current or former owners or lessees of class vehicles who paid for a clutch flywheel assembly replacement were ascertainable).

Moreover, the testimony of Ford personnel clearly establishes that Ford maintains business records sufficient to identify and perform mailings to all putative class members.  ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████ ██████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████ █████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ Thus, the Classes are ascertainable.

---

[106] Ex. 187, 173:22-174:2.

[107] *Id.* at 181:2-8.

[108] Ex. 188.

**B.** **The Classes Meet the Rule 23(a) Requirements**

**1.** **The Classes are sufficiently numerous.**

Rule 23(a)(1) requires a class to be "so numerous that joinder of all members is impractica-ble." "In order to satisfy this requirement, [P]laintiffs need not state the exact number of potential class members, nor is there a specific number that is required." *In re Facebook, Inc. PPC Adv. Litig.*, 282 F.R.D. 446, 452 (N.D. Cal. 2012); *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 256 (C.D. Cal. 2008) ("[W]here the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied."). As shown above, ████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████[109] This satisfies the numerosity requirement.

**2.** **Plaintiffs' and Class members' claims share common questions of fact and law, satisfying Rule 23(a)(2).**

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." As the Supreme Court has noted, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal punctuation omitted). The Ninth Circuit recently explained that a "common contention need not be one that 'will be answered, on the merits, in favor of the class.' *Amgen*, 133 S. Ct. at 1191. It only 'must be of such a nature that it is capable of classwide *resolution*.' *Wal-Mart*, 131 S. Ct. at 2551 (emphasis added)…." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015). So as this Court has explained, "the lawsuit must call upon the court or jury to decide at least one factual or legal issue whose outcome logically must be the same for each class member." *Newton v. Am. Debt Serv., Inc.*, 2015 U.S. Dist. LEXIS 74626, at *19.

In *Wolin*, in which the Ninth Circuit considered the certification of a class of purchasers of vehicles with alleged alignment defects, the Court found that the plaintiffs "easily satisfy the com-monality requirement" because all of their claims "involve[d]," among other things, "the same alleged defect," which was "found in vehicles of the same make and model." *Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). Importantly, "variation among class

---

[109] *See* Berman Declaration, ¶ 3, setting forth total volume of Class Vehicles by state.

members in their motivation for purchasing the product, the factual circumstances behind their purchase, or the price that they paid does not defeat the relatively 'minimal' showing required to establish commonality." *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Commonality is amply satisfied here. As in *Wolin*, the claims brought for each State Class here involve the same alleged defect, and the existence of that defect will be proven with generalized, class-wide evidence rather than any Plaintiff- or State Class-specific evidence. *Wolin*, 617 F.3d at 1172; *see Parkinson*, 258 F.R.D. at 588 ("In automobile defect cases, commonality is often found when the most significant question concerns the existence of a defect.") (citing *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004)). ███████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Additional common questions include whether Ford knowingly sold vehicles equipped with a defectively designed MFT system; whether that systemic defect is responsible for critical safety hazards such as distracted driving; whether Ford had a duty to disclose the existence of the defect and/or its knowledge thereof; whether Ford adequately disclosed the existence of the defect and/or its knowledge thereof; whether the facts not disclosed by Ford were material; whether Plaintiffs and other members of the State Classes were injured as a result of Ford's failure to disclose the defect; and whether the members of each State Class are entitled to damages and/or other relief as a result. *See Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005) (district court's "examples" of common issues, including "(1) whether the design of the plastic intake manifold was defective; (2) whether Ford was aware of alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (4) whether it failed to do so; (5) whether the facts that Ford allegedly failed to disclose were material; and (6) whether the alleged failure to disclose violated the CLRA," were adequate to uphold order certifying class); *see also Banks v. Nissan N. Am., Inc.*, 301 F.R.D. 327, 332-33 (N.D. Cal. 2013) (relying on *Wolin* and *Chamberlan* to find commonality satisfied in automobile defect case turning on same questions concerning existence of defect, defendant's knowledge and duty to disclose,

adequacy of disclosure, materiality, and legal violations); *Keegan v. Am. Honda Motor Co.*, 284

F.R.D. at 523-24 (same).

Plaintiffs will prove, using common evidence, that the MFT system contains defects giving

rise to safety hazards, that Ford knew or, at a minimum, should have known about the defects and

their safety implications, that Ford had a duty to disclose these facts but failed to do so, that those

facts were material to consumers, and that all Class members were injured and entitled to relief as a

result of Ford's conduct. Thus, Rule 23(a)(2)'s commonality requirement is satisfied.

### 3. Plaintiffs' claims are typical of the Class' claims, satisfying Rule 23(a)(3).

"'The purpose of the typicality requirement is to assure that the interest of the named

representative aligns with the interests of the class.'" *Wolin*, 617 F.3d at 1175 (quoting *Hanon v.*

*Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Plaintiffs' claims are typical if "reason-

ably co-extensive with those of absent class members; they need not be substantially identical." 

*Hanlon*, 150 F.3d at 1020. As this Court recently explained, "The test of typicality is whether other

members of the class 'have the same or similar injury, whether the action is based on conduct which

is not unique to the named plaintiff[], and whether other class members have been injured by the

same course of conduct.'" *Newton*, 2015 U.S. Dist. LEXIS 74626, at *22.

Typicality is readily satisfied in cases like this one, where "all class members are alleged to

have suffered injury as a result of the same conduct by [Ford]." *Doyle v. Chrysler Group LLC*,

2014 WL 7690155, at *7 (C.D. Cal. Oct. 9, 2014); *see also Wolin*, 617 F.3d at 1175 (typicality

satisfied where "Gable and Wolin allege that they, like all prospective class members, were injured

by a defective alignment geometry in the vehicles [and the plaintiffs] and the class seek to recover

pursuant to the same legal theories: violation of consumer protection laws, breach of warranty, and

unjust enrichment"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*

*Prods Liab. Litig*., 2012 WL 7802852, at *3 (C.D. Cal. Dec. 28, 2012) ( "all the class members

allege they have suffered the same injuries based on a common course of Toyota's conduct . . .

[and] [t]he Class Representatives' claims are thus typical of the class"). Plaintiffs here allege Ford

actively concealed the fact that the MFT system installed in *all* Class Vehicles was materially

1    defective.  Moreover, Plaintiffs and all Class members have experienced consistent and uniform

2    defects in the MFT systems installed in their Class Vehicles, including the system freezing up,

3    crashing, blacking-out, failing to respond to touch and/or voice commands, failing to connect to the

4    owner's mobile phone or other peripheral device, failing to display the rearview camera properly,

5    and providing incorrect navigation directions and/or location of the vehicle.[110]  And the Class

6    Representatives' claims are typical of all Class members' claims, regardless of the vehicles they

7    owned or leased, because the MyFord Touch Base Software was "100% common across vehicle

8    programs."[111]  *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (the "fact that

9    Marcus leased only one model BMW with one kind of Bridgestone RFT also does not pose a

10    typicality problem.  When a class includes purchasers of a variety of different products, a named

11    plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged

12    misrepresentations or omissions apply uniformly across the different product types.").

13        Accordingly, typicality is established.

14        **4.**       **Adequacy of representation is satisfied under Rule 23(a)(4).**

15        Adequacy turns on the following questions:  "(1) Do the representative plaintiffs and their

16    counsel have any conflicts of interest with other class members, and (2) will the representative

17    plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Staton v. Boeing*

18    *Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Here, Plaintiffs' interests do not conflict with the interests

19    of the other Class members they seek to represent.  Relying on the same set of facts, Plaintiffs seek

20    for themselves and each of the other Class members the same category and scale of damages they

21    all suffered as a result of Ford's active concealment of the fact that the MFT system installed in *all*

22    Class Vehicles was defective.  All Plaintiffs have demonstrated their commitment to this case and

23    their familiarity with the claims in this matter, actively participating in this litigation by producing

24    documents, providing written discovery responses, and making themselves available for depositions

25    and comprehensive vehicle inspections.  And Plaintiffs have retained highly qualified and

---

26    [110] *See* Exs. 75-140 and 197-198, and Berman Decl., at ¶¶ 49-69.

27    [111] Ex. 11, at WLN2-02645342.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR    - 23 -
CLASS CERTIFICATION; MEMO IN SUPPORT
010388-11  848940 V1        Case No. 13-cv-3072-EMC

competent counsel with significant experience litigating class action cases. Therefore, the adequacy requirement is satisfied.

