# Exhibit 1

2016 WL 3190862
United States Court of Appeals,
Ninth Circuit.

Ricardo Bermudez Vaquero, on behalf of himself and all others similarly situated, Plaintiff-Appellee,
v.
Ashley Furniture Industries, Inc., A Wisconsin Corporation; Stoneledge Furniture, LLC, a Wisconsin Limited Liability Corporation, Defendants-Appellants.

No. 13-56606
|
Submitted May 24, 2016 [*] Pasadena, California
|
Filed June 8, 2016

Appeal from the United States District Court for the Central District of California, Percy Anderson, District Judge, Presiding. D.C. No. 2:12-cv-08590-PA-MAN

**Attorneys and Law Firms**

J. Kevin Lilly and Scott M. Lidman, Littler Mendelson, P.C., Los Angeles, California, for Defendants-Appellants.

Michael D. Singer and Jeff Geraci, Cohelan Khoury & Singer, San Diego, California; Kevin T. Barnes and Gregg Lander, Law Offices of Kevin T. Barnes, Los Angeles, California; Raphael Katri, Law Offices of Raphael A. Katri, Beverly Hills, California; Michael Rubin, Altshuler Berzon LLP, San Francisco, California; for Plaintiff-Appellee.

Before: Susan P. Graber and Ronald M. Gould, Circuit Judges, and Wiley Y. Daniel,[**] Senior District Judge.

**OPINION**

GRABER, Circuit Judge:

Defendant Stoneledge Furniture, LLC, pays its sales associates only on commission but, it is alleged, requires sales associates to do many tasks that are unrelated to sales. Plaintiff Ricardo Bermudez Vaquero, a former sales associate, asserts that this policy violates California's minimum wage and hour laws. He sued Stoneledge Furniture and its parent company, Defendant Ashley Furniture Industries, Inc., on his own behalf and also moved to represent 605 former and current sales associates as a class. The district court granted class certification under Federal Rule of Civil Procedure 23. We affirm that decision in this interlocutory appeal.

Stoneledge Furniture is a wholly owned subsidiary of Ashley Furniture Industries. At the time the district court granted class certification, Stoneledge operated 14 retail furniture stores in California and employed about 600 sales associates, who primarily sold furniture and accessories to Stoneledge's customers. Stoneledge paid its sales associates on commission.

Vaquero worked as a sales associate at Stoneledge from 2010 to 2012. He alleges that Stoneledge requires sales associates to perform many tasks unrelated to sales, for example, cleaning the store, attending meetings, and carrying furniture. According to Vaquero, Stoneledge does not pay its sales associates for such work, beyond what they earn in commissions, and this policy violates California wage and hour laws.

Vaquero initially filed this action in state court in California and sought class certification. Under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), Defendants removed the case to federal court, and Vaquero moved to be named a class representative. He asked to represent four subclasses, three of which were derivative of the first: (1) a class of all California sales associates employed from August 24, 2008, to the present who were paid less than minimum wage for non-sales time worked; (2) sales associates who were not provided with itemized wage statements; (3) former sales associates who were not paid all wages due at separation; and (4) sales associates who were subject to unlawful business practices. Vaquero introduced pay plans and policies, along with declarations from putative class members, to serve as representative evidence on liability. If successful on the merits, Vaquero proposed to resolve the damages phase of the litigation through use of a survey, sampling evidence, or a special master.

The district court denied class certification for the third subclass (what it called the "waiting class"), but granted it for the other subclasses. Defendants moved to appeal the district court's decision to certify the remaining subclasses pursuant to Federal Rule of Civil Procedure 23(f). We granted permission for the appeal. For purposes of the appeal, both

parties have treated the remaining subclasses as a single entity, which they describe, in general terms, the way the first subclass is defined. The sole issue before us on appeal is whether the district court properly granted class certification.

We review for abuse of discretion a district court's class certification ruling. [Parra v. Bashas', Inc., 536 F.3d 975, 977 (9th Cir. 2008)](). In reviewing any particular underlying [Rule 23]() determination, the standard is also abuse of discretion. [Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1091 (9th Cir. 2010)]().

