| | |
|---|---|
| STEVE W. BERMAN (*pro hac vice*) | ADAM J. LEVITT (*pro hac vice*) |
| CATHERINE Y.N. GANNON (*pro hac vice*) | JEFFREY A. ALMEIDA (*pro hac vice*) |
| TYLER WEAVER (*pro hac vice*) | KYLE MCGEE (*pro hac vice*) |
| CRAIG SPIEGEL (122000) | GRANT & EISENHOFER P.A. |
| HAGENS BERMAN SOBOL SHAPIRO LLP | 30 North LaSalle Street, Suite 2350 |
| 1918 Eighth Avenue, Suite 3300 | Chicago, Illinois 60602 |
| Seattle, Washington 98101 | Telephone: (312) 214-0000 |
| Telephone: (206) 623-7292 | Facsimile: (312) 214-0001 |
| Facsimile: (206) 623-0594 | alevitt@gelaw.com |
| steve@hbsslaw.com | jalmeida@gelaw.com |
| catherineg@hbsslaw.com | kmcgee@gelaw.com |
| tyler@hbsslaw.com | |
| craigs@hbsslaw.com | NICHOLAS E. CHIMICLES (*pro hac vice*) |
| | BENJAMIN F. JOHNS (*pro hac vice*) |
| ROLAND TELLIS (186269) | CHIMICLES & TIKELLIS LLP |
| MARK PIFKO (228412) | One Haverford Centre |
| BARON & BUDD, P.C. | 361 West Lancaster Avenue |
| 15910 Ventura Boulevard, Suite 1600 | Haverford, Pennsylvania 19041 |
| Encino, California 91436 | Telephone: (610) 642-8500 |
| Telephone: (818) 839-2320 | Facsimile: (610) 649-3633 |
| Facsimile: (818) 986-9698 | nick@chimicles.com |
| rtellis@baronbudd.com | benjohns@chimicles.com |
| mpifko@baronbudd.com | |

*Class Counsel*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE<br><br>MYFORD TOUCH CONSUMER LITIGATION | Case No. 3:13-cv-03072-EMC<br><br>**PLAINTIFFS' MOTION FOR RECONSIDERATION OF CLASS CERTIFICATION ORDER REGARDING CERTAIN FRAUD-BASED CLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:   Hon. Edward M. Chen |

**MOTION**

PLEASE TAKE NOTICE THAT pursuant to the Court's Order of September 27, 2016, Dkt. No. 287, Plaintiffs hereby move the Court for an order, pursuant to Civil L.R. 7-9, reconsidering the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion to Certify Class, Dkt. No. 279, filed September 14, 2016, and certifying classes under Fed. R. Civ. P. 23.  Purusant to the Court's Order of September 27, 2016, Plaintiffs have not noted this motion for a particular date.  This Motion seeks reconsideration with respect to four claims: (1) Count I on behalf of the California Class (Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*), to the extent this claim is predicated upon fraud; (2) Count III on behalf of the California Class (Violations of California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*); (3) Count I on behalf of the New York Class (Violations of New York General Business Law § 349); and (4) Count I on behalf of the Washington Class (Violations of the Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86.010 *et seq.*).

This Motion is based on the accompanying Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

In its Order Granting in Part and Denying in Part Plaintiffs' Motion to Certify Class ("Order"), Dkt. No. 279, this Court certified nine state classes pursuing seventeen claims.  Among the claims the Court declined to certify are the California Class claims for violations of the Unfair Competition Law ("UCL"), to the extent such claims are predicated upon fraud, and violation of the False Advertising Law ("FAL"); all of the the New York Class claims, including that for violations of General Business Law § 349 ("GBL § 349"); and the Washington Class claim for violations of the Washington Consumer Protection Act ("WCPA") (together, the "Subject Claims").  On September 27, 2016, the Court granted Plaintiffs leave to file this motion.  Dkt. No. 287.

