UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE<br><br>MYFORD TOUCH CONSUMER LITIGATION | Case No. 13-cv-03072-EMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION AND GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION**<br><br>Docket Nos. 290, 291 |

## I. INTRODUCTION

Plaintiffs filed this class action claiming that Defendants ("Ford") sold them, and other putative class members, vehicles with defective MyFord Touch ("MFT") systems, despite knowing at the time of sale that the MFT systems were defective. Ford moved to dismiss Plaintiffs' Second Amended Complaint, *see* Docket No. 157, and the Court denied this motion in part, Docket No. 175. Plaintiffs subsequently filed a Third Amended Complaint. Docket No. 183 ("TAC").

Plaintiffs moved to certify twelve classes on January 28, 2016. *See* Docket No. 196-5 ("Cert. Motion"). Each class is defined as "[a]ll persons or entities who purchased or leased a Ford or a Lincoln vehicle in [the applicable state] from Ford Motor Company or through a Ford Motor Company dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-car communication and entertainment system." *See* Notice of Mot. at 1-4.

On September 14, 2016, the Court granted in part and denied in part Plaintiffs' motion for class certification. Docket No. 279 ("Order"). In particular, as relevant here, the Court denied

certification of numerous state-law fraud claims. The Court held that as to such claims, individual issues would predominate because Ford's alleged misrepresentations regarding MFT were not sufficiently pervasive or widespread to permit an inference of class-wide reliance. *See id.* at 32-39. After the Court issued its order, both parties filed motions for leave to file motions for reconsideration. Docket Nos. 283 & 285. The Court subsequently granted leave. Docket No. 287. Now pending before the Court are each party's motions for reconsideration. As explained below, the Court **DENIES** Plaintiffs' Motion and **GRANTS** Ford's Motion.

## II.   DISCUSSION

A.   Plaintiffs' Motion

Plaintiffs seek reconsideration of the Court's denial of class certification as to four claims: (1) the UCL claim under Cal. Bus. & Prof. § 17200 et seq., to the extent the claim is predicated upon fraud; (2) the California False Advertising Law (FAL) claim; (3) the claim for violation of New York General Business Law § 349; and (4) the claim for violation of the Washington Consumer Protection Act). Docket No. 291 (P's Motion) at 1.

A fraud claim under the UCL[1] requires proof of reliance on the alleged misrepresentations or omissions on the part of the defendant. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) ("Fraudulent omissions are actionable under both" the UCL and the CLRA.). In holding that class-wide reliance could not be established in this case, the Court focused largely on a *misrepresentations* theory, and concluded that because there was no long and pervasive misleading advertising campaign, no presumption of reliance for the class was warranted. The crux of Plaintiffs' argument for reconsideration is that the Court neglected to consider its theory for liability based on Ford's *omissions*, and that under the Ninth Circuit's decision in *Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015), reliance may be presumed based on Plaintiffs' interactions with Ford dealers, and

---

[1] Plaintiffs note that claims under the FAL are analyzed under the "same objective test" as the UCL and the California Consumer Legal Remedies Act (CLRA). *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012). Plaintiffs' argument thus applies equally to both the UCL and the FAL claims. It also applies to the CLRA claim, which the Court certified—one of the rulings Ford urges the Court to reconsider.

2

1  the dealers' omissions with respect to the MyFordTouch (MFT) system.  P's Motion at 4.  The
2  Court agrees with Plaintiffs on the law, but concludes that on the facts of this case, a class-wide
3  presumption of reliance is nevertheless not warranted, and that the California and Washington
4  claims at issue here were correctly not certified.

5  Like this case, *Daniel* involved claims under the UCL and CLRA that Ford sold cars with
6  faulty components – in that case, defective rear suspensions – and that Ford knew of the problems
7  but failed to disclose them to customers, despite a duty to do so.  The Ninth Circuit explained that:

> "[t]o prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.  A plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision. A plaintiff may do so by simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently' . . . That one would have behaved differently can be presumed, or at least inferred, when the omission is material. . . . An omission is material if a reasonable consumer 'would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.'"  *Daniel*, 806 F.3d at 1225 (quoting *Mirkin v. Wasserman,* 5 Cal.4th 1082 (1993) and *Tobacco II,* 46 Cal. 4th 298).

