UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE<br><br>MYFORD TOUCH CONSUMER LITIGATION | Case No. 13-cv-03072-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL**<br><br>Docket No. 352 |

In conjunction with Ford's motion for summary judgment, Ford has requested leave to file certain material under seal. A motion for summary judgment is more than tangentially related to the merits, so Ford must demonstrate "compelling reasons" to support sealing the information. *See Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092 (9th Cir. 2016). The reason for this requirement is that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). Courts therefore begin "with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). This presumption both "promot[es] the public's understanding of the judicial process and of significant public events," *Valley Broad Co. v. U.S. Dist. Court-D. Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986), and ensures "a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo (Amodeo II)*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Against this backdrop, a party seeking to file information in conjunction with a summary judgment must demonstrate "a compelling reason" and articulate a "factual basis" that does not rely on "hypothesis or conjecture." *Center for Auto Safety*, 809 F.3d at 1096-97 (quotation

1 omitted). Whether a reason is compelling is "best left to the sound discretion of the trial court"
2 but examples may include "when a court record might be used to gratify private spite or promote
3 public scandal, to circulate libelous statements, or as sources of business information that might
4 harm a litigant's competitive standing." *Id.* at 1097 (quotations and citations omitted). If a
5 compelling reason is found, then the court must "conscientiously balance the competing interests
6 of the public and the party who seeks to keep certain judicial records secret," and only if the
7 private interest overbears the public's may the record be sealed. *Id.* at 1097 (quotation omitted).

8 Here, Ford relies principally on the assertion that the information it seeks to keep under seal is commercially sensitive and its disclosure "would cause Ford harm by providing its competitors with processes Ford employees, analysis Ford conducts, and lessons that Ford learned as one of the first developers of this type of product [MFT]." Eikey Decl. ¶ 18. Ford is correct that one factor "that weighs in favor of sealing documents is when the release of the document will cause competitive harm to a business." *Apple v. Samsung*, 727 F.3d 1214, 1221-22 (Fed. Cir. 2013) (concluding compelling reasons exist to seal "detailed product-specific information concerning such things as costs, sales, profits, and profit margins"). However, it asserts this interest too broadly here because much of the information it requests to seal does not implicate trade secrets or sensitive business data, particularly because it is over five years old. The Court reviews each category of information below.

<u>*Warranty Redemption and Accident Rates*</u>: Ford seeks to protect information concerning the number of class members who sought warranty repairs related to MFT, *see*, *e.g.*, Def's Mtn. for Summ. J. at 15; Edwards Decl., Ex. 44 (Taylor Report) at ¶ 37, Fig. 14, as well as information related to accident-reports concerning MFT, *see* Edwards Decl., Ex. 44 (Taylor Rept.) at ¶ 35. Ford contends this information "reflect[s] Ford's sensitive internal data about product performance" and "confidential information available only to Ford analyzing aggregate customer behavior." Eikey Decl. ¶ 12. The Court is not persuaded that compelling reasons exist to seal this information. Ford has not credibly explained how this type of information rises to the level of a trade secret whose disclosure would result in competitive harm today or in the future, particularly since it relates to warranty rates or accident reports for vehicles purchased more than five years

2

ago. Moreover, even if compelling reasons existed, Ford has not shown that they outweigh the public interest in the materials. This information forms a key basis for Ford's argument why it cannot be held liable for breach of express warranty, so it strikes at one of the core merits issues in this litigation. Ford also relies on the accident data to demonstrate that MFT does not create an unreasonable safety hazard. Because Ford relies on this data on pivotal merits issues disputed in this litigation, the public interest in viewing it in order to understand the litigation is high. In light of Ford's inability to demonstrate compelling reasons or to demonstrate that its interests in sealing outweigh the public's interest, the Court **DENIES** Ford's motion to seal this information.

