# APPENDIX C

# CHART OF SELECTED EXHIBITS PURSUANT TO PLAINTIFFS TRIAL PLAN

**(1) Exhibits Relevant to Establishing That the MFT is Inherently Defective**

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| Exs. 2, 4 | Ford-produced emails between different Ford SYNC engineers, dated 2010, complaining about the lack of experience and project management skills at contractor BSquare. | Presented to show that the initial development of MFT was contracted out to inexperienced programmers who were not able to handle the complexity of the project, thus making it more likely that the product would suffer in quality.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to show that Ford engineers knew by March 2010 about the serious deficiencies with BSquare's ability to complete the project and had concerns with the initial quality of MFT design.<br><br>Relevant to omission of material facts. |
| Ex. 8 at 134:14-135:7; 273:7-275:10; 367:5-368:1 | Testimony from Ford engineer Mike Westra expressing surprise at the *ad hoc* software development process at BSquare and the subsequent regressions. | Presented to show that the initial development of MFT was contracted out to inexperienced programmers who were not able to handle the complexity of the project, thus making it more likely that the product would suffer in quality.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to show that Ford engineers knew by March 2010 about the serious deficiencies with BSquare's ability to complete the project and concerns with the initial quality of MFT design.<br><br>Relevant to omission of material facts. |
| Ex. 3 | Ford-produced January 2010 email from different Ford SYNC engineers explaining the concept of MISRA standards to a BSquare programmer. | Presented to show that MFT did not follow industry standards for the development of automotive software.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to show that Ford engineers knew about the importance of implementing industry standards for software development, but chose not to require BSquare to adopt them for MFT |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | | | Relevant to omission of material facts. |
| Ex. 5 | Ford-produced January 2010 Letter from two Ford senior executives to BSquare declaring: "[W]e are extremely concerned about the delays in bSQUARE's SyncGen II deliverables and the resultant delay in the launch of the Edge. bSQUARE's contractual commitment is to resolve all major software bugs by January 18, 2010. bSQUARE's current delivery promise is mid-to-late March 2010. This will force Ford to delay the Edge launch by a corresponding 6 to 8 weeks with a significant profit loss in the millions of dollars for each week of delay to the Ford Motor Company." | Presented to show that BSquare suffered delays in the project and that the MFT was completed on a compressed timeframe. Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew that BSquare's incompetence resulted in delays, but nevertheless pressured the contractor to finalize code before it was ready in order to make money. Relevant to omission of material facts. |
| Ex. 6 | Ford-produced internal quality memorandum dated November 2010 describing the root cause of the MFT Problems: "A project of this magnitude was started late and was further effected by late feature definitions, late specification development, late HMI development, Sync platform development challenges and completion. Severe resource shortage on the Sync team. All of this resulted in compressed software development and validation." | Presented to show that the initial release of the MFT software was rushed and suffered from serious deficiencies relating to application readiness, software integration and architecture. Relevant to reliability, operability, safety, and free from defect. | Presented to show that Ford knew that the serious defects being experienced by consumers were related to the defective Base Software and flawed architectural process. Relevant to omission of material facts. |
| Ex. 9 ¶¶ 136–138 | Daniel Smith's testimony reflecting his opinion that the Base Software is overly complex, poorly structured and embodies high levels of cyclomatic complexity. | Presented to show that the rushed, flawed process to design and build MFT resulted in a product that suffered from defective architecture and that the manifestations of | Relevant to omission of material facts. |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | | these conditions are known as the MFT Defects. Relevant to reliability, operability, safety and free from defect. | |
| Ex. 9 ¶¶ 105–110 | Daniel Smith's testimony reflecting his opinion that resources and memory leaks are the cause behind user-facing manifestations, including system malfunctions, crashes, and spontaneous reboots. | Presented to show that resources and memory leaks are the cause of the manifestations or MFT problems of which Plaintiffs complain. Relevant to reliability, operability, safety and free from defect. | Relevant to omission of material facts. |
| Ex. 9 ¶¶ 114–131 | Daniel Smith's testimony reflecting his opinion that there is extensive evidence of resource and memory leaks in his review of the Base Software, which existed through the entire Class Period. | Presented to show that resources and memory leaks are the cause of the manifestations or MFT problems of which Plaintiffs complain. Relevant to reliability, operability, safety and free from defect. | Relevant to omission of material facts. |
| Ex. 54 at 82:10–13 | Daniel Smith's deposition testimony identifying other serious software bugs and that the same bugs were common to all versions of the software. | Presented to show that the MFT is defective. Relevant to reliability, operability, safety and free from defect. | Relevant to omission of material facts. |
| Ex. 10 ¶ 207 | Daniel Smith's testimony reflecting his opinion regarding the common defects and their manifestations and what they would look like to a user and how different issues, such as a frozen back-up camera or navigation screen, can all stem from the same root cause. | Presented to show that the MFT is defective. Relevant to reliability, operability, safety and free from defect. | Relevant to omission of material facts. |
| Ex. 13 | Ford-produced email dated January 2012 from Gary Jablonski (Ford Manager, Infotainment | Presented to show that, in spite of several Ford repair attempts, MFT systems are still | Presented to show that Ford knew there was no value to the MFT |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | Systems) that "every day we are selling units that are probably unsaleable at this point." | not fit for consumers.  Relevant to reliability, operability, safety, and free from defect. | systems due to the severe and persistent defects, and Ford's inability to repair them.  Relevant to omission of material facts. |

