STEVE W. BERMAN (*pro hac vice*)
CATHERINE Y.N. GANNON (*pro hac vice*)
CRAIG SPIEGEL (122000)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
catherineg@hbsslaw.com
craigs@hbsslaw.com

ROLAND TELLIS (186269)
MARK PIFKO (228412)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2320
Facsimile: (818) 986-9698
rtellis@baronbudd.com
mpifko@baronbudd.com

*Class Counsel*

ADAM J. LEVITT (*pro hac vice*)
JOHN E. TANGREN (*pro hac vice*)
DICELLO LEVITT & CASEY LLC
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dlcfirm.com
jtangren@dlcfirm.com

NICHOLAS E. CHIMICLES (*pro hac vice*)
BENJAMIN F. JOHNS (*pro hac vice*)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
nick@chimicles.com
benjohns@chimicles.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE<br><br>MYFORD TOUCH CONSUMER LITIGATION | No. 3:13-cv-03072-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION AND INCORPORATED MEMORANDUM OF LAW FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date: June 28, 2018<br>Time: 1:30 p.m.<br>Judge: Hon. Edward M. Chen<br>Location: Courtroom 5, 17th floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION.................................................................................1

I.     INTRODUCTION .................................................................................................2

II.    STATEMENT OF ISSUES TO BE DECIDED ................................................3

III.   BACKGROUND .................................................................................................3

IV.   SUMMARY OF SETTLEMENT TERMS .......................................................6

     A.    The Settlement Classes .........................................................................6

     B.    The Settlement Consideration ...............................................................8

          1.    Equitable Compensation...........................................................8

              a.    Access to the Latest MFT Software Update .......................8

          2.    Monetary Compensation...........................................................8

              a.    Compensation for MFT Software Repairs ..........................8

              b.    Reimbursement of Post-Warranty Repair Costs.................9

              c.    Compensation for Unsatisfactory MFT Performance .........9

          3.    Submission of Claims...............................................................10

              a.    Equitable Compensation.....................................................10

              a.    Monetary Compensation ....................................................10

     C.    Notice and Administration Costs.........................................................11

     D.    Notice to Attorneys General ...............................................................12

     E.    Release of Claims ...............................................................................12

     F.    Service Awards and Attorneys' Fees and Expenses...........................13

V.    ARGUMENT .....................................................................................................13

     A.    The Court should grant preliminary approval of the Parties' negotiated Settlement. ........................................................................13

          1.    Negotiated class-action settlements are desirable. ..................13

          2.    The Settlement meets the standards for preliminary approval. ..................................................................................14

a.    The Settlement is the product of well-informed, vigorous, and thorough arm's-length negotiation. ...........................15

b.    The Settlement bears no obvious deficiencies, including improper preferential treatment.........................................16

c.    The Settlement falls within the range of possible approval. ...........................................................................................18

B.    The Settlement Classes Satisfy Rule 23 ................................................................21

1.    Rule 23(a)(1): Numerosity ...........................................................21

2.    Rule 23(a)(2): The Case Involves Questions of Law or Fact Common to the Class...........................................................................21

3.    Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims of the Class ...........................................................................................22

4.    Rule 23(a)(4): Plaintiffs Fairly and Adequately Represent the Interests of the Class...........................................................................22

5.    Rule 23(b)(3): Common Questions of Fact or Law Predominate ...........................................................................................23

C.    The Court Should Reaffirm the Appointment of Class Counsel................................23

D.    The Proposed Class Notice and Plan for Dissemination Meets the Strictures of Rule 23 ...........................................................................................24

E.    Proposed Schedule for Dissemination of Notice and Final Approval ...........................................................................................25

VI.    CONCLUSION ...........................................................................................25

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

5

*In re Animation Workers Antitrust Litig.*,
  2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ............................................................... 17

6

7

*Arnold v. Ariz. Dep't of Pub. Safety*,
  2006 WL 2168637 (D. Ariz. July 31, 2006) ................................................................. 14

8

*Burden v. SelectQuote Ins. Servs.*,
  2013 WL 1190634 (N.D. Cal. Mar. 21, 2013) ..................................................... 13, 14, 16, 20

9

10

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 3648478 (N.D. Cal. July 7, 2016) ......................................................... 16, 19, 20

11

12

*Chavez v. WIS Holding Corp.*,
  2010 WL 11508280, at *1 (S.D. Cal. June 7, 2010 ........................................................ 14

13

*Chin v. RCN Corp.*,
  2010 WL 1257586 (S.D.N.Y. Mar. 12, 2010) .............................................................. 18

14

15

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) ................................................................................. 13, 24

16

17

*Cooperative v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 19

18

*Franklin v. Kaypro Corp.*,
  884 F.2d 1222 (9th Cir. 1989) ................................................................................. 13

19

20

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D. Cal. 1996) .............................................................................. 21

21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1988) ............................................................................. *passim*

22

23

*Mathein v. Pier 1 Imports (U.S.), Inc.*,
  2017 WL 6344447 (E.D. Cal. Dec. 12, 2017) .............................................................. 14

24

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................................. 14, 17

25

26

*Slaven v. BP America, Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) .............................................................................. 21

27

28

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ................................................................................. 22

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................... 15

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ...................................................................................... 13

*Vasquez v. Coast Valley Roofing, Inc.*,
    670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...................................................................... 19

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    No. 08-MDL-1958 ...................................................................................................... 16

### STATUTES

California Consumers Legal Remedies Act ................................................................... 5, 6

Magnuson-Moss Warranty Act ....................................................................................... 4

Massachusetts Consumer Protection Act ........................................................................ 6

### OTHER AUTHORITIES

Fed. R. Civ. P 23 .................................................................................................... *passim*

MANUAL FOR COMPLEX LITIGATION § 13.14 (4th ed. 2004) ........................................... 13

4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. 2017)............................... 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 28, 2018 at 1:30 pm or as soon thereafter as the matter may be heard by the Honorable Judge Edward M. Chen of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs will and hereby do move the Court pursuant to Federal Rules of Civil Procedure 23 for entry of an order in the form prescribed in Preliminary Approval Order:

1)   Preliminarily approving a proposed class action settlement with Ford Motor Company;

2)   Approving the manner and form of Notice and proposed plan of allocation to class members; and,

3)   Setting the following schedule:

| Event | Proposed Deadline |
|---|---|
| Class Action Fairness Act Notice to Attorneys General | June 11, 2018 |
| Notice Completion Date | No later than 60 days after Preliminary Approval |
| Opt-Out Deadline | 45 days after Notice Completion Date |
| Deadline for Objection to Settlement | 45 days after Notice Completion Date |
| Filing of Motion for Final Approval | No later than 14 days prior to the Objection and Opt-Out Deadline |
| Filing of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards | No later than 14 days prior to the Objection and Opt-Out Deadline |
| Filing of Responses to Objections | At least 14 days before Final Fairness Hearing |
| Final Fairness Hearing | Approximately 135 days after Preliminary Approval, subject to the Court's availability |
| Claims Deadline | 6 months after the Effective Date of Settlement; or one month after the repair (whichever is later)[1] |

---

[1] Claims for reimbursement of Post-Warranty Repair costs must be submitted by 6 months after the Effective Date of Settlement or within one month of obtaining the MFT Software Repair for which they seek reimbursement (whichever is later).

