UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

IN RE

MYFORD TOUCH CONSUMER LITIGATION

Case No. 13-cv-03072-EMC

**ORDER RE PROPOSED SETTLEMENT**

Docket No. 437

Having reviewed the motion for preliminary approval, the Court finds the proposed settlement problematic and has serious concerns whether it can be approved, even preliminarily, as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In their motion, Plaintiffs have disregarded this Court's guidelines. *See* Northern District of California's Procedural Guidance for Class Action Settlements ("N.D. Cal Guidelines"), available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance. The Court will convene a status conference on **Monday, June 11, 2018 at 2:30 p.m.** to discuss the issues enumerated below. The parties shall also be prepared to propose new trial dates.

**1. Maximum Value of Claims:** Plaintiffs offer no estimate of the "potential recovery if plaintiffs were to prevail on each of their claims." N.D. Cal Guidelines, Preliminary Approval ¶ 1.d. Plaintiffs failed to submit any such estimate, including an explanation of any assumptions, evidence, or other reasoning used to reach such an estimate (*i.e.*, estimated size of class, maximum and minimum value of class claims, etc.). The Court cannot evaluate the fairness of the settlement without understanding the maximum likely verdict value of the claims asserted.

**2. Software Upgrades:** Plaintiffs represent that the settlement will offer class members "equitable relief" in the form of a "free" upgrade to version 3.10 or later of the

MyFordTouch (MFT) software. However, Plaintiffs have not submitted any information about the value of this upgrade, such as the normal cost to consumers, if any, to request the upgrade. *See* N.D. Cal. Guidelines, Preliminary Approval ¶ 1(d) (motion should address "[t]he likely recovery per plaintiff under the terms of the settlement"). More fundamentally, Plaintiffs offer no information about whether MFT v. 3.10 resolves the defects they alleged in this case, or what they have done to evaluate its performance. Finally, the proposed settlement also provides that "for one year after installation of the MFT software update . . . Authorized Ford Dealers will address any software problems . . . by confirming that the most current compatible update of the MFT software (version 3.10 or later) is correctly installed and working properly." Proposed Settlement § II.A.2 at 18. What does this mean? Does this provision require Ford to do anything beyond make software updates available for 1 year after the upgrade to v. 3.10? What happens if v. 3.10 does not cure all defects?

**3. Estimated Monetary Value of Settlement:** The proposed settlement provides three mutually exclusive options for monetary relief. Class members can either receive compensation for MFT Software Repairs, reimbursement for Post-Warranty Repair Costs, or compensation for Unsatisfactory MFT Performance. *See* Proposed Settlement § II.B at 18-19. Plaintiffs offer no estimate of the aggregate value to the class of these options: *e.g.*, how many class members are expected to recover under each category?[1] There is no estimate of the total likely recovery, including in particular the expected response rate of class members in submitting claims given the relatively onerous claims process. To be clear, it appears there is no settlement fund and no guaranteed minimum payout in settlement; is that correct?

**4. Claims Requirement:** The settlement requires each class member to submit a claim with varying documentation requirements depending on the type of claim. However, the Court was under the impression that Ford had records sufficient to identify at least some eligible claims. For example, Ford has records of MFT Software Repair requests. Ford may also have

[1] Ford earlier estimated that 69.8% of the California and Washington class members never sought any repairs, approximately 20% sought 1 repair, approximately 5% sought two repairs, and approximately 2% sought 3 repairs. *See* Docket No. 399. It is unclear what percentage sought repairs in the other certified classes.

records of Post-Warranty Repairs conducted at its authorized dealers. Is there a reason these known class members with valid claims must submit a form? Are there any other categories of claimants who can be identified through Ford's records?

Also, can the process still be streamlined for these "known" eligible claims by relaxing the documentation requirements for them?

**5. Timeline for Claims and Final Approval Hearing:** Under the proposed schedule, claims will not be submitted until *after* the Court grants final approval of the Settlement and hears Class Counsel's motion for attorneys' fees and costs and service awards. The open claims process means the Court will be asked to rule on the fairness of the settlement with no or little information about the total number of claims filed and deemed valid, and thus no concrete information about the total value of the settlement actually realized by the Class. How can the Court evaluate whether the settlement is fair, reasonable, and adequate if it does not have that information? Moreover, how can the Court evaluate the reasonableness of Class Counsel's fee award without any information about the concrete benefits actually received by the Class? How is the Court supposed to apply the 25% benchmark where there is no identified common fund? Why shouldn't the Court defer final approval (assuming preliminary approval is granted) until after the claims process is completed?

