STEVE W. BERMAN (*pro hac vice*)
CATHERINE Y.N. GANNON (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
catherineg@hbsslaw.com

ROLAND TELLIS (186269)
MARK PIFKO (228412)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2320
rtellis@baronbudd.com
mpifko@baronbudd.com

*Class Counsel*

ADAM J. LEVITT (*pro hac vice*)
JOHN E. TANGREN (*pro hac vice*)
DICELLO LEVITT GUTZLER LLC
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com

NICHOLAS E. CHIMICLES (*pro hac vice*)
BENJAMIN F. JOHNS (*pro hac vice*)
CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
nick@chimicles.com
bfj@chimicles.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE<br><br>MYFORD TOUCH CONSUMER LITIGATION | Case No. 3:13-cv-03072-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          November 21, 2019<br>Time:         1:30 p.m.<br>Courtroom: 5, 17th Floor<br>Judge:       Hon. Edward M. Chen |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on November 21, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen, United States District Judge for the Northern District of California, San Francisco Division, located at the Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue San Francisco, California, Plaintiffs Jennifer Whalen, Center for Defensive Driving, Jason Connell, William Creed, Joe D'Aguanno, Michael Ervin, Daniel Fink, Leif Kirchoff, Joshua Matlin, Jeffrey Miller, Henry Miller-Jones, Jerome Miskell, Debra J. Mitchell, as Trustee of the Thomas E. Mitchell Living Trust, Nuala Purcell, Russ Rizzo, Jose Randy Rodriguez, James Sheerin, Darcy Thomas-Maskrey and Richard Decker Watson ("Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2) for an Order awarding:

    a.   Attorneys' fees to Class Counsel and litigation expenses in the amount of $16 million; and

    b.   Incentive Awards to each of the Class Representatives in the amount of $9,000 each.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Settlement Agreement, including all exhibits thereto, the Declarations of Nicholas E. Chimicles ("Chimicles Decl."), Roland Tellis ("Tellis Decl."), Adam J. Levitt ("Levitt Decl."), Steve W. Berman ("Berman Decl."), the declarations from each of the Plaintiffs, and all other pleadings, papers, records, and documentary materials on file in this action, including those matters of which the court may take judicial notice, and such other argument as the Court may consider.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 1

II.   PROSECUTION AND SETTLEMENT OF THE ACTION ............................ 3

    A.    Factual Background ......................................................................... 3

    B.    The Preliminary Approval Order and Prior Settlements .................... 3

III.  ARGUMENT .............................................................................................. 5

    A.    The Court Should Apply the Lodestar Method ................................ 5

    B.    The Number of Hours Billed Is Reasonable ................................... 6

    C.    The Hourly Rates Are Reasonable .................................................. 9

    D.    The Lodestar Adjustment Factors ................................................... 9

        1.    Class Counsel Achieved a Favorable Result for the Class ........... 10

        2.    The Superior Quality of Work Performed
            in Order to Achieve the Settlement ............................................. 11

        3.    The Complexity, Expense, and Substantial Risk
            Borne by Class Counsel ............................................................. 13

        4.    Class Counsel Worked on a Contingent Basis ............................. 14

        5.    The Reaction of the Class Also Supports the Fee Request .......... 14

        6.    The Negative Multiplier Confirms the
            Reasonableness of the Fee Request ........................................... 15

    E.    Class Counsel Should be Reimbursed for Their Litigation Expenses .... 16

    F.    The Court Should Grant a Service Award
        for Each Class Representative ...................................................... 18

IV.   CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Allagas v. BP Solar Int'l, Inc.*,
No. 3:14-cv-00560-SI (EDL), 2016 U.S. Dis. LEXIS 187785 (N.D.
Cal. Dec. 22, 2016) ........................................................................................ 11, 12

*Bayat v. Bank of the West*,
No. 13-cv-2376-EMC, 2015 U.S. Dist. LEXIS 50416 (N.D. Cal. Apr.
15, 2015) .................................................................................................................. 6

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................ 14

*Brown v. 22nd Dist. Agric. Ass'n*,
No. 15-cv-02578-DHB, 2017 U.S. Dist. LEXIS 115321 (S.D. Cal.
July 21, 2017) ....................................................................................................... 14

*California v. Infineon Techs. AG* (*In re Dynamic Random Access Memory*
*(DRAM) Antitrust Litig.*),
MDL No. 1486, No. 06-cv-4333-PJH, 2013 U.S. Dist. LEXIS 190974
(N.D. Cal. Nov. 5, 2013) ...................................................................................... 15

*Carlin v. DairyAmerica, Inc.*,
No. 1:09-cv-04300AWI-EPG, 2019 U.S. Dist. LEXIS 78026 (E.D.
Cal. May 8, 2019) ................................................................................................. 16

*In re Carrier iQ, Inc., Consumer Privacy Litig.*,
No. 12-md-02330-EMC, 2016 U.S. Dist. LEXIS 114235 (N.D. Cal.
Aug. 25, 2016) ...................................................................................................... 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
MDL No. 1917, 2016 U.S. Dist. LEXIS 102408 (N.D. Cal. Aug. 3,
2016) ............................................................................................................... 10, 18

*Ching v. Siemens Indus.*,
No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002 (N.D. Cal. Jun.
27, 2014) ............................................................................................................... 14

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods.*
*Liab. Litig.*,
No. 17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205 (N.D. Cal.
May 3, 2019) ...................................................................................................... 8, 18

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ................................................................. 13

*Daniel v. Ford Motor Co.*,
   No. 2:11-cv-02890-WBS-EFB, 2018 U.S. Dist. LEXIS 70545 (E.D.
   Cal. Apr. 25, 2018) ................................................................................. 14

*Dewey v. Volkswagen of Am.*,
   909 F. Supp. 2d 373 (D.N.J. 2012) ......................................................... 20