## C.     The Classes Meet the Requirements of Rule 23(b)

In addition to satisfying the Rule 23(a) requirements, Plaintiffs must demonstrate that the action may be maintained under Rule 23(b). *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997). Certification under Rule 23(b)(3) is proper when the interests of the parties are best served by resolving differences in a single action. *Hanlon*, 150 F.3d at 1022. This analysis focuses on the relationship between common and individualized issues. *Id.* Certification is proper if common factual and legal issues predominate, though some individualized inquiries remain. *Id.* (if common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication … there is clear justification for handling the dispute on a representative rather than on an individual basis").

Rule 23(b)(3) does not require Plaintiffs to prove the common questions will be answered in their favor. *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. at 1191 (movant must show "that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class") (emphasis in original). And minor variations among the claims of class members is insufficient to defeat predominance where all of the claims arise out of the defendant's generalized conduct. *See Delagarza v. Tesoro Ref. & Mktg. Co.*, 2011 WL 4017967, at *11 (N.D. Cal. Sept. 8, 2011) (Chen, J.) ("While there may be some variation within the [defendant's] refinery with respect to the amount of downtime per shift or number of times per week that employees leave the premises, such variation does not 'present sufficient evidence that individual questions predominate over Plaintiffs' actual theory, which is based on [defendant's] purported general policies....'") (internal citations omitted). This Court has also held that predominance does not "constitute a uniformity requirement, such that a single exception would defeat class certification." *Id.* at *12.

Plaintiffs request certification of twelve State Classes. Consistent with this Court's analysis of Plaintiffs' claims in resolving Ford's dismissal motions, *see In re MyFord Touch Consumer*

*Litig.*, 46 F. Supp. 3d 936, 951 (N.D. Cal. 2014), Plaintiffs group their claims into five categories for the Court's convenience: (a) statutory consumer fraud claims; (b) implied warranty claims; (c) express warranty claims; (d) fraudulent concealment claims; and (e) other claims.

### 1. Common questions of law and fact concerning liability predominate over questions affecting only individual Class members.

Under the predominance inquiry, "'when one or more of the central issues in the action are common to the class and can be said to predominate,' a class action will be considered proper 'even though other matters will have to be tried separately.'" *Guido v. L'Oreal USA, Inc.*, 2013 WL 3353857, at *9 (C.D. Cal. July 1, 2013) (quoting *Gartin v. S&M NuTec LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007)). Courts regularly certify classes in automobile defect cases involving legal and factual questions similar to those raised here. *See, e.g.*, *Wolin*, 617 F.3d at 1176 (reversing denial of certification of class of vehicle owners alleging Land Rover's LR3 vehicles suffered from alignment geometry defect that caused tires to wear prematurely); *Chamberlan*, 402 F.3d at 962 (denying Ford's Rule 23(f) petition for interlocutory review of district court's order certifying statewide class alleging Ford knowingly manufactured, sold, and distributed vehicles containing a defective engine part); *Banks*, 301 F.R.D. at 336 (certifying class of vehicle owners asserting claims against Nissan under California's UCL and CLRA based on alleged defects in an electronic component for the antilock braking system in their Nissan vehicles); *Keegan*, 284 F.R.D. 504 (certifying class alleging consumer protection and warranty claims against Honda based on suspension defect in 2006 through 2008 Honda Civic Hybrid vehicles). Each State Class is unified by the common questions their claims raise. Accordingly, certification is appropriate.

### a. Statutory consumer fraud claims.

### (1) California Class.

Plaintiffs seek certification of three California consumer fraud claims: the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 ("CLRA"); the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"); and the False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"). As shown below, common issues for those claims render them appropriate for class-wide resolution.

**(a)** **Common issues predominate the CLRA claim.**

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or prac-tices undertaken by any person in a transaction intended to result or which results in the sale … of goods or services to any consumer." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting Cal. Civ. Code § 1770). Where, as here, a CLRA claim is premised on an omission, "the omission must be either: (1) 'contrary to a representation actually made by the defendant'; or (2) 'an omission of a fact the defendant was obliged to disclose.'" *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835 (2006)). A duty to disclose arises "(1) when there is a known defect in a consumer product and there are safety concerns associated with the product's use; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 958-59 (citing *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987-88 (N.D. Cal. 2010); *Wilson v. Hewlett-Packard*, 668 F.3d 1136, 1141 (9th Cir. 2012)). This Court has already found that alternatives (1) and (2) have been adequately pleaded.[112] The evidence presented with this Motion shows that the issue of Ford's duty to disclose can be resolved with common proof.

The CLRA claim is also suitable for classwide resolution because causation and materiality are considered under an objective standard. "Under the CLRA, plaintiffs may prove causation on a classwide basis by demonstrating the materiality of the omissions." *L'Oreal*, 2013 WL 3353857, at *11. "Since materiality concerns objective features of allegedly deceptive advertising, not subject-ive questions of how it was perceived by each individual consumer, whether an omission is material presents a common question of fact suitable for class litigation." *Id.* (citing *Mass. Mutual Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th 1282, 1294 (2002)). And as this Court has explained, reliance

---

[112] The Court did not reject alternatives (3) and (4), but rather noted that, "[f]or purposes of this opinion, the Court need only address the first two categories." *In re MyFord Touch*, 46 F. Supp. 3d at 959.

under the CLRA turns on materiality, "which is judged by an objective reasonable person standard," focusing on the defendant's conduct, which "can be determined relative to the class as a whole." *Ehret v. Uber Techs., Inc.*, 2015 WL 7759464, at *13 (N.D. Cal. Dec. 2, 2015).

The Ninth Circuit recently analyzed class certification of both CLRA and UCL claims in another case involving alleged defects in Ford vehicles. *Edwards v. Ford Motor Co.*, 603 F. App'x 538 (9th Cir. 2015). The Ninth Circuit held that the district court erred in its predominance analysis by "concluding that individualized proof was required on the question of a defect and on the question of materiality." *Id.* at 540. Instead, the Ninth Circuit explained, materiality is governed by an objective "reasonable person" standard, requiring the same inquiry for every class member. *Id.* at 541. It follows, the Court reasoned, that "a finding that the defendant has failed to disclose information that would have been material to a reasonable person who purchased the defendant's product gives rise to a rebuttable inference of reliance as to the class." *Id.* (citing *Mass. Mutual*, 97 Cal. App. 4th at 1292-93).

Here, Ford knew or should have known, but failed to disclose, material information to consumers, including the MFT system defect and its safety implications. Plaintiffs have produced a considerable volume of evidence showing that Ford withheld this information and that it was material to consumers – including not only the expert analyses of Drs. Smith and Rosenberger but also extensive internal Ford documentation.[113] Accordingly, the related questions whether Ford had a duty to disclose this information, whether Ford failed to disclose it, and whether it was material to a reasonable consumer are all common to the California Class as a whole, and predominate over any individual issue any California Class member may face.

Moreover, Plaintiffs will show that all California Class members were exposed to Ford's material omissions. *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993) ("to prove reliance on an omission" plaintiff must "prove that, had the omitted information been disclosed [she] would have been aware of it and behaved differently"). The Ninth Circuit recently held that consumers may

---

[113] Berman Decl., at ¶¶ 4-48, 70-108.

establish exposure to omissions relating to automobile defects by showing that where, as here, the manufacturer communicates with consumers indirectly through its dealerships, the manufacturer failed to cause its dealerships to disclose the omitted information. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226-27 (9th Cir. 2015) ("There are, of course, various ways in which a plaintiff can demonstrate that she would have been aware of a defect, had disclosure been made. Here, [p]lain-tiffs chose to do so by showing that they would have been aware of the defect had Ford disclosed it to its dealerships. … [] Plaintiffs presented evidence that they interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their Focuses. This is sufficient to sustain a factual finding that [p]laintiffs would have been aware of the disclosure if it had been made through Ford's authorized dealerships."). As in *Daniel*, Ford here used its dealers as channels of communication with consumers, requiring consumers to return to the dealers for warranty repairs, circulating TSBs and service messages to dealers, and distributing vehicle literature through its dealers. *Id.* at 1227. Thus, "a reasonable fact finder could conclude that Ford knew that its consumers depended at least in part on its authorized dealerships for information about its vehicles and that Ford's authorized dealerships would have disclosed the alleged [defect] to consumers if Ford had required it." *Id.* Plaintiffs will present classwide evidence that Ford could have, but did not, disclose the MFT system defect and its safety implications through its authorized dealerships, thus establishing classwide exposure to Ford's omissions.[114]