The district court granted class certification under [Rule 23(b)(3)](). To justify certification under that provision, a plaintiff must prove that the class meets all prerequisites under [Rule 23(a)]()[1] and that the class meets two requirements under [Rule 23(b)(3)]().[2] Defendants argue that Vaquero has failed to prove commonality, as required by [Rule 23(a)](), and predominance of class claims, as required by [Rule 23(b)(3)](). Defendants also assert that class certification has altered the parties' substantive rights in violation of the Rules Enabling Act, [28 U.S.C. § 2072(b)]().

A. *Commonality*

[Rule 23(a)(2)]() provides that a plaintiff may sue as a representative member of a class only if "there are questions of law or fact common to the class." The requirement of "commonality" means that the class members' claims "must depend upon a common contention" and that the "common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." [Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)]().

The Supreme Court's most thorough interpretation of the commonality requirement is *Dukes*, and Defendants rely on that case to argue that commonality does not exist here. In *Dukes*, the Supreme Court denied certification of a class of more than a million members—female employees of the corporation—who claimed that the retailer's delegation of promotion decisions to individual managers, in combination with its corporate culture, denied them equal pay and promotional opportunities in violation of Title VII. [Id. at 367](). The Court held that the plaintiffs "wish to sue about literally millions of employment decisions at once. Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." [Id. at 352](). In that case, subjective decisions by many managers in different locations could not be considered a common injury across a class of more than one million plaintiffs. *Id.* Therefore, the plaintiffs failed to make the prerequisite showing of commonality required by [Rule 23(a)](). *Id.*

Here, by contrast, the common injury is far less extensive, far less abstract, far less dispersed, and far more objective and focused. California law proscribes compensation through commission for work that is not "directly involved in selling." [Ramirez v. Yosemite Water Co., 978 P.2d 2, 10 (Cal. 1999)]() (internal quotation marks omitted). California law also prohibits "averaging" to meet minimum wage requirements. [Armenta v. Osmose, Inc., 37 Cal. Rptr. 3d 460, 468 (Ct. App. 2005)](). Stoneledge paid sales associates only through commissions. If the company required sales associates to do work not "directly involved in selling" and failed to compensate the sales associates for such work, then it violated California's minimum wage laws for *all* such employees. Thus, the complaint contains a "common contention" that easily "is capable of classwide resolution": it is one type of injury allegedly inflicted by one actor in violation of one legal norm against a relatively small number of class members who all generally performed the same work. [Dukes, 564 U.S. at 350](). The district court permissibly concluded that Vaquero had pleaded a common injury capable of class-wide resolution.

B. *Predominance*

Under [Rule 23(b)(3)](), a class may be certified only if "questions of law or fact common to class members predominate over any questions affecting only individual members." The Supreme Court has noted that, "[i]f anything, [Rule 23(b)(3)]()'s predominance criterion is even more demanding than [Rule 23(a)]()." [Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013)]().

Defendants argue that, when damages calculations cannot be performed on a class-wide basis, predominance has not been reached. Defendants maintain that the Supreme Court's holding in *Comcast* controls. There, in an antitrust case, the Court reviewed the certification of a class of consumers. *Id.* The plaintiffs offered a complex damages model to show how the customers were subject to anti-competitive prices. [Id. at 1432–33](). The Court reversed the class certification because the model "failed to measure damages resulting from the

particular antitrust injury on which petitioners' liability in this action is premised." *Id.* at 1433.

We have interpreted *Comcast* to mean that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987–88 (9th Cir. 2015) (quoting *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)), *petition for cert. filed*, 84 U.S.L.W. 3500 (U.S. Mar. 1, 2016) (No. 15-1101). If the plaintiffs cannot prove that damages resulted from the defendant's conduct, then the plaintiffs cannot establish predominance. *Id.*

No such problem exists in this case. Vaquero alleges that Defendants' consciously chosen compensation policy deprived the class members of earnings in violation of California's minimum wage laws. In a wage and hour case, unlike in an antitrust class action, the employer-defendant's actions *necessarily* caused the class members' injury. Defendants either paid or did not pay their sales associates for work performed. No other factor could have contributed to the alleged injury. Therefore, even if the measure of damages proposed here is imperfect, it cannot be disputed that the damages (if any are proved) stemmed from *Defendants'* actions. The district court did not abuse its discretion in holding that different damages calculations do not defeat predominance in this circumstance.