**I.     LEGAL STANDARD**

Reconsideration is proper in instances of a "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court" before the issuance of the Order.  Civ. L.R. 7-9(b)(3).  Rule 7-9 cross-references Fed. R. Civ. P. 54(b), which authorizes the Court to revise any interlocutory order "that adjudicates fewer than all the claims or the rights and

liabilities of fewer than all the parties … at any time before the entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b); *see also Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005) ("a district judge always has power to modify or to overturn an interlocutory order or decision while it remains interlocutory") (citation omitted).  The Order's denial of class certification of the four Subject Claims is incorrect, because the Court did not consider a dispositive legal argument establishing classwide reliance and, in the case of the GBL § 349 claim, imposed a reliance requirement that is not supported by any case cited by the parties or in the Order.

## II. THE COURT DID NOT CONSIDER A DISPOSITIVE LEGAL ARGUMENT ESTABLISHING CLASSWIDE RELIANCE

Because the Court dismissed all claims based on affirmative misrepresentations, this is an omissions case. *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 953 (N.D. Cal. 2014).  In their class certification motion, Plaintiffs offered two alternative theories of classwide reliance on Ford's omissions under California law.  *See* Dkt. No. 202 at 27-28.  First, Plaintiffs relied on the Ninth Circuit's opinion in *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226-27 (9th Cir. 2015), which held that reliance with respect to fraudulent omissions was satisfied where plaintiffs "interacted with and received information from sales representatives at authorized Ford dealerships prior to purchasing their [vehicles]," and Ford could have, but did not, instruct its dealers to disclose the defect to consumers.  *Daniel*, 806 F.3d 1217, 1226 (9th Cir. 2015).  Second, Plaintiffs argued that classwide reliance "is also established where, for instance, the defendant undertook 'extensive and long running advertising campaigns.'"  Dkt. No. 202 at 28 (citing *McVicar v. Goodman Global, Inc.*, 2015 WL 4945730, at *11 (C.D. Cal. Aug. 20, 2015)).  The Court rejected Plaintiffs' argument that Ford engaged in an extensive and long-running advertising campaign, *see* Order at 32, but did not consider or rule on Plaintiffs' primary argument based on *Daniel*.  The Court also did not consider a similar argument Plaintiffs made based on Washington law.  *See* Dkt. No. 202 at 38, Order at 39.  As to New York law, Plaintiffs argued that GBL § 349 does not require reliance.  Dkt. No. 202 at 35-36.  The Court did not address the recent decisions cited by Plaintiffs but instead relied on earlier and inapplicable New York decisions.  *See* Order at 38 n.20.

1    Because the Court declined to certify the Subject Claims because Plaintiffs could not establish classwide reliance in light of the Court's finding that Ford did not conduct an extensive and long-running advertising campaign that would support an inference of classwide reliance, and did not consider Plaintiffs' alternative argument under *Daniel*, as well as under New York law, the Court should reconsider its Order and certify the Subject Claims.

### III.    THE *DANIEL* ANALYSIS APPLIES TO ALL SUBJECT CLAIMS

The fraud-based claims at issue in *Daniel* were brought under the UCL and the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* Because claims under the FAL are analyzed under the "same objective test" as the UCL and the CLRA, *see Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012), the *Daniel* court's analysis of reliance under the UCL and CLRA clearly applies to the California Class's FAL claim. The same analysis applies to the remaining claims under the WCPA and GBL § 349 (assuming that claim even has a reliance requirement, which it does not, as shown in Section V, below).

In *Daniel*, the Ninth Circuit reversed summary judgment for Ford on plaintiffs' fraud and warranty claims concerning an alleged rear suspension alignment defect in 2005-2011 Ford Focus vehicles, and instructed the district court to reconsider its denial of class certification. 806 F.3d at 1227. The plaintiffs did not review promotional or warranty literature, websites, or other advertisements about their vehicles but spoke with authorized Ford dealership sales representatives when completing their purchases. *Id.* at 1220-21. The district court held that plaintiffs failed to show reliance. *Id.* at 1221. The Ninth Circuit rejected the district court's analysis and explained that "[t]here are, of course, various ways in which a plaintiff can demonstrate that she would have been aware of a defect, had disclosure been made," including "showing that [plaintiffs] would have been aware of the defect had Ford disclosed it to its dealerships." *Id.* at 1226.