16  The court held that the alleged nondisclosures were material because they involved a
17  potential safety issue.  The court further concluded that consumers would have been aware of this
18  material fact had Ford made the disclosure; they "presented evidence that they interacted with and
19  received information form sales representatives at authorized Ford dealerships."  *Id.*  The court
20  reversed the district court's grant of summary judgment to Ford, and ordered it to reconsider class
21  certification.  On remand, the district court certified a class for the UCL and CLRA claims,
22  holding that in light of the Ninth Circuit's decision, "[b]ecause plaintiff's class includes only
23  purchasers of new Focuses who, presumably, interacted with authorized Ford dealers prior to
24  purchase, [the reliance] inquiry . . . is amenable to class-wide resolution."  Docket No. 291-1 at
25  17-18.

26  Plaintiffs are correct, therefore, that under *Daniel*, reliance may be presumed on the basis
27  of omissions of material facts by authorized dealers.  Although class certification in an omissions
28  case may be possible given the objective nature of materiality and systemic distribution of

3

information, *Daniel* is distinguishable. In *Daniel*, there was *no* disclosure of the defective rear suspensions. Ford's only evidence to rebut reliance was that "routine monitoring of the tires would have prevented safety problems," *Daniel*, 806 F.3d at 1226, an ineffective means of disclosure.

By contrast, in this case, Ford's evidence shows that information regarding the problems with the MFT system was widely available to the public almost as soon as the system was released. In December 2010, *Consumer Reports* published a review of the system, detailing many issues, including unreliable responsiveness to commands and a system crash. Docket No. 226-4. The magazine further reported on the issues with the system and Ford's efforts to correct them on at least two occasions in 2011. *See* Docket Nos. 226-11 & 226-12. Meanwhile, the *New York Times* ran a story on June 23, 2011, reporting that widespread consumer complaints regarding the MFT system had caused Ford to drop precipitously in the J.D. Power & Associates Initial Quality Study. Docket No. 226-13. In late 2012, the *Times* again reported on the continuing issues with the system that had led Ford to extend its warranties. Docket No. 226-14. Finally, Plaintiffs' complaint notes that Ford itself publically acknowledged many of these issues in press conferences beginning in 2011. *See* Docket No. 183 (TAC) ¶¶ 8-11 (citing sources).

Depositions of some of the Plaintiffs bear out the fact that this information was known to Ford's customers. Jeffrey Miller, for example, testified that he had read a number of reviews complaining that the MFT system would freeze or become unresponsive, and that he was accordingly concerned about the "stability of the system" before he purchased the car. Docket No. 226-16 at 105-107. Henry Miller-Jones testified that his "due diligence search" before purchasing the car had revealed substantial criticism of the MFT system, including the *Times* and *Consumer Reports* articles referenced above. Docket No. 226-17. Michael Ervin similarly testified that he had encountered negative commentary about the responsiveness of the system prior to his purchase. Docket No. 226-18. Ford argues that the fact that this negative information about the MFT system was so widely available "undermine[s] the reasonableness of individual reliance on the alleged dealer omissions," Docket No. 293 at 5-6, and, moreover, makes a class-wide determination of reliance impossible, since what information individual plaintiffs were exposed to

4

will vary considerably amongst class members.