*Customer Satisfaction Surveys*: Ford also seeks to seal the results of various consumer surveys measuring satisfaction with MFT and familiarity and awareness with various MFT-related features from 2012 and 2013. *See* Edwards Decl., Ex. 61 (Boedeker Rept.) at ¶ 49, 51-55; Edwards Decl., Ex. 60 (Singer Rept.) at ¶¶ 33, nn. 29, 36; Edwards Decl., Exs. 40-42. Though Ford claims that it internally treats such information as confidential, it has not demonstrated that disclosure of such information, often five years old or more, would cause it competitive harm today. Ford therefore has not shown a compelling reason to seal. Moreover, the public interest in the information is strong because Ford relies on these customer satisfaction surveys to argue that the vehicles in question could not have been unmerchantable and that customers who received an allegedly defective MFT did not suffer economic harm. Thus, the Court **DENIES** the request to seal this information.

*Software Upgrades*: Ford also seeks to seal information showing the proportion of class vehicles equipped with various software versions of MFT, including information about software upgrade rates. *See* Edwards Decl., Ex. 44 (Taylor Rept.) at ¶¶ 6, 9, 12, 15, Figs. 1-7; Edwards Decl., Ex. 60 (Singer Rept.) at n. 42. Some of this information does not reveal such rates at all, but simply describes what databases were reviewed by the expert and how he determined what the rates were. Ford has not explained why that high-level and very general description reveals a trade secret or other sensitive business data. To the extent the information in question relates to software upgrade rates, Ford has not persuaded the Court that information about the prevalence of different software versions in Class Vehicles constitutes sensitive business information,

3

particularly since the Class Vehicles were all purchased before August 2013 and owners of such vehicles do not have the option between choosing MFT or other software products (such that competitors to MFT could exploit the information). Accordingly, the Court concludes that Ford has not demonstrated compelling reasons meriting sealing of this information and **DENIES** the sealing request.

*Pricing Data and Damages Estimates*: Ford also seeks to seal a variety of information related to an analysis of how Ford prices its vehicle components, how it determines the "Manufacturer's Suggested Retail Price" for its vehicles, its revenues from MFT specifically, and dealer margins. The Court is persuaded by Ford's declaration that disclosure of this detailed pricing data could cause Ford competitive harm. Even if the information pertains to vehicles sold more than five years ago, the Court has no reason to believe that pricing methods or the information considered pertinent to pricing strategies has since changed. *Apple*, 727 F.3d at 1223-24. Moreover, the public's interest in Ford's pricing strategies is minimal because it does not relate directly to the issues in dispute in this litigation, or even to the estimated damages to Class Members. *Id.* Thus, to the extent the information would reveal information like Ford's pricing strategies, dealer margins, how MSRP is set and what percentage of MSRP dealers sell the vehicle for, and so on, the Court **GRANTS** Ford's request to seal. *See* Edwards Decl., Ex. 56 (Arnold Rept.) at ¶¶ 40-41, Tables 1-5, nn. 32-33, Ex. A, and Appendix 3; Edwards Decl., Ex. 60 (Singer Rept.) at ¶ 35, 36, nn. 26, 35; Edwards Decl., Ex. 61 (Boedeker Rept.) at ¶¶ 77, 78, 80, n. 145.

However, the Court excludes from this category general descriptions of how Dr. Arnold pursued his research or general, vague, and high-level descriptions merely stating that Ford keeps data about dealer margins. *See* Edwards Decl., Ex. 56 ¶¶ 36-39, 46, 50 nn. 24, 26; Edwards Decl., Ex. 61 (Boedeker Rept.) at n. 147. The Court also excludes from this category Dr. Arnold's dollar estimate for how much Class Members ultimately paid for MFT because the price of a product sold on the public market does not reveal sensitive business information or a trade secret.[1] This

---

[1] However, Dr. Arnold's estimate for how much Ford earned from MFT sales per vehicle may remain under seal because, in combination with Class Members' out-of-pocket costs, it could be used to deduce dealer margins.

4

estimate is a central fact in dispute for trial.

To the extent the Court denies Ford's motion, Ford shall either withdraw the sealed material or re-file it on the public docket consistent with this order within 7 days.

This order disposes of Docket No. 352.

**IT IS SO ORDERED**.

Dated: February 2, 2018

_____
EDWARD M. CHEN
United States District Judge