## (2) Exhibits Relevant to Establishing That the MFT Defects Significantly Impaired the Safety, Reliability or Operability of Class Vehicles

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| Ex. 16 at 51:16-24; Ex. 17 at 12:7-13:9. | Plaintiffs' testimony regarding unexpected and sudden failures involving the use of their MFT systems. | Presented to demonstrate that the MFT Defects impaired the reliability of Class Vehicles.  Relevant to reliability, operability, safety, and free from defect. | Relevant to omission of material facts. |
| Ex. 17 at 40:22-41:6; Ex. 18 at 68:11-12, 69:12-14; Ex. 19 at 116:12-21; Ex. 20 at 183:8-14. | Plaintiffs' testimony regarding the special precautions they undertook to mitigate against the MFT Defects. These included: not using the system while driving; instructing family members not to use the system; using their smartphones; pulling over to the shoulder and shutting the car off; and terminating their leases early. | Presented to demonstrate that the MFT Defects impaired the operability of Class Vehicles.  Relevant to reliability, operability, safety, and free from defect. | Relevant to omission of material facts. |
| Ex. 9 ¶¶ 21-25; 40-64; 98-104 | Daniel Smith's testimony reflecting his opinion that the MFT is a safety-critical system. Mr. Smith will also testify to several non-distraction-related defects that he believes present a considerable safety hazard such as "obvious and avoidable defects in the rear- | Presented to demonstrate that the MFT Defects impaired the safety of Class Vehicles.  Relevant to reliability, operability, safety, and free from defect. | Relevant to omission of material facts. |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | view camera" which can cause it to freeze or display inaccurate footage. | | |
| Ex. 21 at 199, 260-263. | Dr. Craig Rosenberg's testimony reflecting his field testing and his opinion that the MFT's problems lead to undue time and attention, excessive task demand, overly complicated mental models, and mistrust of the system, which result in driver distraction from the task of driving and cause a significant safety issue. He will also testify that the distractions posed by the MFT increase the risk of a crash with the associated risk of injury or death. | Relevant to reliability, operability, safety, and free from defect. | Relevant to omission of material facts. |
| Ex. 22 at 206:6-9; Ex. 23 at 209:8-13; Ex. 24 at 127:20-128:116; Ex. 17 at 40:22-41:6. | Plaintiffs' testimony regarding their own experience driving with the MFT that mirrors Dr. Rosenberg's expert findings on the relationship between undue distraction and safety. | Relevant to reliability, operability, safety, and free from defect. | Relevant to omission of material facts. |
| Ex. 14 | Ford-produced June 2011 email from Judy Curran, Vehicle Line Director, Global CD Segment Vehicles, describing a recent executive meeting with Mark Fields: "The only comment worth mentioning is that Mark Fields indicated [at an executive meeting] that he got the 'dreaded black screen' on his Edge. He said he could see that this would be disconcerting for our customers; you don't know what else is going to fail after the screen fails." | Presented to show a proper articulation of why an unreliable MFT can be excessively distracting to such an extent as to raise safety concerns.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that some of the highest executives of the company understood that having an unreliable MFT system can present a safety hazard, and relevant to omissions. |
| Ex. 42 | Ford-produced March 2013 email from senior Ford executive Hau Thai-Tang, describing the need for better HMI governance because "our expert team delivered to market a system that is widely recognized as the biggest quality | Presented to demonstrate that the MFT is recognized as impairing reliability, operability, and safety of Ford vehicles.<br><br>Relevant to reliability, operability, safety, | Presented to demonstrate that senior Ford executives admitted that the MFT Defects were serious, persistent and pervasive and |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | fiasco in the recent history of Ford." | and free from defect. | were experienced by consumers on a widespread level, and relevant to omission of material facts. Relevant to omission of material facts. |