1    This Motion is based on this Notice of Motion and Unopposed Motion for Preliminary

2    Approval of Settlement with Ford Motor Company, the following memorandum of points and

3    authorities, the Settlement Agreement filed herewith, the pleadings and the papers on file in this

4    action, and such other matters as the Court may consider.

5                                    **I.      INTRODUCTION**

6            Pursuant to Federal Rule of Civil Procedure 23, the Named Plaintiffs respectfully seek

7    preliminary approval of a Settlement Agreement with Ford (together, the "Settling Parties").[2] Ford

8    does not oppose the relief sought in this Motion.

9            The Settlement Agreement resolves the claims of the owners and lessees in the seven

10   certified state classes who purchased or leased a vehicle equipped with the MyFord Touch or

11   MyLincoln Touch infotainment system ("MFT" or "MyFord Touch") from an Authorized Ford

12   Dealer prior to August 9, 2013. The Settlement Agreement provides Class Members with a free

13   software upgrade to the latest version of the MyFord Touch software, as well as a monetary payment

14   to all Class Members who sought a MFT Software Repair or experienced repeated Unsatisfactory

15   MFT Performance. The Settlement Agreement also provides for Service Awards and Plaintiffs'

16   reasonable attorneys' fees, costs, and expenses, if approved by the Court.  The full costs of

17   administration and notice will be paid by Ford, in addition to the Settlement consideration.

18          As this Court is aware, Plaintiffs allege that the MyFord Touch was inherently defective and

19   its defects persistently impaired the safety, reliability, and operability of the Class Vehicles over an

20   extended period of time. Plaintiffs also allege that Ford knew that the MFT was inherently defective

21   throughout the class period and failed to disclose that information to consumers. Ford strongly denies

22   any claim of wrongful conduct, the defective nature of the MFT, and that Ford made any material

23   omissions. Nevertheless, Ford has acknowledged the imperfect nature of some of the MFT versions[3]

24   and has agreed to this Settlement Agreement. The Settling Parties reached this Settlement Agreement

25

26   _____

27        [2] All capitalized terms used in this Motion have the meaning as defined in the attached
     Settlement Agreement, which is incorporated by reference.

28        [3] ECF No. 225, Ford's Opp. to Class Cert. at 3.

after vigorous investigation and litigation of the claims, extensive trial preparation, and repeated follow-up conversations and exchanges of information, both mediated and direct.

The Settlement appropriately reflects the realities and risks of litigation and is well calibrated to the facts of the case. Monetary payments to the Members of the Settlement Classes reflect: (1) repeated instances of Unsatisfactory MFT Performance throughout the ownership of the vehicle; (2) the time and effort undertaken by Class Members in visiting Authorized Ford Dealers for MFT-related repairs and upgrades; and, (3) any out-of-pocket expenses incurred for MFT-related repairs and upgrades made within one year after the expiration of the MFT Extended Warranty. Class Members will also receive value from a no-charge installation of the latest MFT software version applicable to their Class Vehicle.

Regarding Notice, the Parties have agreed to the same robust, comprehensive program that was previously approved by this Court during the 2017 Litigation Class Notice campaign. As Plaintiffs demonstrate below, the Settling Parties' Settlement Agreement is fair, reasonable and adequate, and therefore worthy of preliminary approval and presentation to the seven certified state classes.

## II.     STATEMENT OF ISSUES TO BE DECIDED

Should the Court preliminarily approve the Settlement Agreement, which is the product of intense, arm's-length negotiations, and which provides valuable monetary and equitable compensation to a well-defined set of Settlement Classes, following implementation of a comprehensive Notice program?

## III.     BACKGROUND

On July 2, 2013, Named Plaintiff Jennifer Whalen filed an action entitled *Jennifer Whalen v. Ford Motor Company* in this Court, alleging breach of express warranty, violations of the California Unfair Competition Law and Consumers Legal Remedies Act, and unjust enrichment, and sought certification of a class of current and former owners and lessees of certain Ford vehicles in the United States and a subclass in California. ECF No. 1. The action was assigned to the Honorable Edward M. Chen and given the case number 3:13-cv-03072-EMC.

1     On November 12, 2013 Plaintiffs filed the First Amended Class Action Complaint in the

2 Litigation on behalf of 24 plaintiffs from 15 states, asserting claims for violations of the Magnuson-

3 Moss Warranty Act, breach of express warranty, breach of implied warranty of merchantability,

4 violations of certain consumer protection statutes, breach of contract, and breach of common-law

5 fraudulent concealment, all under various laws of those states, as well as for strict product liability

6 under Colorado law and negligence under Ohio law. ECF No. 47. The Settling Parties engaged in

7 extensive motion practice, which resulted in: the narrowing of the claims asserted by Plaintiffs;

8 dismissal of certain plaintiffs; the addition of claims; and Ford's Answer to the First Amended

9 Complaint on July 18, 2014. ECF Nos. 56, 69, 72, 97, 106.

10     Plaintiffs filed under seal their Second Amended Class Action Complaint against Ford on

11 May 8, 2015, including the same general allegations that survived motion practice against the First

12 Amended Class Action Complaint on behalf of 20 plaintiffs from 14 states, and including new

13 plaintiffs in Ohio and Washington. ECF No. 154. The Settling Parties once again engaged in motion

14 practice, which resulted in a further narrowing of the claims asserted by Plaintiffs. ECF Nos. 157,

15 165, 172, 175. The majority of Plaintiffs' claims, however, survived. Plaintiffs then filed their Third

16 Amended Class Action Complaint against Ford on October 13, 2015, asserting claims on behalf of

17 19 Plaintiffs from 14 states and Ford provided its Answer on October 30, 2015. ECF Nos. 183, 184.

18     The Settling Parties also conducted significant discovery, including: Fed. R. Civ. P. 26(a)

19 initial disclosures; production by Ford of more than 8.3 million pages of documents (all of which

20 were reviewed and analyzed by Plaintiffs' counsel); several months of review by Plaintiffs' experts

21 of source code for the MFT software at multiple highly-secure locations; responses to at least nine

22 sets of written discovery requests; depositions of fourteen Ford fact witnesses and five Ford experts;

23 depositions of twenty Plaintiffs and four Plaintiffs' experts; and inspections of over a dozen

24 Plaintiffs' vehicles. *See* Declaration of Steve W. Berman in Support of Plaintiffs' Motion for

25 Preliminary Approval of Settlement ("Berman Decl."), ¶ 4, filed concurrently herewith. The Settling

26 Parties also participated in a mediation with Randall W. Wulff on July 11, 2016, which did not result

27 in a settlement at that time. *See id.*, ¶ 5.

28

1       Plaintiffs filed for class certification on January 28, 2016. ECF No. 202. Ford opposed the

2      motion and Plaintiffs filed a reply. ECF Nos. 225, 250. On September 14, 2016, following a hearing,

3      the Court partially granted and partially denied Plaintiffs' motion to certify this action as a class

4      action, certifying classes on behalf of MFT-equipped vehicle owners and lessees in nine states. ECF

5      No. 279 at 47-49. The Court also ruled on at least four *Daubert* Motions to strike the evidence

6      presented at class certification. *Id.* at 5-11. The Court later, on Ford's motion for reconsideration,

7      decertified the statutory consumer fraud claims for the California, Ohio, Texas, and Virginia classes

8      on November 22, 2016. ECF No. 301.