**6. Differential Treatment of Class Members and Required Repair Attempts:** Plaintiffs should explain why a monetary recovery of $100-500 is limited to class members who proactively sought an MFT Software Repair. The only class claim requiring proof of attempted repairs was breach of express warranty for the California and Washington classes. The remaining class claims did not, including breach of implied warranty (California, Massachusetts, New Jersey, North Carolina, Ohio, Virginia), negligence (Ohio), California's Unfair Competition Law and Song-Beverly Act, and Massachusetts' Consumer Protection Act. Although Plaintiffs assert that their allocation scheme is "rationally based on a Class Members' level of dissatisfaction with the MFT system and the time and energy the Class Member employed in a good-faith effort to resolve MFT problems," Mot. at 16, those factors appear unrelated to the theory of damages advanced in this litigation. *Cf. True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052, 1067-68 (C.D. Cal. 2010)

(finding proposed settlement unfair where class members were not treated differently because they had different legal claims or suffered greater damages, but only because "they were moved to complain"). How is the proposed allocation scheme fair, reasonable, and equitable?

**7. Unsatisfactory MFT Performance:** A class member who neither seeks compensation for MFT Software Repairs or Reimbursement of Post-Warranty Repairs may only seek a payment of $35 if they attest that they experienced at least two instances of "Unsatisfactory MFT Performance." How did the parties arrive at a $35 valuation and the requirement that there be *two* unsatisfactory experiences? How is this settlement formula related to the damages sought in litigation? Additionally, is there a reason to require a claimant seeking this relief to submit a physical signature rather than an electronic attestation?

**8. Discount Option:** Claimants who sought at least one MFT Software Repair will have the option to choose between a $100-500 cash payment or a $200-$1,000 "discount" off the value of a future purchase of a Ford or Lincoln vehicle equipped with the newer SYNC 3 information and entertainment system. The "discount" appears to constitute or be akin to a "coupon settlement" under the Class Action Fairness Act of 2005. *See* 28 U.S.C. § 1712; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 951 (9th Cir. 2015) (explaining that coupon settlements are subjected to heightened scrutiny because they "involve a discount . . . on class members' purchases from the settling defendant" and "require class members to hand over more of their own money before they can take advantage of the coupon, and they often are only valid for select products or purchases"). Why shouldn't this coupon option be subject to heightened scrutiny?

**9. Litigation Risk:** Although Plaintiffs have identified litigation risks in their papers, *See* Docket No. 19-20, they have not explained how they evaluated those risks. For example, Plaintiffs note their trial theory hinged on showing that all versions of MFT, up to and including version 3.6, were defective, and that a jury could find that software version 3.6 alleviated the MFT defects to an extent they no longer impaired the safety, reliability, or operability of the Class Vehicles. But, Plaintiffs offer no explanation of how substantial this risk was. What is the evidence that MFT v. 3.6 resolved the defects? What is Plaintiffs' contrary evidence?

**10. Negotiation of Attorneys' Fees:** The parties shall submit declarations under penalty of perjury from counsel explaining the negotiation process with respect to attorneys' fees in relation to class member benefits. How did the parties arrive at the maximum figure of $22 million in attorneys' fees, to be paid to Class Counsel by Ford if the Court approves an application? Were attorneys' fees negotiated simultaneously with class member benefits?

**11. Validation of Claims:** Under the claims process, Ford's total liability is contingent on the number of claims filed and deemed valid. Moreover, Ford will cover the costs of and apparently supervise the claim administration process. Ford thus has a financial incentive to minimize administration costs and the number of valid claims. The Proposed Settlement does not provide (or guarantee) that Class Counsel will play any role whatsoever in supervising claims administration or safeguarding class members' interests throughout the claims process to ensure that the process is fair. The Settlement merely provides that Class Counsel will be notified when a claim is rejected. The parties have not addressed how this Court can be assured that the claims process is fair and the number of valid claims is maximized in light of the lack of incentive by either party to maximize the number of claims.

**IT IS SO ORDERED**.

Dated: June 7, 2018

EDWARD M. CHEN
United States District Judge