*Dyer v. Wells Fargo Bank, N.A.*,
   303 F.R.D. 326 (N.D. Cal. 2014) ............................................................ 19

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
   926 F.3d 539 (9th Cir. 2019) ......................................................... 5, 6, 15

*Fleury v. Richemont N. Am., Inc.*,
   No. 05-cv-4525-EMC, 2008 U.S. Dist. LEXIS 112459 (N.D. Cal.
   Aug. 6, 2008) .......................................................................................... 19

*Gergetz v. Telenav, Inc.*,
   No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206 (N.D. Cal.
   Sept. 27, 2018) ........................................................................................ 19

*Glass v. UBS Fin. Servs.*,
   No. 06-cv-4068-MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan.
   26, 2007) .................................................................................................. 19

*Gutierrez v. Wells Fargo Bank, N.A.*,
   No. 07-cv-05923-WHA, 2015 U.S. Dist. LEXIS 67298 (N.D. Cal.
   May 21, 2015) ........................................................................................... 9

*Harris v. Vector Mktg. Corp.*,
   No. 08-cv-5198-EMC, 2012 U.S. Dist. LEXIS 13797 (N.D. Cal. Feb.
   6, 2012) .................................................................................................... 19

*In re Heritage Bond Litig.*,
   No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 5,
   2005) ........................................................................................................ 15

*In re HP Printer Firmware Update Litig.*,
   No. 5:16-cv-05820-EJD, 2019 U.S. Dist. LEXIS 108959 (N.D. Cal.
   June 28, 2019) ............................................................................................ 5

*Jarrell v. Amerigas Propane, Inc.*,
No. 16-cv-01481-JST, 2018 U.S. Dist. LEXIS 58619 (N.D. Cal. Apr.
5, 2018) ................................................................................................ 15

*Johnson v. Powers*,
No. 2:15-cv-0245-WBS-AC (PS), 2019 U.S. Dist. LEXIS 79596 (E.D.
Cal. May 10, 2019) ................................................................................ 6

*Kakani v. Oracle Corp.*,
No. 06-cv-06493WHA, 2007 U.S. Dist. LEXIS 95496 (N.D. Cal. Dec.
21, 2007) .............................................................................................. 13

*McCrary v. Elations Co., LLC*,
No. 13-cv-0242-JGB, 2016 U.S. Dist. LEXIS 24050 (C.D. Cal. Feb.
25, 2016) .............................................................................................. 18

*McLeod v. Bank of Am., N.A.*,
No. 16-cv-03294-EMC, 2019 U.S. Dist. LEXIS 40869 (N.D. Cal.
Mar. 13, 2019) ..................................................................................... 20

*Moreyra v. Fresenius Med. Care Holdings, Inc.*,
No. 10-cv-517-JVS, 2013 U.S. Dist. LEXIS 201983 (C.D. Cal. Aug.
7, 2013) ................................................................................................ 13

*Nelson v. Avon Prods.*,
No. 13-cv-02276-BLF, 2017 U.S. Dist. LEXIS 26451 (N.D. Cal. Feb.
24, 2017) .............................................................................................. 19

*Norris v. Mazzola*,
No. 15-cv-04962-JSC, 2017 U.S. Dist. LEXIS 208610 (N.D. Cal. Dec.
19, 2017) .............................................................................................. 11

*Oxina v. Lands' End, Inc.*,
No. 14-cv-2577-MMA (NLS), 2016 U.S. Dist. LEXIS 191738 (S.D.
Cal. Dec. 2, 2016) ................................................................................ 16

*In re Philips/Magnavox TV Litig.*,
No. 09-cv-3072 (CCC), 2012 U.S. Dist. LEXIS 67287 (D.N.J. May
14, 2012) ................................................................................................ 7

*In re Portal Software, Inc. Sec. Litig.*,
No. 03-cv-5138-VRW, 2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov.
26, 2007) .............................................................................................. 16

MOTION FOR ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS
Case No. 3:13-cv-03072-EMC

*Prison Legal News v. Schwarzenegger*,
608 F.3d 446 ............................................................................................................. 9

*In re Toyota Motor Corp.*,
No. 8:10-ML 02151-JVS, 2013 U.S. Dist. LEXIS 94485 (C.D. Cal.
June 17, 2013)......................................................................................................... 20

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
Practices, & Prods. Liab. Litig.*,
No. 8:10-ML-02151-JVS, 2013 U.S. Dist. LEXIS 123298 (C.D. Cal.
July 24, 2013) ................................................................................................. 8, 9, 18

*Viceral v. Mistras Grp., Inc.*,
No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220 (N.D. Cal. Feb.
17, 2017)................................................................................................................. 19

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................................................ 10, 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab.
Litig.*,
MDL No. 2672-CRB (JSC), 2017 U.S. Dist. LEXIS 39115 (N.D. Cal.
Mar. 17, 2017) ......................................................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.
Litig.*,
MDL No. 2672-CRB (JSC), 2016 U.S. Dist. LEXIS 148374 (N.D.
Cal. Oct. 25, 2016).................................................................................................. 18

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.
Litig.*,
MDL No. 2672-CRB (JSC), 2017 U.S. Dist. LEXIS 114353 (N.D.
Cal. July 21, 2017)..................................................................................... 8, 10, 13

*In re Washington Pub. Power Supply Sys. Secs. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................................. 14

*Wilson v. Metals USA, Inc.*,
No. 2:12-cv-00568-KJM-DB, 2019 U.S. Dist. LEXIS 39854 (E.D.
Cal. Mar. 12, 2019)................................................................................................... 5

*Wilson v. Tesla, Inc.*,
   No. 17-cv-03763-JSC, 2019 U.S. Dist. LEXIS 112866 (N.D. Cal. July
   8, 2019) .................................................................................................... 17, 18