Classwide exposure to omissions is also established where, for instance, the defendant undertook "extensive and long running advertising campaigns." *McVicar*, 2015 WL 4945730, at *11. Ford conducted a nationwide television, radio, and internet advertising campaign promoting MFT from 2010 to 2013, and communicated with consumers both directly and through dealerships

---

[114] The Ninth Circuit's analysis is consistent with a previous district court ruling in a different matter confirming that, where an omission pertains to "automobile defects," classwide exposure is met, on the ground that "*all* of the purchasers of automobiles read some marketing materials regarding the product, sufficient to conclude 'that [d]efendants' conduct in omitting information was "likely to deceive" members of the public.'" *McVicar v. Goodman Global, Inc.*, 2015 WL 4945730, at *11 (C.D. Cal. Aug. 20, 2015) (quoting *Keegan*, 284 F.R.D. at 533).

about MFT and updates to the MFT Base Software.[115] Every time Ford undertook to publicly speak about MFT, it created an opportunity to disclose the omitted facts, and failed to do so. There is no question that the California Class members were exposed to Ford's omission of material safety information pertaining to the MFT system defect.

Other courts have roundly rejected the position that Ford is likely to adopt in contesting predominance, namely that individual inquiries predominate because of "consumer misuse" or variations in consumer usage of the MFT system. Such an argument fails "where the plaintiff's theory is based on a design defect." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. at 479. As the Ninth Circuit held in *Wolin*, "[a]lthough individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect." 617 F.3d at 1173. Reversing the district court's certification denial, the Court explained that the plaintiffs "assert that the defect exists in the [design], that [defendant] failed to reveal material facts in violation of consumer protection laws, and that [defendant] was unjustly enriched when it sold a defective vehicle," all of which are "susceptible to proof by generalized evidence" notwithstanding differences in individual consumers' usages. *Id.*

No individualized inquiry threatens to overshadow the predominant questions raised by the California Class' CLRA claim. Thus, certification is appropriate.

### (b) Common issues predominate the UCL claim.

The UCL prohibits "practices which are unlawful, unfair or fraudulent." *Ehret*, 2015 WL 7759464, at *8 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 311 (2009)). "Omissions can form the basis of a fraudulent prong UCL claim." *In re Carrier IQ, Inc. Cons. Priv. Litig.*, 78 F. Supp. 3d 1051, 1112 (N.D. Cal. 2015). A UCL violation is shown if "'members of the public are likely to be deceived'" by the fraudulent omission, *Ehret*, 2015 WL 7759464, at *8 (quoting *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015)), which is a question of

---

[115] *See, e.g.*, Ex. 187, at 31:9-32:21, 35:22-38:8, 61:12-64:5, 75:11-77:8, 113:17-114:15, 122:5-123:1, 124:14-129:23, 137:6-141:9, 151:15-152:23, 158:9-161:12, 167:7-168:11, 202:19-203:15. *See also, e.g.*, Ex. 189; Ex. 190; Ex. 191; Ex. 192; Ex. 193; Ex. 194; Ex. 195.

materiality. *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 485 (S.D. Cal. 2013). As with the CLRA, under the UCL "[a]ctual reliance is presumed (or at least inferred) if the omission is material." *Herremans v. BMW of N. Am., LLC*, 2014 WL 5017843, at *18 (C.D. Cal. Oct. 3, 2014) (citing *In re Tobacco II*, 46 Cal. 4th at 327). Here, each of these elements can be established in a generalized fashion with no need for individual inquiries, for the same reasons set forth above in relation to the CLRA claim.

(c) <strong>Common issues predominate the FAL claim.</strong>

The FAL prohibits "untrue or misleading" advertising likely to deceive members of the public. *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 595 (2011) (quoting Cal. Bus. & Prof. Code § 17500). "A violation of the UCL's fraud prong is also a violation of the FAL, and likewise, a violation of the FAL necessarily violates the UCL." *Waller*, 295 F.R.D. at 485 (citing *In re Tobacco II*, 46 Cal. 4th at 312 n.8). For the same reasons set forth above as to the CLRA and UCL claims, the California Class' FAL claim is susceptible to generalized proof and therefore suited for class certification. *Astiana v. Kashi Co.*, 291 F.R.D. 493, 504-06 (S.D. Cal. 2013) (finding predominance met with respect to FAL, UCL, and CLRA claims following identical analysis).

(2) <strong>Arizona Class.</strong>

The Arizona Consumer Fraud Act ("ACFA") prohibits "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby[.]" Ariz. Rev. Stat. § 44-1522(A). Whether an omission is deceptive is resolved using an objective "least sophisticated reader" test, regardless of "[t]echnical correctness." *Madsen v. Western Am. Mortg. Co.*, 694 P.2d 1228, 1232 (Ariz. Ct. App. 1985). Violations of the ACFA are "more easily shown" than common law fraud. *Adelman v. Rheem Mfg. Co.*, 2015 WL 4874412, at *6 (D. Ariz. Aug. 14, 2015).

The ACFA's reliance requirement is not demanding. The reliance needed to prevail on an ACFA claim need not be "reasonable" and may be demonstrated by the purchase of a deceptively

marketed good or service. *Siemer v. Assocs. First Cap. Corp.*, 2001 WL 35948712, at *4 (D. Ariz. Mar. 30, 2001) (granting certification of ACFA claim and holding, "Plaintiffs have sufficiently demonstrated reliance by their purchase of credit life insurance. This alone is sufficient to show reliance to the degree necessary under the ACFA. In addition, the Court need not evaluate the reasonableness of the [p]laintiffs' reliance because under the statute, reliance does not have to be reasonable."). Other courts have interpreted this holding to mean that the ACFA's reliance requirement is satisfied where the product purchased was "inherently flawed." *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 349 (D. Ariz. 2009) (distinguishing *Siemer*). This jurisprudence supports certifying the Arizona Class' ACFA claim as the MFT system is, indeed, "inherently flawed."

Moreover, the case law demonstrates that the ACFA requires actual reliance only for claims grounded in a misrepresentation theory. *Id.* (finding individualized issues of reliance predominant in misrepresentation action and noting, "*Rather than omissions*, [p]laintiff alleges that [d]efendants made affirmative oral and written misrepresentations . . . . As such, each proposed class member must prove that he or she relied on the misrepresentations and was damaged.") (emphasis added). In omissions cases, reliance is presumed. *Grimmelmann v. Pulte Home Corp.*, 2010 WL 2744943, at *7-8 (D. Ariz. July 9, 2010) (finding presumption of reliance appropriate in ACFA actions based primarily on omissions, but declining to apply it in context of "mixed" omission and misrepresentation claims) (citing *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 153-54 (1972); *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999)). For this additional reason, certification of the ACFA claim presents no likelihood of individualized issues predominating over the common questions of Ford's duty to disclose, non-disclosure, and materiality of the withheld information.

### (3) Colorado Class.

The Colorado Consumer Protection Act ("CCPA") prohibits unfair or deceptive trade practices, including misrepresenting or omitting material facts about the characteristics of goods. Colo. Rev. Stat. § 6-1-105(1); *Rhino Linings USA, Inc. v. Rocky Mt. Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003) (stating elements of CCPA claim). The CCPA is intended to deter and punish deceptive trade practices dealing with members of the public. *Loughridge v. Goodyear Tire*

*& Rubber Co.*, 192 F. Supp. 2d 1175, 1185 (D. Colo. 2002). A representation or omission is unfair or deceptive if it induces a party to act or refrain from acting, or has the capacity or tendency to do so even if it did not. *Rhino Linings*, 62 P.3d at 147-48. The CCPA is liberally construed to serve its broad remedial purpose. *Hall v. Walter*, 969 P.2d 224, 230 (Colo. 1998).

"To show causation under the CCPA, plaintiffs must show that [defendant's] challenged practice … injured putative class members. While proof of individualized reliance can be used to establish causation, it need not be used; courts have regularly considered 'whether the circumstantial evidence common to the class supports an inference of causation.'" *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 988 (C.D. Cal. 2015) (quoting *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 99-100 (Colo. 2011)). As another court held, "presuming or inferring reliance is proper when plaintiffs are able to establish material misrepresentations [or omissions] to the class on a common basis. . . . [W]e conclude that even without a presumption of reliance, named plaintiffs in a class action may demonstrate ignorance or reliance on a classwide basis, using circumstantial evidence that is common to the class." *Patterson v. BP Am. Prod. Co.*, 240 P.3d 456, 465-67 (Colo. App. 2010).