Our precedent is well settled on this point. In *Yokoyama*, we held that "damage calculations alone cannot defeat certification." 594 F.3d at 1094. That is, the "amount of damages is invariably an individual question and does not defeat class action treatment." *Id.* (quoting *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)). We have repeatedly confirmed the *Yokoyama* holding that the need for individualized findings as to the amount of damages does not defeat class certification. See *Leyva*, 716 F.3d at 514 (holding that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)"); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) (holding that *Leyva* was the "controlling case," and that individual damages calculations did not defeat class certification), *cert. denied*, 135 S. Ct. 2835 (2015). Indeed, "*Yokoyama* remains the law of this court, even after *Comcast*." *Pulaski & Middleman*, 802 F.3d at 988.

The Supreme Court has not disturbed our precedent. In *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), the district court had certified a class of employees who claimed that their employer had violated wage and hour laws by failing to pay overtime compensation for time spent donning and doffing protective gear. The employer had failed to keep records of such time, so employees relied on "representative evidence," including employees' testimony, video recordings, and an expert's statistical analysis, to establish both liability *and damages* on a class-wide basis. *Id.* at 1043. The employer challenged the certification of the class, in that case as here, contending that individual inquiries predominated over common questions. *Id.* at 1046. The use of expert statisticians and statistical surveys, it claimed, could not defeat the need for individualized liability determinations for each class member. *Id.* The employer sought a "broad rule against the use in class actions of what the parties call representative evidence." *Id.* The Court declined to establish such a rule. *Id.* It held that a "representative or statistical sample, like all evidence, is a means to establish or defend against liability. Its permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Id.* The Court held that class certification was appropriate even though class members might have to prove liability *and damages* individually. *Id.*

Under *Tyson Foods* and our precedent, therefore, the rule is clear: the need for individual damages calculations does not, alone, defeat class certification. Accordingly, we hold that the district court permissibly ruled that individual claims did not predominate in this case.

C. *Rules Enabling Act*

The Rules Enabling Act provides that a procedural rule "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). This mandate applies to class actions brought under Rule 23. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999). Defendants claim that the nature of the damages calculations in this case violates their rights under the Rules Enabling Act. They argue that the use of representative evidence would inevitably change the substantive rights of the parties by preventing Defendants from individually cross-examining and challenging each class member's claims. Again, Defendants rely heavily on the Supreme Court's opinion in *Dukes*. In *Dukes*, the Court rejected the plaintiffs' trial plan to determine individual entitlement to backpay through statistical sampling. 564 U.S. at 367. The Court held that the "class cannot be certified on the premise that Wal-Mart will not be entitled to litigate its statutory defenses to individual claims." *Id.*

Defendants' reliance on *Dukes*, in this regard, is misplaced. As the Court made clear in *Tyson Foods*: "[*Dukes*] does not stand for the broad proposition that a representative sample is an impermissible means of establishing classwide liability." *Tyson Foods*, 136 S. Ct. at 1048. "In a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class. To so hold would ignore the Rules Enabling Act's pellucid instruction that use of the class device cannot 'abridge any substantive right.' " *Id.* at 1046 (ellipsis omitted).

In *Tyson Foods*, the Court made clear that the defendants could still challenge the sufficiency of the evidence, notwithstanding class certification: "When, as here, the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—an alleged failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." *Id.* at 1047 (internal quotation marks and brackets omitted).

We also note that Defendants' concerns are hypothetical at this stage of the litigation. The district court has discretion to shape the proceedings. With a class of only about 600 members, the court could choose an option such as the use of individual claim forms or the appointment of a special master, which plainly would allow Defendants to raise any defenses they may have to individual claims.

In this case, as in *Tyson Foods*, the district court's grant of class certification has not expanded Vaquero's substantive rights or those of the class. Defendants may challenge the viability of Vaquero's evidence at a later stage of the proceedings. Accordingly, the district court did not violate the Rules Enabling Act or abuse its discretion in certifying the class.

**AFFIRMED.**

**All Citations**

--- F.3d ----, 2016 WL 3190862

---

Footnotes

| | |
|---|---|
| \* | The panel unanimously concludes that this case is suitable for decision without oral argument. Fed. R. App. P. 34(a)(2). |
| \*\* | The Honorable Wiley Y. Daniel, Senior United States District Judge for the District of Colorado, sitting by designation. |
| 1 | Rule 23(a) provides: "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." |
| 2 | Rule 23(b)(3) provides: "A class action may be maintained if Rule 23(a) is satisfied *and* if ... the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, *and* that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (Emphases added.) |