The Ninth Circuit next rejected Ford's argument that, even if plaintiffs could show it was "hypothetically possible for Ford to disseminate information through its dealerships," the reliance element is not satisfied unless the dealerships were "contractually obligated to pass on disclosures to consumers or that dealerships would voluntarily do so." *Id.* at 1226-27. Instead, the Ninth Circuit concluded that plaintiffs raised a genuine issue of material fact as to whether they relied on Ford's

1    omissions by showing that "Ford communicates indirectly [to consumers] through its authorized

2    dealerships," that under Ford's Limited Warranty "[p]laintiffs needed to return to Ford dealerships to

3    perform warranty repairs," and that Ford "circulated its special service messages and technical

4    service bulletins" through its dealership network. *Id.* at 1227.  The Ninth Circuit held that "a

5    reasonable fact finder could conclude that Ford knew that its consumers depended at least in part on

6    its authorized dealerships for information about its vehicles and that Ford's authorized dealerships

7    would have disclosed the alleged rear suspension defect to consumers if Ford had required it." *Id.*

8         Plaintiffs here similarly explained that common, classwide evidence showing that Ford

9    communicates indirectly through its authorized dealerships, that Ford's Limited Warranty required

10   Plaintiffs and other Class members to return to authorized dealerships for warranty repairs, and that

11   Ford circulated MFT-related service messages and TSBs through its dealership network would

12   "establish[] classwide exposure to Ford's omissions." Dkt. No. 202 at 28.  All Plaintiffs purchased

13   their vehicles from authorized Ford dealers, and the Classes are uniformly limited to persons who

14   purchased MFT-equipped vehicles from authorized Ford dealers.[1]  Thus, all Class members

15   necessarily interacted with and received information about their vehicles from authorized Ford

16   dealership personnel.  The standard Limited Warranty introduced in this case, like that at issue in

17   *Daniel*, requires Class members needing warranty repairs to return to Ford's authorized dealerships

18   to have such work performed.  Finally, Ford's MFT-related service messages and TSBs were

19   circulated through its dealership network in exactly the same way as in *Daniel*.  *See* Dkt. No. 203,

20   Ex. 187 (Moody Dep. Tr.) at 124:14-13 & Ex. 192 (exemplar communication from Ford to

21   authorized Ford dealers regarding MFT).  So there is nothing to distinguish the facts concerning

22   reliance in this case from those addressed in *Daniel*.

23        After the Ninth Circuit reversed and remanded, and after this Court issued the Order, the dist-

24   rict court in *Daniel* issued an order certifying the plaintiffs' fraud and warranty claims.  *See* Mem.

---

[1] The Third Amended Complaint alleges that each Plaintiff purchased a Class Vehicle from an authorized Ford dealership. *See, e.g.*, Dkt. No. 183 at ¶¶ 23, 24, 36, 39, 49, 59, 66, 73, 79, 87, 89, 109, 116, 124, 132, 140, 144, 148, 155, 164, 172, 179, 187.  Moreover, each Plaintiff alleged that neither Ford nor any of its dealers informed Plaintiffs of the existence of the MFT system's defect and/or defective design prior to their purchase. *Id.* at ¶¶ 35, 48, 57, 65, 72, 78, 86, 106, 115, 131, 139, 147, 154, 163, 171, 178, 186, 191, 193.

and Order, Dkt. No. 123, *Daniel v. Ford Motor Co.*, No. 2:11-cv-02890-WBS-EFB (E.D. Cal. Sept. 23, 2016) (attached hereto as Exhibit A).  With respect to reliance, the district court stated, "Because plaintiff's class includes only purchasers of new Focuses who, presumably, interacted with authorized Ford dealers prior to purchase, th[e] [reliance] inquiry, too, is amenable to class-wide resolution."  Ex. A at 17-18.  This case also concerns vehicle purchases or leases from authorized Ford dealers, so that Class members interacted with dealership sales personnel.[2]

The same analysis applies to Plaintiffs' claims under California law in this case, which the Court should certify.  And *Daniel*'s reasoning is equally applicable under Washington law.  The Order cites no authority for its refusal to certify the WCPA claim.  But as with the UCL and FAL claims, "[a] presumption of reliance is appropriate in fraud cases [under the WCPA] such as this one, where [p]laintiffs have *primarily* alleged omissions…. Proof of the omissions will *not* be based upon information each class member received about the [products], but on what [defendant] allegedly concealed in light of what consumers reasonably expect."  *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D. Wash. 2007) (emphasis in original).  As the Ninth Circuit held, "a reasonable fact finder could conclude that Ford knew that its consumers depended at least in part on its authorized dealerships for information about its vehicles and that Ford's authorized dealerships would have disclosed the alleged … defect to consumers if Ford had required it."  *Daniel*, 806 F.3d at 1227; *see also* Ex. A at 17-18 (reliance inquiry "amenable to class-wide resolution" where all class members "presumably[] interacted with authorized Ford dealers prior to purchase").[3]