Plaintiffs respond that the fact that some customers were aware of this information is beside the point, because Ford had never disclosed that "the Base Software was fundamentally flawed at the architectural level and was not fixed by Ford's updates," and that *this* information would likely affect their purchase decisions even if the bad reviews had not. *See* Docket No. 250 (Plaintiffs' Reply Br. in support of class certification) at 7. Some of Plaintiffs' depositions support this point: two of the deposed purchasers indicated that their understanding that Ford had fixed some of the issues in part ameliorated the concerns that had been raised by the negative press. Plaintiffs therefore stress that the various negative reviews that Ford points to do not address the crucial point, that the deep structural flaws in the MFT software meant not only that the system was broken, but also that it was *unfixable*. Indeed, at the hearing, Plaintiffs indicated that they would be willing to stipulate to the assumption that *all* class members had been exposed to *every* adverse review or statement concerning the MFT system. Plaintiffs further stipulated that they would be willing to confine the issue at trial to whether Ford knew of the structural defects in the software as of June 2010, thus "freezing" in time – at the point least favorable to Plaintiffs – the question of what Ford actually knew and failed to disclose. Plaintiffs' concessions would alleviate the predominance problems arising from the fact that different purchasers were exposed to varying amounts of negative information about MFT and thus with the purported stipulation, reliance can, in part, be treated on a classwide basis.

However, as Ford argued at the hearing on this question, Plaintiffs' approach introduces additional problems. In order to prevail on its fraud claims based on material omission, Plaintiffs would have to prove that Ford was subjectively aware of the key fact not disclosed: the unfixable nature of the fundamental software problems. *See Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011). Plaintiffs' stipulation to freeze the inquiry into Ford's knowledge at the earliest possible moment (in 2010) would foreclose Ford's defense that its scienter changed over time. The actual software at issue was updated several times during the three-year class period as Ford issued updates to fix the problems that had arisen. It may be possible for Ford to demonstrate it had a good faith belief that one or more of these updates would succeed in ridding

5

1   MFT of its most serious problems.  Even if Plaintiffs could establish that as of June 2010, Ford
2   knew of serious problems with MFT both before June 2010 and after due to the fundamental
3   architecture of MFT, Ford could argue that, as updates continued to improve the functioning and
4   performance of the system, any omissions regarding the *initial* design problems were not beyond
5   repair.  Indeed, the various reviews cited above do indicate that the performance of MFT improved
6   as software updates were released.  *See* Docket Nos. 226-11 & 226-12.  The class period in this
7   case covers over three years – as Ford argued in its opposition to Plaintiffs' motion for class
8   certification its actual knowledge about the "design sufficiency and reliability of MFT changed"
9   throughout that time.  Docket No. 219-3 at 28.  This suggests that Ford's culpability for any
10  omissions could vary throughout the class period.  If so, the viability of consumers' fraud claims
11  could vary over time.

12  Furthermore, at the hearing on this question, Plaintiffs presented a timeline showing that,
13  at various points between 2010 and 2013, Ford's internal communications regarding the problems
14  with the MFT system revealed far more serious concerns than were disclosed via press reports.
15  But these communications refer largely to specific updated versions of the software.  For example,
16  Plaintiffs make much of emails in which Ford employees refer to MFT as a "polished turd,"
17  Docket No. 197-2, or state that an update will be akin to "lipstick on a pig" that lacks "any real
18  performance improvement," Docket No. 200-20.  These emails refer specifically to version 3.0
19  update released in March 2012.  While Plaintiffs contend these post-2010 statements could be
20  admitted to show retrospectively Ford's intent as of June 2010, this evidence could cause jury
21  confusion as to Ford's scienter.

22  In sum, the Court concludes that, given the evolving nature of the MFT software, and the
23  changing availability of information about the system, it would not be feasible to limit the inquiry
24  to Ford's knowledge and liability for non-disclosure as of June 2010.  There is too much
25  variability in the material facts throughout the class period to permit a class-wide inference with
26  respect to Ford's knowledge of and state of mind about the depth and quality of MFT's defects.
27  The Court notes that class certification is already complicated by the fact that there are nine
28  subclasses based on the variation of state laws asserted, as well as the fact that there were multiple

updates to the software, the effectiveness of which appears to be disputed but which the Court was willing to assume (for now) made no material difference. Adding the factor of Ford's state of mind throughout the course of over two years as new updates were introduced, would add yet another variable to the matrix, threatening predominance and manageability.