## (3) Exhibits Relevant to Establishing That the MFT Defects Have Been Present Since the First Software Version

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| Ex. 48 | Ford-produced email dated June 2010 between Ford engineers responsible for final installation of the code were characterizing the consumers who would receive delivery of the first MFT-equipped vehicles as "those poor customers." | Presented to show that the first software version was unfit for consumer use. Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew the first software version being sent to consumers who have serious, sustained and pervasive defects. Relevant to omission of material facts. |
| Exs. 7, 26 | Ford-produced May 2011 internal quality memorandum stating: "[e]ssentially no component & vehicle level software validation was complete at [Final Engineering Completion] (with incomplete code, any testing done was of marginal value). Ex. 7. Ford-produced testing scorecard, dated March 2011. Ex. 26. | Presented to show that MFT was put on the market with incomplete code and no testing, Relevant to reliability, operability, safety, and free from defect. | Presented to show that Ford was pushing to get the MFT out in spite of its immature code, and that Ford also chose to skip important steps in software development to stay on schedule and make more money, relevant to omission of material facts. |
| Ex. 28 | Ford-produced November 2010 email and attachment regarding extremely critical feedback on MFT-equipped vehicles being used by Ford management lessees. | Presented to show that the MFT Defects manifested with the first set of vehicles equipped with the system. | Presented to show that Ford knew prior to delivery of MFT-equipped vehicles to consumers that there was a widespread problem with |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | | Relevant to reliability, operability, safety, and free from defect. | MFT Defect manifestations, relevant to omission of material facts. |
| Ex. 27 | Ford-produced October 2010 email discussing the onslaught of calls from dealerships asking for assistance, and not being able to provide them with any help: "I would like to know how we could launch a product with this many issues." | Presented to show that MFT Defects manifested almost immediately upon delivery and that Ford dealerships and customer service reps were not prepared or trained to provide assistance. Relevant to reliability, operability, safety, and free from defect. | Presented to show that Ford employees were extremely critical of the Company's decision to launch MFT in its defective condition, relevant to omission of material facts. |
| Ex. 49 | Ford-produced email dated October 2010 from Fords' Manager of Recall & Service Quality, Charles Kopeika stating that senior management is well aware of the MFT issues. | Presented to show that the MFT Defects manifested with the first set of vehicles equipped with the system. Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew from the onset there were serious, sustained and pervasive MFT Defects at first release, relevant to omission of material facts. |
| Ex. 8 at 322:23-323:8. | Testimony from key Ford SYNC engineer Mike Westra that: "[E]verybody sort of acknowledged that there were still bugs in the system. When -- whether this was the final release or with 1.08 [the first release]. So I think everybody acknowledged that there -- that there were bugs in the system, and the goal was to reflect sort of an accurate status of the project to senior leaders so that they could make a determination." | Presented to show that the MFT Defects manifested with the first set of vehicles equipped with the system. Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew from the onset there were serious, sustained and pervasive MFT Defects at first release. Relevant to omission of material facts. |
| Ex. 25 at 159:7-17 | Mike Westra deposition testimony confirming that the industry standard for "TGWs" or | Presented to show that the MFT was defective since the first software | Presented to show that Ford has previously built software that was |
APPENDIX C - Chart of Selected Exhibits Pursuant to MFT Plaintiffs Trial Plan