9       On December 6, 2016, Plaintiffs filed an interlocutory appeal under Fed. R. of Civ. P. 23(f),

10     Ford responded, and Plaintiffs filed a motion for leave to file a reply. Berman Dec. ¶ 6. On July 28,

11     2017, the Ninth Circuit issued an order that denied Plaintiffs' Petition. *Id.*

12       On October 13, 2017, this Court approved the protocol proposed by Plaintiffs for

13     disseminating notification to the certified class and appointed JND Legal Administration Group

14     ("JND") as the Notice Administrator. ECF No. 348.

15       On December 20, 2017, Plaintiffs' counsel, in conjunction with JND, caused the class notices

16     and opt-out forms to be distributed via mail and e-mail. Declaration of Jennifer M. Keough

17     Regarding Settlement Notice and Notice Plan in Support of Plaintiffs' Motion for Preliminary

18     Approval of Settlement. ("JND Decl.") JND Decl. at ¶ 9. The notice period concluded on February

19     5, 2018, at which point JND stated that it received 429 opt-outs. *Id.* at ¶ 10.

20       Ford moved for summary judgment on October 6, 2017, seeking dismissal of all certified

21     claims, as well as the non-certified fraud-based claims brought by Plaintiffs Rodriguez, Ervin, and

22     Miller-Jones and the California Consumers Legal Remedies Act claim brought by Plaintiff Center

23     for Defensive Driving. ECF No. 341. Plaintiffs responded on November 17, 2017 (ECF No. 355) and

24     Ford replied on December 15, 2017. ECF No. 364. After a hearing, the Court partially granted and

25     partially denied Ford's motion for summary judgment on February 14, 2018, leaving most of the

26     classes and claims intact. ECF No. 383.

27

28

On February 20, 2018, Plaintiffs filed under seal with the Court a proposed Trial Plan that identified dozens of documents and names of witnesses that Plaintiffs planned to present at trial. Berman Dec. ¶ 7. On March 1, 2018, Ford filed under seal its Response to Plaintiffs Trial Plan. *Id.*

On March 1, 2018, Ford filed a motion to decertify the certified express warranty claims, the certified Massachusetts Consumer Protection Act claim, and the claims of those Class Members who purchased their vehicles used from an Authorized Ford Dealer. ECF No. 393. Plaintiffs responded and Ford filed a reply soon thereafter. ECF Nos. 409, 415. That motion was pending—and the parties were prepared to argue the motion on March 29— at the time of this Settlement Agreement. Berman Decl. ¶ 8.

On March 7, 2018, the Court ordered that the trial be bifurcated, separating trial of the certified express warranty, implied warranty, and Ohio negligence claims from trial of the certified Massachusetts Consumer Protection Act claim and all remaining individual claims, and set the first phase of the jury trial to commence on May 11, 2018. ECF No. 403.

The Settling Parties reached a Settlement on March 29, 2018, almost five years after the first complaint was filed against Ford, and approximately six weeks before the start of the first phase of the trial. Berman Decl. ¶ 10. By that time the Court had already certified seven classes and fact discovery was complete. Notably, the Settling Parties were days away from filing the Joint Pretrial Conference Statement, and all pretrial materials for the Phase I trial, when the case settled. *Id.*

## IV.    SUMMARY OF SETTLEMENT TERMS

### A.    The Settlement Classes

The proposed Settlement Classes are identical to the seven state classes already certified by this Court[4] and are defined as follows:[5]

- "**California Settlement Class**" means all persons or entities who purchased or leased a Ford or a Lincoln vehicle in California from Ford Motor Company or through a Ford Motor Company Dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-vehicle information and entertainment system.

---

[4] ECF No. 279, 47-49.

[5] Settlement Agreement at § I.X (attached as Berman Decl. Ex. A).

- "**Massachusetts Settlement Class**" means all persons or entities who purchased or leased a Ford or a Lincoln vehicle in Massachusetts from Ford Motor Company or through a Ford Motor Company Dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-vehicle information and entertainment system.

- "**New Jersey Settlement Class**" means all persons or entities who purchased or leased a Ford or a Lincoln vehicle in New Jersey from Ford Motor Company or through a Ford Motor Company Dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-vehicle information and entertainment system.

- "**North Carolina Settlement Class**" means all persons or entities who purchased or leased a Ford or a Lincoln vehicle in North Carolina from Ford Motor Company or through a Ford Motor Company Dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-vehicle information and entertainment system.

- "**Ohio Settlement Class**" means all persons or entities who purchased or leased a Ford or a Lincoln vehicle in Ohio from Ford Motor Company or through a Ford Motor Company Dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-vehicle information and entertainment system.

- "**Virginia Settlement Class**" means all persons or entities who purchased or leased a Ford or a Lincoln vehicle in Virginia from Ford Motor Company or through a Ford Motor Company Dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-vehicle information and entertainment system.

- "**Washington Settlement Class**" means all persons or entities who purchased or leased a Ford or a Lincoln vehicle in Washington state from Ford Motor Company or through a Ford Motor Company Dealership before August 9, 2013, which vehicle was equipped with a MyFord Touch or MyLincoln Touch in-vehicle information and entertainment system.

Excluded from all of the Settlement Classes are: (1) all federal court judges who have presided over this case and any members of their immediate families; (2) all entities and natural persons that elect to exclude themselves from the Settlement Classes; (3) all entities and natural persons that have litigated claims involving MFT against Ford to final judgment; (4) all entities and natural persons who, via a settlement or otherwise, delivered to Ford releases of their claims involving MFT; (5) Ford's employees, officers, directors, agents, and representatives, and their family members; and (6) all entities and natural persons who submitted a valid request for exclusion following the Notice of Pendency of Class Action, provided that any person who excluded himself will be given an opportunity to revoke his exclusion and re-enter the Settlement Class. *Id.*

**B.      The Settlement Consideration**

All Class Members, regardless of their level of satisfaction with the MFT system, will be entitled to equitable compensation. Berman Decl. ¶ 13. Any monetary compensation for dissatisfied Class Members will be allocated using an objective formula, applied uniformly to each Class Member as outlined below. Ford will pay all valid claims submitted, and the Settlement Agreement contains no cap on the total amount of money Ford will pay in response to Settlement Class Members' valid claims. *Id.* ¶ 17.

**1.      Equitable Compensation**

**a.      Access to the Latest MFT Software Update**

For six months after the Effective Date of Settlement, Ford will make the most current compatible update of the MFT software (version 3.10 or later) available for free to all Members of the Settlement Classes. Berman Decl. Ex. A, Settlement Agreement at § II.A. Additionally, for one year after installation of the MFT software update, Authorized Ford Dealers will address any software problems any Member of the Settlement Classes experiences with the MFT software update by confirming that the most current compatible update of the MFT software (version 3.10 or later) is correctly installed and working properly. *Id.*

**2.      Monetary Compensation**

Class Members may also submit a claim for one of the following types of monetary compensation if they meet the eligibility criteria for that type of compensation and submit Proof of Ownership (or Lease) and Proof of Membership in one of the Settlement Classes. Berman Decl. Ex. A, Settlement Agreement at § II.B.