*Zepada v. PayPal, Inc.*,
   No. 10-cv-2500-SBA, 2017 U.S. Dist. LEXIS 43672 (N.D. Cal. Mar.
   24, 2017) ........................................................................................................ 11

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 23(h) ........................................................................................ 5

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I. INTRODUCTION

After vigorously prosecuting this case for six years, Plaintiffs and Class Counsel achieved a comprehensive settlement that provides substantial monetary and non-monetary relief for consumers who bought or leased one of the Class Vehicles.[1] Plaintiffs withstood multiple attempts by Ford to defeat the case through, among other motion practice, two motions to dismiss, a vigorous opposition to class certification, a subsequent motion for decertification, and a motion for summary judgment that sought to dismiss all of the certified claims. Over the course of this litigation, Class Counsel took or defended a total of 43 depositions, reviewed over 8.3 million pages of documents, responded to at least nine sets of written discovery requests, worked with numerous experts to prepare reports and to digest the underlying MyFord Touch ("MFT") software and, at the time the parties agreed to resolve the case, were actively preparing for trial.

Plaintiffs now seek entry of an order approving their request for $16 million to compensate them for the attorneys' fees and expenses they incurred in achieving this result. As the Court is aware, $16 million is the figure that Magistrate Judge Kim independently proposed to both parties following the October 2018 settlement conference. By agreeing to accept this amount, Plaintiffs' counsel ***voluntarily reduced by $6 million*** the fee amount that they had sought in the parties' initial settlement agreement. As the Court also knows, this $16 million sum will be utilized to reimburse Plaintiffs' counsel for the $5.8 million in expenses they have advanced on the case to date, leaving them with approximately $10.2 million to compensate them for their billable time (representing a fractional net multiplier of 0.32 of their lodestar). The results achieved – including the $17 million guaranteed minimum

---

[1] Capitalized terms have the same meaning as set forth in the definitions section of the Settlement Agreement dated February 7, 2019. *See* Docket No. 516-1.

payment, the Unilateral Payment Process, free dealer assistance to upgrade to version 3.10, and other monetary benefits of the settlement – provide class members with meaningful relief in a case that's outcome was far from certain. Plaintiffs submit that these amounts are reasonable and should be approved.

While the Court's Preliminary Approval Order observed that the hours Plaintiffs' counsel have devoted to this case are "a sizable number, even for a lengthy case[]",[2] this was not the result of poor billing judgment or duplicative work on the part of Plaintiffs' counsel. Rather, the cumulative lodestar and expense figures reflect the manner in which Ford vigorously defended itself, the voluminous discovery record, the need for Plaintiffs' experts to review the MFT source code in multiple highly-secure locations over the course of several months, and the other resources that needed to be advanced in order to effectively prosecute this case on behalf of Plaintiffs and the Class.

Plaintiffs also seek Court approval of the $9,000 incentive award payments to each of the 19 Plaintiffs.[3] Each Plaintiff was deposed by Ford and fully responded to its discovery requests, and the majority of them were required to submit their vehicle to a comprehensive, in-person inspection by Ford and its experts. Given the resources each devoted to this six year-long case – and the results achieved on behalf of the Class that would not have occurred without their assistance – the requested incentive awards are reasonable and should also be approved.

---

[2] *See* Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Docket No. 526 ("PAO"), at 13 n.6.

[3] All Plaintiffs sought to become representatives of their state classes, but only the Plaintiffs in the states that were certified were appointed as class representatives. Nevertheless, the discovery obligations were identical between class representatives and individual plaintiffs who were not representing state classes.

## II.   **PROSECUTION AND SETTLEMENT OF THE ACTION**

### A.   **Factual Background**

Consistent with the 2018 Procedural Guidance for Class Action Settlements, Plaintiffs refer the Court to their Motion for Preliminary Approval (Docket No. 515) and forthcoming Final Approval Motion for a comprehensive summary of the case history and background facts.

### B.   **The Preliminary Approval Order and Prior Settlements**

The Parties reached a provisional settlement on March 29, 2018. Plaintiffs moved for preliminary approval of that initial settlement on June 1. *See* Docket No. 437. As discussed in the PAO and in Plaintiffs' motion for preliminary approval,[4] the Court issued several orders and conducted a hearing wherein it raised concerns with this prior settlement.[5] *See* PAO at 2. Thereafter, Plaintiffs withdrew from that settlement and made several revisions to it. The Court also referred the parties to Magistrate Judge Kim for further negotiations. *Id.* Judge Kim presided over a settlement conference on October 16, 2018. *Id.* Ultimately, she extended a mediator's proposal that was accepted by both parties on November 20, 2018. *Id.* at 2-3. Plaintiffs filed their motion for preliminary approval of the New Settlement on December 21, 2018, and a hearing was held on January 31, 2019. The parties then filed the operative settlement agreement and renewed motion for preliminary approval on February 7, 2019. *See* Docket No. 515.

On March 28, 2019, the Court issued the Order granting Preliminary Approval to the February 7 settlement. *See* PAO. As discussed in Plaintiffs' motion for preliminary approval and in the PAO, class members can receive compensation under the settlement in two different ways. First, they can file a claim seeking relief for MFT Software Warranty Repairs, Post-Warranty Repairs, or Unsatisfactory MFT

---

[4] *See* Docket No. 515 at 1-6.

[5] Among other provisions, Ford agreed in that settlement to pay class counsel up to $22 million in fees and expenses. *See* Docket No. 438-1.

Performance. PAO at 3-4. Second, class members who do not submit a claim can nevertheless receive compensation through the Unilateral Payments Process after the claims process is complete. *Id.* at 4-5. The vast majority of class members will have a choice to either fill out a simplified claim form with prepopulated information to recover between $45-400, or opt for a unilateral payment of $20-55 that Ford will send them without the need to file a claim.