Here, the circumstantial evidence common to the Colorado Class supports an inference of causation. In particular, because the MFT system defect and its safety implications constitute information that is material to the reasonable consumer, Ford's non-disclosure of that information has a "capacity or tendency to deceive" a reasonable consumer. *Rhino Linings*, 62 P.3d at 148 n.11. Thus, an inference of causation must be drawn. *In re ConAgra*, 90 F. Supp. 3d at 988 ("If such a showing [of materiality] is made, it suffices to support a classwide inference of reliance and causa-tion" under the CCPA). No individualized issues preclude resolution of the CCPA claim.

### (4) Massachusetts Class.

Chapter 93A of Massachusetts General Law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. ch. 93A, § 2. This remedial statute "goes far beyond the scope of the common law action for fraud and deceit," *Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 779 (Mass. 1975), and is "quite robust and arguably more consumer friendly than the California consumer protection regime." *In re M3 Power Razor Sys. Mktg. & Sales Prac.*

*Litig.*, 270 F.R.D. 45, 60 (D. Mass. 2010). "Massachusetts courts 'evaluate unfair and deceptive trade practice claims based on the circumstances of each case,' leaving 'the determination of what constitutes an unfair trade practice to the finder of fact.'" *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 184 (1st Cir. 2009) (citation omitted; affirming class recovery under Chapter 93A for losses suffered from false and inflated average wholesale prices). Deception is evaluated under an objective "reasonable person" standard. *Hanrahran v. Specialized Loan Serv., LLC*, 54 F. Supp. 3d 149, 154 (D. Mass. 2014). Reliance is "not an essential element of a [Chapter] 93A claim." *Hershenow v. Enter. Rent-A-Car Co. of Boston*, 840 N.E.2d 526, 534 n.20 (Mass. 2006); *see also Slaney*, 322 N.E.2d at 779 ("proof of actual reliance by the plaintiff on a representation is not required").

Causation under Chapter 93A can be proven with classwide evidence. "Materiality and causation are established by a showing that the deceptive representation [or omission] 'could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'" *In re M3*, 270 F.R.D. at 60 (certifying consumer class asserting Chapter 93A claim) (quoting *Purity Supreme, Inc. v. Attorney Gen.*, 407 N.E.2d 297, 307 (Mass. 1980)). This objective showing can be made using evidence common to the class, as demonstrated with respect to other consumer fraud statutes. Thus, the Chapter 93A claim will be resolved by common proof.

### (5) New Jersey Class.

The New Jersey Consumer Fraud Act ("NJCFA") bars "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby[.]" N.J. Stat. Ann. § 56:8-2. An NJCFA claim requires a showing of "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009). Actual reliance is not an element. *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,

1    192 N.J. 372, 391 (2007).

2        Ascertainable loss is not only out-of-pocket loss but occurs "when a consumer receives less

3    than what was promised." *Solo v. Bed Bath & Beyond, Inc.*, 2007 WL 1237825, at *3 (D.N.J. Apr.

4    26, 2007); *see also Thiedmann v. Mercedes-Benz, USA, LLC*, 183 N.J. 234, 249 (2005). This

5    element will be proven with classwide evidence through Plaintiffs' damages experts, Drs. Boedeker

6    and Arnold. Causation under the NJCFA may similarly be proven with classwide evidence. This

7    requires the defendant's conduct to have been "a cause of damages," not "the sole cause of loss."

8    *Varacallo v. Mass. Mutual Life Ins.*, 752 A.2d 807, 816-17 (N.J. Super. Ct. 2000). Plaintiffs will

9    show that Ford's omission of critical safety information caused damages using common evidence,

10   which will not vary from class member to class member.

11       This case is vastly different than the BMW run-flat tire case, in which the Third Circuit

12   reversed certification because the proposed class included owners of vehicles that "suffered a flat"

13   without reference to any *defect* that caused the flat tires. *Marcus v. BMW of N. Am., LLC*, 687 F.3d

14   at 604 ("Even 'defective' tires can go flat for reasons completely unrelated to their defects.

15   Critically, to determine why a particular class member's [tire] has 'gone flat and been replaced'

16   requires an individual examination of that class member's tire.") Unlike *Marcus*, the central

17   inquiries here are whether the MFT system is defective and whether that defect caused New Jersey

18   Class members compensable losses – questions common to all New Jersey Class members, which

19   will be answered using classwide evidence. The New Jersey Class is not defined with reference to

20   any particular event that may or may not relate to that defect. Thus, *Marcus* is inapplicable and the

21   NJCFA claim will be resolved without individual inquiry.

22       The Court can further assure itself that no individualized issues will predominate over the

23   core common questions by considering (1) the trouble Ford took to conceal the existence of the

24   MFT system defect and its associated safety hazards (which it denies to this day), and that (2) the

25   expert evidence submitted shows that consumers would spend quantifiably fewer dollars on an MFT

26   system known (by the consumers) to be plagued with the defect at issue. *Id.* at 611 (in Third

27   Circuit, certification requires finding "either (1) that the alleged defects were not knowable to a

28

significant number of potential class members before they purchased or leased their [vehicles], or (2) that, even if the defects were knowable, that class members were nonetheless relatively uniform in their decisionmaking"). These additional findings – which are not required in the Ninth Circuit – would require no individualized inquiry, and would only further demonstrate that the New Jersey Class' NJCFA claim is ripe for class treatment.

### (6) New York Class.

The New York Class' consumer protection claims under General Business Law §§ 349-350 are likewise well-suited to class treatment. Section 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce," N.Y. Gen. Bus. L. § 349, and section 350 prohibits "[f]alse advertising," *id.* at § 350. Each requires materially misleading representations or omissions resulting in injury to the plaintiff, and that the misconduct be "consumer-oriented." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Any nationwide commercial activity, such as the sale of vehicles equipped with defective MFT systems, easily qualifies as "consumer-oriented" activity. *U.W. Marx, Inc. v. Bonded Concrete, Inc.*, 776 N.Y.S.2d 617, 619 (2004).

Reliance and scienter are not elements of either claim. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) ("[N]either Section 349 nor 350 require proof of reliance"). Instead, the claims require "that a reasonable consumer could have been misled by defendants' conduct." *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010). This objective "reasonable consumer" test is satisfied with a showing of materiality. *Id.*; *see also In re ConAgra*, 90 F. Supp. 3d at 1008 ("individualized issues concerning reliance and scienter do not preclude classwide proof of plaintiffs' GBL claim").

Plaintiffs will establish their New York General Business Law §§ 349-350 claims using classwide evidence of Ford's deceptive and fraudulent omission of material information in consumer-oriented marketing and commerce. As no individualized inquiry threatens to overshadow the predominantly common issues raised by these claims, they are amenable to classwide resolution.

**(7)     North Carolina Class.**

The North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") prohibits "unfair or deceptive acts or practices in or affecting commerce. . . ." N.C. Gen. Stat. § 75-1.1(a). A NCUDTPA claim requires that defendant committed such an act or practice in commerce and that such act or practice proximately caused injury to plaintiff. *Solum v. CertainTeed Corp.*, 2015 WL 6505195, at *5 (E.D.N.C. Oct. 27, 2015). An act or practice is unfair or deceptive if it has "the tendency or capacity to mislead" or creates "the likelihood of deception." *LFM Real Estate Ventures, LLC v. SunTrust Bank*, 2012 WL 6114242, at *10 (W.D.N.C. 2012).

Reliance, or actual deception, is not an element of a NCUDTPA claim. *Forbes v. Par Ten Grp., Inc.*, 394 S.E.2d 643, 650 (N.C. Ct. App. 1990). Plaintiffs can demonstrate, using classwide evidence, that Ford's omission of material safety-related information had a "tendency or capacity to mislead" or created "the likelihood of deception," *LFM*, 2012 WL 6114242, at *10, without requiring any individualized inquiry into consumers' subjective reliance. This analysis turns on the objective materiality of the information Ford withheld. *Media Network, Inc. v. Long Haymes Carr, Inc.*, 678 S.E.2d 671, 683-84 (N.C. Ct. App. 2009) ( "unfairness and deception are gauged by consideration of the effect of the practice on the marketplace"). Thus, like the other consumer fraud claims, the North Carolina Class' NCUDTPA claim is well-suited for class treatment.