The same analysis would apply under GBL § 349 if it required reliance (which, as explained in Section V, it does not).  The Court premised its denial of certification of the New York Class's

---

[2] That the *Daniel* class was limited to purchasers of "new" vehicles does not distinguish it from the Classes at issue in this case.  The salient point is that class members in both cases would have interacted with authorized Ford dealership sales representatives, because the Classes here are limited to purchases or leases from authorized Ford dealerships.

[3] The Ninth Circuit recently affirmed certification of a class under the WCPA for omissions of material facts, without evidence of an extensive advertising campaign. *Ruiz Torres v. Mercer Canyons Inc.*, 2016 U.S. App. LEXIS 16106, at *16 (9th Cir. Aug. 31, 2016) ("the district court recognized that important questions, regarding the existence of a common policy of non-disclosure, and whether such non-disclosure constituted false and misleading information, would 'drive the resolution' of the AWPA and [W]CPA claims") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

1   GBL § 349 claim on its conclusion that classwide reliance cannot be presumed in the absence of an
2   extensive and long-running advertising campaign.  *See* Order at 38 n.20 (citing *Small v. Lorillard*
3   *Tobacco Co.*, 94 N.Y.2d 43, 53 (1999)).  In *Small*, the New York Court of Appeals held that plain-
4   tiffs failed to allege a cognizable injury where the defendants' failure to disclose facts concerning the
5   addictive properties of nicotine was not alleged to have affected the cost of cigarettes.  *Small*, 94
6   N.Y.2d at 56 ("Plaintiffs' definition of injury is legally flawed.  Their theory contains no manifesta-
7   tion of either pecuniary or 'actual' harm; plaintiffs do not allege that the cost of cigarettes was
8   affected by the alleged misrepresentation, nor do they seek recovery for injury to their health as a
9   result of their ensuing addiction.") (citation omitted).
10          Here, by contrast, Plaintiffs allege that Ford's omission of material safety information con-
11   cerning the MFT defect caused Class members to overpay for MFT-equipped vehicles.  GBL § 349's
12   injury requirement can be satisfied without individualized inquiries where classwide evidence can be
13   used to establish actual pecuniary harm, including overpayment.  *See, e.g.*, *Ackerman v. Coca-Cola*
14   *Co.*, 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) (distinguishing *Small* and holding injury
15   adequately pleaded where plaintiffs "explicitly allege that defendants command a premium price for
16   vitaminwater by distinguishing it from soft drinks") (internal quotations omitted); *Ashgari v. Volks-*
17   *wagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1332 (C.D. Cal. 2013) ("*Small* does not require
18   dismissal of Ashgari's GBL [§ 349] claim because he has alleged actual, pecuniary harm.").  *Small* is
19   inapplicable where, as here, a plaintiff alleges pecuniary harm resulting from the alleged omission.
20          Moreover, GBL § 349 permits claims against vehicle manufacturers for failing to reveal
21   defects to purchasers without any showing of an extensive advertising campaign.  *See, e.g.*, *Tomassi-*
22   *ni v. FCA US LLC*, 2015 U.S. Dist. LEXIS 81009, at *18-19 (N.D.N.Y. June 23, 2015) (plaintiff
23   stated valid GBL § 349 claim where defendant failed to disclose material information about defect in
24   minivans, because "a business's failure to disclose to consumers material, relevant information the
25   business alone possesses is actionable under [GBL § 349] without reference to any special
26   relationship between the consumer and the business"); *see also Oswego Laborers' Local 214*
27   *Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (omissions claim under GBL
28   § 349 is valid "where the business alone possesses material information that is relevant to the

consumer and fails to provide this information"). Accordingly, Ford's classwide failure to cause its authorized dealers to disclose the MFT system defect and its safety implications—information that it alone possessed—has resulted in classwide injury under GBL § 349.