Thus, while Plaintiffs are correct that the Court did not fully address its omissions theory of reliance under *Daniel*, on the specific facts of this case, class certification is not appropriate on the fraud claims. The California claims were thus correctly not certified. Because Plaintiffs' argument for reconsideration of the Washington claim is predicated on the same argument based on *Daniel*, reconsideration of the Washington claim will also be denied. *See* P's Motion at 5.

Finally, Plaintiffs argue that the Court erred in denying certification of Plaintiffs' claim under New York GBL § 349 because that statute "does not require proof of reliance." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). The statute instead requires proof that the defendant's acts were "a material deceptive act or practice *caused actual, although not necessarily pecuniary, harm.*" *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56, 720 N.E.2d 892 (1999). As under the UCL and CLRA, the inquiry into materiality is objective; the question is whether defendant's acts are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).

Contrary to Plaintiffs' assertion, the Court's prior order did not improperly import a reliance requirement into the New York statute. In the first place, it's not clear whether there is any meaningful difference in the requirements of the New York statute and those of other states that require reliance. As discussed above, in California, reliance is presumed upon a showing of materiality, which is also a requirement of GBL § 349. The inquiries thus substantially overlap, and courts have conflated the two. *See, e.g.*, *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129, 103 Cal. Rptr. 3d 83, 95 (2009) ("*Causation*, on a class-wide basis, may be established by materiality. If the trial court finds that material misrepresentations have been made to the entire class, an inference of *reliance* arises as to the class." (emphasis added)). But in any case, the Court's order clearly referenced the causation requirement of the New York law, rather than a

7

1  reliance requirement, in denying certification on that claim.  *See* Order at 38 n.20.

2  The Court therefore **DENIES** Plaintiffs' motion for reconsideration.

3  B.  Ford's Motion

4  Ford asks the Court to reconsider its certification of classes for four fraud based claims, specifically, those arising under California's CLRA, Ohio's Consumer Sales Practices Act, Texas's Deceptive Trade Practices Act, and Virginia's Consumer Protection Act.  Docket No. 290 (D's Motion) at 1.  Ford argues that the Court's decision to certify these claims was essentially an oversight.  The Court denied certification on 18 other fraud-based claims because, as discussed above, they all had Plaintiffs' reliance as an element, and reliance was not susceptible to class-wide determination.  Ford cited authorities in its briefing on the motion for class certification demonstrating that reliance is similarly an element for claims under the four statutes at issue here.  Docket No. 225 at 19 n.12 (citing, inter alia, *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), *Temple v. Fleetwood Enters. Inc.*, 133 F. App'x 254, 265 (6th Cir. 2005), *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 693 (Tex. 2002), and *Cooper v. GGGR Invs., LLC*, 334 B.R. 179, 188-89 (Bankr. E.D. Va. 2005)).  It is clear that reliance is, in fact, a requirement under these statutes, and accordingly there is no reason for the Court to have certified these claims while denying certification of the other fraud-based claims requiring reliance.

Plaintiffs argue that the Court properly certified these claims because each of the statutes in question permits a class-wide inference of reliance or causation.  *See* Docket No. 294 at 1-5.  Plaintiffs also again argue that the Ninth Circuit's decision in *Daniel* supports certification of these claims for the reasons discussed above.  But Plaintiffs arguments are simply an attempt to re-litigate the merits of the certification issue.  The Court's determination that a class-wide inference of reliance is not appropriate in this case applies with equal force to the claims arising under these statutes.  The Court therefore **GRANTS** Ford's motion for reconsideration.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for reconsideration but **GRANTS** Ford's motion for reconsideration.  The court decertifies Plaintiffs' claims for violations of California's Consumers Legal Remedies Act, Ohio's Consumer Sales Practices Act,

8

Texas's Deceptive Trade Practices Act, and Virginia's Consumer Protection Act.

This order disposes of Docket Nos. 290 and 291.

**IT IS SO ORDERED**.

Dated: November 22, 2016

_____
EDWARD M. CHEN
United States District Judge