010388-11 1016366 V1    7

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| Ex. 29 | ("Things Gone Wrong") is 200 errors per vehicle. Ex. 25.<br><br>Ford-produced bug tracking document dated January 2011 showing TGW for initial MFT software version to be 1,304 TGW per vehicle. Ex. 29. | version. Also presented to show the extent of the defective nature of MFT.<br><br>Relevant to reliability, operability, safety, and free from defect. | not defective, relevant to omission of material facts. |

## (4) Exhibits Relevant to Establishing That Ford's Repairs Regarding the MFT Defects Were Never Successful

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| Exs. 31, 32, 34 | Ford-produced internal documents showing software version planning and launch information. | Presented to demonstrate that the same Base Software was consistent to all MFT software versions and therefore all Class Vehicles. And therefore any defects in the Base Software would be consistent across all Class Vehicles.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew that any severe defects present in the Base Software would continue to be installed in Class Vehicles unless Ford chose to address the software architecture.<br>Relevant to omission of material facts. |
| Ex. 10 ¶¶ 4-21 | Daniel Smith's testimony reflecting his opinion that the Base Software underlays all the MFT versions. | Presented to demonstrate that the same Base Software was consistent to all MFT software versions and therefore all Class Vehicles. And therefore any defects in the Base Software would be consistent across all Class Vehicles unless there was evidence of a successful repair to the MFT Base Software.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew that any severe defects present in the Base Software would continue to be installed in Class Vehicles unless Ford chose to address the software architecture.<br><br>Relevant to omission of material facts. |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
| --- | --- | --- | --- |
| Ex. 35 | Daniel Smith's testimony reflecting his opinion that the MFT software remained unchanged across all the versions. | Presented to demonstrate that the last software version (version 3.5) at issue in the litigation did not repair the defective nature of the MFT. And presented to demonstrate that Ford never addressed defects in the Base Software.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew that the MFT was defective, and that they knew the superficial software updates were not successfully repairing the MFT.<br><br>Presented to demonstrate that Ford never chose to address defects in the Base Software, in spite of repeated warnings and suggestions from Ford engineers.<br><br>Relevant to omission of material facts. |
| Ex. 50 | Ford-produced email from Ford SYNC engineer Mike Westra, dated February 2011, indicating that a root cause of a key defect was due to larger architectural issues that required long-term fixes. | Presented to demonstrate that key defects/manifestations were being caused by faulty software architecture and that major revisions were required.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew larger architecture changes were required.<br><br>Relevant to omission of material facts. |
| Ex. 51 | Ford-produced planning document dated February 2011 explaining that major concerns have not been resolved and issues such as memory fragmentation required major architectural change. | Presented to demonstrate that key defects/manifestations were being caused by faulty software architecture and that major architecture revisions were required.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew larger architecture changes were required.<br><br>Relevant to omission of material facts. |
| Ex. 36 | Ford-produced emails between Ford SYNC engineers dated July 2011 | Presented to demonstrate that software versions 1.08, 2.03 and 2.04 did not repair the defective nature of the MFT. | Presented to demonstrate that Ford knew that the MFT was defective, and that they knew the superficial software |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | characterizing the first year of software updates as a "disaster" and "crap." | Relevant to reliability, operability, safety, and free from defect. | updates were not successfully repairing the MFT.<br><br>Relevant to omission of material facts. |
| Ex. 37 | Ford-produced June 2011 email written by Bill Garrett Supervisor EESE Quality indicating: "The reality is that the systems we are still building and selling ARE flawed…. This creates a steadily growing body of vehicles in the field with SYNC Gen 2 systems that will fail and require repair." | Presented to demonstrate that software versions 2.06, 2.07, 2.08 and 2.10 did not repair the defective nature of the MFT.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew that the MFT was defective; and that they knew the superficial software updates were not successfully repairing the MFT.<br><br>Relevant to omission of material facts. |
| Ex. 53 | Ford-produced October 2011 email from Ford engineer Richard Englert explaining: "My concern is that it's somehow too difficult or even unknown to them, so they 'just fix it locally for now' to meet bug count progress."<br><br>"That short-sighted view is what happened the first time around, and it will bite us later – indeed that's a contributor to the current disjointed state of the HMI codebase…. I have just | Presented to demonstrate that Ford's software repairs were shortsighted and ad hoc, and would likely lead to future regressions.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew it could not fix the MFT Defects with such superficial, temporary fixes.<br><br>Relevant to omission of material facts. |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | learned that the farther we go down the 'fix it any way for now' road, the farther we have to regress later when those solutions don't support future requirements." | | |
| Ex. 52 | Ford-produced email dated December 2011 from Gary Jablonski noting: "Instability of the platform is making even the simplest of changes high risk. There is a much longer separate discussion that can be had about what fundamental changes we need to make to create a more stable and nimble platform." | Presented to demonstrate that key defects/manifestations were being caused by faulty software architecture and that major architecture revisions were required.

Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew from the onset there were serious, sustained and pervasive MFT Defects at first release.

Relevant to omission of material facts. |
| Exs. 13, 38. | Ford-produced emails documents between Ford SYNC engineers describing the March 2012 software version as a "polished turd" and "lipstick on a pig." | Presented to demonstrate the Microsoft-led 3.0 software version did not repair the defective nature of the MFT.

Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew that the MFT was defective, and that they knew the superficial software updates were not successfully repairing the MFT.

Relevant to omission of material facts. |
| Ex. 33 | Ford-produced August 2012 email from Microsoft to former CEO Allan Mulallay explaining that the 2011 decision not to re-architect | Presented to demonstrate that Ford was not addressing defects found in the software architecture and that engineers were therefore critically constrained and foreclosed from bringing about substantive improvement to the MFT. | Presented to demonstrate that even Ford's then CEO knew that a failure to address the defects found in the software architecture will cause further system instability and regression, in |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | the MFT meant that engineers "are building on top of an unstable system with a staggering bug debt" and that "carrying such a high bug debt means that functionality changes in areas such as phone, navigation or speech can cause system instability and even worse regression." | Relevant to reliability, operability, safety, and free from defect. | spite of any superficial fixes.<br><br>Relevant to omission of material facts. |
| Ex. 40 | Ford-produced emails between Ford SYNC engineers that suggests the August 2012 release was even worse than the previous software release. | Presented to demonstrate the Microsoft-led 3.2 software version did not repair the defective nature of the MFT.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew that the MFT was defective, and that they knew the superficial software updates were not successfully repairing the MFT.<br><br>Relevant to omission of material facts. |
| Ex.41. | Ford-produced internal planning documents dated September 2012 stating that software version 3.5 punted into software version 3.6 "approx 2500 bugs, 71% of all bugs punted [that] will have medium-to-high impact on a customer." | Presented to demonstrate that the last software version (version 3.5) at issue in the litigation did not repair the defective nature of the MFT and there are still thousands of 'medium-to-high' impact bugs in the MFT.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew that the MFT was defective, and that they knew the superficial software updates were not successfully repairing the MFT.<br><br>Relevant to omission of material facts. |
| Ex. 18 at 68:21-69 | Example of Plaintiffs testimony that class | Presented to demonstrate that none of the software versions at issue in this litigation repaired the | Excerpts where Plaintiffs discussed their ongoing MFT issues with Ford |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | members continued to experience the same issues that significantly impaired the safety, reliability or operability of their vehicles over an extended period. | defective nature of the MFT.