**a.      Compensation for MFT Software Repairs**

Members of the Settlement Classes who, within six months after the Effective Date of Settlement, submit a claim that they sought one or more MFT Software Repairs to their Class Vehicle during their ownership or lease, and before the date of the Preliminary Approval Order, will

receive their choice of a monetary payment or a discount on the purchase of a new Ford or Lincoln

vehicle equipped with the SYNC 3 information and entertainment system, as follows:[6]

| Number of MFT Software Repairs | Cash Amount | Discount Amount |
|---|---|---|
| 1 | $100 | $200 |
| 2 | $300 | $600 |
| 3 or more | $500 | $1,000 |

An MFT Software Repair generally includes: (1) services performed by an Authorized Ford

Dealer in an effort to repair MFT software undertaken in response to a customer's complaint about

an MFT malfunction or software problem; (2) installation of an updated version of MFT software by

an Authorized Ford Dealer; (3) any actions undertaken by an automobile repair service provider

other than an Authorized Ford Dealer in an effort to repair MFT software undertaken in response to a

customer's complaint about an MFT software malfunction or problem, if those actions were paid for

by the Member of the Settlement Classes. Settlement Agreement at § I.N.

**b.      Reimbursement of Post-Warranty Repair Costs**

Members of the Settlement Classes who, within six months after the Effective Date of

Settlement or within one month of obtaining the MFT Software Repair for which they seek

reimbursement (whichever is later), submit a claim demonstrating that they paid for an MFT

Software Repair (either by an Authorized Ford Dealer or another automobile repair service provider)

within one year after the expiration of the MFT Extended Warranty will receive reimbursement of

the full amount they paid for all such repairs. Settlement Agreement at § II.B.2.

**c.      Compensation for Unsatisfactory MFT Performance**

Members of the Settlement Classes who, within six months after the Effective Date of

Settlement, submit a claim stating that they experienced two or more instances of Unsatisfactory

MFT Performance before the date of the Preliminary Approval Order, will receive a payment of $35.

Settlement Agreement at § II.B.3. Members of the Settlement Classes do not require proof of a MFT

---

[6] Settlement Agreement at § II.B.1.

Software Repair to qualify for this category of monetary compensation. *Id.* "Unsatisfactory MFT Performance" means an owner or lessee who experienced any of the following types of malfunctions of the MFT software in their Class Vehicle during their period of ownership or lease: (1) Freezing up; (2) Crashing; (3) Blacking-out; (4) Failing to respond to touch and/or voice commands; or (5) Backup camera failure (failing to display the rearview camera properly or freezing on a previous image). Settlement Agreement at § I.BB.

### 3.  Submission of Claims

#### a.  Equitable Compensation

<u>Access to MFT Software Update</u>: Class Members will be able to access the latest compatible MFT Software Update by downloading the relevant software directly from a link provided on the settlement website (and also Ford's website) and then installing the update onto their Class Vehicles. Settlement Agreement at § II.A. Class Members may also choose to download a certificate from the settlement website (or request the Settlement Administrator mail the certificate to them via U.S. Mail) entitling them to have an Authorized Ford Dealer install the software update in their vehicle, at no cost to Class Members. *Id.*

#### a.  Monetary Compensation

Class Members who seek monetary compensation will be able to make a claim for one of the three categories of monetary compensation by following the steps outlined in Settlement Agreement II.D.

<u>For the Compensation of MFT Software Repairs</u>: Class Members will visit the settlement website, where they will be able to review the MFT Software Repairs identified in Fords' warranty records for the Class Vehicle. Berman Decl. ¶14. Class Members will also be able to submit one or more documents, singly or in combination sufficient to show (1) Proof of Ownership or Lease; and, (2) Proof of Membership in a Settlement Class electronically or by U.S. Mail. Settlement Agreement at §II.D.c. The types of documents that will be accepted are commonly available documents such as vehicle title, registration insurance or financing documentation, or service records, among others. Settlement Agreement at § I.Q, R.

1         <u>For Reimbursement of Post-Warranty Repair Costs</u>: In addition to the materials identified

2    above, the Class Member must also provide documentation sufficient to show that they paid for an

3    MFT Software Repair. Settlement Agreement at § II.D.2.d.

4         <u>For the Unsatisfactory MFT Performance</u>: In addition to the materials identified above, Class

5    Members who do not qualify for MFT Software Repair compensation or reimbursement, will be

6    invited to submit a claim form signed under penalty of perjury describing at least two instances of

7    Unsatisfactory MFT Performance before the date of the Preliminary Approval Order. Settlement

8    Agreement at § II.D.2.e. The claim form shall describe the nature and approximate date (month/year)

9    of each instance of Unsatisfactory MFT Performance. They must contain a physical (*i.e.*, non-

10   electronic) signature, but need not be notarized. While Class Members do not have to provide any

11   record of an MFT Software Repair, Class Members will be required to include documents sufficient

12   to show the VIN of the Class Vehicle, Proof of Ownership or Lease, and Proof of Membership in a

13   Settlement Class. *Id.*

14   **C.     Notice and Administration Costs**

15        Ford will bear all costs and expenses related to the administration of this Settlement, in

16   addition to the Settlement Consideration. Settlement Agreement at § II.E. Notice will be distributed

17   to Members of the Settlement Classes using the same notice administrator and communication

18   methods that were previously approved by this Court in the 2017 Litigation Class Notice campaign.

19   Settlement Agreement at § I.C.

20        As soon as practicable after the preliminary approval of the Settlement, the Settlement

21   Administrator will also confirm the name and last known address of each potential member of the

22   Settlement Classes from the information collected in the 2017 Litigation Class Notice campaign and

23   update any new addresses via the National Change of Address database. *Id.* at III.C. Thereafter, the

24   Settlement Administrator shall mail, or otherwise disseminate, in accordance with the Preliminary

25   Approval Order, a copy of the Short Form Class Notice to each Member of a Settlement Classes so

26   identified. *Id.* The Settlement Administrator shall use its best efforts to complete the mailing of the

27   Short Form Class Notice to potential Members of the Settlement Classes within 60 days after the

28   preliminary approval of the proposed Settlement. *Id.*

1    If any Short Form Class Notice mailed or disseminated to any potential Member of the

2  Settlement Classes is returned to the Settlement Administrator as undeliverable, then the Settlement

3  Administrator shall perform a reasonable search for a more current name and/or address for the

4  potential Member of the Settlement Classes and re-send if applicable. *Id.*

5    The Settlement Administrator will also establish a notice settlement website, where Notice of

6  the Settlement and relevant case documentation will be available. Berman Decl. Ex. B, JND Decl. at

7  ¶ 13.d. The Settlement Administrator will also establish a toll-free telephone line where Members of

8  the Settlement Classes may call to obtain information about the Settlement. JND Decl. at ¶ 13.f.

9    Promptly after the Effective Date of Settlement, Ford will direct the Settlement Administrator

10  to open a "Ford Claim Center" to receive and appropriately respond to all claims submitted by

11  Members of the Settlement Classes. Settlement Agreement at § II.C. The Ford Claim Center will

12  include: (1) personnel assigned to manage the settlement implementation process; (2) a toll-free

13  telephone number that Members of the Settlement Classes may call to obtain information; (3) a

14  mailing address to which Members of the Settlement Classes can send claims for reimbursement; (4)

15  a website containing information about the Settlement, including claim forms that can be

16  downloaded and/or submitted electronically.  *Id.*

17  **D.**    **Notice to Attorneys General**

18    Ford will provide and pay all of the costs of notice to the attorneys general of the relevant

19  states according to the requirements of 28 U.S.C. § 1715. Settlement Agreement at § III.B.