The operative settlement agreement preliminarily approved by the Court provides a guaranteed minimum payout of $17 million: if the actual payout to class members is less than that amount, the difference between the actual payout and $17 million will be distributed *pro rata* to the class members who submitted valid claims. PAO at 5. There is also no cap on the monetary compensation that Ford will be required to pay for valid claims. In addition to this monetary compensation, class members will be eligible to have a Ford technician install the most recent version of the MFT software, version 3.10, at no cost to them. The estimated cost for this installation is between $80 and $100. *Id.* Pursuant to the settlement, Ford has committed to sending at least 360,000 monetary payments to class members – representing at least one guaranteed monetary payment for each subject vehicle.

Section E of the February 7 settlement agreement provides that Ford will pay, subject to Court approval, $16 million to Class Counsel to cover both their attorneys' fees and litigation expenses. *See* Docket No. 516-1 at 29. This payment will be made separately from the consideration being provided to the settlement class. *Id.* It also provides that Ford will pay, subject to Court approval, incentive awards of $9,000 for each of the Plaintiffs. *See id.* § F. This information was contained in the notice provided to class members and to the attorneys general.

The notice plan commenced on May 10, and the claims process opened on May 13. While class members still have until September 24 to submit claims, the settlement administrator has already received over 8,500 claims to date. There have

been 125 requests for exclusion, and no objections.[6] Plaintiffs will provide the final results of the notice campaign when they move for final approval of the settlement on November 7.

## III.   ARGUMENT

### A.   The Court Should Apply the Lodestar Method

"Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement." *In re HP Printer Firmware Update Litig.,* No. 5:16-cv-05820-EJD, 2019 U.S. Dist. LEXIS 108959, at *6 (N.D. Cal. June 28, 2019) (citing FED. R. CIV. P. 23(h))." Courts in this circuit determine attorney's fees in class actions using either the lodestar method or the percentage-of-recovery method." *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 570 (9th Cir. 2019) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)). "In class action cases where the defendants provide monetary compensation to the plaintiffs, 'courts have discretion to employ either the lodestar method or the percentage-of-recovery method.'" *Id.* at *47 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)). The lodestar method "may prove more convenient" in a case where "valuing the settlement is difficult or impossible." *Id.* at *47 (citations omitted).

Given that the settlement does not create a traditional common fund (but instead, an uncapped, claims made settlement with a $17 million floor), Plaintiffs respectfully submit that the Court should utilize the lodestar methodology here. *See Espinosa*, 926 F.3d at 570; *Wilson v. Metals USA, Inc.*, No. 2:12-cv-00568-KJM-DB, 2019 U.S. Dist. LEXIS 39854, at *23 (E.D. Cal. Mar. 12, 2019) ("Because this is not a common fund case and attorney's fees will be assessed against defendant without

---

[6] Plaintiffs are filing this motion well in advance of the September 20 deadline for the submission of objections. As such, they reserve the right to respond to any objections that may be filed in their motion for final approval of the settlement.

reducing the relief available to the class, it appears the lodestar method is the appropriate method for determining whether the attorney's fees provision at issue is reasonable at this stage.") (collecting cases); *Bayat v. Bank of the West,* No. 13-cv-2376-EMC, 2015 U.S. Dist. LEXIS 50416, at *29 (N.D. Cal. Apr. 15, 2015) (utilizing the lodestar method).

"The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate." *Espinosa*, 926 F.3d at 570 (quoting *Hanlon*, 150 F.3d at 1029)). There is a "'strong presumption… that the lodestar figure represents a reasonable fee, and therefore, it should only be enhanced or reduced in rare and exceptional cases.'" *Johnson v. Powers*, No. 2:15-cv-0245-WBS-AC (PS), 2019 U.S. Dist. LEXIS 79596, at *7-8 (E.D. Cal. May 10, 2019) (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 n.4 (9th Cir. 2000)). "The district court may… adjust the resulting [lodestar] figure upward or downward to account for various factors,… including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* (internal citations omitted). As discussed below, the analysis of these criteria here supports the requested fee award.

**B.**     **The Number of Hours Billed Is Reasonable**

As set forth in the four declarations of lead counsel submitted herewith,[7] lead counsel has worked the following number of hours as of July 31, 2019:

---

[7] Over the course of this case, additional firms besides the four co-lead firms have worked on this case. Any payments to those firms will be paid from the total amount approved by the Court in connection with this motion.

| FIRM | HOURS | LODESTAR |
|---|---|---|
| Hagens Berman Sobol Shapiro LLP | 23,400.00 | $10,081,964.00 |
| DiCello Levitt & Gutzler LLC[8] | 16,460.80 | $8,330,362.00 |
| Baron & Budd, P.C. | 12,561.55 | $6,581,696.75 |
| Chimicles Schwartz Kriner & Donaldson-Smith LLP | 13,766.80 | $6,451,690.50 |
| TOTALS | 66,189.15 | $31,445,713.25 |

The figures above do not account for time spent on or after August 1, 2019. *See In re Philips/Magnavox TV Litig.*, No. 09-cv-3072 (CCC), 2012 U.S. Dist. LEXIS 67287, at *47 (D.N.J. May 14, 2012) (recognizing that time submitted in connection with a fee petition filed before final approval "does not include the fees and expenses…expended after [that date] on tasks such as preparing for and appearing at the fairness hearing").