**(8)     Ohio Class.**

The Ohio Consumer Sales Practices Act ("OCSPA") prohibits "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction," whether "before, during, or after the transaction." Ohio Rev. Code § 1345.02(A). To state an OCSPA claim, a plaintiff must allege that the unfair or deceptive act or omission "impacted [plaintiff's] decision to purchase the item at issue." *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 867-68 (S.D. Ohio 2012). Actual intent to deceive or knowledge of falsity is not required. *Hamilton v. Ball*, 7 N.E.3d 1241, 1254 (Ohio Ct. App. 2014); *Risner v. Regal Marine Indus., Inc.*, 8 F. Supp. 3d 959, 996-1002 (S.D. Ohio 2014). Instead, the claim requires only that the defendant's conduct "ha[d] the likelihood of inducing in the mind of the consumer a belief which is not in

accord with the facts." *Risner*, 8 F. Supp. 3d at 997. Courts testing this element "apply a reasonableness standard" in assessing the act or omission. *Shumaker v. Hamilton Chevrolet, Inc.*, 920 N.E.2d 1023, 1030-31 (Ohio Ct. App. 2009).

Under the OCSPA, "[a] classwide inference of reliance is permitted where defendant's fraudulent or deceptive conduct is common to all consumers." *In re ConAgra*, 90 F. Supp. 3d at 1011 (citing *Washington v. Spitzer Mgmt., Inc.*, 2003 WL 1759617, at *6 (Ohio App. Apr. 3, 2003)). Ohio courts allow "'an inference of reliance where there was uniform nondisclosure of a material fact, satisfying predominance.'" *Id.* (quoting *Cope v. Metropolitan Life Ins. Co.*, 696 N.E.2d 1001, 1008 (Ohio 1998)). Materiality, in turn, is determined objectively. *In re Porsche*, 880 F. Supp. 2d at 871 (quoting *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 265 (6th Cir. 2005)) ("Omissions are actionable under the OCSPA if they 'concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved.'"). Plaintiffs can demonstrate using classwide evidence that Ford omitted material safety-related information it had a duty to disclose, in violation of the OCSPA, without requiring inquiry into individual consumer decisions. Thus, predominance is satisfied.

### (9)    Texas Class.

The Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPCPA") bars "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a). A prohibited act (or omission) can be proven by demonstrating "an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous." *Spradling v. Williams*, 566 S.W.2d 561, 562 (Tex. 1978). Causation is an element of this claim, but as the *Spradling* court's reference to ignorance shows, actual reliance is not. *Id.*

The TDTPCPA's causation requirement is susceptible to classwide proof. *See In re ConAgra*, 90 F. Supp. 3d at 1016-17 (citing *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2003)). Like other state consumer fraud statutes, it allows a classwide inference of reliance or causation where the omitted information would have affected consumers' purchasing decisions. *See*

Brazil v. Dell Inc., 585 F. Supp. 2d 1158, 1164-65 (N.D. Cal. 2008) (comparing reliance require-ments of TDTPCPA and California CLRA, and concluding, "[w]hen applied in a class setting, California courts do not appear to apply the materiality requirement in a significantly different manner from the Texas courts. … [T]he court does not find that the CLRA and [TDTPCPA] materially differ with respect to a reliance requirement."). Plaintiffs can demonstrate using classwide evidence that Ford omitted material safety-related information it had a duty to disclose, in violation of the TDTPCPA, without individualized inquiry. Thus, predominance is satisfied.

### (10) Virginia Class.

The Virginia Consumer Protection Act ("VCPA") prohibits fraudulent and deceptive acts or practices in connection with a consumer transaction. Va. Code Ann. § 59.1-200(A). Reliance is an element of this claim, *Fravel v. Ford Motor Co.*, 973 F. Supp. 2d 651, 658 (W.D. Va. 2013), but reliance is evaluated using an objective standard. *Poe v. Voss*, 86 S.E.2d 47, 50 (Va. 1955) (reliance judged using "reasonably prudent man" standard). Virginia generally prohibits class actions unless permitted by statute, but this is a rule to which this Court is not bound. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 418 (2010); *In re Hardieplank Fiber Cement Siding Litig.*, 2013 WL 3717743, at *17 (D. Minn. July 15, 2013) (finding that class actions are available under VCPA in light of *Shady Grove*).

Although the cases considering class certification under the VCPA are few due to Virginia's general bar on class actions, courts have certified VCPA claims. *See, e.g.*, *Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563 (E.D. Va. 1999) (certifying VCPA and RICO claims, and finding reliance a common question where circumstances show "plaintiffs [and class members] relied on the defendant's allegedly fraudulent mailing if they made any payments on the 'deficiency' amount"). Similarly, here, reliance under the VCPA is a common question because Plaintiffs can show that Ford omitted material safety-related information that it had a duty to disclose, without requiring inquiry into individual consumer decisions. Thus, predominance is demonstrated.

1        **(11)    Washington Class.**

2            The Washington Consumer Protection Act ("WCPA") prohibits "unfair or deceptive acts or

3   practices in the conduct of any trade or commerce."  Wash. Rev. Code § 19.86.020.  A WCPA claim

4   requires that defendant engaged in unfair or deceptive conduct causing injury to plaintiff's business

5   or property, and that the conduct falls within the sphere of trade or commerce and impacts the public

6   interest.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash.

7   1986).  The public interest element is met if the misconduct affects many consumers, as here.  *Id.* at

8   538.  All of these elements can be proven using generalized evidence.

9            Where material omissions form the basis of a WCPA claim, a presumption of reliance

10  operates to focus the inquiry on common, not individual, issues.  *Grays Harbor Adventist Christian

11  School v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) ("A presumption of reliance is

12  appropriate in fraud cases [under the WCPA] such as this one, where [p]laintiffs have *primarily*

13  alleged omissions ... Proof of the omissions will *not* be based upon information each class member

14  received about the [products], but on what [defendant] allegedly concealed in light of what consu-

15  mers reasonably expect.") (emphasis in original); *see also Weidenhamer v. Expedia, Inc.*, 2015 WL

16  7157282, at *13 (W.D. Wash. Nov. 13, 2015) (noting that "quasi-presumption of reliance" is proper

17  in omissions-based WCPA claims); *Morris v. Int'l Yogurt Co.*, 729 P.2d 33, 41 (Wash. 1986)

18  (adopting presumption of reliance in context of similar claims asserting omissions-based fraud).  As

19  Plaintiffs advance an omissions-based WCPA theory, they are entitled to a presumption of reliance

20  and can prove the materiality of the information Ford withheld, and Ford's duty to disclose it, on a

21  classwide basis.  Thus, predominance is satisfied.

22        **b.    Implied warranty claims.**

23            Plaintiffs seek certification of statewide classes alleging implied warranty claims under the

24  laws of California, Massachusetts, New Jersey, North Carolina, Ohio, and Virginia,[116] and the

25  _____

26           [116] Plaintiffs seek certification of implied warranty claims on behalf of the California Class
    under the Song-Beverly Consumer Warranty Act and the California Commercial Code (§ 2314).
27  Plaintiffs seek certification of implied warranty claims on behalf of the Ohio Class under the Ohio
    common law doctrine of implied warranty in tort.

28

federal Magnuson-Moss Warranty Act.[117]  All these States have adopted section 2-314 of the Uniform Commercial Code, which describes the implied warranty of merchantability.[118]

As the Ninth Circuit has repeatedly held, implied warranty claims are readily certifiable in design defect cases such as this one.  *See, e.g.*, *Wolin*, 617 F.3d at 1173 ("[Plaintiff] alleges breach of implied warranty because the vehicles were defective and not of merchantable quality at the time they left [defendant's] possession.  Common issues predominate such as whether [defendant] was aware of the existence of the alleged defect, [and] whether [defendant] had a duty to disclose its knowledge….") (citing *Chamberlan*, 402 F.3d at 962).