### IV.     THE COURT'S DISCUSSION OF FORD SALESPERSONS AND CRITICAL MEDIA STATEMENTS ABOUT MFT IS INCONSISTENT WITH *DANIEL*

In one paragraph of its lengthy Order, the Court observed that, "Plaintiffs present no evidence that each purchaser of a vehicle equipped with MFT had to have seen the advertised representations (or misrepresentation) before purchasing the vehicle." Order at 35. The Court further stated that, "[t]here is no evidence that all or nearly all class members would have been exposed to a consistent sales script containing alleged misrepresentations about MFT." *Id.* at 36. Thus, the Court held that Plaintiffs failed to establish "that they would have inevitably (or nearly so) been exposed to misrepresentations about MFT." *Id.*

This reasoning is inconsistent with *Daniel* and conflates misrepresentations with omissions. Under *Daniel*, Plaintiffs may show classwide exposure to omissions without presenting the kind of evidence, such as uniform sales scripts, envisioned by the Court. Rather, as the district court in *Daniel* held on remand, "the Ninth Circuit has held in this case that interacting with an authorized Ford dealer prior to purchase is sufficient to show that one would have been aware of a disclosure [had it been made]." Ex. A at 17 (citing *Daniel*, 806 F.3d at 1226). This Court's requirement that Plaintiffs come forward with evidence that all Class members saw a particular representation or were courted by Ford salespersons using a consistent sales script is inconsistent with this holding.

The Court also noted that any presumption of reliance would be "problematic" because "negative information about the MFT was widely available before most Named Plaintiffs even purchased their vehicles." Order at 36. This, too, is inconsistent with *Daniel*, in which the Court held that a "plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision. A plaintiff may do so by simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.'" *Daniel*, 806 F.3d at 1225 (citations omitted). This Court's *dictum* that the availability of negative media reports about MFT would render a presumption of reliance "problematic" presumes that such

PLAINTIFFS' MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER – 7
010388-11 905819 V1                                                                                                      Case No. 3:13-cv-03072-EMC

1    reports could somehow render the omitted information about the MFT defect and its safety conse-
2    quences a less-than-substantial factor in deciding whether to purchase a vehicle equipped with MFT.
3    　　　　Here, the availability of negative reviews of MFT during the Class Period does not affect the
4    presumption of reliance for two reasons.  First, even if some Class members were exposed to such
5    reviews prior to purchasing a vehicle equipped with MFT, Ford's omission of material, safety-related
6    information about MFT would remain a substantial factor.  *Miller v. Fuhu Inc.*, 2015 WL 7776794,
7    at *17 (C.D. Cal. Dec. 1, 2015) (rejecting argument that negative product reviews on Amazon.com
8    would have made some class members aware of defect and finding, "Materiality is determined with
9    reference to a 'reasonable man' standard.  Accordingly, a fact is material so long as a 'reasonable
10   man would attach importance to its existence or nonexistence in determining his choice of action in
11   the transaction in question.'  Thus, even if the alleged misrepresentations may not have had the same
12   impact on all consumers, reliance can still be presumed so long as a reasonable person would have
13   found the statements material.  And, because this is an objective inquiry, it is particularly well suited
14   to class-wide determination.") (quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1022 (9th Cir.
15   2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)); *see also*
16   *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015).  Indeed, Plaintiffs have
17   submitted expert evidence (the opinions of Dr. Rosenberg and Dr. Boedeker) that will demonstrate
18   the materiality of the omitted information, which the Court deemed reliable under *Daubert*.  *See*
19   Order at 8-9.  Second, as Plaintiffs explained on reply, Ford *never* publicly disclosed the MFT
20   system defect or its safety implications, so no critical media report about MFT published during the
21   Class Period contains that information.  *See* Dkt. No. 250 at 18-19.  Indeed, Ford clearly has taken
22   the position that the MFT does not contain a system defect and does not pose safety concerns.  There
23   is simply no equation between reporting on MFT and Ford's own intentionally concealed knowledge
24   of a safety-related defect.
25   　　　　Accordingly, the Court was incorrect to hold that "[p]resuming classwide reliance would …
26   require the Court to infer that all class members were exposed to positive statements regarding the
27   MFT, that all class members relied on them, and no class members saw the negative statements
28   which would have warned them about the MFT defects, thus potentially rendering any reliance

PLAINTIFFS' MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER – 8
010388-11 905819 V1                                                                Case No. 3:13-cv-03072-EMC

unreasonable." Order at 36. This case concerns omissions, so that under *Daniel*, reliance can be proved by showing that Ford could have, and failed to, cause its authorized dealers to disclose the defect.