Relevant to reliability, operability, safety, and free from defect. | dealership and Ford Motor Company will be used to demonstrate that Ford had knowledge that the MFT Defects were still persistent and impaired the safety, reliability and operability of MFT-equipped vehicles.

Relevant to omission of material facts. |
| Ex. 11 at 52:23-53:15; Ex. 12 at 137:18-138:6. | Testimony from Ford SYNC engineers Jeff Ostrowski and Jeremiah Bragg that the majority of the TGWs related to MFT over the class period were consistently problems with voice recognition, phone pairing and use, media, navigation, and stability. | Presented to demonstrate that none of the software versions at issue in this litigation repaired the defective nature of the MFT.

Relevant to reliability, operability, safety, and free from defect. | Presented to demonstrate that Ford knew that the MFT was defective; and that they knew the superficial software updates were not successfully repairing the MFT.

Relevant to omission of material facts. |
| Ex. 15 | Ford-produced example of the 16 different MFT repair attempts for Mark Fields, (former CEO of Ford Motor Company). Ex. 15 is an email dated April 2013 from Mr. Fields stating "Do our customers literally have to wait for a fix until July!!! I started experiencing this back in early January…I don't even use the system anymore." | Presented to demonstrate that software updates were not materially improving the MFT Defects.

Relevant to reliability, operability, safety, and free from defect. | Presented to show that Ford's highest level executives knew about the pervasiveness of the MFT Defects and that they were so bad that even highly motivated users with infinite resources at their disposal ultimately stopped using their systems out of frustration.

Relevant to omission of material facts. |
| Ex. 43 | Ford-produced example of | Presented to demonstrate that software updates | Presented to show that Ford's highest |

| Exhibit Number | Description of Document | Relevance to Warranty Claims | Relevance to Fraud Claims |
|---|---|---|---|
| | the 6 different MFT repair attempts for Bill and Edsel Ford, board members of Ford Motor Company. Ex. 43, dated June 2011, notes that Mr. Edsel Ford stated to Ford employees that his MFT was "unusable." | were not materially improving the MFT Defects.<br><br>Relevant to reliability, operability, safety, and free from defect. | level executives knew about the pervasiveness of the MFT Defects and that they were so bad that even highly motivated users with infinite resources at their disposal ultimately stopped using their systems out of frustration.<br><br>Relevant to omission of material facts. |
| Ex. 39 | Ford-produced January 2013 post-mortem memo for the March 2012 software version. It concluded that it was "still 4x worse than SYNC Gen 1 and uncompetitive." In addition, the top ten failure modes reported by users of version 3.0 included the same problems Ford has always had with the software. | Presented to demonstrate that software updates were not materially improving the MFT Defects.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to show that Ford knew that even the Microsoft-led software versions were not meeting anticipated results.<br><br>Relevant to omission of material facts. |
| Ex. 44 | Ford-produced email dated October 2012 from Mark Fields commenting on software version 3.5 and then explaining that a full fix will never be available for SYNC Gen 2: Mark Fields stating: "[It's] going to take a while to get this fixed, and not fully until we get to Sync Gen 3." | Presented to show that a software version 3.5 is still defective and that consumers will still need to wait "a while" for relief.<br><br>Relevant to reliability, operability, safety, and free from defect. | Presented to show that Ford does not realistically see a full repair to MFT, opting instead to move forward with SYNC Gen 3.<br><br>Relevant to omission of material facts. |