20  **E.**    **Release of Claims**

21    If the Settlement becomes final, the Plaintiffs and Class Members shall release, as to Ford

22  and any of its related entities as defined by the Settlement Agreement, any and all state and federal

23  claims, either known or unknown, arising from or relating to the factual allegations in Plaintiffs'

24  Third Amended Class Action Complaint, up to the date of Settlement. Settlement Agreement at §

25  III.I. Excluded from the Released Claims are individual claims seeking damages for an alleged

26  personal injury caused by a malfunction of the MFT. Settlement Agreement at § I.T.

27

28

1

**F.      Service Awards and Attorneys' Fees and Expenses**

2          As for Plaintiffs' attorneys' fees, costs, and expenses, Plaintiffs will make a request for these

3   by motion. Berman Decl. ¶ 22. Ford agrees not to oppose any attorneys' fee and litigation expenses

4   application up to $22,000,000. Settlement Agreement at § II.E. The amount of attorneys' fees

5   ultimately awarded will be in the Court's discretion, and any appeal of the attorneys' fee award that

6   results in award not in excess of $22,000,000 will not affect the validity or finality of the Settlement.

7   *Id.* Plaintiffs' motion will be filed 14 days prior to the end of the objection and opt-out period and

8   well in advance of the Fairness Hearing. Berman Decl. ¶ 22 Ford will pay the attorneys' fees and

9   service awards separately from and in addition to the other consideration agreed in the Settlement.

10  Settlement Agreement at § II.E.

11                                  **V.   ARGUMENT**

12  **A.      The Court should grant preliminary approval of the Parties' negotiated Settlement.**

13         Settlements are to be encouraged in class-action lawsuits. The Court, however, must approve

14  class settlements for them to become effective, and in so doing, it examines "whether a proposed

15  settlement is 'fundamentally fair, adequate, and reasonable.'" *Burden v. SelectQuote Ins. Servs.*, No.

16  10-05966, 2013 WL 1190634, at *2 (N.D. Cal. Mar. 21, 2013) (citing *Staton v. Boeing Co.*, 327 F.3d

17  938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988));

18  *see also* Fed. R. Civ. P. 23(e). Approval of a class-action settlement proceeds through two stages:

19  preliminary approval and final approval (with notice in between).  *See* MANUAL FOR COMPLEX

20  LITIGATION § 13.14, at 173 (4th ed. 2004) ("This [approval of a settlement] usually involves a two-

21  stage procedure. First, the judge reviews the proposal preliminarily to determine whether it is

22  sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after

23  the hearing."); 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. 2017)

24  (discussing the two-step approval process). Because the Settlement in this matter passes the

25  standards set for this first step in the process, the Court should grant preliminary approval.

26         **1.      Negotiated class-action settlements are desirable.**

27         As the Ninth Circuit has stated, "there is an overriding public interest in settling and quieting

28  litigation.  This is particularly true in class action suits . . . ." *Franklin v. Kaypro Corp.*, 884 F.2d

1222, 1229 (9th Cir. 1989) (citing *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.

1976)); *see also Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 576 (9th Cir. 2004). Settlement is

desirable in class action suits because they are "an ever increasing burden to so many federal courts

and . . . frequently present serious problems of management and expense." *Van Bronkhorst*, 529 F.2d

at 950.

Additionally, courts should give "proper deference" to negotiated compromises. The Ninth

Circuit "has long deferred to the private consensual decision of the parties" to settle. *See Rodriguez

v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "[T]he court's intrusion upon what is

otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited

to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a

whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (citation

omitted); *see also Chavez v. WIS Holding Corp.*, No. 07-cv-1932 L(NLS), 2010 WL 11508280, at *1

(S.D. Cal. June 7, 2010) ("The Court gives weight to the parties' judgment that the settlement is fair

and reasonable.") (citing *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

## 2.    The Settlement meets the standards for preliminary approval.

At the preliminary approval stage, the Court asks whether "'[1] the proposed settlement

appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious

deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments

of the class, and [4] falls within the range of possible approval . . . .'" *See, e.g.*, *Burden*, 2013 WL

1190634, at *3 (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

2007)); *accord Mathein v. Pier 1 Imports (U.S.), Inc.*, No. 1:16-cv-00087-DAD-SAB, 2017 WL

6344447, at *3 (E.D. Cal. Dec. 12, 2017) (citations omitted). Put another way, the Court should

"make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement

terms […]."  MANUAL FOR COMPLEX LITIG. (FOURTH) § 21.632.

Further, where, as here, the Settlement was attained via "arms-length negotiations," following

"meaningful discovery," in which the Parties were represented by "experienced, capable" counsel,

the Court may afford to it "a presumption of fairness, adequacy, and reasonableness." *See, e.g.*,

1  *Arnold v. Ariz. Dep't of Pub. Safety*, No. CV-01-1463-PHX-LOA, 2006 WL 2168637, at *11 (D.

2  Ariz. July 31, 2006) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir.

3  2005)); Rubenstein, *supra*, § 13.45, at 90 (fairness is usually presumed when a proposed class

4  settlement, which was negotiated at arm's length by counsel for the class, is presented for approval).

5  Because a preliminary evaluation of the instant Settlement will reveal no "grounds to doubt

6  its fairness or other obvious deficiencies, such as unduly preferential treatment of class

7  representatives or segments of the class, or excessive compensation for attorneys," and because the

8  Settlement "appears to fall within the range of possible approval," Plaintiffs submit that it passes this

9  initial evaluation. *See* Rubenstein, *supra,* § 13.13; *see also In re Tableware Antitrust Litig.*, 484 F.

10  Supp. 2d at 1078-80.

11          **a.**     **The Settlement is the product of well-informed, vigorous, and thorough**

12                 **arm's-length negotiation.**

13  In contemplating preliminary approval, one of the Court's duties is to ensure that "the

14  agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

15  parties . . . ." *Hanlon*, 150 F.3d at 1027 (internal quotations and citations omitted). As set forth

16  above, the Settlement was achieved only after extensive written and oral discovery including:

17  production by Ford of more than 8.3 million pages of documents (all of which were reviewed and

18  analyzed by Class Counsel); months of review by Plaintiffs' experts of source code for the MFT

19  software in multiple highly-secure locations; responses to at least nine sets of written discovery

20  requests; depositions of fourteen Ford fact witnesses and five Ford experts; depositions of twenty

21  Named Plaintiffs and four Plaintiffs' experts; and, inspections of at least a dozen of the Named

22  Plaintiffs' vehicles. *See,* Section III. Background, *supra.*

23  The Settling Parties also litigated two motions to dismiss; a motion for class certification; two

24  motions for reconsideration; at least four *Daubert* challenges; a Fed. R. Civ. P. 23(f) Petition, a

25  motion for summary judgment, and a motion for decertification. Berman Decl.¶¶ 3, 6.

26  The parties had also undertaken a considerable amount of trial preparation before settling,

27  including the exchange of a Trial Plan, Trial Plan Response, proposed exhibit lists, jury instructions,

28  deposition designations, almost a dozen motions *in limine*, witness lists and other required pretrial

1    materials.  Berman Decl. ¶ 10. Notably, the Litigation settled within days of the deadline to file the

2    Joint Pretrial Conference Statement and pretrial materials. *Id.* Throughout this time, the Plaintiffs

3    were represented throughout by experienced counsel. Berman Decl. ¶ 25.