The number of hours that were billed by Plaintiffs' counsel were reasonable, appropriate, and necessary for the effective prosecution of this case. Indeed, the Court's preliminary approval order recognized the work that went into this case. *See* PAO at 1 (observing that the case was settled "[a]fter more than five years of litigation, including extensive motions practice and discovery"). As set forth above, this case included dozens of depositions, the production of millions of pages of documents, inspection of vehicles, extensive motion practice and trial preparation, and the drafting of numerous expert reports. In connection with Plaintiffs' motion for class

---

[8] The hours, lodestar figures and expenses for DiCello Levitt & Gutzler LLC also include those from Grant & Eisenhofer P.A. Messrs. Levitt and Tangren were previously affiliated with the Grant & Eisenhofer P.A. law firm. *See* Docket No. 520.

certification alone, Plaintiffs presented a total of four experts: two who addressed economic issues (Drs. Jonathan Arnold and Stefan Boedeker), one on the MFT source code (Mr. Daniel Smith), and a human factors expert (Dr. Craig Rosenberg). For its part, Ford opposed Plaintiffs' class certification with an economic expert (Dr. Hal Singer), a human factors expert (Dr. Robert Raushenberger), a consumer behavior expert (Dr. Christine Wood), and a MFT software expert (Dr. John Kelly). Each of these experts prepared written reports and was deposed, and several of them submitted additional merits reports with the parties' respective summary judgment submissions.

To put the above billable hour figures into some perspective, the number of hours spent on this case is comparable to other large automobile class actions that have recently been approved in this district. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205, at *29 (N.D. Cal. May 3, 2019) (stating, in a case where class counsel represented that they worked 95,951.4 hours, "[t]he fees and costs are reasonable, whether a percentage method or lodestar method is used. Class Counsel's request for $59 million in fees and $7 million in costs is hereby GRANTED"); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672-CRB (JSC), 2017 U.S. Dist. LEXIS 114353, at *728 (N.D. Cal. July 21, 2017) ("A lodestar cross-check also supports the reasonableness of Class Counsel's requested fees [of $121 million]. Class Counsel expended 120,418 hours while litigating and settling claims on behalf of the 3.0-liter Class Members and implementing the Settlement."); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:10-ML-02151-JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, at *306 (C.D. Cal. July 24, 2013) ("[C]lass counsel have expended at least 165,930 hours and spent over $27 million in litigation costs, all at the risk of receiving no compensation whatsoever."). The number of hours here are reasonable and should be approved.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.      The Hourly Rates Are Reasonable**

As also set forth in the accompanying declarations, the hourly rates ranged from $165-300 for paralegals, $250-450 for contract document review attorneys, $190-575 for associates, and $600-1,025 for partners.  *See* Chimicles, Levitt, Berman, and Tellis Decls. These are consistent with rates that have been approved by the Ninth Circuit and this Court. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (district court did not abuse its discretion in awarding 2008 hourly rates for Bay Area attorneys of up to $875 for a partner, and $700 for an attorney with 23 years of experience); *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-05923-WHA, 2015 U.S. Dist. LEXIS 67298, at *14-15 (N.D. Cal. May 21, 2015) (declining to reduce rates that ranged for $475-$975 for partners, $300-$490 for associates, $150-$430 for paralegals and $250-$340 for litigation support staff where "counsel waited patiently for payment for several years" and "many of the claimed rates were comparable to those in our geographic region for the skill and experience involved"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at *309 n.13 ("The hourly rates of class counsel range from $150 to $950. Class counsel's experience, reputation, and skill, as well as the complexity of this case, justify these hourly rates.").[9] Moreover, as detailed in these declarations, each of these firm's respective rates have been approved in other cases. They should, likewise, be approved here.

**D.      The Lodestar Adjustment Factors**

As discussed *supra*, the Court has the discretion to adjust the presumptively reasonable lodestar figure based upon factors such as the quality of representation,

---

[9] *See also Hefler*, 2018 U.S. Dist. LEXIS 213045, at *38-39 (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals were reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL No. 2672-CRB (JSC), 2017 U.S. Dist. LEXIS 39115, at *732 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable).

results obtained, complexity of the case, and risk. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,* 2017 U.S. Dist. LEXIS 114353, at *721-22 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-52 (9th Cir. 2002)) ("*Vizcaino* outlines a number of factors that courts may consider in setting an appropriate fee: (1) the results achieved; (2) the risks of litigation; (3) whether there are benefits to the class beyond the immediate generation of a cash fund; (4) whether the percentage rate is above or below the market rate; (5) the contingent nature of the representation and the opportunity cost of bringing the suit; (6) reactions from the class; and (7) a lodestar cross-check."). The relevant factors support the requested fee here.

### 1.    Class Counsel Achieved a Favorable Result for the Class

"The most important factor is the results achieved for the class.  Outstanding results merit a higher fee." *In re Cathode Ray Tube (CRT) Antitrust Litig*., MDL No. 1917, 2016 U.S. Dist. LEXIS 102408, at *62-63 (N.D. Cal. Aug. 3, 2016) (citing *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)). Class Counsel obtained substantial monetary relief for the owners and lessees of at least 360,000 Class Vehicles.  Ford will pay all valid claims submitted, and there is no cap on the total amount of money it will pay in response to Class Members' valid claims. While Class Members stand to receive more if they file a claim, the settlement is structured such that Ford will send unilateral payments to those original owners and lessees of Class Vehicles as to which no claim was submitted, but for whom Ford has records. And the settlement is designed to ensure that at least $17 million will be paid to class members. These results were achieved in a highly adversarial litigation against a *Fortune* 100 company represented by well-equipped counsel. This valuable result weighs heavily in favor of approval of the fee request.

### 2.      The Skilled and Superior Quality of Work Performed in Order to Achieve the Settlement

Class Counsel's expertise and ability in bringing the case to settlement also favor the fee request. *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2017 U.S. Dist. LEXIS 208610, at *38 (N.D. Cal. Dec. 19, 2017) (noting that the skill required in extensive motion practice and discovery as well as the quality of work performed by highly experienced counsel support the fee award). "Class counsel [who] specialize in consumer class actions, and have served as counsel for classes of plaintiff in a variety of substantive areas," can prove particularly beneficial. *Zepada v. PayPal, Inc.*, No. 10-cv-2500-SBA, 2017 U.S. Dist. LEXIS 43672, at *64-65 (N.D. Cal. Mar. 24, 2017) (finding that class counsel's consumer class action expertise allowed for a result that "would have been unlikely if entrusted to counsel of lesser experience given the "substantive and procedural complexities" and the "contentious nature" of the allegations that defendant improperly handled disputed transactions related to users accounts); *Allagas v. BP Solar Int'l, Inc.*, No. 3:14-cv-00560-SI (EDL), 2016 U.S. Dis. LEXIS 187785, at *5 (N.D. Cal. Dec. 22, 2016) (class counsel that were "highly experienced in prosecuting and settling complex class actions" factors in favor of requested fee).