Plaintiffs will use classwide evidence to demonstrate that the Class Vehicles were not of merchantable quality at the time they left Ford's possession.  To be merchantable, goods must be "fit for the ordinary purposes for which such goods are used."  *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009).  An automobile's ordinary purpose "is not just to provide transportation but rather safe, reliable transportation."  *In re MyFord Touch*, 46 F. Supp. 3d at 980 (citing *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 297 (4th Cir. 1989)); *see also Luppino v. Mercedes-Benz USA, LLC*, 2014 WL 4474004, at *5 (D.N.J. Sept. 4, 2015).  The MFT system's ordinary purpose is to facilitate undistracted driving through voice- and touch-responsive control over entertainment, navigation, climate, and telephony functions, and to add safety-enhancing functionality such as the rearview camera and emergency responder accident notification features.  Because the defect renders the MFT system unfit for its ordinary purpose, and even undermines the ability of the Class

---

[117] The implied warranty claims under the Magnuson-Moss Warranty Act are derivative of the implied warranty law of each Class state.  "Claims under the Magnuson-Moss Warranty Act 'stand or fall with … express and implied warranty claims under state law.'"  *Daniel*, 806 F.3d at 1227 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008)).  The sole exception is that a Magnuson-Moss claim cannot be based on a claim for implied warranty in tort under Ohio law.  *In re Porsche, etc.*, 880 F. Supp. 2d 801, 820 ("Ohio Plaintiffs' implied warranty in tort claim cannot form the basis of their Magnuson-Moss claim.") (citing *Curl v. Volkswagen of Am., Inc.*, 114 Ohio St. 3d 266 (2007)).

[118] *See Advanced Multilevel Concepts, Inc. v. Stalt, Inc.*, 2012 WL 1835734, at *3 n.5 (N.D. Cal. May 21, 2012); *Rothbaum v. Samsung Telecomms. Am., LLC*, 52 F. Supp. 3d 185, 203 (D. Mass. 2014); *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 329 (D.N.J. 2014); *Boudreau v. Baughman*, 368 S.E.2d 849, 854 (N.C. 1988); *Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 623 (Ohio Ct. App. 2003); *Coffman v. Arthrex, Inc.*, 69 Va. Cir. 17 (Va. Cir. Ct. 2005).

---

Vehicles to provide "safe, reliable transportation," Ford breached the implied warranty of merchantability. *See Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1547 (2014) (reversing nonsuit for defendant where car's sunroof spontaneously opened and closed while driving, because a reasonable jury "could infer a multitude of similar unsafe scenarios: a driver suddenly distracted, buffeted, or even incapacitated by unexpected incoming rain, sleet, snow, dust, or blinding sun…"). This showing does not require individualized inquiry of any kind.

The Court has already determined that privity and notice requirements, if any, applicable to implied warranty claims of several of the six State Classes at issue here have been satisfied. *In re MyFord Touch*, 46 F. Supp. 3d at 982-85 (privity), 985 (notice). Ford has waived any challenge to these requirements that it failed to raise in its Rule 12(b)(6) motions. Predominance is satisfied with respect to the implied warranty claims (including the Magnuson-Moss Warranty Act claims) of the California, Massachusetts, New Jersey, North Carolina, Ohio, and Virginia Classes.

### c. Express warranty claims.

Plaintiffs seek certification of statewide classes alleging implied warranty claims under the laws of California, Iowa, Massachusetts, New Jersey, New York, North Carolina, Ohio, Virginia, and Washington, and the federal Magnuson-Moss Warranty Act. Each States has adopted the express warranty set forth in section 2-313 of the Uniform Commercial Code.[119] And to the extent this Court certifies Classes for express-warranty claims, those Classes should also be certified for claims under the Magnuson-Moss Warranty Act. *See Allen v. Similasan Corp.*, 306 F.R.D. 635, 649 (S.D. Cal. 2015) ("Since Plaintiffs have satisfied the predominance requirement for their state breach of express and implied warranty claims, they have also satisfied the requirement for their MMWA claims."); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 670 (C.D. Cal. 2014) ("Because Plain-

---

[119] As this Court has explained, "Plaintiffs' claims for breach of express warranty are largely predicated on state statutes that have adopted UCC § 2-313." 46 F. Supp. 3d at 969. The exception is that the California claim for breach of express warranty is under the Song-Beverly Act, although Plaintiffs also allege that Ford violated California Business & Professions Code § 17200 by violating California Commercial Code § 2313. *Id.* at 969 n.12. The other statutes at issue are Iowa Code § 554.2313; Mass. Gen. Laws Ch. 106, § 2-313; N.J. Stat. Ann. § 12A:2-313; N.Y. U.C.C. § 2-313; N.C. Gen. Stat. § 25-2-313; Ohio Rev. Code § 1302.26; Va. Code Ann. § 8.2-313; Wash. Rev. Code Ann. § 62A.2-313.

tiffs have demonstrated that common questions predominate with respect to their state law express

warranty claim, the same analysis applies to their MMWA claim.").

Plaintiffs' express warranty claims are based on Ford's Limited Warranty, which provides

that "authorized Ford Motor Company dealers will, without charge, repair, replace, or adjust all

parts on your vehicle that malfunction or fail during normal use during the applicable coverage

period due to a manufacturing defect in factory-supplied materials or factory workmanship....

Defects may be unintentionally introduced into vehicles during the design and manufacturing

processes and such defects could result in the need for repairs.  For this reason, Ford provides the

New Vehicle Limited Warranty in order to remedy any such defects that result in vehicle part

malfunction or failure during the warranty period."[120]  The Court has already determined that the

Limited Warranty constitutes an express written warranty that formed part of the basis of the

bargain, requiring no showing of actual reliance.  *In re MyFord Touch*, 46 F. Supp. 3d at 972-73

(explaining that, under UCC § 2-313, cmt. 3 and relevant case law, an express written warranty

becomes part of the basis of the bargain, and finding that, "Ford has failed to show that any of the

states at issue rejected comment 3 when they adopted their versions of UCC § 2-313").  The Court

has also resolved that notice and privity requirements, if any, of the express warranty claims brought

by the eight State Classes at issue have been satisfied.  *Id.* at 974-79 (notice), 979-80 (privity).

The only unresolved questions are whether Ford's Limited Warranty covers the MFT system

defect, whether Ford's conduct violated the Limited Warranty, whether Ford is entitled to a

"reasonable time" to repair or replace defective parts, and whether the Class members have satisfied

any "presentment" requirement under the Limited Warranty.  The answers to all of these questions

may be ascertained using generalized, classwide evidence.

First, all Class members received identical express written warranties from Ford, and the

MFT system is materially identical across all Class Vehicles.  Whether the MFT system was

defective, whether this reduces the value of the Class Vehicles, and whether the Limited Warranty

---

[120] Ex. 196, Ford's Limited Warranty, at p. 9.

covers the defect are all questions common to Class members. *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006) (upholding certification of class asserting express warranty claims under Ford's Limited Warranty based on alleged throttle-body defect, and finding, "[t]he issues that predominate include: (1) whether the throttle body assembly is defective, (2) whether the defect reduces the value of the car, and (3) whether Ford's express 'repair or replace' warranty covers the latent defect at issue in this case"). These questions predominate over any individualized questions.

Second, Ford's "repair or replace" warranty failed of its essential purpose. Ford is not entitled to a reasonable time in which to repair or replace the defective MFT system because it launched the MFT system knowing that it was defective and hid that fact from consumers, rendering the "reasonable time" provision in the Limited Warranty unenforceable.[121] Plaintiffs will introduce evidence that a "reasonable time" is, therefore, zero days, because Ford knew the defect existed at the time of launch and needed to be repaired *immediately*, but did not reveal those facts to any Class member. Under those circumstances, the express warranty fails of its essential purpose. As UCC § 2-719(2) states, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this code." The comments to that section state that "under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article." *See* Official Comments to Cal. Comm. Code § 2719. And the Ninth Circuit has ruled that "[l]imited remedies under the UCC have been held to fail of their essential purpose when defects in the goods are latent and not discoverable on reasonable inspection." *Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 955 (9th Cir. 1977).

In addition, Plaintiffs will prove with classwide evidence that the "reasonable time" provision in the Limited Warranty is unconscionable, given that Ford knew before it sold vehicles with the MFT system that it was defective and withheld that information from Class members. In

---

[121] *Id.* ("This exclusive remedy shall not be deemed to have failed its essential purpose so long as Ford, through its authorized dealers, is willing and able to repair, replace, or adjust defective parts in the prescribed manner.").