### V. THE COURT'S FAILURE TO ADDRESS PLAINTIFFS' ARGUMENTS CONCERNING GBL § 349 RESULTED IN LEGAL ERROR

Plaintiffs explained in their opening brief that GBL § 349 has no reliance requirement. *See* Dkt. No. 202 at 35 ("Reliance and scienter are not elements of" GBL § 349) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015)). The Order does not address or cite these authorities. This oversight resulted in the Court holding that the New York Class's GBL § 349 claim could not be certified.

In *Koch,* New York's highest court (the Court of Appeals) reversed the Appellate Division's dismissal of a GBL § 349 claim concerning the sale of counterfeit wine. *Koch*, 18 N.Y.3d at 941. The Court of Appeals held that the lower court erred by imposing a reliance requirement: "To the extent the Appellate Division order imposed a reliance requirement on [GBL § 349 claims], it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Id.* at 941-42.

The Southern District of New York reached the same conclusion in *In re Scotts*. Relying on *Koch*, the court certified the plaintiffs' GBL § 349 claim alleging that a fertilizer product "does not grow grass at all or, in the alternative, does not grow grass as advertised by the 50% thicker claim." *In re Scotts*, 304 F.R.D. at 404. The court explained that the GBL § 349 claim could be certified because it does not "require proof of reliance … nor proof that defendants intended to mislead consumers." *Id.* at 409 (citing, *inter alia*, *Koch*, 18 N.Y.3d at 941). Instead, like the UCL and FAL, GBL § 349 poses an objective inquiry as to whether reasonable consumers are likely to be misled. *Id.* (citations omitted). A substantial body of case law supports this conclusion.[4] Because reliance is plainly not a GBL § 349 requirement, this Court's conclusion that, since reliance on Ford's omissions could not be presumed on a classwide basis, the New York Class's GBL § 349 claim cannot be

---

[4] *See, e.g.*, *In re Anthem Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) ("Plaintiffs bringing claims under GBL § 349 must simply raise a reasonable inference of causation rather than demonstrating reliance."); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1008 (C.D. Cal. 2015) ("individualized issues concerning reliance and scienter do not preclude classwide proof of plaintiffs' GBL [§ 349] claim"); *Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 444 (S.D.N.Y. 2005) ("reliance and scienter are not required under GBL § 349.").

certified, was erroneous. Reliance need not be presumed if reliance is not required. Thus, regardless of whether the Court agrees with the *Daniel* analysis above, this claim still should have been certified.

As noted above, *Small*'s reference to "individual proof of [harm]" in connection with GBL § 349's injury element, which the Order cites (at 38 n.20), is no impediment to certification. The *Small* plaintiffs' claim failed because they did not allege that the defendant's misconduct resulted in any overpayment for the cigarettes. *Small*, 94 N.Y.2d at 56. Due to this failure, the only way plaintiffs could show injury would be to show individualized proof of physical harm. That is not the case here. Plaintiffs have submitted classwide evidence that the MFT system is dangerously defective and that they and all Class members overpaid for it when purchasing or leasing their vehicles.