4         Given the extensive pre-settlement discovery, litigation, and pre-trial preparation, Plaintiffs'

5    counsel were well-situated to evaluate the strength and weakness of Plaintiffs' case. *Id.* Far from

6    being the product of anything inappropriate, the Settlement at issue is the result of hard-fought,

7    adversarial work. *Cf. Hanlon*, 150 F.3d at 1027 (no basis to disturb settlement where there was no

8    evidence suggesting that the settlement was negotiated in haste or in the absence of information).

9              **b.    The Settlement bears no obvious deficiencies, including improper**
               **preferential treatment.**

10

11        The Settlement also bears no obvious deficiencies. *See Burden*, 2013 WL 1190634, at *3.

12   There are no patent defects that would preclude its approval by the Court, such that notifying the

13   class and proceeding to a formal fairness hearing would be inappropriate or inefficient. *See*

14   Rubenstein, *supra*, § 13.13 (referring to the Court's inquiry as to, *inter alia*, "obvious deficiencies").

15   An examination of the Settlement will reveal no apparent unfairness or unreasonableness. *See In re*

16   *Zurn Pex Plumbing Prods. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810, at *6 (D.

17   Minn. Oct. 18, 2012) ("There are no grounds to doubt the fairness of the Settlement, or any

18   other obvious deficiencies, such as unduly preferential treatment of a class representative or

19   segments of the Settlement Class, or excessive compensation for attorneys.").

20        To the contrary, all Class Members are entitled to equitable relief. Berman Decl. ¶ 13. The

21   Settlement also provides monetary relief to Class Members on a fair, claims-made basis. Settlement

22   Agreement at § II.B. Under the Settlement Agreement, there is no biased treatment of Class Members

23   or segments of the class. *Id.* Variations in the amount each Settlement Classes Member will receive

24   can be calculated objectively and are rationally based on a Class Members' level of dissatisfaction

25   with the MFT system and the time and energy the Class Member employed in a good-faith effort to

26   resolve MFT problems. *Id.* This is reasonable and proper. *See, e.g.*, *In re: Cathode Ray Tube (CRT)*

27   *Antitrust Litig.,* No. C-07-5944 JST, 2016 WL 3648478, at *11 (N.D. Cal. July 7, 2016) (an

28   "'allocation formula need only have a reasonable, rational basis, particularly if recommended by

1    experienced and competent counsel"'; "'[i]t is reasonable to allocate the settlement funds to class

2    members based on . . . the strength of their claims on the merits.'") (citations omitted).

3        All Class Members, including the Class Representatives, are treated equally.  As for Service

4    Awards to the Class Representatives of up to $9,000 each,[7] such awards are supported by precedent

5    and compensate these Plaintiffs for the significant time and effort they have devoted to this matter. In

6    the Ninth Circuit, service awards "compensate class representatives for work done on behalf of the

7    class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes,

8    to recognize their willingness to act as a private attorney general." *Rodriguez,* 563 F.3d at 958-59.

9        Plaintiffs have assisted counsel with the preparation of complaints in this matter; consulted

10   with counsel as requested, and on their own initiative, throughout the pendency of this case;

11   monitored the proceedings on their own behalf and on behalf of the putative class; worked with

12   counsel to prepare, review, and submit declarations in support of their claims and those of the

13   proposed Settlement Classes; answered interrogatories and responded to requests for production,

14   including by gathering and producing documents, in consultation with counsel; and prepared for and

15   sat for full-day depositions. Berman Decl. ¶ 18. Plaintiffs also presented their Class Vehicles pursuant

16   to all of Ford's Requests for Inspection. *Id*. ¶ 19. Plaintiffs also provided advance notice to their

17   counsel when they intended to relinquish their vehicles, in the event that Ford wanted to conduct any

18   secondary inspections. *Id.* In early 2018, all Plaintiffs also confirmed that they were planning on

19   attending the trial in San Francisco that was scheduled to take place in May 2018.[8] *Id.* Given that the

20   Litigation settled approximately six weeks before trial, many Plaintiffs had even started to organize

21   their work and travel schedules in order to attend. *Id.* All Plaintiffs have also consulted with Class

22   Counsel regarding the terms of the Settlement and have affirmatively expressed their support for it.

23   *Id.* ¶ 20. As such, Plaintiffs should be compensated for their hard work done pursuant to this

24   Litigation. *See, In re Animation Workers Antitrust Litig*., No. 14-cv-04062-LHK, 2016 WL 6663005,

25   at *9 (N.D. Cal. Nov. 11, 2016) (approving a service award of $10,000 when Plaintiffs spent "a

26   _____

27       [7] Settlement Agreement at § II.F.

28       [8] The only exception to this was Iowa Plaintiff Thomas Mitchell who, due to a very serious
     medical condition, is physically incapable of flying to San Francisco. Berman Decl. ¶ 19.

1    significant amount of time … respond[ing] to written discovery, produc[ing] documents relating to

2    their claims; [being] deposed by defense counsel all day regarding their claims in this case;

3    review[ing] the SAC and other substantive pleadings; and review[ing] and approv[ing] the

4    settlements.").

5            Finally, Plaintiffs will request approximately $22,000,000 in fees and expenses for this

6    Litigation. Settlement Agreement at § II.E. To date, Plaintiffs have incurred more than $35,000,000

7    in fees and expenses in the five years that this Litigation has been active.[9] Berman Decl. ¶ 23. These

8    fees and expenses were incurred by reviewing the extremely voluminous amounts of discovery,

9    retaining experts to analyze sophisticated and highly-sensitive pieces of software evidence, taking or

10   defending of fifty fact and expert depositions, and as discussed above, vigorously litigating a

11   multitude of highly sophisticated legal and technical issues. *See,* Section III. Background, *supra*.

12           Plaintiffs therefore respectfully submit that their fee request, which represents a lodestar

13   multiplier under one, is fair in light of the years-long extensive effort spent by counsel on this matter,

14   their experience, and the results achieved for the Members of the Settlement Classes. Plaintiffs will

15   also demonstrate in their forthcoming motion that Plaintiffs' attorneys' fees, costs and expenses will

16   pass a cross-check for reasonableness.

17              **c.    The Settlement falls within the range of possible approval.**

18           According to the Ninth Circuit, the Court should consider whether "the settlement, taken as a

19   whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (internal quotes

20   and citations omitted). Still, the Court at this point does not conduct the fuller analysis that occurs

21   upon the motion for final approval. *See, e.g.*, *Chin v. RCN Corp.*, No. 08 Civ. 7349 (RJS)(KNF),

22   2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12, 2010) ("In fact, 'a full fairness analysis is neither

23   feasible nor appropriate' when evaluating a proposed settlement agreement for preliminary

24   approval.") (citation omitted). Here, the Parties' Settlement, which will result in monetary payments

25

26   _____

27       [9] Due to the highly complex nature of the MFT system, and the inherent challenge of reliably
     measuring the impact of defective technology on distracted driving, more than $4,400,000 of the
     total $35,000,000 in fees and expenses incurred in this Litigation was spent on expert services.

28   Berman Decl. ¶ 24.

1    for all Class Members who received one or more MFT Software Repair, or were dissatisfied with

2    their MFT system on at least two occasions, falls within the range of possible approval.