The Court appointed these four firms as interim co-lead counsel on October 11, 2013. *See* Docket No. 36. Shortly thereafter, lead counsel submitted a proposed order adopting guidelines to limit costs and expenses, including attorneys' fees. *See* Docket No. 41. The order that was subsequently entered by the Court provided, among other things, the following:

- Co-Lead Counsel understands the need for efficiency and will monitor attorney billing and expenses in order to minimize duplicative or unnecessary work. Docket No. 42, at 1.

- Co-Lead counsel will delegate work to other firms only as reasonably necessary to the prosecution of this case. *Id.*

11

- Attendance at non-dispositive hearings will be attended by two attorneys, absent unusual circumstances. *Id.*
- Co-Lead counsel will strive to have certain firms specialize in certain areas of the case, and will delegate work in a manner that avoids duplication of work. *Id.*
- Travel reimbursement will be limited to economy or coach class airfare, and lodging and per diem meals are capped at $300 and $120 per day per person, respectively. *Id.* at 2-3.
- All Plaintiffs' counsel shall maintain daily contemporaneous time records. *Id.* at 3.
- A remote document review system will be used to avoid unnecessary travel expenses and procedures. *Id.* at 4.
- Co-Lead counsel will review each other's time, and will be authorized to eliminate non-compliant or duplicative time. *Id.*

Class Counsel closely followed these guidelines throughout the case. At all relevant times, Class Counsel worked together as a team to ensure the case was being prosecuted both effectively and efficiently. For example, on at least ten different occasions, one or more of the lead attorneys sought to call into various non-dispositive Court hearings so as to avoid unnecessary travel time and expenditures.[10] When preparing the figures to submit with this motion, Plaintiffs' counsel wrote off their expenses that exceeded the caps in the protocol. *See, e.g.*, Chimicles Decl. ¶ 9.

As to the quality of representation, Plaintiffs' counsel respectfully submit that their submissions and presentations to the Court were of the highest quality. The quality of their representation – and the efficiency with which the case was prosecuted – supports the requested fee and expense reimbursement amount. *See Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. 10-cv-517-JVS (RZx), 2013 U.S. Dist.

---

[10] *See* Docket Nos. 59, 328, 390, 427, 428, 429, 443, 455, 456, 462, 475, 504, 507, and 521.

LEXIS 201983, at *7 (C.D. Cal. Aug. 7, 2013) (noting that the result is "[t]he single clearest factor reflecting the quality of class counsels' services") (citation omitted).

### 3.   The Complexity, Expense, and Substantial Risk Borne by Class Counsel

The risk of litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048. ("Risk is a relevant circumstance" when applying the percentage of fund method in calculating attorneys' fees.); *Destefano*, 2016 U.S. Dist. LEXIS 17196, at *58 (approving requested attorneys' fees, in part, because the "risks associated with the case were substantial").  As recognized by this Court, consumer fraud class actions carry an inherent risk of being more uncertain than other types of class actions. *Kakani v. Oracle Corp.*, No. 06-cv-06493WHA, 2007 U.S. Dist. LEXIS 95496, at *12 (N.D. Cal. Dec. 21, 2007). At the time that this case was resolved, the parties had exchanged motions *in limine,* exhibit lists, and other pre-trial motions. In addition to the uncertainties associated with those unresolved motions, there was also the risk inherently faced by both parties of conducting a two phased jury trial. *Cf. In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 114353, at *726 ("[W]hile Plaintiffs would have likely prevailed on their claims,  the Settlement provides benefits much sooner than if litigation were to continue—compensating Class Members now . . . .").

This is not just an abstract concept: a very recent example in a case against Ford illustrates the point. After the Ninth Circuit remanded *Daniel*,[11] the case proceeded to trial on behalf of a certified class in the Eastern District of California before Judge William B. Shubb. Following an 11 day trial, the jury returned a defense verdict on January 25, 2018. Thereafter, Judge Shubb issued an order taxing those plaintiffs with a $74,551.48 bill of costs.  *See Daniel v. Ford Motor Co.,* No. 2:11-cv-02890-WBS-EFB, 2018 U.S. Dist. LEXIS 70545, at *18 (E.D. Cal. Apr. 25, 2018). The fact that

---

[11] *Daniel v. Ford Motor Co.,* 806 F.3d 1217 (9th Cir. 2015).

13

Plaintiffs' counsel here advanced several millions of dollars in resources, professional time, and actual dollars in the face of risks such as this supports the requested fee.

### 4.     Class Counsel Worked on a Contingent Basis

When Plaintiffs initiated this litigation, it was not a foregone conclusion that they would achieve the successful settlement.   Class Counsel's fee was entirely contingent.  The case has been pending for six years, with Class Counsel advancing all necessary expenses and foregoing work on other matters.  "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015).  The potential of receiving little or no recovery in the face of increasing risk weighs in favor of the requested fee.  *See In re Washington Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys of taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002, at *25 (N.D. Cal. Jun. 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-cv-02578-DHB, 2017 U.S. Dist. LEXIS 115321, at *22 (S.D. Cal. July 21, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award").