1   *Carlson*, 883 F.2d at 296, the Fourth Circuit explained that "[w]hen a manufacturer is aware that its

2   product is inherently defective, but the buyer has 'no notice of [or] ability to detect' the problem,

3   there is perforce a substantial disparity in the parties' relative bargaining power. . . . In such a case,

4   the presumption is that the buyer's acceptance of limitations on his contractual remedies – including

5   of course any warranty disclaimers – was neither 'knowing' nor 'voluntary,' thereby rendering such

6   limitations unconscionable and ineffective."  Numerous courts have found that limitations in an

7   express written warranty are unenforceable when the manufacturer sells a product that it knew was

8   defective.[122]  A reasonable finder of fact could conclude, based on classwide evidence, that the

9   "reasonable time" limitation is unconscionable for all Class members.

10        Third, even assuming, *arguendo*, that Ford is entitled to a reasonable time under the Limited

11  Warranty, this issue can also be resolved using classwide evidence.  Class members endured the

12  unsafe, unreliable MFT system for as long as approximately three years.  Plaintiffs will demonstrate

13  that this duration constitutes an unreasonable amount of time to repair or replace the defective MFT

14  system using classwide evidence, including Dr. Smith's expert opinion that Ford could have and

15  should have corrected the MFT system defect prior to publicly launching the MFT system.

16        Ford is likely to argue that Plaintiffs' experiences with the MFT system show variation in

17  the kinds of problems that manifest.  Although this is factually wrong – as Dr. Smith demonstrates,

18  all of these problems are grounded in the underlying systemic defect in the software – such an

19  argument would fail.  The law in this Circuit is clear in holding that Plaintiffs need not, at the class

20  certification stage, "adduce evidence that a defect is substantially certain to arise in all class vehicles

21  during the vehicles' useful life," since "[a] merits inquiry will resolve that question in one stroke[.]"

22        [122] *See, e.g.*, *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *7-10 (S.D.N.Y. Dec. 16,
23  2011) (plaintiffs stated valid claim that limitation in express warranty was unenforceable, in part
    because "defendants sold the vehicles with knowledge of the defect"); *Christiana Marine Serv.*
24  *Corp. v. Seaboard Shipping Corp.*, 1997 WL 587292, at *2 (E.D. Pa. Sept. 10, 1997) (where seller
    conceals a defect, such bad faith estops seller under New York law from invoking limitations
25  clause); *Colonial Life Ins. Co. of Am. v. Elec. Data Sys. Corp.*, 817 F. Supp. 235, 243 (D.N.H. 1993)
    ("Chubb has made allegations against EDS which give rise to a material factual issue: whether EDS
26  knowingly sold a product, the Insurance Machine, which was defective due to its undeveloped status
    at the time of contract.  Chubb's allegations, if eventually proven, would render the damage
27  limitation contained in Section 11.4 unenforceable.") (footnote omitted).

28

1    *Keegan*, 284 F.R.D. at 536 (citing *Wolin*). Thus, any such argument will not raise individualized

2    issues precluding certification of Plaintiffs' express warranty claims.

3        Finally, the Limited Warranty's requirement that Class members present their vehicles for

4    reparative work has been satisfied or is mooted due to the unique circumstances of the defect and

5    purported repair available. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales*

6    *Practices, & Prod. Liab. Litig.*, 2012 U.S. Dist. LEXIS 189744, at *301-02 n.33 (N.D. Cal. May 4,

7    2012) ("allegations that the vehicles were taken to the dealership in response to the recall notices or

8    vehicles that were taken for installation of the brake-override 'confidence booster' [software] are

9    sufficient" to satisfy presentment requirement). In this case, substantial classwide evidence shows

10    that Ford had no repair available other than the software updates it issued. Those updates, which

11    did not remedy the defect, could be installed by dealer technicians *or* by Class members themselves.

12    No individualized inquiry into whether Class members brought their Class Vehicles to dealers for

13    software updates is necessary, therefore, because Ford provided all Class members with its

14    purported "repair" via the Ford website. Thus, the presentment requirement has been satisfied or is

15    moot with respect to all Class members.

16        **d.**     **Fraudulent concealment claims.**

17        Plaintiffs seek certification of fraudulent concealment claims on behalf of all State Classes,

18    except the Washington Class. Each such claim requires a showing that Ford intentionally concealed

19    a material fact that it had a duty to disclose to Plaintiffs and the other Class members, resulting in

20    damages.[123] These claims are amenable to certification (on a state-by-state basis) because they

21    require no individual inquiries into particular consumers' reliance or decision-making processes.

22

23       [123] *See Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015) (California); *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 34 (Ariz. 2002) (Arizona); *Loughridge v. Goodyear Tire & Rubber*

24    *Co.*, 192 F. Supp. 2d at 1184 (Colorado); *In re Neurontin Mktg.*, 618 F. Supp. 2d 96, 113 (D. Mass. 2009) (Massachusetts); *Oliver v. Funai Corp.*, 2015 U.S. Dist. LEXIS 169998, at *10 (D.N.J. Dec.

25    21, 2015) (New Jersey); *Mandarin Trading Ltd. v. Wildenstein*, 919 N.Y.S.2d 465 (N.Y. 2011) (New York); *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 481 (2004) (North

26    Carolina); *Buchanan v. Improved Props., LLC*, 7 N.E.3d 634, 642 (Ohio Ct. App. 2014) (Ohio); *Newby v. Enron Corp.*, 2010 U.S. Dist. LEXIS 145220, at *137 (S.D. Tex. Jan. 19, 2010) (Texas);

27    *White v. Potocska*, 589 F. Supp. 2d 631, 642 (E.D. Va. 2008) (Virginia).

28

Instead, as with the consumer fraud statutory claims, the causal element of Plaintiffs' fraudulent concealment claims will be satisfied through common evidence demonstrating that Ford possessed material information confirming the existence of the MFT system defect and had a duty to disclose it, but failed to disclose it, to the quantifiable detriment of all members of the State Classes.

### e. Other claims.

Plaintiffs also seek certification of the Ohio Class's negligence claim. This claim is well-suited to class resolution, because it turns on Ford's conduct in designing the defective MFT system, *i.e.*, whether Ford complied with its duty of care to Ohio Class members in designing MFT. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853-54 (6th Cir. 2013) (reaffirming order upholding certification of Ohio negligence claims, which "rise or fall on whether a design defect proximately causes mold or mildew to develop in the [washers]," a question "common to the entire liability class").[124] Thus, common questions predominate.

Finally, Plaintiffs seek certification of a Colorado class alleging strict product liability claims. To recover under Colorado's strict product liability law, Plaintiffs must show that "(1) the product is in a defective condition unreasonably dangerous to the user or consumer; (2) the product is expected to and does reach the consumer without substantial change in the condition in which it was sold; (3) the defect caused the plaintiff's injuries; (4) the defendant sold the product and is engaged in the business of selling products; and (5) the plaintiff sustained damages." *Bartholic v. Scripto-Tokai Corp.*, 140 F. Supp. 2d 1098, 1106 (D. Colo. 2000) (citation omitted). All of these elements may be satisfied using generalized evidence.

Under Colorado's strict product liability law, "proof of a design defect and causation is objective." *Helmer v. Goodyear Tire & Rubber Co.*, 2014 WL 1133299, at *7 (D. Colo. Mar. 21, 2014) (certifying class). Ford may argue that Plaintiffs' injuries are diverse because their MFT sys-

---

[124] The Ohio Class need not prove that its members suffered any damage other than the loss in value of their Class Vehicles. *In re Porsche Cars*, 880 F. Supp. 2d at 873 ("Here, Ohio Plaintiffs suffered property damage in that they purchased a product that damaged itself. Courts in most jurisdictions would preclude Ohio Plaintiffs from recovering this loss in tort; however, Ohio courts permit consumers to advance tort theories seeking recovery of these damages.").

tems exhibited various failures, but Plaintiffs have already presented considerable evidence showing that all such failures are rooted in the same defect. *Id.* at *8-9 (rejecting argument that "incorrect installation" caused injuries based on evidence of varying malfunctions because the various malfunctions "seem to be precisely the type of malfunction that would result from [plaintiffs' defect theory]"). Thus, common issues predominate.

### f. Plaintiffs' damages models satisfy the *Comcast* standard.

Here, "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013). Moreover, Plaintiffs' damages theory is tied to their theory of liability. *See Lindell v. Synthes USA*, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014) ("[*Comcast*] reiterated a fundamental focus of the Rule 23 analysis: The damages model must be capable of determination by tracing the damages to the plaintiff's theory of liability.").