Neither do the older New York opinions cited in the Order, both of which concern securities fraud, compel denial of certification of the GBL § 349 claim. *See Katz v. NVF Co.*, 473 N.Y.S.2d 786, 789 (1984); *Wolfson v. Ubile*, 1977 WL 1546, at *2 (N.Y. Sup. Ct. Dec. 12, 1977). *Katz* did not involve a GBL § 349 claim. 473 N.Y.S.2d at 787-88 ("Plaintiff … sought to represent the 3,900 stockholders on claims of fraud, estoppel and breach of contract for losses alleged to have resulted from false and misleading statements concerning a proposed merger…."). Its statement that "plaintiff must establish that those in the class she seeks to represent had both knowledge of and acted in reliance upon the claimed misrepresentation," *id.* at 789, does not apply to a GBL § 349 claim. The same is true of *Wolfson*, in which the plaintiff sued under the Securities Act of 1933, "section 352(c) of the [GBL]," and common-law fraud. *Wolfson*, 1977 WL 1546, at *1. The court noted that GBL § 352(c) "prohibits misrepresentations made while engaged in inducing or promoting transactions in securities," *id.* at *2, and did not address GBL § 349. Its only reference to reliance is in connection with the common-law fraud claim. *Id.* ("the common law action for fraud … is insufficient in that it does not allege reliance by the plaintiff on the defendants' purported misrepresentations").

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectuflly request that the Court reconsider its Order to the extent it declined to certify the Subject Claims, and certify those claims.

| | | |
|---|---|---|
| 1 | DATED: October 6, 2016 | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 2 | | By: /s/ Steve W. Berman |
| | | Steve W. Berman (*pro hac vice*) |
| 3 | | Catherine Y.N. Gannon (*pro hac vice*) |
| | | Tyler Weaver (*pro hac vice*) |
| 4 | | Craig R. Spiegel (122000) |
| | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 5 | | 1918 Eighth Avenue, Suite 3300 |
| | | Seattle, WA 98101 |
| 6 | | Telephone: (206) 623-7292 |
| | | Facsimile: (206) 623-0594 |
| 7 | | E-mail: steve@hbsslaw.com |
| | | E-mail: catherineg@hbsslaw.com |
| 8 | | E-mail: tyler@hbsslaw.com |
| | | E-mail: craigs@hbsslaw.com |
| 9 | | |
| | | Adam J. Levitt (*pro hac vice*) |
| 10 | | Jeffrey A. Almeida (*pro hac vice*) |
| | | Kyle McGee (*pro hac vice*) |
| 11 | | GRANT & EISENHOFER P.A. |
| | | 30 North LaSalle Street, Suite 2350 |
| 12 | | Chicago, IL 60602 |
| | | Telephone: (312) 214-0000 |
| 13 | | Facsimile: (312) 214-0001 |
| | | E-mail: alevitt@gelaw.com |
| 14 | | E-mail: jalmeida@gelaw.com |
| | | E-mail: kmcgee@gelaw.com |
| 15 | | |
| | | Roland Tellis (186269) |
| 16 | | Mark Pifko (228412) |
| | | BARON & BUDD, P.C. |
| 17 | | 15910 Ventura Boulevard, Suite 1600 |
| | | Encino, CA 91436 |
| 18 | | Telephone: (818) 839-2320 |
| | | Facsimile: (818) 986-9698 |
| 19 | | E-mail: rtellis@baronbudd.com |
| | | E-mail: mpifko@baronbudd.com |
| 20 | | |
| | | Nicholas E. Chimicles (*pro hac vice*) |
| 21 | | Benjamin F. Johns (*pro hac vice*) |
| | | CHIMICLES & TIKELLIS LLP |
| 22 | | One Haverford Centre |
| | | 361 West Lancaster Avenue |
| 23 | | Haverford, Pennsylvania 19041 |
| | | Telephone: (610) 642-8500 |
| 24 | | Facsimile: (610) 649-3633 |
| | | E-mail: nick@chimicles.com |
| 25 | | E-mail: benjohns@chimicles.com |
| 26 | | *Class Counsel* |
| 27 | | |
| 28 | | |

PLAINTIFFS' MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER – 11
010388-11 905819 V1                                                Case No. 3:13-cv-03072-EMC

1

## CERTIFICATE OF SERVICE

2  The undersigned hereby certifies that a true and accurate copy of the foregoing was filed

3  electronically via the Court's ECF system, on October 6, 2016. Notice of electronic filing will be

4  sent to all parties by operation of the Court's electronic filing system.

5

6  DATED:  October 6, 2016    HAGENS BERMAN SOBOL SHAPIRO LLP

7                 By:   */s/ Steve W. Berman*
                             STEVE W. BERMAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR RECONSIDERATION
OF CLASS CERTIFICATION ORDER – 12
010388-11  905819 V1                                            Case No. 3:13-cv-03072-EMC