3    　　"To evaluate the 'range of possible approval' criterion, which focuses on 'substantive

4    fairness and adequacy,' 'courts primarily consider plaintiffs' expected recovery balanced against the

5    value of the settlement offer.'" *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125

6    (E.D. Cal. 2009) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080). But it is "'well-

7    settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of

8    the potential recovery that might be available to the class members at trial.'" *In re: Cathode Ray*

9    *Tube*, 2016 WL 3648478, at *6 (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th

10   Cir. 1998)).

11   　　In spite of achieving class certification for some—but not all—of the proposed statewide

12   classes, and prevailing against an omnibus summary judgment motion seeking to dismiss almost all

13   remaining claims, Plaintiffs had to consider risks relating both to liability and damages if this

14   Litigation went to trial. Plaintiffs were highly confident they could prove liability, as they had

15   presented hundreds of pages of compelling evidence in their class certification briefing

16   demonstrating the defective nature of the MFT.[10] ECF Nos. 202, 203. However, Plaintiffs also

17   acknowledged during the Litigation that their theory of the case for the Phase I trial hinged on

18   demonstrating that all MFT versions up to and including 3.6 were so defective as to create liability

19   for express warranty, implied warranty, and negligence. ECF No. 403. Given Ford's steadfast and

20   vigorous contention that software version 3.6 constituted an adequate fix for the MFT system, and

21   that repairs relating to the MFT trailed off over time, Plaintiffs had to consider the risk that a jury

22   could find that software version 3.6 alleviated the MFT defects to such an extent that they no longer

23   persistently impaired the safety, reliability, or operability of the Class Vehicles over an extended period

24   of time.

25

26   　　　　[10] Plaintiffs' evidence not only included expert opinion on the quality of the source code and the
     impact of the MFT on distracted driving, but also referenced a mountain of statements from
27   throughout the class period where Ford engineers, employees and executives vividly and consistently
     expressed their dissatisfaction with the quality of the MFT system. *See*, ECF Nos. 202, 203.
28

1    And in spite surviving multiple *Daubert* attacks, Plaintiffs' damages models posed some

2    material challenges had Plaintiffs presented them at trial. Expert evidence proffered by Mr. Stefan

3    Boedeker and Dr. Jonathan Arnold found that due to the presence of the MFT Defects, Plaintiffs

4    overpaid for their Class Vehicles by several hundred dollars.[11] Plaintiffs sought to recover these

5    funds based on the underlying benefit-of-the-bargain theory that, had they known the MFT system

6    was inherently defective and that Ford failed to provide an adequate fix, they would have either not

7    purchased the Class Vehicle or paid less for it. ECF No. 279 at 7. This Court found that both Dr.

8    Taylor and Mr. Boedeker's damages models were sufficiently sound and could be adequately applied

9    to the seven state classes. *Id.* at 27. But Plaintiffs also acknowledged the possibility that Ford could

10   potentially convince a jury that the experts' calculations did not properly account for any residual

11   utility of the MFT system, after the MFT defects were taken into account. As such, success for Class

12   Members was not assured, even if Plaintiffs prevailed in demonstrating liability.

13   And finally, in spite of the creation of a highly detailed Trial Plan addressing this issue,[12]

14   there continued to be a risk that due to the inherent complexity of trying class claims for express

15   warranty, implied warranty, and negligence under the laws of seven states, in addition to 21

16   individual Plaintiffs' claims under the laws of twelve states, (even in a bifurcated format) the Court

17   could have, at a future date, chose to further divide different portions of the litigation or decertify

18   different classes (or portions of the classes) due to manageability or superiority concerns. ECF No.

19   403.

20   So while Plaintiffs had what they believed to be strong affirmative theories and rebuttals to

21   Ford's defenses, there was significant risk, nonetheless, in proceeding further with the Litigation.

22   Ultimately, after taking into account the risk, expense, complexity, and likely duration of further

23   litigation, (see, for example, *Burden*, 2013 WL 1190634, at *3), Plaintiffs and their experienced

24   counsel were able to achieve a Settlement that allows for substantial monetary relief to the Members

25

26

27   [11] ECF No. 279 at 6.

28   [12] Berman Decl. ¶ 7.

1   of the Settlement Classes. Berman Decl. ¶¶ 13, 25. With all of these factors considered, the

2   Settlement falls within the range of possible approval.

3   **B.      The Settlement Classes Satisfy Rule 23**

4          Certification is appropriate where the proposed class and the proposed class representatives

5   meet the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of

6   representation. In addition, certification of a class action for damages requires a showing that

7   "questions of law or fact common to class members predominate over any questions affecting only

8   individual members, and that a class action is superior to other available methods for fairly and

9   efficiently adjudicating the controversy." Fed. R. Civ. P 23(b)(3).

10         This Court has already found that seven state classes, identical to the proposed Settlement

11  Classes here, satisfied all of the elements of Rule 23(a) and Rule 23(b)(3).[13] Plaintiffs review this

12  evidence briefly.

13         **1.      Rule 23(a)(1): Numerosity**

14         The first requirement for maintaining a class action is that its members are so numerous that

15  joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). Here, the class consists of hundreds of

16  thousands of Class Members across seven states. ECF No. 203 at 9. Numerosity is established.

17         **2.      Rule 23(a)(2): The Case Involves Questions of Law or Fact Common to the Class**

18         The second requirement of Rule 23 is the existence of common questions of law or fact. Fed.

19  R. Civ. P. 23(a)(2). This requirement is to be "construed permissively,"[14] and a single issue has been

20  held sufficient to satisfy the commonality requirement.[15] This Court has already found that Plaintiffs

21  have raised common questions that generate common answers apt to drive the resolution of the

22

23

24

25

26         [13] ECF No. 279 at 47-49.

27         [14] *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

28         [15] *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).

litigation[16] and that "[p]laintiffs have made a sufficient showing that in the main the defects were common for purposes of Rule 23."[17] The commonality element is therefore met.

### 3.   Rule 23(a)(3): Plaintiffs' Claims Are Typical of the Claims of the Class

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."[18] The typicality requirement is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011). This Court has already found that, here, "[any] differences that may exist between Named Plaintiffs' experience and the class claims are not clearly material to their basic legal claims against Ford for purposes of determining typicality, [because] "[a]t base, all Plaintiffs claim that they paid money expecting MFT to work, and that it did not work." ECF No. 279 at 16. This Court also found that: "[n]amed Plaintiffs thus 'have the same or similar injury' as other members of the class: they paid money for a substantially defective product." *Id.* at 17. Thus, typicality is established.

### 4.   Rule 23(a)(4): Plaintiffs Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately represent the interests of the class. This requires only that a class member does not have interests that are antagonistic to or in conflict with the interests of the class.[19] Here, this Court has previously found that there was no conflict between new and used vehicle purchasers, and that the class representatives were adequate. ECF No. 279 at 20-21. It is therefore clear that by proving their own claims, plaintiffs will necessarily be proving the claims of their fellow class members.

---

[16] ECF No. 279 at 14-15.

[17] ECF No. 279 at 31.

[18] *Hanlon*, 150 F.3d at 1020.

[19] *Hanlon*, 150 F.3d at 1020.

1

     **5.**      **Rule 23(b)(3): Common Questions of Fact or Law Predominate**

2

     Once the prerequisites of Fed. R. Civ. P. 23(a) are satisfied, the Court must determine if one

3

of the subparts of Rule 23(b) is also satisfied. Here, Rule 23(b)(3) is satisfied because questions

4

common to Members of the Settlement Classes predominate over questions affecting only individual

5

Members of the Settlement Classes, and the class action device provides the best method for the fair

6

and efficient resolution of the claims of the Class Members.