### 5.     The Reaction of the Class Also Supports the Fee Request

"The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable." *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555, at *71 (C.D. Cal. June 5,

2005). As of the filing of this motion, no class member has objected to the Settlement or the request for attorneys' fees.[12] The absence or relatively small number of objections is further evidence that the amount of attorneys' fees is reasonable. *See, e.g.*, *Jarrell v. Amerigas Propane, Inc.*, No. 16-cv-01481-JST, 2018 U.S. Dist. LEXIS 58619, at *8-9 (N.D. Cal. Apr. 5, 2018) ("[T]he Court now concludes that a slight upward adjustment—to 30% of the common fund—is warranted based on several factors, including the results achieved, the risk of non-recovery, and the fact that no class member has objected to the proposed award."); *In re Carrier iQ, Inc., Consumer Privacy Litig.*, No. 12-md-02330-EMC, 2016 U.S. Dist. LEXIS 114235, at *30 (N.D. Cal. Aug. 25, 2016) ("The number of objections and opt-outs is small, which indicates that the class largely supports the settlement.").

### 6. The Negative Multiplier Confirms the Reasonableness of the Fee Request

Preliminarily, the Ninth Circuit recently said that it does "not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method." *Espinosa*, 926 F.3d at 571. This would make "little logical sense," it explained, because "the lodestar method yields a fee that is presumptively [reasonable]." *Id.* (internal citations omitted). This is particularly true where, as here, Plaintiffs' counsel are seeking a fee award that is well below their collective lodestar. *See California v. Infineon Techs. AG* (*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*), MDL No. 1486, No. 06-cv-4333-PJH, 2013 U.S. Dist. LEXIS 190974, at *129-134 (N.D. Cal. Nov. 5, 2013) ("Counsel's lodestar at current hourly rates, or 'negative' multipliers of approximately .82 and .71 respectively. This calculation alone is virtually sufficient to satisfy the cross-check requirement.") (collecting cases); *Carlin v. DairyAmerica, Inc.*, No. 1:09-cv-04300AWI-EPG, 2019

---

[12] As noted above, Plaintiffs will respond to any objections that may be filed in their forthcoming motion for final approval of the settlement.

U.S. Dist. LEXIS 78026, at *44 (E.D. Cal. May 8, 2019) (citing *Schiller v. David's Bridal, Inc.*, 2012 U.S. Dist. LEXIS 80776, at *23 (E.D. Cal. June 11, 2012) for the proposition that "a negative lodestar multiplier strongly supports the reasonableness of the fee request"); *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138-VRW, 2007 U.S. Dist. LEXIS 88886, at *42 (N.D. Cal. Nov. 26, 2007) (noting that a negative multiplier "suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel"); *Oxina v. Lands' End, Inc.*, No. 14-cv-2577-MMA (NLS), 2016 U.S. Dist. LEXIS 191738 at *13 (S.D. Cal. Dec. 2, 2016) ("Class Counsel's request for fees is reasonable, given that the requested fees are a negative multiplier of Class Counsel's lodestar to date.").

The multiplier on the lodestar sought in this case is 0.50.[13] And if expenses are deducted from this analysis, the net multiplier becomes 0.32 (i.e., $10.2 million net fee divided by the $31.4 million lodestar). It is worth reiterating that this is on top of the $6 million voluntary reduction that Plaintiffs' counsel agreed to from the initial settlement to the current one, does not include any of the billable time that has been performed after July 31, and does not account for non-lead counsel's contributions. Plaintiffs respectfully submit that the fee request is reasonable and should be approved. Plaintiffs' counsel are also planning on paying for a second notice to go out after Final Approval to notify class members of the no-charge 3.10 update.

### E.  Class Counsel Should be Reimbursed for Their Litigation Expenses

Attorneys are "also entitled to recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harrison*, 2018 U.S. Dist. LEXIS 181093, at *19 (citation omitted); *see also Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 U.S. Dist. LEXIS 112286, at *40 (N.D. Cal. July 8, 2019) (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. Oct. 8,

---

[13] Plaintiffs are seeking reimbursement based on their current rates to account for the significant delay in payment, as was authorized by the Court in the time protocol. *See* Docket No. 42 at 3.

2014). ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.")

As submitted in detail in the attached declarations and summarized in the chart below, Class Counsel have collectively incurred over $5.8 million in expenses:

| FIRM | EXPENSES |
|---|---|
| Hagens Berman Sobol Shapiro LLP | $1,615,236.19 |
| DiCello Levitt & Gutzler LLC | $1,407,343.31 |
| Baron & Budd, P.C. | $1,380,472.38 |
| Chimicles Schwartz Kriner & Donaldson-Smith LLP | $1,397,483.18 |
| TOTALS | $5,800,535.06 |

The declarations describe in more detail the various expenses, which included the retention of several experts, paying the document review vendor, taking and defending numerous depositions, sending notice to the certified class, attending a private mediation session and another one with Magistrate Judge Kim, traveling to several court hearings, and litigating the case to the verge of trial.  At least $4.1 million of the expense total went towards expert fees. *See* Berman Decl. at ¶ 12. These fees were substantial in part due to the extremely large volume of source code review, coupled with the fact that Ford placed highly onerous requirements for source code access. For instance, the source code expert for Plaintiffs was explicitly required by Ford to review the source code *and* write his report solely within the confines of a secured room located at O'Melveny's office in downtown San Francisco. Thus, Plaintiffs had to compensate the source code expert team for travel time and costs, accommodation and per diem expenses while they were on location for more than a year. *Id.* And as with the lodestar figures, these expenses are under-inclusive in that

they do not account for expenses incurred after this date or by the non-co lead counsel who have worked on this case.

Expenses of this magnitude have been approved by this Court in other automobile and complex cases. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 75205, at *29 (approving $7 million in expenses); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at *316-20 (awarding $27 million in expenses); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 U.S. Dist. LEXIS 102408, at *84 (awarding $7.67 million in expenses); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672-CRB (JSC), 2016 U.S. Dist. LEXIS 148374, at *730 (N.D. Cal. Oct. 25, 2016) (approving up to $8.5 million in expenses); *McCrary v. Elations Co., LLC*, No. 13-cv-0242-JGB (SPx), 2016 U.S. Dist. LEXIS 24050, at *32 (C.D. Cal. Feb. 25, 2016) ("[W]hile the total amount of such costs make up a substantial portion of the total settlement amount, the Court finds Class Counsel's request to be reasonable because this case proceeded to the verge of trial and included heavy motions practice. The Court therefore approves the suggested amount for costs."). The $5,800,535.06 in expenses here are reasonable and, accordingly, should be approved.