But Plaintiffs' damages models need not be perfect and they need not be "precisely correct." *See Vaccarino v. Midland Nat'l Life Ins. Co.*, 2014 WL 572365, at *10-13 (C.D. Cal. Feb. 3, 2014) ("*Comcast* requires that courts determine whether damages are susceptible of classwide measurement, not whether that measurement is precisely correct."). And "so long as the damages can be . . . attributed to [Plaintiffs'] theory of liability, damage calculations for individual class members do not defeat certification." *Lindell*, 2014 WL 841738, at *14 (noting that "[p]ost *Comcast*, the Ninth Circuit has reiterated this black letter rule"); *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment."); *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) ("The potential existence of individualized damage assessments . . . does not detract from the action's suitability for class certification.").

Here, Plaintiffs propose two alternative damages models that can be used to calculate, on a classwide basis, the economic impact sustained by Class members as a result of Ford's misconduct. *See Comcast*, 133 S. Ct. at 1435 ("The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event.").

First, Plaintiffs' expert Jonathan I. Arnold presents a methodology for measuring this

economic impact by calculating the "expected future value," at the time of purchase, of the MFT system to Class members. Ex. 186, at ¶¶ 3, 24-27, 30-34. As Arnold explains in his report, Class members who purchased the MFT system did not receive what they intended to purchase, *i.e.*, a defect-free system that enhances driving safety and functionality. *Id.* at ¶¶ 24, 26-27. Arnold further explains that, "[h]ad Ford informed Class [M]embers at the time of sale that MyFord Touch was susceptible to widespread failures and system crashes and that such defects could not be fixed (at all or until some later date), Class [M]embers would not have paid the price they did pay for the MyFord Touch system." *Id.* at ¶ 27. Accordingly, Arnold opines that the entire amount actually paid by Class members for the MFT system – *i.e.*, the expected future value absent knowledge of the fundamental defects in the MFT system – should be included in the economic loss model. *Id.* at ¶¶ 30-34. Not only does Arnold's proposed model target the economic consequences, for consumers, of Ford's failure to disclose known defects in the MFT system, but it is also based on common proof and the reliable application of economic theory to those facts, constituting a workable model for determining classwide damages and/or restitution.

Alternatively, as set forth in the expert report of Stefan Boedeker, classwide damages and/or restitution can be determined using Choice-Based Conjoint Analysis ("CBC") to calculate the "price premium" Ford was able to charge by concealing the defects in the MFT system. Ex. 185, at ¶¶ 23, 32, 39, 60, 88-93. Numerous courts across the country, including courts in this Circuit, have accepted Choice-Based Conjoint Analysis as a reliable methodology for calculating price premiums on a classwide basis in consumer class actions. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1368 (Fed. Cir. 2013) (holding that it was an abuse of discretion for the district court to fail to consider plaintiff's expert's conjoint analysis, and explaining that "there may be a variety of ways to show that a feature drives demand, including with evidence that a feature significantly increases the desirability of a product incorporating that feature"); *In re ConAgra*, 90 F. Supp. 3d at 1022-32 (holding that the proposed conjoint analysis was "sufficiently reliable to be used in calculating class-wide damages," and, therefore, satisfied *Comcast* as part of a hybrid damages methodology); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 413-15 (accepting expert testimony that expert "will

isolate the premium associated with the 50% thicker claim using one of three statistical methods: hedonic regression, a contingent valuation study, or a conjoint analysis"); *L'Oreal*, 2014 WL 6603730, at *5 ("Conjoint analysis has been used for decades as a way of estimating the market's willingness to pay for various product features."); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1019-20 (N.D. Cal. 2013); *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*, 2012 WL 4904412, at *3-4 (C.D. Cal. Sep. 20, 2012) ("Dr. Williams' proposed methods of analysis, i.e. hedonic regression, contingent valuation, and discrete choice, are generally accepted, have been tested, and are part of peer-reviewed studies.").

Consistent with this precedent, Boedeker's model satisfies *Comcast*. In his report, Boedeker explains how – through common proof concerning consumer preferences and demand for the MFT system, and the application of the established economic technique of conjoint analysis to the data – he can isolate the price premium paid by Class members for the MFT system as a result of Ford's fraudulent concealment. Ex. 185, at ¶¶ 40-93. Therefore, Boedeker's model translates Plaintiffs' "legal theory of the harmful event into an analysis of the economic impact of that event," which is all that is required at class certification. *Comcast*, 133 S. Ct. at 1435; *see also Vaccarino*, 2014 WL 572365, at *10-13 (*Comcast* requires only that Plaintiffs' damages model "not measure damages 'unrelated' to [P]laintiffs' claim").

In sum, Plaintiffs' models for damages are tied to their theory of liability, and damages may be determined by assessing common, classwide evidence.

### 2. A class action is the superior method of adjudication.

Rule 23(b)(3)'s superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). This requirement is satisfied "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis." *Wolin*, 617 F.3d at 1175 ("The amount of damages suffered by each class member is not large. Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication.").

Given that each Class Member can only recover a relatively small amount of money, in comparison to the costs of litigating on an individual basis, "class treatment likely represents plaintiffs' only chance for adjudication." *Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at *25 (N.D. Cal. Dec. 21, 2010) (finding superiority satisfied where "the modest amount at stake for each purchaser render[ed] individual prosecution impractical"); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) (where, as here, "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device"). Moreover, even if each Class Member were to pursue his or her claim individually, the courts would be substantially burdened, which is contrary to the "goals of efficiency and judicial economy" advanced by Rule 23. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009). So in this case, "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods, Inc. v. Windsor*, 521 U.S. at 615.

Finally, as in *O'Connor v. Uber Techs.*, 2015 U.S. Dist. LEXIS 116482, at *130 (N.D. Cal. Sept. 1, 2015), there isn't "any reason to suspect that this class action will become so unmanageable that it would be more efficient to litigate thousands of separate … lawsuits." In *Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013), the Ninth Circuit held that the district court incorrectly denied class certification on manageability grounds. The Court explained that the court "concluded that class certification is not the superior method of adjudication but did not suggest any other means for putative class members to adjudicate their claims. Indeed, it appears that none exist." *Id.* at 515. Similarly here, no other means exist here for class members to adjudicate their claims against Ford. And there are no serious manageability problems, because the salient issues in this case will be resolved with common proof. Simply put, this case can be tried in an efficient manner.

## IV.    CONCLUSION

Plaintiffs respectfully request this Court certify the twelve proposed Classes, appoint the named Plaintiffs as class representatives, and appoint their counsel as Class Counsel.

DATED: January 28, 2016

HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____/s/ Steve W. Berman_____
STEVE W. BERMAN
Steve W. Berman (*pro hac vice*)
Craig R. Spiegel (CSB No. 122000)
Tyler S. Weaver (*pro hac vice*)
Catherine Y.N. Gannon (*pro hac vice*)
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
craigs@hbsslaw.com
tyler@hbsslaw.com
catherineg@hbsslaw.com

Roland Tellis (CSB No. 186269)
Mark Pifko (CSB No. 228412)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Tel: (818) 839-2320
Fax: (818) 986-9698
rtellis@baronbudd.com
mpifko@baronbudd.com

Adam J. Levitt (*pro hac vice*)
Jeff Almeida (*pro hac vice*)
Kyle J. McGee (*pro hac vice*)
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 214-0000
Facsimile: (312) 214-0001
alevitt@gelaw.com
jalmeida@gelaw.com
kmcgee@gelaw.com

Nicholas E. Chimicles (*pro hac vice*)
Joseph G. Sauder (*pro hac vice*)
Matthew D. Schelkopf (*pro hac vice*)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
NEC@chimicles.com
JGS@chimicles.com
MDS@chimicles.com

Jeff D. Friedman (CSB No. 173886)
Shana E. Scarlett (CSB No. 217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

*Plaintiffs' Interim Co-Lead Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on January 28, 2016. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

DATED: January 28, 2016          HAGENS BERMAN SOBOL SHAPIRO LLP

By: _____*/s/ Steve W. Berman*_____
          STEVE W. BERMAN

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  - 53 -
CLASS CERTIFICATION; MEMO IN SUPPORT
010388-11  848940 V1          Case No. 13-cv-3072-EMC