7

     This Court has already conducted an extensive predominance analysis at class certification,

8

and finding that common questions of fact or law predominate when granting certification for the

9

claims identified in the certified seven state classes. ECF No. 279 at 47-49. For example, this Court

10

found that the majority of the state-based implied warranty claims could be certified as "Plaintiffs

11

have produced enough evidence regarding Ford's base software for the Court to infer at this stage

12

that each MFT version has materially similar defects. If each MFT version is similarly flawed, it

13

follows that each would breach (or not) the IWM in materially the same way." *Id.* at 41. Similarly,

14

after conducting a rigorous analysis into each of Plaintiffs' damages models, this Court found that

15

"the methodologies set forth in Plaintiffs' expert declarations are sufficiently sound and capable of

16

practicable application to the class without unreasonable difficulty." *Id.* at 27. As such, issues

17

common to the class predominate in this case.

18

     Referencing Plaintiffs' arguments that individual recovery in this Litigation was "likely to be

19

so small as to make individual actions not worth bringing," this Court concluded that, here, "a class

20

action is therefore a superior option." *Id.* at 46. As to manageability concerns, this Court previously

21

noted: "Plaintiffs seek recovery on behalf of twelve state classes and the Court will certify seven of

22

those twelve. This is not obviously unmanageable." *Id.* at 47. Plaintiffs have therefore met the

23

requirements under Rule 23(b)(3).

24

**C.**    **The Court Should Reaffirm the Appointment of Class Counsel**

25

     Under Rule 23, the appointment of class counsel, to "fairly and adequately represent the

26

interests of the class" is required.[20] In making this determination, the Court must consider counsels':

27

_____

28

    [20] Fed. R. Civ. P. 23(g)(1)(A), (B).

1    (1) work in identifying or investigating potential claims; (2) experience in handling class actions or

2    other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable

3    law; and (4) resources committed to representing the class.[21] Here, Class Counsel has spent an

4    extraordinary amount of time pursuing discovery and has worked tirelessly litigating claims on

5    behalf of the nineteen Plaintiffs and hundreds of thousands of class members. Berman Decl. ¶¶ 3-11.

6    As such, the Named Plaintiffs should continue as class representatives and Hagens Berman Sobol

7    Shapiro LLP; Baron & Budd, P.C.; DiCello Levitt & Casey LLC.; and Chimicles & Tikellis LLP

8    should continue as Class Counsel.

9    **D.      The Proposed Class Notice and Plan for Dissemination Meets the Strictures of Rule 23**

10           Fed. R. Civ. P. 23(e)(1) requires that a court approving a class action settlement must "direct

11   notice in a reasonable manner to all class members who would be bound by the proposal." In

12   addition, for a Rule 23(b)(3) class, the Rule requires the court to "direct to class members the best

13   notice that is practicable under the circumstances, including individual notice to all members who

14   can be identified through reasonable effort."[22] A class action settlement notice "is satisfactory if it

15   generally describes the terms of the settlement in sufficient detail to alert those with adverse

16   viewpoints to investigate and to come forward and be heard."[23]

17           The proposed plan of notice follows the same parameters and uses the same Notice

18   Administrator (JND) that was previously approved by this Court during the 2017 Litigation Class

19   Notice. ECF No. 348. The proposed forms of notice provide all information required by

20   Rule 23(c)(2)(B) to the Settlement Classes, in language that is plain and easy to understand. JND

21   Decl ¶ 10. The Settling Parties have followed, as closely as possible, the language for settlements

22   recommended by this District's Procedural Guidance for Class Action Settlements. Berman Decl. ¶

23   16. With this Motion, the Settling Parties provide proposed short form notice, long form notice, and

24   e-mail notice. *See* Settlement Agreement, Exs. 1, 2, 3.

25

26       [21] Fed. R. Civ. P. 23(g)(1)(A).

27       [22] Fed. R. Civ. P. 23(c)(2)(B).

28       [23] *Churchill,* 361 F.3d at 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice).

The proposed plan of notice includes several components. The direct notice component will include email and mail notice to potential class members, using the contact information collected during the 2017 Litigation Class Notice campaign. JND Decl. ¶¶ 8, 11. To supplement this direct notice campaign, JND will confirm via the National Change of Address Database whether there have been any changes to the contact information collected during the 2017 Litigation Class Notice Campaign. *Id.* at ¶ 13.a. In addition, Ford will ask the Notice Administrator to establish a website, containing information about the settlement as well as copies of relevant case documentation. *Id.* ¶ 13.d. A toll-free telephone number will also be established to answer questions from class members. *Id.* at ¶ 13.f. This plan is designed to reach as many Members of the Settlement Class as possible and provide them with the opportunity to review a plain language notice with the ability to easily take the next step and learn more about this Action. *Id.* at ¶¶ 11, 17. It is the opinion of JND that this plan will provide the best notice possible given the circumstances. *Id.* at ¶ 14. These notice provisions meet the requirements of Rule 23 and will allow the class a full and fair opportunity to review and respond to the proposed settlement.

**E.      Proposed Schedule for Dissemination of Notice and Final Approval**

Finally, if the Court grants preliminary approval and provisionally certifies the Settlement Classes, respectfully, the Court should also set the schedule set forth above in Plaintiffs' Notice of Motion.

## VI.      CONCLUSION

For all the foregoing reasons, Plaintiffs ask respectfully that the Court grant preliminary approval of the Parties' Settlement and grant the other relief requested in this Motion.

1    Dated: June 1, 2018                      Respectfully Submitted,

2                                             By: /s/ Steve W. Berman
                                              Steve W. Berman (*pro hac vice*)
3                                             Catherine Y.N. Gannon (*pro hac vice*)
                                              Craig R. Spiegel (122000)
4                                             HAGENS BERMAN SOBOL SHAPIRO LLP
                                              1918 Eighth Avenue, Suite 3300
5                                             Seattle, WA 98101
                                              Telephone: (206) 623-7292
6                                             Facsimile: (206) 623-0594
                                              E-mail: steve@hbsslaw.com
7                                             E-mail: catherineg@hbsslaw.com
                                              E-mail: craigs@hbsslaw.com
8
                                              Adam J. Levitt (*pro hac vice*)
9                                             John E. Tangren (*pro hac vice*)
                                              DICELLO LEVITT & CASEY LLC
10                                            Ten North Dearborn Street, Eleventh Floor
                                              Chicago, IL 60602
11                                            Telephone: (312) 214-7900
                                              E-mail: alevitt@dlcfirm.com
12                                            E-mail: jtangren@dlcfirm.com

13                                            Roland Tellis (186269)
                                              Mark Pifko (228412)
14                                            BARON & BUDD, P.C.
                                              15910 Ventura Boulevard, Suite 1600
15                                            Encino, CA 91436
                                              Telephone: (818) 839-2320
16                                            Facsimile: (818) 986-9698
                                              E-mail: rtellis@baronbudd.com
17                                            E-mail: mpifko@baronbudd.com

18                                            Nicholas E. Chimicles (*pro hac vice*)
                                              Benjamin F. Johns (*pro hac vice*)
19                                            CHIMICLES & TIKELLIS LLP
                                              One Haverford Centre
20                                            361 West Lancaster Avenue
                                              Haverford, Pennsylvania 19041
21                                            Telephone: (610) 642-8500
                                              Facsimile: (610) 649-3633
22                                            E-mail: nick@chimicles.com
                                              E-mail: benjohns@chimicles.com
23
                                              *Class Counsel*
24

25

26

27

28