### F.   The Court Should Grant a Service Award for Each Class Representative

Class Counsel also request that the Court approve a $9,000 service award for each of the 19 Class Representatives. Incentive awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 U.S. Dist. LEXIS 167206, at *21 (N.D. Cal. Sept. 27, 2018) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). Each

of the Class Representatives expended considerable effort on behalf of the class by locating, sorting and producing personal records, responding to several sets of written discovery by Ford, and working with Class Counsel over the course of several years to prosecute the case and obtain the settlement. They were all deposed by Ford's attorneys, and the majority subjected their vehicles to an inspection. Each Plaintiff put forth their name to this action, which received extensive publicity over the course of the case. The work that each did on the case is summarized in the compendium of their declarations submitted herewith as Exhibit A.[14]

   "Courts in this Circuit routinely grant requests for an award over $5,000 where the particular circumstances warrant such an award." *Nelson v. Avon Prods.,* No. 13-cv-02276-BLF, 2017 U.S. Dist. LEXIS 26451, at *19 (N.D. Cal. Feb. 24, 2017); *see also Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) (awarding $10,000 where lead plaintiff was deposed, participated in a four-day mediation, and spent more than 200 hours assisting in the case); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220, at *15 (N.D. Cal. Feb. 17, 2017) (awarding plaintiff an incentive award of $7,500); *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2012 U.S. Dist. LEXIS 13797, at *24 (N.D. Cal. Feb. 6, 2012) (awarding a plaintiff an incentive award of $12,500); *Fleury v. Richemont N. Am., Inc.*, No. 05-cv-4525-EMC, 2008 U.S. Dist. LEXIS 112459, at *25 (N.D. Cal. Aug. 6, 2008) (finding that "a $5,000 incentive award [for each plaintiff] is modest"); *Glass v. UBS Fin. Servs.*, No. 06-cv-4068-MMC, 2007 U.S. Dist. LEXIS 8476, at *51-52 (N.D. Cal. Jan. 26, 2007) (granting final approval of $25,000 payments to each named plaintiff in settlement obtained without trial).

---

[14] Plaintiff Joseph D'Aguanno was unavailable to submit a declaration by the time of this filing, but intends to submit a declaration shortly. As with the other named Plaintiffs, Plaintiff D'Aguanno devoted considerable time and attention to this action. He prepared responses to written discovery requests, sat for an all-day deposition, and was prepared to testify at trial.

Courts have awarded amounts in excess of $9,000 in automobile class actions, too. *See In re Toyota Motor Corp.*, No. 8:10-ML 02151-JVS (FMOx), 2013 U.S. Dist. LEXIS 94485, at *231 (C.D. Cal. June 17, 2013) (approving incentive awards greater than $10,000); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 395 (D.N.J. 2012) (approving $10,000 incentive awards to class representatives); *see also McLeod v. Bank of Am., N.A.*, No. 16-cv-03294-EMC, 2019 U.S. Dist. LEXIS 40869, at *22 (N.D. Cal. Mar. 13, 2019) (approving a $15,000 incentive award in an employment case).

The proposed $9,000 incentive award is proportional to the range of settlement awards and should be approved.

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court approve Plaintiffs' request for $16 million in attorneys' fees and expenses, and service awards in the amount of $9,000 to each Class Representative.

DATED:  August 16, 2019  CHIMICLES SCHWARTZ KRINER
        & DONALDSON-SMITH LLP

        By: ___/s/ Benjamin F. Johns___
          BENJAMIN F. JOHNS

        Nicholas E. Chimicles (*pro hac vice*)
        Benjamin F. Johns (*pro hac vice*)
        CHIMICLES SCHWARTZ KRINER
        & DONALDSON-SMITH LLP
        One Haverford Centre
        361 West Lancaster Avenue
        Haverford, Pennsylvania 19041
        Telephone: (610) 642-8500
        E-mail: nick@chimicles.com
        E-mail: benjohns@chimicles.com

        Steve W. Berman (*pro hac vice*)
        Catherine Y.N. Gannon (*pro hac vice*)
        HAGENS BERMAN SOBOL SHAPIRO LLP
        1918 Eighth Avenue, Suite 3300
        Seattle, WA 98101
        Telephone: (206) 623-7292
        E-mail: steve@hbsslaw.com
        E-mail: catherineg@hbsslaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Adam J. Levitt (*pro hac vice*)
John E. Tangren (*pro hac vice*)
DICELLO LEVITT & GUTZLER LLC
Ten North Dearborn Street
Eleventh Floor
Chicago, Illinois 60602
(Telephone:  (312) 214-7900
E-mail: alevitt@dicellolevitt.com
E-mail: jtangren@ dicellolevitt.com

Roland Tellis (186269)
Mark Pifko (228412)
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone: (818) 839-2320
E-mail: rtellis@baronbudd.com
E-mail: mpifko@baronbudd.com

*Class Counsel*

1

## **CERTIFICATE OF SERVICE**

2
      The undersigned hereby certifies that a true and accurate copy of the foregoing

3
was filed electronically via the Court's ECF system, on August 16, 2019. Notice of

4
electronic filing will be sent to all parties by operation of the Court's electronic filing

5
system.

6
DATED: August 16, 2019

7
                           CHIMICLES SCHWARTZ KRINER

8
                             & DONALDSON-SMITH LLP

9

10
          By:      */s/ Benjamin F. Johns*
                     BENJAMIN F. JOHNS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28